**MADHU SAMEER**
8 Oakdale St, Avonhead,
Christchurch, 8042
New Zealand
Madhu Sameer, in pro. per.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

Plaintiff :

MADHU SAMEER, An individual on behalf of all similarly situated

**FIRST AMENDED COMPLAINT**

vs

Defendants:

**DEMAND FOR A JURY TRIAL**

J. HECTOR MORENO, an individual
ANDREW WESTOVER, an individual
RAECHELLE VELLARDE, an individual
RORY COETZEE, an individual
KAYLEIGH WALSH, an individual
CONSTANCE SMITH, an individual
MORENO & ASSOCIATES, a corporation
T.C. ZAYNER, in official capacity and as an individual
EDWARD DAVILA, in Official Capacity and as an individual
KRISTI CULVER KAPETAN, in Official Capacity and as an individual
LENORE SCHREIBER, an individual
SUSAN BENETT, an individual
LEWIS BECKER, an individual
BENETT & BECKER INC, a corporation
SAMEER KHERA, an individual
SNEHAL DEVANI, an individual
DIVINE ARTS & ENTERTAINMENT, a corporation
HEALTHY MASALA, a corporation,
SANDRA SCHUSTER, an individual
SALLY WHITE, an individual
SALLY WHITE INC, a corporation
MICHAEL MILLEN, in individual
FRANCINE TONE, an individual
TONE & TONE, a corporation
GREGORY R ELLIS, an individual
WILLIAM PARDUE, an individual
DEPARTMENT OF CHILD SUPPORT SERVICES, an agency
JOHN DYER, In official capacity and as an Individual
KARI GILBERT, In Official Capacity, and as an Individual,
GARY GREEN, In his official capacity and as Individual
THORNTON DAVIDSON, An Individual
CITY OF FRESNO, A govt agency
& DOES 1 THRU 4994

I, MADHU SAMEER, Plaintiff, allege as follows:

## NATURE OF THE CASE

1. This action arises from the fraud perpetrated by Defendants KHERA et al, through a conspiracy in divorce proceedings.

2. Defendant KHERA and I separated in 2003. Between 2003 till date, all names and factiously names Defendants engaged in commission of one or more of the racketeering acts which included fraud, bribery, kickbacks, forgery, and other instruments of corruption, in order to assist defendant KHERA in defrauding me and violating my civil rights.

3. Each defendant used the process of litigation as a means to unjustly enrich themselves by defrauding me.

4. Defendants' conspiracy succeeded in exacting hundreds of thousands of dollars from me in attorney fee, yet depriving me of my property, child support and spousal support. Cumulatively, millions of dollars are owed by defendants in property, unpaid child and spousal support, interests reimbursement claims and in attorney fee, with interest accumulating to this day. Defendants are also jointly and severally liable for the damages inflicted on me by their unlawful activities.

5. Among other things, I seek actual, consequential, special and punitive damages from the tortfeasers,' and treble damaged for RICO counts, for this massive, outrageous fraud that has left me and my children destitute and devastated.

## PART 1 – GENERAL INFORMATION

## PARTIES

6. I MADHU SAMEER ("Plaintiff") am a citizen of Unites States, and for all times relevant herein, had been a citizen of, and resident of the State of California. I was married to defendant KHERA for 18 years (1986 – 2003). We arrived in US in 1998. I have not worked sufficiently in US to be eligible for 401K, IRA, superannuation or disability allowances.

7. We have 3 children, Urvashe (dob 03/23/89), Kabir (7/21/1998), Utsav (11/03/1999). In June 2003, I moved to Fresno County with 2 children.

8. In July 2003, I had an auto accident on I-152. I was charged with a felony in 2005, pleaded guilty, and was barred from working as a social worker.

9. Following defendants' corrupt, criminal acts, including acts of violence, I relocated to New Zealand in June 2015 with permission of the Court.

## KHERA DEFENDANTS

10.     SAMEER KHERA ("KHERA"), citizen of the United States, is employed by and associated with the CFDE enterprise. Defendant KHERA resides in Santa Clara County. KHERA's last known address is 21947 Oakleaf Ct, Cupertino, CA 95014. At times relevant herein, Defendant has been employed as a high ranking executive in various technology companies, earning over $500,000 - $1.5 million per annum.  Subsequent to my move to Fresno in 2003, defendant KHERA engaged in extensive fraud, identity theft, fraudulent conveyancing, was awarded almost 90% of the community property by defendant DAVILA, retained control over 10% that was awarded to me, refused to pay appropriate child and spousal support, refusing to comply with *any* Court order. For 14 years, other named and fictitiously name defendants have aided and abetted him in evasion of support payments, violation of Court orders, property fraud. Defendants have gone out of the way to protect him – like Judge Perky protected Block Turner  – when children made allegations of sexual abuse against defendant KHERA. Pursuant to three evaluations, I prevailed in the matter, but the CFDE Judicial officers retaliated by sanctioning me ! At all times relevant to this case, defendant KHERA was and remains a fiduciary to me and the children, and has violated his fiduciary duties by engaging in alleged fraud.

11.     SNEHAL DEVANI ("DEVANI") is defendant KHERA's current wife, an individual defendant, citizen of the United States, an individual employed by and associated with the enterprise. Her last known address is 21947 Oakleaf Ct, Cupertino, CA 95014. Defendant DEVANI has assisted defendant KHERA in fraudulent conveyancing,  illegal receiving of stolen property, reinvesting the stolen property,  concealment and illegal transfer of community property,   theft of my jewellery, forgery, alteration of documents, identity theft, and aiding and abetting defendant KHERA in evasion of court ordered child and spousal support.

12.     DIVINE ARTS & ENTERTAINMENT LTD, and HEALTHY MASALA LTD, are companies located at 21947 Oakleaf Ct, Cupertino, CA 95014, owed by defendant KHERA and DEVANI, also owned and operated by and associated with the enterprise.  These companies were created with the

proceeds of racketeering activities, and generate profits that are at least partially used to fund the racketeering activities.  They have been income producing companies that have failed to declare the wages that they were paying to defendant KHERA and DEVANI, and thus are accessories to the crimes of evasion of child support.  The companies were headquartered in properties that had been purchased from fraudulent conveyance and reinvested funds from the community property. They have failed to pay appropriate rent to me. These companies are alter egos of KHERA and DEVANI, being shell companies, opened with the explicit intention of tax evasion. Together, KHERA, DEVANI, DIVINE ARTS & ENTERTAINMENT, HEALTHY MASALA Corporations will be referred to as KHERA DEFENDANTS.

### BENNETT & BECKER DEFENDANTS (B&B Defendants)

13.    LEWIS BECKER ("BECKER") and SUSAN BENETT ("BENETT") are married partners, individual defendants, citizen of the United States, employed by and associated with the enterprise. Their last known known address PO BOX 69, Sonoma, CA  95487. The lawfirm BENETT & BECKER, a corporation is the alter ego of defendants BENETT, BECKER.

14.    Defendant BECKER entered into an illegal contract with KHERA in 2003 to aid and abet him in commission of child, spousal support and property related fraud and to help him in fraudulent conveyancing, forgery, concealment of assets and other related crimes. To this end, defendants engaged in widespread fraud, fraudulent representations and fraud upon the Court, advising defendant to violate court orders, corruptly influencing my attorneys, expert witnesses, and Judicial Officers thru bribes, kickback, referrals and other monetary and non monetary benefits and emoluments. Defendants corrupt actions resulted in widespread litigation, 5 different appeals in Fifth and Sixth Appellate District, and currently a Petition for Judicial Review, at an estimated overall expense of over $2million to all parties including taxpayers.

### LENORE SCHREIBER

15.    LENORE SCHREIBER ("SCHREIBER")  is located  is 925 "N" Street, Suite 110, Fresno, CA, individual defendant, citizen of the United States, employed by and associated with the enterprise. Defendant SCHEIBER entered into an illegal contract with KHERA in 2008, ostensibly to represent him as his attorney on ongoing child support matters in Fresno, but actually was employed by defendant KHERA for the illegal purpose of helping him violate child support orders made in 2003. Defendant SCHREIBER engaged in blatant ethical violation, including threats, intimidation,

blackmail, stalking, and even trespass, and attempted abduction of my older son in 2011. Between 2008 till date, defendant SCHREIBER has aiding and abetted defendant KHERA in commission of child and spousal support fraud, and evasion of hundreds of thousands of dollars in court ordered child support.  Her actions have spawned several appeals with the Fifth Appellate District, and currently a Petition for review with the Supreme Court of California.

## MORENO DEFENDANTS

16.     MORENO defendants entered into a contract to represent me in 2007. SIX (6) Attorneys were assigned to my case, engaging in fraudulent, reckless, indiscriminate billing. These attorneys pretended to represent me in my divorce proceedings between 2007 – 2014. But each of them actually conspired with opposing counsels, and other members of the cartel, to wilfully defraud and injure me. The defendants include:  J. HECTOR MORENO ("MORENO"), MORENO & ASSOCIATES, KAYLEIGH WALSH ("WALSH"), RAECHELLE VELLARDE ("VELLARDE") at 1800 Hamilton Ave, San Jose, CA  95125; ANDREW WESTOVER ("WESTOVER") at 19900 MacArthur Blvd, Suite 1150 Irvine, CA 92612;  CONSTANCE SMITH ("SMITH"), residing in Santa Cruz, RORY COETZEE ("COETZEE"), at 2600 Garden Road, Monterey, CA 93940, each individual defendant is a citizen of the United States, employed by and associated with the enterprise

17.  J MORENO & ASSOCIATES, Jr  ("MORENO & ASSOCIATES") is owned by J HECTOR MORENO. MORENO & ASSOCIATES is an alter ego of MORENO, a shell company.

## JUDICIAL DEFENDANTS

18.     The Judicial defendants are EDWARD DAVILA ("DAVILA"), TC ZAYNER ("ZAYNER"), GARY GREEN ("GREEN") and KRISTY KAPETAN ("KAPETAN"). Each is being sued in official capacity, as well as an individual defendant. Each is a citizen of the United States, professionally a Judge of the Superior Court, employed by and associated with the enterprise. During all times relevant herein, each of these Judges engaged in alleged racketeering acts in violation of judicial ethics, judicial canons. Each of them engaged in the conspiracy to aid and abet the CFDE attorneys to defraud me, and generally protected, and corruptly maintained the interests of the CFDE enterprise. Each wilfully made or supported several orders in clear absence of jurisdiction, and sanctioned me with the explicit intention of oppressing, suppressing and silencing me, in return for kickbacks, referrals, support, campaign funding, and/or other emoluments. As a consequence of their corrupt conduct, the children

and I have suffered severe economic injuries. Defendants actions spawned a series of complaints, motions and appeals in Santa Clara and Fresno County, in Fifth and Sixth Appellate District,  and in the Supreme Court. Defendants' wilful, corrupt and illegal actions have deprived me of my civil rights, have left me homeless, consequentially destroying  my education, my career, my health, and my ability to work.

19.   EDWARD  DAVILA (DAVILA) resides at 1898 Oak Knoll Ln, Menlo Park, CA 94025-6121, T.C. ZAYNER (ZAYNER) resides at 134 Ridge Rd, Redwood City, CA  94062, . KRISTI CULVER KAPETAN (KAPETAN) and GARY GREEN (GREEN)are at 111 Van Ness, Fresno 93721, CA.

## EXPERT DEFENDANTS

20.     SALLY WHITE ("WHITE") is at 4595 Cherry Ave # 200, San Jose, CA 95118, USA. WHITE is a CPA, an individual citizen of United States and a member of CFDE . At all times relevant herein, defendant WHITE agreed to provide false testimonies and reports in return for substantial financial and non financial considerations, kickbacks, referrals, and bribes from other defendants.

**21.** SALLY WHITE ASSOCIATES is an alter ego of SALLY WHITE, the individual. The Corporation SALLY WHITE ASSOCIATES is, and at all times herein mentioned, was a mere shell. Together, SALLY WHITE & SALLY WHITE ASSOCIATES will be referred as WHITE.

22.     SANDRA SCHUSTER ("SCHUSTER") is at 161 W. 25th Avenue, Ste. 102D, San Mateo, CA 94403. She is a Vocational Assessor who agreed to provide false testimonies and reports in return for substantial financial considerations, kickbacks, referrals, and bribes from other defendants.

23.     Defendants' wilful, corrupt and illegal actions have deprived me of my civil rights, have left me homeless, and have destroyed my education, my career, my health, and my ability to work.

## T & T Defendants

24.     FRANCINE TONE ("FRANCINE") is an individual defendant, citizen of United States, and member of CFDE. FRANCINE was recommended by defendant MORENO. At all times relevant herein, although FRANCINE pretended to work for me on my appeal with the Sixth Appellate District, she was actually loyal to CFDE and its members. As such, in and thru her representation, she protected the rights of CFDE attorneys and Judicial Officers by intentionally refusing to present persuasive arguments and facts that would have allowed me to prevail in my appeal. Defendant, in collusion with CFDE members, *intended* for me not to win in my appeal.

25.     TONE & TONE ("T&T") is a corporation in Truckee, California, an alter ego of FRANCINE. Their last known address is 12505 Greenwood Dr, Truckee, CA 96161. FRANCINE and T&T together are referred to as T&T DEFENDANTS.

### FC-DCSS Defendants

26.     Department of Child Support Services, Fresno is a govt agency, ("FC-DCSS") in Fresno. Its address is 2220, Tulare St, Ste 310 Upper, Fresno CA 93721. The agency is being sued under 1983 and other violations for discriminating against me, for failure to provide complete range of services, and for false claims that it cannot provide services due to budgetary constraints. FC-DCSS culpably diverts most of its budget to funding its employee retirement plans rather than using funds to focus on providing appropriate and timely support to Title IVD mothers.

27.     The Office of the CITY OF FRESNO is located at 2600 Fresno Street, Room 2031, Fresno, CA 93721. The city is being sued for s1983 and other violations for discriminating against me, for failure to provide complete range of services, and fraudulently claiming that the limitation in providing services is due to budgetary constraints. FC-DCSS culpably diverts most of its budget to funding its employee retirement plans rather than using funds to focus on providing appropriate and timely support to Title IVD mothers.

28.     KARI GILBERT ("GILBERT") is the Director of Fresno DCSS, a citizen of US, a member of the CFDE, being sued in her individual capacity as well as her official capacity for spearheading the racketeering acts and discriminatory procedures adopted against me and other non Title IVA mothers, by FC-DCSS operatives. As a director, Defendant GILBERT is responsible for the actions of the employees working under her supervision. She shares responsibility for focusing on the pyramid scheme of FC-DCSS – the Employee Retirement Plans – run at the cost of providing enforcement services for Title IVD mothers.

29.     JOHN DYER ("DYER") is a resident of Fresno, an individual, a member of the CFDE. DYER is an attorney at FC-DCSS responsible for enforcement and related activities on my Title IVD case with FC-DCSS. Defendant DYER discriminated against me, wilfully refused to enforce child support orders and repeatedly sabotaged my efforts to seek support by falsifying facts, and fraudulently informing each and every Judicial Officer that defendant KHERA was current on child support. His last known address is 2220, Tulare St, Ste 310 Upper, Fresno CA 93721.

### OTHER NAMED DEFENDANTS

30.     MICHAEL MILLEN ("MILLEN") known address is 119 Calle Marguerita Ste. 100 Los Gatos, CA 95032. MILLEN, an individual, employed by, associated or affiliated by the CFDE, was recommended by MORENO Defendants as an attorney to represent me on my legal malpractice suit against PARDUE. MILLEN pretended to work for me, but he was essentially faithful and loyal to MORENO Defendants, and abandoned me when MORENO defendants' fraud became apparent. At the time, he had already extorted over $15,000 from me, without performing the required actions for which he was recruited, and refused to refund that amount.

31.     GREGORY R ELLIS ("ELLIS") last known address is 350 W Colorado Blvd # 200, Pasadena, CA 91105. Defendant ELLIS is an individual, and is employed by, or associated with CFDE. Defendant ELLIS represented defendant KHERA in appeal related to Continuation of Spousal Support (Khera v Sameer, 2012) filed with the Sixth Appellate District. During all times relevant herein, when ELLIS made those representations in and thru his Respondent's Brief, defendant ELLIS was aware that he was making false representations of facts and law to the Appellate Court. Defendant ELLIS's such corrupt actions inflicted extreme hardship on me, eventually making me homeless.

32.     WILLIAM PARDUE ("PARDUE"), address is 275 Tennant Ave Suite 105, Morgan Hill, CA 95037, is an individual, US Citizen, member of the corrupt CFDE. Defendant PARDUE was my attorney in 2006-2007 on matters related to property, child support and spousal support. Although he owed a fiduciary duty to me, defendant actually conspired with opposing counsels, and other members of the cartel, to wilfully injure and defraud me. Defendant engaged in fraudulent billing, and false pretenses, concealed financial information about defendant KHERA's income and assets from me, and corruptly conspired with defendants to defraud me in property, child and spousal support, breaching CRPCs, and Business and Professional Codes. When defendant PARDUE's fraud began to be exposed, defendant forged a Substitution of Attorney and filed it with the Court without my knowledge and permission.  His corrupt actions have directly spawned over 11 years intense litigations estimated to have cost over $5m to the parties and to taxpayers, destroyed my education, my career, and have left me homeless.

33.     THORNTON DAVIDSON is at 3451 W Shaw Ave Suite 105, Fresno, CA 93711, an individual, US Citizen, employed by, engaged in, or affiliated with the CFDE. Defendant is an attorney who volunteered to represent me during my relocation related absence to NZ. Subsequently, defendant

DAVIDSON conferred with each of the opposing Counsels and was corruptly influenced by them to abandon me *without informing me* . Due to defendant DAVIDSON's such misconduct, defendant KAPETAN and Judge SIMPSON made several Judgments against me during my notice of unavailability. In order to protect the corrupt CFDE attorneys, these Judicial Officers refused to set the Judgments aside when Defendant DAVIDSON's role was disclosed to them.

## NON PARTY ENTITIES AFFILIATED WITH CFDE

34.     The following represent non parties who engaged in the affairs of the CFDE and the racketeering acts.

### Judge ELFVIN

35.     Judge Elfvin presides in Dept 6 in Santa Clara County.

36.     In May 2007, Judge Elfvin made an order on child support related issues despite the fact that Santa Clara County and his Court lacked jurisdiction on child support.

37.     In 2016, Judge Elfving unlawfully dismissed my complaint for legal malpractice against MORENO defendants, sanctioning me over $15,000. When I attempted to appeal his decision, he denied my fee waiver to prevent an appeal of his own orders, thus helping seven attorneys evade liability for legal malpractice.

38.     In 2015, Judge Elfving allowed the attorneys to schedule and hear their cross complaint for fraudulently billed $150,000 during my noticed leave of unavailability.  He then denied my motion to set aside the Judgment he had made against me during my noticed unavailability. He also denied my request for fee waiver to waive superior Court fee on appeal to prevent an appeal of his own orders, thus helping MORENO defendants fraudulently bill 150,000 when this amount was not owed to them.

39.     Judge Elfvin denied my Petition for permission to file a case for conspiracy against the defendants under CCP 1710.

### Judge ZEPEDA

40.     In 2014, pursuant to three evaluations, including but not limited to FC 3118 evaluation in my favor, a 4-day trial was scheduled for Child Custody matters.

41.     Judge Zepeda engaged with an exparte communication with defendant ZAYNER who corruptly influenced her to refuse to take the matter to trial. She adopted the role of a family law facilitator,

coerced me to give KHERA more custody in violation of evaluator's reports, and then denied my request for attorney fee – simply to protect defendant KHERA's sexual crimes from being exposed.

42.     I was denied the opportunity to seek $40,000 in attorney fee and sanctions even though I prevailed. She refused to hear my motion for sanctions, and summarily dismissed all my requests. In addition, she unlawfully sanctioned me to an amount of $1000 in retaliation – even though I had prevailed in the underlying motion.

### Judge KALAMKARIAN

43.     In 2016, Judge Kalamkarian denied my motions to compel discovery, falsely stating that I had failed to meet and confer. Judge Kalamkarian did this to protect defendant SCHREIBER from sanctions, and to help KHERA evade hundreds of thousands of dollars in child support arrears.  He has intentionally delayed hearing on child support and sanctions matter, in order to aid and abet defendants.

### Judge ALAN SIMPSON

44.     In 2014, I filed a complaint against defendant KHERA seeking declaratory and material relief. Judge Simpson allowed defendant KHERA and his attorney JODY WINTERS to schedule hearings during my noticed unavailability, and granted default orders on special motion to strike, and attorney fee, in my absence. The attorney fee motion was based on fraudulent billing from defendant's counsel.

45.     Later, Judge Simpson intentionally refused to set aside the orders to protect the attorneys from being held accountable for extrinsic and intrinsic fraud.

### Minor's Counsel - BJ FADEM

46.   BJ Fadem was appointed as a Children's attorney in 2010 by defendant ZAYNER to assist in relocation related issues that were pending before the court. She informed the Children that she would not allow relocation but would coach their father to be a better father.  She then wilfully obstructed relocation for 3 years, causing significant material and non material damage to me, and the children.

47.   Between 2010-2013, children and I repeatedly informed BJ Fadem about sexual abuse. In spite of this she ordered FC 730 evaluation, to protect defendant KHERA's interest rather than protecting children's interest.

48.   In 2013, Attorney Fadem made false representations to the Court that these the allegations of sexual abuse had never been made before, they were being raised for the first time in 2013.

## Court Reporters

49. In 2013, 2014, Susan Yakushi, a Court Reporter in Judge Zayner's Court, refused to provide transcripts for my appeal.

50. Between 2013-2016, I paid over $1,500 to various Court reporters, and Court Reporter's Board paid an additional $1,500 to these reporter's to provide transcripts on appeal. There were over 20 transcripts requested.

51. When the records were designated, only 7 transcripts seem to have been provided.

## Filing Clerks

52. Between 2006 – 2014 there were several incidents where I was denied my right to file pleadings, exhibits and other documents. Following are a few examples:

    52.1    Between 2010 – 2014, during the time of Judge ZAYNER, the Sunnyvale Filing Clerks often refused to allow me to file documents, refused to provide me access to my Courtfile.

    52.2    From October 2012-Jan 2013, Filing Clerks prevented me from filing exhibits attached to my Motion to Void. They insisted I submit them as a Courtesy Copy to the Judge. I was informed that the Judge ZAYNER had directed them so.

    52.3    A Notice of Appeal filed with the Superior Court in Jan 2013, against the orders issued by Judge Zayner, got "lost". Fortunately I had a copy, and after many months, the Sixth Appellate District accepted my "copy" of the appeal.

    52.4    For this Notice of Appeal filed in Jan 2013, the designated records have still not been filed by the Appellate Division of Superior Court.

53. The Filing Clerks were acting per directions of the CFDE Judicial Officers. The non affiliates were coerced by the CFDE Judges, while others may have been part of the CFDE enterprise and performed these acts to seek support, referrals, good reviews as well as illegal kickbacks from the Judges.

## Mental Health Professionals

54. Between 2007- 2015, several Mental Health Professions, CPS and Police Departments in Fresno, and Santa Clara were informed about sexual abuse of children by defendant KHERA.  These entities, agencies, govt departments and individuals refused to take appropriate actions, being a part of the CFDE that seeks to protect wealthy clients who can contribute to the CFDE commerce.

54.1  Sexual abuse was first reported by me to Psychologist Shelley Stokes in 2007, who advised me to send a warning letter to the father, but otherwise ignore the abuse.

54.2  Sexual abuse was reported to the School Counselors, Riverview Elementary, and Clovis North, by the children, and by myself between 2007-2011. The School Counselors refused to take actions, asking me and the children to seek a Psychologists services privately.

54.3  It was against reported to children's individual psychologists Ronald Teague in 2010, and to Dr Morrrica in 2011. Each of these mandated reporters failed to take action, and told the children to "let it be in the past".

54.4  It was reported to Evaluator Dr Kline by me in 2011-2013. Dr Kline failed to take action, and failed to seek out facts from the children, effectively silencing myself and the children, and brushing the matter under the carpet.

54.5  Sexual Abuse was reported to defendant ZAYNER, and Minor's Counsel BJFadem. Both humiliated, threatened, harasses, and vilified me with the clear intention of silencing me between 2010 – 2014.

54.6  It was reported to CPS again by me sometime between 2010-2013.

54.7  Each of these mental health professional, Minor's Counsel, Judge ZAYNER, was a mandated reporter, and was *mandated by law,* to report any admission of sexual abuse. Each of them was prohibited from investigating abuse on their own, such investigation being a CPS responsibility.  Each defendant attempted to suppress the information, called the children liars, and threatened and harassed me. Each knew that the allegations had been raised repeatedly, but each made false statements to the Court that I was raising these allegations for the first time during the custody trial.

55.   Each and every Defendant acted in concert with one another to violate RICO through a pattern of racketeering activity because of personal, financial gain in the form of kickbacks, referrals, support, etc as alleged. These concerted efforts resulted in significant harm to me and my children.

<u>Police Departments</u>

56.    I filed a complaint with Santa Clara Police Department in 2013. Police interviewed the children. Since there were 2 children, and they were each other's witness, defendant KHERA"s crime was well established. However, the police took no action.

57.   The matter was reported to Fresno Police, who also took no action and referred me to Santa Clara Police Department.

58. The matter of unpaid child support was reported to the Fresno District Attorney's office. They took no action, and referred me back to FC-DCSS. FC-DCSS refused to enforce the Child Support orders.

### Attorney General's Office

59. Attorney Generals office represented FC-DCSS in the Appeal F 070938 that was filed against defendant GREEN's order denying my Motion for enforcement of Court Orders, on Dec 15, 2014. Instead of helping the Custodial Parent secure child support, Attorney General's Office advocated for a deadbeat dad, and argued to help him evade child support payments.

60. The affiliation springs from the fact that Defendant MORENO and Defendant CONSTANCE SMITH, had been my attorneys for over 8 years, and had reached a secret and covert agreement with defendants B&B defendants and SCHREIBER.

61. Defendant MORENO is a former Deputy District Attorney,  defendant SMITH is a deputy District Attorney, and defendant MORENO's son, MICHEAL MORENO currently works for the District Attorney's office. MICHEAL MORENO is currently under investigation by FBI for witness tampering, in a case where his father, Defendant MORENO represented a victim of the 49ers.

62. In order to assist these affiliates, Attorney Deguzman, from the Attorney General's office, argued for the defendant KHERA's right to evade child support and to have it waived, instead of arguing for the children's right to child support, perfected an Appeal with the 5th Appellate District.

63. When Attorney Deguzman made these arguments before the Appellate Court, she was very aware of the federal law prohibiting retrospective waiver of child support, she was also aware of defendant MORENO and defendant SMITH's association with the Attorney General's office. Arguing for the children's right to child support would have incriminated MORENO defendants, therefore, in order to protect MORENO defendants – with their strong connections to the District Attorney's office - Ms Deguzman spent 3 years advocating for a sex offender, and a deadbeat dad.

64. Between 2003 – 2018, Attorney General's office, and District Attorney has refused to provide enforcement related services to this disadvantaged single mother.

65. Jenneve Deguzman, attorney from ATTORNEY GENERAL's Office,  made several false and misleading representations of facts, and of law, presented partial documentation before the Appellate Court, and generally sabotaged my appeal against the Trial Court's decision to deny my motion for enforcement of *two* Child Support Orders, my motion for modification of child support, and my motion for temporary support pursuant to evaluation on sexual abuse allegations against defendant KHERA. Each of these motions was denied with prejudice.

66. Attorney General's Office argued that Court had the authority to waive child support retrospectively, and that FC-DCSS had the authority for partial enforcement of child support orders. At the time she made these arguments, Counsel was well aware that these actions represent federal and state law violations.

67. Attorney General's office were ostensibly representing FC-DCSS, however, in fact they represented the wealthy fathers' right to evade child support, and the CFDE member's interests in the case. They perfected the appeal in the best interest of the alleged illegal and corrupt cartel, not in the children's best interests.

Attorney JODY WINTERS, JENNIFER PANICKER, LLOYD WINTERS LAWFIRM, Attorney JAMES S BURTON, COOPER & BURTON LAWFIRM, JOHN MARSHALL/GARY HUNT, MCCORMICK BARSTOW LAWFIRM, SUSAN NAGLE, BOLD, POLISHNER, MADDOW, NELSON & JUDSON, ARTHUR HARRIS, KRISTI IVERSON, JAMES MURPHY, MURPHY, PEARSON, BRADLEY, FEENY.

68. These attorneys represent KHERA, B&B Defendants, SCHEIBER, ZAYNER, MORENO Defendants respectively in the civil suit 15 CECG 00351, currently pending in Fresno. Between Jan 2015, and May 2015, I had informed each defendant about my unavailability between June 2015 and September 2015, inclusive, and requested that they not file any documents in my absence. Defendants did not object to my request. As soon as I left for NZ, defendants, each one of them, filed motions, did not serve me, and secured default orders against me based on such extrinsic fraud. Defendants DAVIDSON and KAPETAN, and Judge SIMPSON conspired and aided and abetted these defendants in the commission of such extrinsic fraud.

## JURISDICTION & VENUE

69. Federal Court has Diversity Jurisdiction under 18 USC 1964[1] and 46 USC 1300 et seq. There is diversity of citizenship, as I reside in NZ, and defendants all reside in CA. Court has supplemental jurisdiction. The allegations constitute the matter of Interstate Commerce. All claims are related to and are ancillary to the RICO claim. The amount in controversy exceeds $75,000. The case involves federal questions related to Title 15, 18, 26, 28, 42 and 46.

70. Venue is proper pursuant to 28 USC 1391, and 18 USC 1965. The events giving rise to this RICO complaint happened in this district of this state and each defendant transacts business in CA.

---

[1] Also 28 USC § 1332, 1343, 1355, 1367

71.  I have the standing and right to sue these defendants as I suffered injuries by reason of defendants'
     actions under 18 USC 1962, my complaint alleges damages in excess of $75,000. My injuries are
     proximately related to the illegal conduct of each and every Defendant.

72.  Action is timely as I became aware of the conspiracy in early 2015 or thereabouts. The conspiracy,
     racketeering acts and fraud is ongoing.

## PART II – FACTUAL ALLEGATIONS

73.  Defendant KHERA and I were married in 1986 and lived in India, Middle East, Australia and arrived
     in Santa Clara County in 1998. We  have 3 children, Urvashe (27yo), Kabir (19 yo), Utsav (18 yo). We
     separated in June 2003, I moved to Fresno with 2 children, and had an auto accident in July 2003 on
     I152. I was charged with a felony, pleaded guilty, and was barred from working as a social worker.

### Initial  Orders (2003)

74.  In September 2003, B&B defendants filed dissolution proceedings in Santa Clara County on behalf of
     defendant KHERA. I filed a request for child and spousal support.

75.  An ATRO Order prohibiting KHERA from selling, buying, or transferring assets was made and served
     on him/his attorneys.

76.  Between Dec, 2003 – June 2004, Santa Clara Court made Custody and Support Orders. Defendant
     KHERA was ordered to pay base child support and spousal support. He was ordered to declare all of
     his additional income and pay support on all of his additional income. Defendant KHERA was also
     ordered to share childcare, and medical expenses. A custody order gave him  22% custody of the boys.

77.  In 2005, FC-DCSS registered the child support order, and thereafter, jurisdiction on child support
     passed to FC-DCSS.

78.  In 2006, parties retained Judge James Cox in Fresno County to reach a quick settlement. Judge Cox
     filed his Additional Orders on Jan 31, 2006.

### Contempt Of Court - Violation of Court Orders

79.  Between 2003 – 2007, Defendants KHERA et al concealed the sale of over $1m in community stock
     options etc in violation of the ATRO order, and KHERA's income for child and spousal support
     purposes, as defendant had been ordered to disclose via Court Order of 2003. Defendants also violated
     Judge Cox's order of 2006.

80. Defendant KHERA transferred approx. $1million, obtained from the proceed of the sale of community assets, to his girlfriend defendant DEVANI's account. At the time defendant DEVANI received these funds, she was aware that these funds were stolen from the community property.

81. Defendant DEVANI agreed to, and did assist defendant KHERA in investing these funds by purchasing property at  _4293 Verdigris Circle San Jose Ca 95134_ in 2004 for $600,000.

82. The property was rented out and returned a rental investment that was funnelled to defendant KHERA in cash or bank transfers that was not reflected as his income on his tax statements.  Therefore the Scheme and Artifice remained undetected until 2018, enabling defendant KHERA to defraud me. At the very least, he was required to pay child and spousal support on this income.

83. Defendant DEVANI thus agreed to assist defendant KHERA in concealing and stealing the community property, and investing the assets on his behalf. Alternately, she was an accomplice that helped him evade his child and spousal support obligations.  2006, defendant DEVANI married defendant KHERA. At the time, she sold her own house in Cupertino, and returned defendant KHERA's $600,000 that she had invested on his behalf, via a check issued in defendant KHERA's name.

84. With these funds, all stolen from community property, Defendant KHERA purchased another house at _21947 Oakleaf Ct, Cupertino 95014_, in Cupertino for $1.8 million using $600,000 in community funds, and the $600,000 of the community funds that defendant DEVANI returned to him.

85. The fraud was detected by me in 2017 and led to this lawsuit.

86. Immediately, upon filing of this lawsuit, defendant KHERA sold the Cupertino residence for a sum of $3.3+ million on April 2018 in order to evade payment of his debts to me.

## Bribery Of Witnesses

87. In 2007, Defendant bribed or otherwise corruptly influenced CPA SALLY WHITE to make false representations, reports, and to testify falsely about defendant KHERAs income and assets.

88. Defendant WHITE claimed that defendant KHERA's income was $3,680 in 2003, and that his child support obligations were $2,800 per month. FC-DCSS assessed defendant KHERA's child support obligation at $8,180 per month in 2008.  The tax returns and other supporting documents obtained later showed an income of over $500,000 per annum between 1998 – 2003. FC-DCSS assessed an income of $65,000 and Judge ALLEN HILL declared his income at almost $600,000 in 2008.

89. Defendant WHITE also concealed defendant KHERA's assets in general, and those assets that he had been selling covertly, in particular. Defendant had sold several properties in the years leading to the

divorce and significant community stocks etc. Total income generated from fraudulent conveyancing was over $1million. Defendant WHITE claimed to have traced the accounts, and she wilfully concealed these amounts and transfers.

90. In 2007, Defendants also bribed or otherwise corruptly influenced Vocational Assessor SCHUSTER to make false representations and reports, and to testify falsely about my earning potential as a Social Worker.

91. Defendant SCHUSTER reported that I could earn $90,000 per annum as a Social Worker, when actually I had been barred from working as a Social Worker by my felony conviction, and Social workers anyway do not earn $90,000 per annum.

## Coercion and Intimidation In Settlement Conference of 2007

92. A settlement conference was scheduled for May 16, 2007, leading to trial on 23, 2007.

93. During the settlement conference, KHERA Defendants, B&B Defendants, PARDUE, DAVILA, and an unnamed pro tem Judge conspired to threaten, intimidate and coerce me into accepting an absolutely inequitable settlement. For three days, till May 19, I kept refusing to settle.

94. On the third day, April 19, 2007, defendant DAVILA took PARDUE and B&B defendants to his chambers. After the CFDE attorneys returned, I was informed by PARDUE that defendant DAVILA had informed him that if I did not agree, I would be sanctioned $180,000 in attorney fee, he himself would be sanctioned, and he believed that defendant DAVILA would retaliate against his other clients as well. Defendant PARDUE stated that my guideline support would be in excess of $8000 by his calculations, and together with step down spousal support, would be enough to meet my expenses till I became self sufficient.

95. Defendant PARDUE handwrote a statement which said that I should accept the offer, and that if I failed to accept this offer, he was going to resign with immediate effect.

96. I was thus coerced by the defendants to capitulate under threat of attorney withdrawal less than a week before the trial, and under threat of sanctions of $180,000.

97. PARDUE intentionally concealed from me the fact that defendant had sold community assets, and had had substantial personal income on which child and spousal support was outstanding.

## Fraudulent Judgments Of 2008

98. Between May 16 and 19, 2007 or thereabouts, for THREE (3) days defendants KHERA, PARDUE, DAVILA, B&B Defendants and an unnamed pro-tem Judge threatened harassed, tormented, and

intimidated me, coercing me to agree to the unlawful offer that was put forth by the defendants KHERA et al.

99. Defendant DAVILA took the attorneys into chambers. Upon returning, defendant PARDUE informed me that if PARDUE failed to secure a stipulation from me, I would be sanctioned $180,000, and PARDUE would be sanctioned as well.

100. Defendant PARDUE gave me a written threat, stating that if I did not stipulate to the offer being presented, he was going to resign and I must proceed to trial on my own. I was absolutely naïve and ignorant of laws, and procedures at the time, having just arrived in US in 1998, and never having had any interaction with legal industry. PARDUE *intended* for me to be scared and capitulate. I did capitulate and agreed to all the conditions under duress. The agreement was read at the Court on May 19, 2007, or thereabouts.

101. Between Feb 25, 2008 and Feb 27, 2008, defendant DAVILA rubber stamped three orders that are hereby referred to as the Judgments of 2008, related to property, child support, and spousal support. The Judgments were not based on what the parties had agreed on May 2007. At the time defendant DAVILA made this Judgment, all the defendants present and involved, were aware that Defendants KHERA and B&B defendants had engaged in extensive fraud, that Santa Clara County did not have jurisdiction on child support.

  101.1 The Judgments appeared to divide all properties, but actually gave to KHERA, complete control of **all** community property, bank and brokerage accounts. Over 80% of the property was awarded to KHERA directly, and the rest was placed under his control.

  101.2 Defendants even conspired to forge documents to illegally transfer real estate to defendant KHERA. The Judgment awards me fictitious property that does not exist.

  101.3 The $550,000 proceeds from the sale of the residential house in US, which sold for $1.28m, were similarly transferred to defendant KHERA under fraudulent accounting. I was granted only $100,000 from this equity.

  101.4 The proceeds from the sale of TWO houses in Sydney Australia, that defendant had sold in anticipation of the divorce, were similarly fraudulently conveyed.

  101.5 401K accounts, Superannuation accounts containing hundreds of thousands of dollars were retained by KHERA.

  101.6 All my jewellery, worth approx. $200,000 at the time, was retained by KHERA.

  101.7 Even the control of all my bank and brokerage accounts  was retained by KHERA. Till date, I have not been able to gain access to any of the accounts and have suffered substantial losses

in the equities that were in the brokerage accounts, including but not limited to opportunity losses, margin interests etc.

101.8 Defendant DAVILA, rubber stamped an order that declared our 20 year daughter, studying at UC Irvine at the time, a dependant for child support purposes, even though she had emancipated in 2006.

101.9 Defendant DAVILA rubber stamped an order that granted defendant KHERA 50% custody of the children even though defendant KHERA had been awarded 22% by the custody evaluator.

101.10   Defendant DAVILA rubber stamped an order waiving all child and spousal support arrearages retrospectively, without an inquiry on the nature, and amount of arrearages that had accrued. Waiver of child support arrearages is prohibited by federal law.

101.11   Defendant DAVILA rubber stamped an order that stated that I had voluntarily agreed to wave all past due support, and that such an agreement was in the best interest of the children. None of this was true. Judge DAVILA had fabricated these statements that were on his Judgment.

101.12    On Feb 27, 2008, defendant DAVILA rubber stamped  2 more orders. He rubber stamped an order prepared by B&B Defendants which ordered defendant KHERA to pay only $2,800 in child support. At the time defendant made this order, he was aware that FC-DCSS had assessed $8,180 in defendant KHERA's child support obligations.

101.13   At the time defendant DAVILA rubber stamped an order made by B&B Defendants on step down arrangement of spousal support, he was aware that defendant KHERA had made false representations of his lifestyle and income.

101.14   Defendant DAVILA rubber stamped  an order prepared by B&B Defendants sanctioning me $17,000 in attorney fee for refusing to stipulate to agree to the unconscionable, and fraudulent settlement offer of defendant KHERA. Defendant DAVILA failed to provide me with the mandatory notice that is required under FC 271 sanctions.

101.15   Defendant ELFVIN rubber stamped one more order on May 23, 2007, that ordered me to pay $600 per month to defendant KHERA in transportation costs for children. At the time Judge ELFVIN made this order, he had no jurisdiction to make child support orders.

102. On matter of spousal support, over my protests, defendant DAVILA conspired to rubber stamp a step down arrangement, granting me $2,600, $2,100, $1,500 in spousal support, ending after 3 years – despite the fact that our marital standard of living had been of over $50,000 per month and we had been married for 18 years, the order was based on fraud, fraudulent representation of my earning

potential, and my contribution to marriage in terms of assets and responsibilities had been significantly more than defendant KHERA's contribution had been.

103.   At the time Defendant DAVILA rubber stamped these orders, defendants, each one of them, was *aware* of this fraud, fraudulent representation, fraud upon the Court, but culpably agreed to participate in the fraud either thru their silence, or by their support. Defendant DAVILA rubber stamped all the defendants' proposed orders over my protests between Feb 25, and 27, in an attempt to oppress and suppress me.

104.   Defendant DAVILA made these three orders to help CFDE defendants defraud me and my children and to protect the interests of the CFDE. At the time defendant DAVILA rubber stamped these orders, defendant DAVILA was aware :

104.1   that his Court did not have jurisdiction to make an order on child support.

104.2  that waiver of child support arrears was prohibited by federal and state laws.

104.3  that defendant KHERA's income was far in excess of $129,000.

104.4  that our daughter was over 20 years old and therefore not a dependant for child support purposes, and that defendant had only 22%, not 50% custody of the children.

104.5  that parties had agreed to a guideline support in May 2007.

104.6  that FC-DCSS had assessed KHERA's income at $65,000 per month, his child support obligations at $8,180 per month, and arrears payable at $2047 per month until exhausted.

104.7  that Santa clara County has no jurisdiction on child support, and that FC-DCSS had asserted jurisdiction via case # 05 CEFS 02946, opened in 2005.

104.8  that he was required to give me Notice, and that sanction order of $17,000 under FC 271 could not be made without appropriate notice to me.

104.9  aware that there was an underlying order of 2006, and 2003, that defendant had blatantly violated.

105.   In orders to aid and abet the defendants in performing such an extensive fraud, Defendant DAVILA over-rode all just and appropriate orders, that had been made before him after careful consideration.

106. On the matter of property, defendant DAVILA conspired to rubber stamp an order that he was aware was based on extensive fraud, and was not based on the agreement that the parties had recited on May 19th in the Court, and that it illegally transferred to me all liabilities and loans that parties had jointly held without actually transferring *any single asset* to me, except my house in Fresno and my car, both of which I had purchased after separation.

107. In order to prevent me from obtaining evidence of fraud between 2003 - 2007, defendants DAVILA ordered all the bank, brokerage accounts which were awarded to me, and which contained the evidence of such fraud, to be dissolved or closed. As a consequence of the fraudulent Judgment of 2008, the money in those accounts has remained inaccessible till date, the securities within those brokerage account have remained inaccessible. The margin loans have multiplied, the "short" positions have caused significant losses of over $170,000 and have restricted the upside of the hedged securities.

108. Judge DAVILA's Judgments of 2008 were not based on agreement that the parties had entered into, nor any federal or state laws. They were simply arbitrary orders that defendant DAVILA and ELFVIN created at will, with reckless disregard for federal, state, or constitutional laws, with total disregard for justice, or for rules of the court. Each of his acts was a violation of Judicial Ethics, Judicial Canons, a conspiracy to deprived me and my children of our rights – orders made for his own benefit, and the benefit of the CFDE.  Defendant DAVILA's actions are criminal under RICO 1962 (c), (d);  under Penal Code 96.5, and under 18 USC 2, 3, 4, 2383.

## My Efforts to Set Aside The Judgments of 2008

109. In Aug 2008, I retained MORENO Defendants to represent me in setting aside the fraudulent Judgment of 2008, and to file a motion for continuation of Spousal Support.

110. MORENO defendants advised me to retain their close friend MICHAEL MILLEN as counsel for my legal malpractice case against PARDUE. At the time MORENO Defendants recommended MILLEN, they were aware that MILLEN had zero experience in Legal Malpractice cases.

111. Both MILLEN and MORENO made fraudulent representations to me about having won several Legal Malpractice cases, which representations were false.

112. In Feb 20, 2009, MORENO defendants filed a motion to Set Aside Judgment of 2008.

113. Defendants had no intention to win the case. They had reached an agreement with the B&B Defendants to simply delay resolution and continue billing. The defendants simply pretended to litigate, with an explicit intention to extort significant amount of attorney fee. Alternately, the lawfirm routinely agrees to represent clients knowing that there is a conflict of interest which will prevent them from faithfully and zealously representing their clients.

114. MORENO Defendants pretended to engage in extensive discovery process costing over $200,000 over an 8 year period but failed to set a trial date for over 8 years.

115. They _refused_ to use the evidence collected against B&B Defendants, defendants KHERA, DEVANI, DAVILA, PARDUE, WHITE & SCHUSTER. Instead, to protect B&B Defendants and defendant

KHERA, they made *false representations of facts* and inadequate representations of law before the Trial Court on both these motions, *intentionally* showing me in bad light.

116. When questioned, I was told by these lawyers that their lawfirm "did not get other attorneys in trouble" I was further told that HECTOR MORENO's religious values did not allow him to have a father sanctioned. They said they would seek an equitable remedy only.

117. In 2010, and in 2012, puzzled by their refusal to file evidence, when I questioned them, I was informed that they would not challenge defendant DAVILA's findings directly, as defendant DAVILA, (and later defendant ZAYNER) would sanction me, would sanction them, and would also retaliate against them in their other cases. They said the Judges don't like to be proved wrong on a case of fraud. Therefore, defendants had not filed any evidentiary documents, but had litigated the matter for 8 years at an expense of over 400,000 to me.

118. MORENO Defendants, defendants ZAYNER, B&B Defendants and KHERA thus *colluded* to defraud me.

119. In May 2012, aghast at their refusal to file any evidence, I personally collected exhibits that were in my possession, and filed this evidence.

120. In June 2012, defendant ZAYNER denied my motion to set aside on frivolous grounds, without really perusing the evidence that I had presented.

121. In September 2012, I filed a motion to void the Judgment of 2008.

122. In an effort to obstruct me, Defendant ZAYNER instructed the filing clerk to refuse my filings. The filing clerks informed me that they would not accept any exhibits, that I should submit the exhibits to the Court as Courtesy copies.

123. I submitted administrative complaints for having been refused permission to file documents. I also filed declarations to this effect. However, being a pro per, I did not know that this was an effort to disadvantage me during the appeal process. Later I submitted the documents as a courtesy copy.

124. In November 2012, defendant ZAYNER denied my motion to void the Judgment of 2008, and returned the box containing the exhibits. The seal on the box had not been opened. Defendant ZAYNER had not bothered to read my complaint and had rubber stamped B&B defendants' orders like his predecessor did.

125. A Notice of Appeal (NOA) was filed on Jan 10 at the superior Court.

126. The Superior Court "lost" the notice of appeal. Additional complaints were filed, and the Sixth Appellate District agreed to accept the copy of NOA presented by me.

127. Despite 5 years, since the NOA was filed, the records have not been designated by the Appellate Division of the Superior Court.

## My Efforts to Seek Continuation of Support

128. In Feb 2009, MORENO defendants also filed a motion for continuation of spousal support.

129. Defendants had no intention to honesty represent me in the process. They filed the motion simply to extract attorney fee from me. Alternately, the lawfirm routinely agrees to represent clients knowing that there is a conflict of interest which will prevent them from faithfully and zealously representing their clients.

130. MORENO Defendants pretended to engage in extensive discovery process costing over $200,000 over an 8 year period. However, they *refused* to use the evidence collected against B&B Defendants, defendants KHERA, DEVANI, DAVILA, PARDUE, WHITE & SCHUSTER.

131. To protect the defendants, they made *false representations of facts* and inadequate representations of law before the Trial Court on both these motions.

132. In their pleading, MORENO Defendants claimed I was enrolled in a full time PhD program and could only work 26 hours per week. This was a blatant lie. At the time defendants made these representations, they were aware that I was enrolled in a PhD program in Santa Barbara which required my presence only one weekend a month, and that I was working 3 jobs, which required me to work between 10-15 hours per week. Defendants refused to change these representations on their pleadings and filed the pleading over my protest.

133. I was told by these lawyers that they would not do anything to "did not get other attorneys in trouble."

134. I was further told that HECTOR MORENO's religious values did not allow him to have a father sanctioned. In 2010, and in 2012, puzzled by their refusal to file evidence, I was informed that they would not challenge defendant DAVILA's findings directly, as defendant DAVILA, (and later defendant ZAYNER) would sanction me, would sanction them, and would also retaliate against them in their other cases.

135. Defendant DAVILA denied my meritorious motion for continuation of spousal support.

136. An appeal was filed in 6DCA against defendant DAVILA's order denying continuation of spousal support. B&B Defendants retained defendant ELLIS. MORENO Defendants retained their friends T&T Defendants.

137. In 2010, I was formally informed by Department of Social Services (DSS) that I was barred from working as a Social Worker. I informed MORENO Defendants, B&B Defendants, KHERA, T&T

Defendants, MILLEN,  SCHREIBER, requesting that the Sixth Appellate Court be informed of this order from DSS. I also requested that the matter be raised in Fresno, as well as the Santa Clara Superior Court.

138. MORENO Defendants, T&T Defendants, MILLEN, suppressed this information to protect the opposing counsels from being sanctioned.

139. Each defendant intentionally allowed defendant KHERA, B&B Defendants, and SCHREIBER to continue with their misrepresentations in Fresno Trial, Santa Clara Courts, and in the Sixth Appellate District.

140. MORENO defendants *intentionally* made my cases before the Court weak because they did not wish their affiliates – B&B Defendants, defendants SCHREIBER, DAVILA, ZAYNER and others to be exposed or held accountable.

141. Defendant attorneys wilfully injured me to gain favors from defendant DAVILA and ZAYNER. Defendants DAVILA and ZAYNER in turn rubber stamped orders that were unfair, inequitable, and clearly meant to defraud me.

142. Defendants intended to deprive me of my rights to my property, due process, trial, and justice – simply to reduce their workload and to protect the interests of these corrupt CFDE members.

143. The decision on appeal *Khera v Sameer (2012)* blamed MORENO defendants, and T&T defendants for their failures to present appropriate evidence, and to make appropriate, persuasive arguments. The decision on appeal was based on fraud, fraudulent representation, and fraud upon the Court by defendant KHERA, B&B Defendants, ELLIS, MORENO Defendants and T&T Defendants.

## My Efforts to Void Judgment of 2008 for Fraud, and Lack of Jurisdiction

144. FC-DCSS acquired jurisdiction on child support in 2005. Thereafter, no court was authorised to make an order on child support, by way of Family Code Section 5601 (1) and (e ). Further, retrospective waiver of child support is prophibited by federal law [42 USC 666(a)(9)(c )]. Therefore, defendant DAVILA's Judgements of 2008 were void as a matter of law.

145. In Santa Clara County, Defendant ZAYNER succeeded defendant DAVILA between 2010 – 2014 in the Family Court, Dept 81 of Santa Clara County.

146.  In 2012 – 2013, I filed a motion to void the Judgments of 2008. Defendant ZAYNER denied my motion to void these voidable judgments, thus protecting the interests of CFDE members and wilfully injuring me in the process.

## Child Custody & Relocation

### Sexual Abuse of Children, 2003 – 2007

147. In late 2006, early 2007, the children began showing signs of sexual abuse. A case was filed with CPS in 2006/2007. For the following 6-7 years, I was forced to divert all my energies, time and resources towards their healing.  Defendants conspired to help defendant KHERA evade all payment for their treatment.

148. Between 2003 – 2014, defendants KHERA and his attorneys culpably used threats, harassment, intimidation, stalking, trespass to prevent me and my children from testifying on matters related to sexual abuse. Defendant also recruited his attorneys, family, friends, generally stalking, trespassing, intimidating and even threatening me with murder. Fresno Police took in several of these complaints, but failed to prosecute. Judicial Officers refused to provide restraining orders against a wealthy, privileged perpetrator.

149. A complaint was filed at State Bar of California, and in her response, defendant SCHREIBER admitted to having committed acts of violence against me, but she said that in committing these acts, she was not representing KHERA - she had merely performed these [illegal] acts as his "friend". Defendant even turned up at my workplace and caused problems there, as a consequence of which I was forced to resign from that job.

150. KHERA caused disruptions at children's daycare centers - the children had to change 5 centers over a period of 6 years. KHERA terrorized the babysitters who refused to work for on Fridays, when KHERA was expected to pick up the children. My family refused to babysit on Fridays. The threats continue till date.

151. My younger son spent 24 hours in police custody in LAX in 2016, because defendant filed false police reports accusing me of child abduction.

## Child Custody

152. Parties had 3 minor children in 2003, Urvashe (DOB 3/23/1989), Kabir (7/21/1998); Utsav (11/3/1999). Defendant was granted 22% custody of the children in 2004.  Urvashe lived with KHERA, but emancipated in 2006. In 2008, Defendant DAVILA rubber stamped an order declaring the 20 year old a minor for child support purposes.

153. In 2010, in order to evade payment of Child Support, defendant KHERA voluntarily resigned from his job at CISCO Systems where he earned over $800,000 per annum, and opened a series of cash based businesses, refusing to disclose his earnings from these businesses. His total child support

obligations were reduced to ¼ of what the children were entitled to. Voluntarily reducing one's earning capacity, to evade child support, is prohibited by law.

154. To be able to take care of the children financially, I secured a financial grant to open a residential treatment facility for people suffering from psychosis in India, and sought permission from Santa Clara Court to relocate to India with the children. Defendant KHERA stated at the very beginning that he had no objection to my relocation.

155. To generate income for the CFDE, Defendants ZAYNER, BJ FADEM, B&B Defendants, KHERA frivolously delayed resolution until the financial aid I had been awarded had expired, and I could not relocate to India. At that time, defendant KHERA accepted the recommendations of the evaluator. The cartel had opposed my departure only with the intent of sabotaging my career, not with the intention of holding the children back in US.

156. In March 2013, pursuant to three custody evaluations, including an FC 3118 evaluation, Santa Clara Court awarded me sole legal and physical custody of the children. A trial date was set for Sept 9, 2014 in Dept 6, with Judge ZEPEDA. Defendants had accepted the recommendations of the evaluator, the trial was for sanctions and attorney fee award.

157. Judge ZEPEDA, admitting that defendant ZAYNER held exparte communications with her and influenced her not to take the matter for trial, and to deny my attorney fee award. I had prevailed, but was denied a trial on attorney fee motion and sanctions. I was sanctioned instead.

158. I had spent over $40,000 on custody, had prevailed, had been harmed by the malicious delay, and had been subjected to illegal facilitation efforts by a trial judge. I appealed in Nov 2014. After 3 ½ years, the records have yet to be designated.

159. In December 2014, I set the date of travel to NZ, and purchased the tickets to New Zealand for myself and the children, and KHERA was informed.

160. I purchased air tickets for travel to NZ in Jan 2015. I had booked extra baggage, hotels in LAX, Auckland, transit stays, and temporary rental in Christchurch. These were non refundable expenses.

161. I was scheduled to join a PhD program on July 1, 2015, my older son was required to sit for Entrance Exam for Medical School in early July (UMAT, equivalent of MCAT in US) and my younger son had to start High School (grade 11) in July 2015. These school and university admissions were contingent on our timely departure from US. I could not have possibly stayed back to attend the hearing, great harm to me and my children would have resulted. Defendant and his counsel were aware of this, and hence intentionally, maliciously waited for 8 months to file this motion so it would be heard in my absence.

162. In early June I filed an exparte seeking continuation of all motions, or stay on the case till September 2015 to allow for relocation. Defendant KAPETAN maliciously denied my exparte motion. She *intended* to dismiss my complaint in my absence.

163. On June 14, I met with Attorney THORNTON DAVIDSON and he agreed to represent me on all my cases during my absence.

164. On June 12, I moved out of my home, on June 16, 2015, I moved to LA and on June 29, 2015, I and my children left for Auckland, New Zealand.

165. In August, I came to know that attorney THORNTON DAVIDSON had abandoned me, failing to file the substitution of attorney forms and failing to tell me that he had decided against representing me.

166. Each defendant had waited till was unavailable, and in my absence, had filed a series of motions, that had been granted by defendant KAPETAN, unopposed. Defendant KAPETAN had sanctioned me over $60,000 during my absence. Defendants claimed were based on fraud.

167. In November, 2015, I filed a motion to set aside these Judgments against me. Judge Kapetan rubber stamped yet another order made by the defendants, denying my motion, and in fact ordered more attorney fee as sanctions.

168. Each of these had to be appealed. Because I did not have the ability to efile at the time, I was unable to pursue 2 appeals. Three appeals arose from these illegal orders F071888, F 074544, and F03777.

## Other Proceedings In Santa Clara County

169. Between 2010 – 2014, defendant ZAYNER culpably, unlawfully refused to allow any of my meritorious motions seeking appropriate support, or set aside, to proceed to trial denying me due process.

170. With an intention to injure me, he denied my legitimate motion to transfer the Motion for Modification of Child Support from Santa Clara County to FC-DCSS even though he was made aware that FC-DCSS has jurisdiction on child support under FC 5601(a) and (e ) and removal of a motion for modification of support was authorised by 42 USC 666.

171. Between 2010 – 2014, defendant ZAYNER culpably sabotaged my motions for relief by denying three successive and desperate requests for pendent lite awards filed under FC 2030 and three oral requests for the award under FC 2032, violating state laws that mandate pendent lite award.

172. I attempted to file these by myself, but Defendant ZAYNER, to intentionally harm me in my Appeal, specifically directed filing Clerks refuse to file the exhibits that accompanied my pleadings.

An administrative complaint was filed. After denying me access to pendent lite award, and after directing the filing clerks to refuse accepting my filings, he then denied several of my motions citing lack of legal sufficiency, and evidence etc.

173. His refusal to grant me a pendent lite award, affected my ability to secure a proper outcome in these motions. Additionally,  it forced me to travel from Fresno to Santa Clara County at least 4-10 times each month, causing significant damage to my career, severe emotional distress, and severe physical and financial distress.

174. In 2013, 2014, defendant ZAYNER corruptly influenced the Court Reporters Yakushi and 2 others. Under defendant ZAYNER's influence, Yakushi and 2 others refused to provide transcripts for my appeal.

## Child Support Litigation In Fresno (2007 till date) (Child Support)

175. California receives federal and state grants for this purpose. LCSA's are recipient of these grants and are mandated to provide services to Title IVD clients.

176. CITY OF FRESNO (COF)  administers the local LCSA program. The stated goal of the FC-DCSS is to provide enforcement, modification and related services to the Title IVD clients. COF and FC-DCSS are recipients of state and federal funding to run the Title IVD program. The department operates at a FY 2017-18 budget of $22,910,284, of which Salaries and Benefits budget is $19,596,885, receiving State funding allocations: Administrative ($21,582,116) and Electronic Data Processing ($1,197,928).

177. I have been a title IVD client of FC-DCSS since 2005, and am entitled to complete enforcement services by FC-DCSS. I pay $25 per annum to receive such services from FC-DCSS. FC-DCSS lacks any statutory authority to deny any of its services to any family that seeks its services.

178. In 2018, I came to know of FC-DCSS's unique Retirement Benefit Plan under the guise of which plan, the FC-DCSS operates as a pyramid scheme.

178.1 According to this plan, anyone who has worked in at FC-DCSS for 25 years, can volunteer to retire at full salary. If this person is drawing $7000 per month on the last day of their 25 year tenure, they can quit working, and still be entitled to receive $7000 per month in income for the rest of their lives. This *unique* plan, while seemingly innocuous, is like a pyramid scheme, acting like a leaky faucet that drains all funds from FC-DCSS either directly, or indirectly, leaving very little available for enforcement services.

178.2 To start with, it provides incentives to "stay" in a job, not to "work" in that job. An employee has no incentive to work after 25 years. Senior management, closer to retirement age, has no

incentive to plug this leak as their own lifelong retirement benefits would be threatened. The collusion of senior management in continuing to pour funds into Employee Retirement Plan at the expense of services for Title IVD single mothers, is obvious and represents a racketeering act. FC-DCSS's organizational structure is much like an illegal pyramid scheme, and in conflict with the very reason of its existence – which is to provide services to Title IVD mothers. Budget deficit is used as a reason to reduce/limit services to the Title IVD Mothers – the management never allows budget deficit to impact the employee retirement plans. This quid pro arrangement between recently retired top management, current top management, and soon-to-be-top-management ensures that the top management is always guaranteed uninterrupted pension benefits equal to their last paycheque, while Title IVD single mothers, struggling to survive, are denied services, and their due rights.

178.3 Because the Retirement Plan provides incentive to simply "stay" in a job, not to work, FC-DCSS defendants – much like CFDE Judges - collude with the CFDE attorneys to reduce their own workload. Instead of providing services to Title IVD clients, they refer some Title IVD clients to CFDE attorneys. Since the CFDE attorney helps them reduce their workload, the CFDE FC-DCSS defendants then then collude with CFDE attorneys in defrauding these Title IVD mothers.

179. In this instance, FC-DCSS acquired jurisdiction on child support in April 2005. However, it maliciously refused to enforce the complete child support orders, citing inability to do so, without providing any reasonable or acceptable basis of their stated "inability." FC-DCSS has failed to show inability to pay into the Retirement Benefit Plans, hence their failure to provide mandated services to Title IVD Mothers cannot arise of budgetary constraints. FC-DCSS's obligation towards their retired employees cannot and must not supercede their obligations towards the Title IVD mothers.

180. In Jan 4, 2008, FC-DCSS filed a motion for modification of child support, assessing defendant KHERA's income to be $65,000 per month, and assessing his child support obligations to be $81,80 per month. Defendants identified that defendant KHERA owed arrears, and computed an unspecified amount, seeking payment of $2047 per month, payable in arrears until arrears were fully exhausted.

181. Defendant KHERA retained a CFDE attorney to represent him. Although Defendant SCHREIBER ostensibly was hired to represent KHERA in matters related to ongoing/future support, the real, covert agreement was to helping him violate existing support orders of 2003, and to help him evade payment of Court ordered child support arrearages.

182. To achieve this, defendants KHERA et al engaged in meritless litigation for 8 years, meanwhile *refusing* to pay arrearages that were payable. Interest on child support continues to accrue at the official rate of 10%. Waiver of this interest is prohibited by federal and state laws.

183. Even though defendant KHERA was non complaint, and continues to remain non complaint for 15 years, FC-DCSS continues to aid and abet CFDE attorneys, who in turn conspire to help defendant KHERA evade hundreds of thousands of dollars in support by any means. Since FC-DCSS has the power of Attorney General's office behind itself, the CFDE is assured that these corrupt activities will never be exposed.

184. Such an illegal arrangement helps CFDE attorneys generating lucrative benefits for themselves, reduced FC-DCSS's and COMMISSIONERS' workload, all under the protective umbrella of the CFDE Judicial Officers and Attorney General's Office. In return, the CFDE attorneys offer their "unconditional" support to CFDE FC-DCSS and the COMMISSIONERs.

185. In Dec 2014, in violation of federal and state laws, COMMISSIONER GREEN's rubber stamping *with prejudice,* of my motion for enforcement of child support orders, after viewing my motion for sanctions against defendant SCHREIBER,  is to be views in context of such an illegal complicity between the members of this cartel.

186. Whereas in 2008, FC-DCSS defendants were aware that there existed child support arrearages that were payable @ $2047 per month, soon after a CFDE attorney was recruited, FC-DCSS refused to secure these arrears in 2008, and by 2014, the arrears had miraculously disappeared from their books.

187. On Dec 15, 2014, defendant DYER, an attorney for FC-DCSS attempted to sabotage my efforts to seek enforcements by repeatedly, wilfully, falsely representing that defendant KHERA was current on support.

188. Defendant DYER made these false representations on Dec 15, 2014 in Dept 301, during a hearing on my motion for enforcement of court orders, and then again in or around March 2015, in Dept 302, before COMMISSIONER LE MON, during a hearing on a Contempt Motion I had filed with the Court.

189. The conspiracy and collusion between CFDE operatives, of which defendant DYER is a member, needs no better evidence except that which is recorded on the Register of Actions maintained by the Family Court Services. The actions of other operatives are presented below:

190. Until 2010, I was represented by attorney JUDITH SOLEY on matters related to child support. After her, MORENO defendants informed me that they were already familiar with my case and could finish the trial in ½ a day. However, defendants were simply engaged in fraudulent representation. I relied on

their fraudulent representations because I believed them to be honest, by virtue of their attorney license. Defendants simply wanted to defraud me without any intention of providing honest services. At the time defendants offered to represent me, they were aware that Judgment of 2003 was void, and they had in their possession, defendant KHERA's tax returns from 1998 – 2010.

191. The matter went to trial in Fresno in April 2011. MORENO defendants *refused* to provide evidentiary documents, including bills, tax returns etc. They *refused* to plead appropriate law related to FC-DCSS's jurisdiction on child support, stating that their lawfirm "did not get other attorneys in trouble" they wouldn't get the Santa Clara Judges in trouble. They wanted to appease the Santa Clara Judges to win their favors, even though they were aware that the conduct of these Attorneys and Judges was criminal in nature.

192. During the trial that lasted over 3+ years, defendants engaged in delaying tactics, simply to delay resolution. The delay helped KHERA delay payments, it helped the CFDE attorneys generate income. Judge ALLEN HILL allowed a simple child support trial to go on and on and on for 3+ years without sanctioning the attorneys in any way.

193. In 2013, after defendants had billed atrocious amounts, defendants SCHREIBER and MORENO Defendants entered into a covert arrangement with defendant SCHRIBER. Between them, they waived child support arrears, and medical and childcare reimbursements in return for an award of attorney fee.

194. Thereafter, defendants _refused_ to file appropriate bills, invoices, and other documents that would have secured payment on childcare, medical expenses, arrearages and attorney fee. Even though their contract with me required them to seek sanctions against defendant KHERA and his attorney, defendants intentionally refused to file a Notice of Motion seeking sanctions.

195. I asked MORENO defendants to file these documents or resign from the case. Defendants refused to resign. After consulting State Bar, I filed an exparte Motion seeking their dismissal. But it was too late. Judge ALLEN HILL refused to consider any document except the attorney bills for MORENO Defendants' representation, and on Feb 3, 2014, she overruled the Judgment of 2008, ordered appropriate child support and arrears to be paid, and awarded $92,000 in attorney fee.

196. For more than a year, FC-DCSS defendants refused to enforce these orders until I lodged a complaint in March 2015.

197. After the order was made, Defendant SCHREIBER attempted to blackmail me, demanding that I accept lower payments than ordered by Judge ALLEN HILL, else she would make sure I would not receive any arrearages and the attorney fee award of $92,000.

198. When I refused, defendant SCHRIEBER than conspired with defendant MORENO to defraud me. Knowing that defendant MORENO was owed only $62,000, not $92,000, defendant SCHREIBER filed a motion in the Court arguing that the $92,000 must be paid to defendant MORENO,not to me. She also forged and falsified documents, claiming that defendant KHERA had already paid all child support arrearages that were owed. In collusion with Defendant KHERA, SCHREIBER also ***forged*** documents to fraudulently reduce $100,000 from defendant KHERA's income for 2013. She requested the $92,000 be deposited in her trust account.

199. Together, B&B Defendants and SCHREIBER held $92,000 in defendant SCHREIBER's accounts while MORENO fraudulently billed over $1000 per month in interest charges. They later sought a default order against me for $150,000 from Santa Clara Court during my Noticed Unavailability. This order is pending an appeal in the Sixth Appellate District.

200. In 2016, MORENO defendants agreed to accept $62,000. SCHRIEBER's and MORENO defendants conspiracy helped MORENO defendants to fraudulently secure $62,000 of the $92,000 AND an award for $150,000 for attorney fee – in addition to approx. $400,000 which they and their cabal had already been paid.

201. In 2013, pursuant to children's allegations of sexual abuse, Santa Clara County made a Custody Order that granted me sole legal and physical custody of the children. This order was made permanent on Sept 2014.

202. FC-DCSS refused to secure a modification on child support. In June 2013, I filed a motion for modification. Defendant SCHREIBER, colluding with MORENO defendants, and FC-DCSS prevented the matter from going to trial till date, thus aiding, abetting and preventing KHERA from paying appropriate child support. They again sabotaged my efforts as a self represented litigant, to secure a modification on child support. Till date, the matter has not gone to trial.

203. In October 2014, I filed a motion for enforcement of Court Orders. Once again, due to the implicit and explicit conspiracy between the CFDE operatives,  DYER, SCHREIBER, GREEN claimed that defendant was current on support and no support was owed. Defendant GREEN made an order denying my request for enforcement of Court orders *with prejudice.* Defendant GREEN specifically stated that the motion for enforcement was being denied *with prejudice.*

204. An appeal was filed in Fifth Appellate District. FC-DCSS was represented by Attorney General's office. Attorney General's Office made false statements and fraudulent representations on behalf of the defendants. An appellate decision affirmed the decision of defendant GREEN, based on Attorney General's false statements. However, the Opinion inferrs that defendant GREEN had not denied the

motion with prejudice, and that FC-DCSS had not stated that defendant KHERA was current on all child support.

205. At the time the Appellate Court made these findings, it was in possession of documents that explicitly showed evidence to the contrary. Appellate Court's decision to specifically geared to protect the CFDE cartel, including defendant GREEN. Appellate Court showed reckless disregard for the injuries the lies, misrepresentations, fraud and collusion of these defendants had caused on me.

206. At each step, each of these defendants have colluded, conspired, and attempted to sabotage my efforts to seek appropriate and timely support orders.

207. In 2013, pursuant to children's allegations of sexual abuse, Santa Clara County made a Custody Order granting me sole legal and physical custody of the children.

208. Between 2013 – 2014 FC-DCSS defendants again _refused_ to secure modified support for me, even after I was granted sole legal and physical custody pursuant to favourable FC 3118 evaluation establishing defendant KHERA's sexual misconduct. FC-Defendants again cited "inability" to comply with Title IVD regulations, advising me to "go get an attorney."

209. In 2014, after the trial, FC-DCSS defendants again refused to enforce Judge Allen Hill's orders or secure additional orders for the children as requested. To further aid and abet the party engaged with CFDE attorney, FC-DCSS Defendants have refused to provide information about defendant KHERA's income even though such information was available to them, and even though I was unable to secure any discovery responses from defendants despite attempting at least 6 times.

210. Between 2012 – 2016, Judge KALEMKARIAN, and defendant ZAYNER have denied two of my motions to compel discovery so I could seek income related information from defendant KHERA.

211. Each and every member of the CFDE has aided and abetted defendant KHERA, and SCHREIBER, B&B Defendants help evade defendant KHERA's child support obligations, violating federal and state laws.

## Civil Litigation in Santa Clara & Fresno Counties

212. I was advised by JUDITH SOLEY to file a Legal Malpractice suit against PARDUE. I filed the suit in 2009. MORENO defendant advised MICHAEL MILLEN, However, defendant MILLEN conspired against me and abandoned my case when MORENO defendants' fraudulent conduct became apparent. I was prevented from seeking appropriate damages from defendant PARDUE.

213. In June 2014, Judge ELFVIN illegally dismissed a Complaint I filed against MORENO defendants for legal malpractice, and sanctioned me over $20,000. He denied my fee waiver request,

intentionally obstructing the appeal. During my noticed unavailability, Judge ELFVIN granted defendant MORENO's cross complaint, granting $150,000 to defendants without any basis whatsoever, then refusing to set aside the order. The order is being appealed.

214. In 2014, and in 2015, I filed a civil complaint against defendant KHERA, and against other defendants in Fresno County for fraud, deceit, personal injury, abuse of process, RICO etc (14 CECG 03660 and 15 CECG 00351). The matters were presented before defendant KAPETAN, and Judge SIMPSON in Dept 403 and 503.

215. Each of these Opposing Counsels then filed their respective Special Motions to Strike, and/or Attorney Fee Motions motions during my noticed unavailability, thus engage in extrinsic fraud, and wilfully prevented me from participating in the proceedings. Defendant KAPETAN colluded with the defendants by denying my exparte motion for continuation of the hearing. DAVIDSON colluded to this EXTRINSIC FRAUD by abandoning me, without informing me, even though he had previously agreed to represent me during my absence.

216. In my absence, Defendants intentionally made false representations and false statements before the Court, engaged in billing fraud.

217. Defendant KAPETAN issued several default, unopposed Judgments against me. At the time these filings were made, the hearings were scheduled, and the Judgments were made, each defendant was aware that I would be unable to respond. Each was aware that they were engaging in billing fraud. I further allege that the motions were *intentionally* filed, scheduled and heard during my noticed unavailability because the defendants, each one of them, intended to deprive me of my right to participate in the proceedings, and each intended to provide false information related to facts, and law, to KAPETAN's Court, and which could only be accomplished in my absence. Defendant KAPETAN *intended* to dismiss my complain and sanction the defendants in my absence. She had preiously excluded my opposition documents, and hence my absence on these matters gave her a perfectly legitimate – illegal – excuse to dismiss my complaint.

218. WINTERS also presented fraudulent billing, and secured an order fraudulently during my Noticed Unavailability from Judge SIMPSON.

219. Such actions of the CFDE conspiracy had deeply injured me.

220. These defendants engaged in EXTRINSIC FRAUD (para 411-433), and willfully attempted to prevent me from participating in the proceedings. They intentionally made false representations and false statements before the Court, engaged in billing fraud, and secured orders against me fraudulently.

221. In June 2015, I had retained an attorney THORNTON DAVIDSON to represent me on these outstanding matters in Fresno and Santa Clara County during my unavailability. Defendant DAVIDSON was corruptly influenced by the Opposing Counsels. In August 2015 I became aware that acting in collusion with the defendants, he had simply abandoned me without bothering to inform me that he would not be representing me.

222. I was forced to file appeals F071888, F073777, and F 075455 with the Fifth Appellate District. These are currently pending.

## Fifth Appellate District

223. An Appeal F 070938 was filed with the Fifth Appellate District after defendant GREEN denied my motion for enforcement of child support orders, *with prejudice*.

224. FC-DCSS did not provide a Court reporter. Defendant GREEN refused to provide me a copy of the digital recording that could have been used in lieu of the reporter's transcript of the hearing.

225. Defendant GREEN frustrated my efforts to seek the Settled Statements. He refused to certify the settled statement and threatened that if I did not agree to his version of the statement, he would not certify it. He sanctioned me for seeking digital recordings of the hearing. As a consequence of his actions, my appeal could only be heard on Abuse of Process Standard, making it very difficult for me.

226. Defendant GREEN filed a Status Report, admitting that he had denied my Motion for Enforcement of Arrears with prejudice, however, Appellate Court disregarded his admission.

227. A Notice of Appeal against Trial Courts granting of defendant SCHEIBER and B&B Defendant's Special Motion to Strike on May 21, 2015 by KAPETAN, was also filed under F071888 and has been completed, pending oral argument.  Defendants made several false, and fraudulent representations in their Respondent's Brief.

228. An appeal against Defendant KAPETAN's granting of motions filed by defendant KHERA, SCHREIBER, and B&B Defendants during my Noticed Unavailability, is being appealed under F 074544. The Appeal is pending.

229. Appeal F 07333 had been filed against defendant KAPETAN's granting of defendant ZAYNER and defendant KHERA's special Motion to Strike during my Noticed Unavailability. However, the appeal was late filed as had been unavailable and therefore did not receive defendant KAPETAN's decision late. The Appeal was dismissed for being outside the statutory time limit of 60 days.

230.  In each of these appeals, each of the defendants has made false representations of facts, and of law, before the Courts.

## Sixth Appellate District

231.  A Notice of Appeal was filed against defendant DAVILA's order denying my request for Continuation of Spousal Support in 2010 (case # 103FL116302). MORENO Defendants recruited T&T to pursue the appeal.

232. In 2010, I was informed by Department of Social Services that I was barred from working as a Social Worker. I informed MORENO Defendants, B&B Defendants, KHERA, T&T Defendants, MILLEN, SCHREIBER, requesting that the Sixth Appellate Court be informed of this order from DSS. I also requested that the matter be raised in Fresno, as well as the Santa Clara Superior Court.

233. MORENO Defendants informed me they would follow thru. They failed to follow thru, as filing of these documents would have gotten the CFDE operatives into trouble.

234. Instead, MORENO Defendants, T&T Defendants suppressed this information and allowed defendant KHERA, B&B Defendants, and SCHREIBER to continue with their misrepresentations in the Sixth Appellate District. MORENO defendants *intentionally* made my cases before the Court weak with the explicit intention of protecting the wrongdoings of the cartel.  Each of them essentially was playacting in the proceedings and in the appeal, to extort attoney fee from me. None of them had any intention of honestly representing me.

235. In 2013, an appeal was filed against defendant ZAYNER's rubber stamped orders denying my request to void the Judgment of 2003. The Filing Clerks intentionally "lost" the Notice of Appeal. It was only after administrative complaints were filed that the Appellate Court agreed to accept my copy of the NOA.

236.  Defendant ZAYNER wilfully, in order to injure me on appeal, directed the filing clerks to not accept my filing. This matter had to be reported to administration as well.

237.  An Appeal against three of defendant ZAYNER's decisions against me, was filed with the Sixth Appellate District. These include the denial of my Motion for Voiding Judgment of 2008, denial of my motion for Attorney Fee Award after I prevailed on a Custody Related Matter in 2014, and for denial of my Motion for Division of Undivided Assets. These appeals are consolidated into a single appeal H 040565.

238. The last of the NOA was filed in Nov 2014. It has been almost 5 years, but the designation of records is still pending. Any reasonable person would surmise that the CFDE Judicial Corruption is preventing these records from being designated.

239. Court Reporter's have been paid over $3000 but have either refused, or failed to provide the transcripts that would incriminate ZAYNER.

240. I have been informed by the Appellate Clerk that although delays are common in Appellate Division, such delays and such misconduct is generally unheard of. Any reasonable person would surmise that the Appellate Division is colluding with the CFDE Judicial Officers to delay or sabotage the appeal.

241. In March 2015, an appeal was filed against Judge ELFVINS's unlawful order dismissing my legal malpractice complaint 114 CV 2661152,  against MORENO Defendants.  Judge ELFVIN, with an explicit intention of silencing me, denied my motion for Fee Waiver. As a consequence, my appeal could not be completed.

242. During my noticed unavailability, Judge ELFVIN granted defendant MORENO's cross complaint, granting $150,000 to defendants without any basis whatsoever, then refusing to set aside the order. The order is being appealed.

## ALLEGATIONS

243. The issue related to conspiracy between defendants by which millions of dollars remain unpaid by defendant KHERA despite 5 valid orders between 2003 till date viz Orders of 2003, 2006, and 2014. Defendants have conspired to give total control on my property to defendant KHERA. As a consequence, defendants, each one of them, have been, and continue to blackmail me, threaten me, and deprive me of my rights to property, child and spousal support.

244. Defendants, each one of them, have conspired to aid and abet defendant KHERA in violation of every Courter that I have sought, and have conspired in commission of fraud upon the court in the underlying proceedings between 2003 till date.

245. As a consequence, hundreds of thousands of dollars remain unpaid in child support. In 2008, FC-DCSS calculated the child support arrears to be collectable at $2047 per month until fully exhausted. There is at least $2m pending in spousal support and property related fraud.

### FRAUD IN SANTA CLARA COUNTY (2003 – 2008)

246. On December 2003, amended in 2004, Santa Clara County issued support orders:

247. Ordering KHERA to pay  child support of  $2350 and a spousal support of $1535, share in medical and childcare costs. He was required to disclose all his additional income to his attorneys, and pay appropriate support on all his income.

    247.1 B&B DEFENDANTS, PARDUE, and DAVILA, ZAYER, GREEN, KAPETAN,  FC-DCSS defendants, MORENO Defendants have conspired to help defendant KHERA violate the order and evade hundreds of thousands of dollars in child support payments.

    247.2 Per incomplete documentation made available by tax and other sources, defendant KHERA is delinquent on hundreds of thousands of dollars in child support that was payable on his additional income. Defendant is also delinquent on over 80,000 in childcare and medical expenses for children. He is delinquent on more than $2m on property and spousal support.

248. In 2006, Judge JAMES COX, issued an addition order on child support, spousal support and property.

    248.1   Defendant KHERA was required to disclose his income and pay support on all his income.

    248.2   Defendants PARDUE, KHERA, DAVILA, ZAYNER, GREEN, KAPETAN, B&B Defendants, FC-DCSS defendants, MORENO Defendants conspired to help KHERA evade hundreds of thousands of dollars in child and spousal support arising from this Court order.

249.  In 2007, defendants KHERA and B&B Defendants corruptly influenced WHITE to make false written and oral representations and testimonies related to defendant KHERA's income prior to the separation. Defendant WHITE produced a false written report stating that defendant KHERA earned $3,680 per month in and prior to 2003. She testified to these facts under oath. These were fraudulent representations made in collusion with defendant KHERA, B&B Defendants.

250. In 2007, defendants KHERA and B&B Defendants bribed/corruptly influenced defendant SCHUSTER to make false written and oral representations, and testimonies about my employability and the income I could earn. Defendant SCHUSTER produced a false written report stating that as a Social worker:

    250.1    I was employable as an intern *before* I completed my Masters, when a degree is *required* before internship can begin

    250.2    I could earn $37,000 as a Social Work Intern, when social work intern are only eligible for min wages. Further, I was barred from working as a Social worker due to my felony conviction.

    250.3    I could get licensed within 2 years, when licensing is a 4-6 year process.

    250.4    I would earn $90,000 after getting my license, when Social Workers never earn >$35,000

251. Each of these above was a false statement, wilfully made by SCHUSTER, with an intent to aid and abet and conspire against me and defraud me in my career and of my right to appropriate spousal support.

252.   In 2014, Judge ALLEN HILL issued an order on child support and attorney fee related to child support litigation.

    252.1   Defendant KHERA was required to disclose his income and pay support on all his income.

    252.2   Defendants KHERA, DAVILA, ZAYNER, GREEN, KAPETAN, B&B Defendants, FC-DCSS defendants conspired to help KHERA evade hundreds of thousands of dollars in child and spousal support arising from this Court order.

253.   An appeal H040565 is pending with the Sixth Appellate District, which alleges spousal support and property fraud worth millions of dollars.

**FRAUD IN CHILD SUPPORT**

254.   Between 2003 till date, Defendants KHERA et al have refused to comply with child support orders of 2003, 2006, 2014. As a consequence, hundreds of thousands of dollars is outstanding in child and spousal support.  FC-DCSS defendants have repeatedly refused to enforce any and all Court orders, conspiring with the cartel, and helping defendant KHERA in evasion of child support payments.

### *Fraud In Obtaining Judgment of 2008*

255. In Jan 2008, FC-DCSS filed a motion for modification of child support assessing defendant KHERA's income at $65,000 per month, and his child support obligation at $8,180 per month, and arrearages collectable at $2047 per month until exhausted but failed to enforce it.

256. To circumvent the authority of FC-DCSS, defendant KHERA, DAVILA, PARDUE, SCHUSTER, WHITE, B&B defendants engaged in a Scheme to defraud me.

257. B&B Defendants first bribed SCHUSTER and WHITE to make false representations, and provide false testimony about defendant KHERA's income, and my employability and earning potential. These corrupt professionals claimed that defendant earned only $129,000 per month, and that I could earn 90,000 as a Social Worker. Both were fraudulent representations. Defendant KHERA had earned more than $65,000 that year, and I was barred from working as a Social Worker due to the felony conviction pertaining to my auto accident in 2003.

258. B&B Defendants were not defendant KHERA's child support attorneys in Fresno. But they agreed to illegally use their attorney license and presented themselves to Santa Clara Court in 2007, 2008, and 2014 as his child support attorneys, leading the Court to believe that their presence, and Court's jurisdiction on child support was legitimate, thereby engaging in fraud upon the Court, and securing orders which the Santa Clara Court has no jurisdiction to make.

259. Defendant DAVILA was *aware* of this fraud, fraudulent representation, fraud upon the Court, but culpably agreed to participate in the fraud, rubber stamping all their proposed orders over my protests between Feb 25, and 27, in an attempt to oppress and suppress me, rubber stamped several orders prepared by B&B Defendants. See *FRAUDULENT JUDGMENTS OF 2008*, para 98-108.

260. Defendant DAVILA made these three orders to help CFDE defendants defraud me and my children and to protect the interests of the CFDE. At the time defendant DAVILA rubber stamped these orders he was aware that his acts represented fraud upon the Court (See Fraudulently Obtained Judgment of 2008)

261. Defendant DAVILA, with a specific intention to oppress and suppress me, conspired to aid and abet defendant KHERA in evasion of child support payments, and violation of child support orders, by usurping jurisdiction and wilfully making orders in clear absence of jurisdiction.

### *Frivolous Child Support Trial In Fresno*

262. In Fresno, FC-DCSS refused to accept the Judgment of 2008. June 2008 or thereabouts, COMMISSIONER DUNCAN of FC-DCSS made an order voiding the Judgment of 2008 for child support purposes and scheduled the matter for trial in dept 203.  This agreement was accepted by JUDITH SOLEY, and by defendant SCHREIBER in an open Court and is recorded on the minutes of the hearing, and on the VHS recording that is maintained by FC-DCSS.

263. After JUIDTH SOLEY, MORENO Defendants stepped into the case. Defendant SCHREIBER and MORENO Defendants conspired to violate COMMISSIONER DUNCAN's order, and meritlessly litigated for almost over 28 half days (total of 19 days of trial) over almost 4 years.

264. At the end of 3+ years, MORENO Defendants reached a secret agreement with defendants KHERA and SCHREIBER.  MORENO defendants agreed to accept an upgrade of  $200 per month in child support, withheld and concealed documents that would have ensured a higher child support, even though I was entitled to *significantly* more as per child support laws. They waived child support arrears, medical expenses, childcare expenses and attorney fee for Judith Soley. This was an unlawful waiver of hundreds of thousands of dollars. In return, SCHEIBER agreed to an attorney fee award of $102,000 which, by agreement between them, would be paid to the MORENO defendants - even though only $67,000 was owed to them in attorney fee at the time.

265. In return, MORENO concealed documents related to my income and expenses, concealed documents related to my reimbursement claims, concealed JUDITH SOLEY's bills, telling me that their lawfirm did not get other attorneys in trouble, that their religious ethics do not allow the *father* to be

sanctioned. Their 4 year litigation resulted in an upgrade of $200 per month in child support at an expense of over $220,000 to me. Defendant SCHREIBER charged approx. the same amount from defendant KHERA.

266. Judge Glenda Allen made a new child support order o Feb 3, 2014, but in the absence of timely filed documents for reimbursement claims and attorney fee, Judge ALLEN HILL was unable to calculate arrearages owed. and could not include Judith Soley's bills. She ordered $92,000 in attorney fee award *to be paid to me*.

### Attorney Fee Fraud In Fresno

267. Subsequent to Judge Allen Hills order, defendants SCHREIBER et al attempted to blackmail me to accept a lower amount of arrears and waive all reimbursements. When I refused to waive arrears, and refused to accept a lower amount of childsupport, defendant SCHREIBER threatened that I would never see any of the money that Judge ALLEN HILL had ordered.

268. Subsequently, even though I owed only $67000 to MORENO defendants in attorney fee, SCHREBER and MORENO together filed a motion with the Superior Court, seeking that the award of $92,000 be paid to MORENO defendants. This was an explicit attempt to *defraud* me.

269. Judge ALLEN HILL refused to release $92,000 to defendant MORENO. SCHREIBER held it in her trust fund. It was finally released in Dec 2016 by COMMISSIONER ERIN CHILD, after MORENO agreed to give me $30,000 of the $35,000 that I had paid them, still fraudulently defrauding me of $5000.

### Defendant KHERA"s Refusal to Comply With Judgment of 2014

270. Defendant SCHREIBER advised defendant KHERA not to comply with Judge ALLEN HILL's orders. I filed a Motion for Sanctions that was scheduled for a trial that has yet to take place. Between 2014 till date, defendant has refused to fully comply with Judge ALLEN HILL's orders.

271. Defendants KHERA and DEVANI operated two companies - HEALTHY MASALA and DEVINE ENTERTAINMENT SERVICES. These companies, run by Defendants DEVANI and KHERA have failed to accurately disclose their income, and their directors are accessories to evasion of child support.

272. I approached FC-DCSS, who refused to enforce the Court orders, ordering me to "go get an attorney." Till date, defendants have failed to comply with the Judgment of 2014.

### Fraud By FC-DCSS Defendants

273. FC-DCSS refused to enforce any of the orders despite my repeated requests

274. In October, 2014, I filed a motion for enforcement of Court orders of 2003, and 2014 and a request for temporary orders.

275. By orders of COMMISSIONER GREEN the Family Court Facilitators/Caseworkers discriminated against me, refusing to interview me, refusing to accept any evidentiary documents from me.

276. In the hearing that followed on Dec 15, 2014, defendant GREEN's prime goal seemed to be to protect the judicial and attorney cartel from being exposed.

277. Defendants SCHREIBER, DYER, GREEN all falsely stated that the arrears had been waived, and that defendant KHERA was current on child support.

278. My requests for arrears, for modification of child support, and for temporary orders were dismissed *with prejudice* without any consideration for and in violation of federal and state laws.

279. I appealed the decision (F 070938).

280. Family Court Services keeps digital audio and video recordings of all proceedings. Whereas in the past Family Court Services had allowed me to view the recordings, this time I was told that COMMISSIONER GREEN, and FC-DCSS Attorney had ordered that the recordings not be shared with me. I was unable to use these in lieu of transcripts on appeal.

281. I was forced to seek a settled statement. During the hearing on settled statement, GREEN attempted to coerce me to accept his version of the settled statement that was riddled with false statements. These statements could have been corrected thru a replay of the digital recordings, but defendant GREEN refused to allow digital recordings to be played back, and threatened me that unless I agreed, he would not certify the statement and my appeal would be dismissed. Upon my refusal to agree, defendant sanctioned me SIX times, for $50 each.

282. Defendant GREEN *intentionally, culpably, with malice,* failed to certify my settled statement thus intentionally disadvantaging me in my appeal.

283. The Appellate Opinion was release in April 2018. Appellate Court has made many misstatements. Even though defendant GREEN accepts in writing that he denied my motion for enforcement of Child Support orders *with prejudice,* Appellate order implies that the order was made *without prejudice.* A petition for Judicial Review has been filed with the Supreme Court in May 2018 and is pending.

284. Although PARDUE and MORENO defendants were required to represent my interests in the divorce proceedings, each of them conspired with other defendants to my detriment, and to increase their own attorney fee.

285. HECTOR MORENO frivolously appointed  six attorneys from MORENO & ASSOCIATES to represent me August 2008 – Nov 2013 and billed indiscriminately for 4 years, when all he had to do was inform the Court that the Judgment of 2008 as void, and had already been declared void by COMMISSIONER DUNCAN. Tax statements, and bills, invoices, and

286. MORENO defendants *refused*  to use the *most persuasive*  argument to secure relief for me, instead choosing to litigate frivolously for over 8 years at an expense of over significantly $400,000.

287. In March 2013, I was awarded sole legal and physical custody of two children after a FC 3118 evaluation concerning sexual abuse of children. DCSS refused to secure modified child support order, telling me again to "go get an attorney."  The cartel intentionally delayed a trial for modification of support until the children turned 18. As a consequence, I was forced to retain KIM AGUIRRE and have had an expense of approx. $20,000 till date. Just like te Motion for Modification filed in 2005, this Motion for modification was never heard, and defendant was allowed by FC-DCSS to pay whatever he wanted to pay.

288. In October 2014, I filed a motion seeking enforcement of Child support orders of 2003, and 2014. I also sought temporary orders pursuant to gaining sole legal and physical custody of the children in March 2013. I also sought a ruling on a Motion for Modification that was filed in 2005 in Santa Clara County. I requested that this motion be heard in Dept 203, where other motions were being heard, and scheduled for a trial with other motions that were being scheduled for trial.

289. My request that the motion be scheduled in Dept 203 was denied, and the motion was scheduled for Dec 15, 2015 in Dept 301.

290. FC-DCSS refused to follow the normal procedure for such hearings, and discriminated against me by refusing to allow me any pre-hearing  access to Family Court Facilitators. At the hearing,  DYER made false representations to the Court, stating that KHERA was current on child support, child support was waived by Judge Allen Hill, and Judge DAVILA, and that no arrears were outstanding. This false statement was in complete contradiction of the arrears that FC-DCSS itself had found to have accrued in 2008 – when it filed a motion to collect $2047 per month in arrears.  As a consequence of such false statements by DYER,  defendant GREEN denied my motion for arrears *with prejudice.*

291. In or around May 2015, I filed a Contempt Motion, seeking enforcement of Judge Glenda Allen Hill's orders, and attempting to collect arrears accrued from Feb 2014 – March 2015 since FC-DCSS had refused to enforce Judge Allen Hill's order of Feb 2014.

292. The matter of contempt was heard in Dept 302. FC- DCSS presented themselves before COMMISSIONER LE MON, and again made false statements that defendant KHERA was current on support. COMMISSIONER LE MON again denied my motion.

293. I filed an appeal against defendant GREEN's order denying my motion for enforcement of orders *with prejudice.* After the appeal F070938 was filed with Fifth Appellate District, and issues were argued during the hearing in June 2015 on matters related to Settled Statement for Appellate records, DYER then attempted to backtrack and again made false statements before the Trial Court that he had actually stated that KHERA was current *as billed.* If KHERA was current as billed, then my motion for arrearages could not have been denied with prejudiced. Thus, DYER made false representations on Dec 15, 2014, in May 2015 to the Superior Court, and then again June 2015. His repeated false statements have lead to an Appeal. The appellate Court has ignored his earlier false statements, and has made its ruling on the basis of his later false statement, made in June 2015. These repeated lies to different Courts has now spawned a Petition for Judicial Review in the Supreme Court.

294. FC-DCSS, DYER, under City of Fresno, refused to modify my child support pursuant to an order granting me sole physical and legal custody in 2013, it failed to get me temporary support pursuant to the aforementioned order. Between March 18, 2013 till my youngest on emancipated on Dec 31, 2017, FC-DCSS failed to secure modified or temporary support for my children, despite the fact that I was granted sole legal and physical custody of the children in March 2013. In fact, FC-DCSS sabotaged my efforts to seek temporary orders from the Trial Court, and Appellate Court, and also sabotaged my efforts to seek modification and arrears from Superior Court and on Appeal.

295. FC-DCSS, COF, DYER, GREEN failed to provide a Court Reporter during any of the hearings. Each of them, individually as well as collectively,  refused to provide copies of digital recordings of the Dec 15, 2014 proceedings, and the proceedings on Settled Statement. These recordings could have been transcribed and submitted in lieu of transcripts, and would have resulted in a De Novo appeal. Their actions injured me during the appellate process, as my appeal could only be heard on abuse of process standard.

296. In an appeal, FC-DCSS stated that it would not enforce Smith Ostlerised Payments, and would only enforce sum certain orders. COF, FC-DCSS, DYER continues to be fully aware, and fully informed that being a Federal Aid recipient, it has no discretion to cherry pick the services it will provide to its clients.

297. Between 2003 – 2014, FC-DCSS has failed to file a wage assignment on defendant KHERA as it was required to do under federal law. It has failed to follow any and all requirements of 42 USC 666 to ensure timely payment of child *and spousal* support by defendant. Hundreds of thousands of dollars have remained unpaid. The children and I have suffered significant INJURIES & DAMAGES due to such conduct of the above named defendants.

298. In Santa Clara County, Defendant ZAYNER succeeded defendant DAVILA between 2010 – 2014 in the Family Court, Dept 81 of Santa Clara County. Defendant ZAYNER culpably sabotaged all my efforts to have the Judgment of 2008 voided (See Efforts to Void Judgment of 2008)

299. The list of women defendants DAVILA and ZAYNER have destroyed during their tenure in Santa Clara Family Courts is very, very, very long. Both defendants performed these illegal and criminal acts with the explicit purpose of illegally, unlawfully reducing the caseload of the Superior Court, with the goal of securing promotions and other benefits.

300. Both defendants have secured advancements in their career by using culpable means to achieve their goals. They engaged in organized racketeering activities based on corrupt practices, dishonesty, deceit, and injustice wherein they intentionally, culpably defrauded women and children undergoing divorce proceedings in the Superior Court. Each one of these defendants engaged in and promoted the racketeering acts of CFDE in a complicity to defraud, and thus injure pro per litigants in their property, support thru deprivation of their rights.

301. The matter of child support had been extremely simple. The Child Support payments ordered by FC-DCSS in 2008 were approximately equal to what defendant KHERA should have paid even under the Smith Ostlerised payments. FC-DCSS operatives had computed arrearages owed by defendant KHERA. Defendant KHERA worked in a regular job, with a reputable company. FC-DCSS could have done a wage assignment to have the child support arrears, as well as ongoing child support paid to their disbursement units directly.

302. Instead, Defendants KHERA, DAVILA, GREEN, KAPETAN, ZAYNER, PARDUE, SCHREIBER, FC-DCSS defendants engaged in elaborate one of more of their Schemes and Artifices to defraud me. As a consequence, defendant KHERA has paid the CFDE attorneys, SCHUSTER, WHITE and the rest, more than what he would have paid me in terms of support on Additional Income. The alleged schemes and conspiracies devised by these defendants have simply redirected the community estate, child support, and spousal support to them. Each defendant has culpably engaged in deliberate acts to multiply the proceedings, with a knowledge that multiplication of proceedings will generate additional wealth for them. In doing so, CFDE operatives have transferred all the wealth in the

community assets, and have been rewarded, or have rewarded each other by a series of kickbacks, referrals, bribes and other emoluments, and instruments of corruption. Defendants actions were performed with the specific intention of increasing the CFDE commerce, by diverting the community estate, child and spousal support payments into their own coffers.

### FRAUD RELATED TO SPOUSAL SUPPORT

303. Between 2003 – 2007, I was represented by PARDUE in Santa Clara County under 103FL116302. Defendant PARDUE exploited my ignorance of local laws, conspiring with defendants to defraud me. He concealed defendant KHERA's income and assets, pretended that he was going to take me to trial, demanded a significant of fee advance for trial, was paid for a trial but culpably refused to take me to trial on matters related to property, spousal support.

304. At all times, PARDUE was aware that defendant WHITE's and defendant SCHUSTER's representations were false, and fraudulent and stated so, but failed to take any action.

305. A settlement conference was scheduled for May 16, 2018 at Santa Clara Court. It dragged for 3 days. Together, defendants KHERA, PARDUE, DAVILA, B&B Defendants and an unnamed pro temp Judge colluded to threaten, intimidate, humiliate, harass and thus coerce me into accepting a Spousal Support that was unfair, inequitable and against the laws of California.

306. Defendant PARDUE told me that if there was a problem, it could always be addressed in the Motion for Continuation of Spousal Support, and that I would have an option to seek a better outcome at that time.

307. Also see _Fraudulent Judgments of 2008, (_para 98-108) for specificity

308. Subsequently, after the agreement was read, I found out that defendant PARDUE had deceived me, as had defendants DAVILA, KHERA and B&B Defendants.

309. Thereafter, when I confronted defendant PARDUE,and requested him to take appropriate actions, defendant PARDUE forged a Substitution of Attorney that he claimed I had signed, and abandoned me. I had never signed the Substitution of attorney. Defendant DAVILA was informed of this incident, and forgery, but accused me, and refused/failed to take action to preserve my rights.

310. In 2010, Department of Social Services informed me that my felony conviction barred me from being employed as a Social Worker. As a Vocational Assessor, and as a Social Worker herself, it is inconceivable that defendant SCHUSTER was unaware of this basic statutory requirement, even after being informed of my accident in great detail.

311. A few months later I obtained the tax returns of defendant KHERA that showed our income was over $500,000 per annum, or around $40,000 per month, not $3,680 as defendant WHITE had claimed in her fraudulent reporting.

312. Each defendant was aware that their actions represented a crime.

313. Each one of the defendants was aware that I could not earn $90,000 within 2 years as a social worker.

314. Each defendant was also aware that I was new in United States, that I was not eligible for Social Security Benefits, Disability benefits, 401K or IRA.

315. They were aware that defendant had previously raped me into having more children, and they were also aware that I had no family in US, and that because of children, I would not be allowed to return to India.

316. They were aware that I had no safety net to support me in US except the Spousal Support, that I did not know the laws related to spousal support, that I did not have the earning capacity that defendants claimed I had.

317. Each of them was aware that I was not eligible to work as a Social Worker, and that defendant SCHUSTER had been bribed or corruptly influenced to make a false report.

318. Each defendant knew that the such an order for Spousal Support would leave me destitute.

319. In a perverse attempt to defraud me and enrich themselves at my expense, each of these defendants, with reckless disregard to the facts of the case, the state and federal law, and the requirements of ethical conduct, coerced me into accepting a Spousal Support that was inequitable, unfair, and was based on fraud, fraudulent representation, fraud upon the Court, bribery, and collusion between the above mentioned defendants.

320. Despite my repeated protests, and over the protests of my attorney CAMILLA COCHRAN, between May 2007 and Feb 2007, and despite knowing that defendants KHERA, PARDUE, SCHUSTER, WHITE had engaged in fraud, fraudulent representations, and fraud upon the Court, defendant DAVILA rubber stamped the illegal orders presented by the defendants against me on Feb 27, 2008.

321. In 2008, I hired MORENO defendants to represent me on the Motion to Set Aside the Judgment of 2008.

322. In or around 2008, MORENO defendants were aware that the Judgment of 2008 was acquired thru fraud. They outsourced the matter to CONSTANCE SMITH, a friend of defendant MORENO, and a Deputy District Attorney. After several detailed conversations with my child support attorney Judith Soley, she prepared the initial pleading for which I was charged over $28,000 for Judith Soley's time and hers.

323. Defendant MORENO then appointed three more attorneys – RORY COETZEE, KATIE WALSH, and himself - to oversee this motion, each one of them billed concurrently. A total of FOUR attorneys were appointed to oversee my case.

324. However, even so, defendants intentionally, with the objective of protecting the B&B defendants, did not raise the issue of spousal support fraud on this motion, nor did they raise the issue that the Judgment of 2008 was void for lack of jurisdiction. MORENO defendants were aware that if they did so, a lot of CFDE operatives would be found to have engaged in fraud. Hence, defendants pretended to take me to trial, when actually, they had no intention of prosecuting my case honestly, zealously. Their intent had only been to injure me by defrauding me of money extorted as attorney fee.

325. In 2012, I received the order from Department of Social Services, barring me from being employed as a Social Worker, providing sufficient grounds for voiding the Spousal Support part of the Judgment of 2008.

326. I approached MORENO defendants once again, requesting that they file a Motion, or a Writ to help me secure Spousal Support. MORENO Defendants agreed to do so. However, they waited for almost 8 months, and then informed me that their lawfirm did not get other attorneys in trouble. By the time they made these representations to me, it was too late to file anything in the Superior Court. I am currently preparing a Writ for the Appellate Court.

327. At each stage, defendants have had no hesitation in demonstrating to me, verbally, and thru their actions, that the Courts function as units of organized criminal activities, and each CFDE attorney, and a lot of Judicial officers are simply members of such organized racketeering organization.

### FRAUD RELATED TO CONTINUATION OF SPOUSAL SUPPORT

328. Six months before my spousal support was to terminate, MORENO defendants filed a motion for Continuation of Spousal Support in Fresno. At the time, defendants were aware that defendant KHERA's income in 2003 was over $500,000 per annum.

329. MORENO Defendants again engaged in protecting B&B defendants from being exposed and refused to plead appropriate facts and law before the court. In fact as always they intentionally showed me in poor light.

330. Defendants claimed I was doing a full time PhD and worked only 26 hours per week. At the time they made these claims, I was enrolled in PhD program in Santa Barbara that required me to attend one weekend a month. I was also working 3 jobs, working 10-12 hours per day, or 70—80 hours per week. Defendants did not question or show that defendant KHERA had committed fraud on reporting his

income as $3,680 per month, they did not present the fraudulent misrepresentation in SCHUSTER's report. Defendants simply wanted to protect all CFDE operatives at my expense.

331. Defendant DAVILA rubber stamped defendants' proposed order denying my motion for Continuation of Spousal Support without providing any justification or analysis.

332. MORENO defendants engaged the services of T&T Defendants, and advised me to appeal. T&T Defendants had no experience in Family Law, and were hired only because they were fiends of MORENO defendants, and members of the cartel which protected each other.

333. Between 2010-2012,  FRANCINE TONE (TONE) used mail and wire services to file, or cause to file her Appellate's Brief, and her Reply Brief. In these briefs, she made false representations about my ability to earn $37,000 as a Social Worker, and my refusal to engage in full time employments. Both these statements were false representations of fact. At the time she made these representations, she was aware that she was making false statements.

334. At the time TONE made these representations, she was aware that I was working in three jobs concurrently, working over 15 hours per day. She was also aware that I was prohibited from being employed as a Social Worker due to the felony conviction arising of my auto accident. She was also aware that the Judgment of 2008 was void for lack of subject matter jurisdiction on child support, and because of the underlying fraud, fraudulent representation, fraud upon the court. She was aware that KHERA's salary was not $3,480 per month in 2003.T&T Defendants could very well have sought a de novo appeal, but despite charging me over $20,000, chose to seek what was easiest for them to so – without any consideration for my right to their honest services, and zealous advocacy, engaging in breach of Professional and Ethical Duties.

335.  In order to protect MORENO defendants, and to aid and abet KHERA and his attorneys, T&T defendants refused to raise such pertinent issues – that would decisively have won the appeal in my favor.

336. Defendants ELLIS was retained to represent defendant KHERA in appeal against DAVILA's decision denying continuation of Spousal Support in 2010.

337. In 2012, defendant ELLIS used mail and wire services to file, or cause to file his Responsive Brief with the Sixth Appellate District. In this brief, he made false representations about my ability to earn $37,000 as a Social Worker, and my refusal to engage in full time employments. Both these statements were false representations of fact. At the time Ellis made these representations, he was aware that I was working in three jobs concurrently, working over 15 hours per day. He was also aware that I was

prohibited from being employed as a Social Worker due to the felony conviction arising of my auto accident.

338. Based on such false representations of facts, defendants ELLIS, T&T Defendants, B&B Defendants, MORENO Defendants and defendant KHERA secured a favourable appeal for defendant KHERA based on false representation of facts, and law. TONE was paid over $20,000 by me for making these fraudulent representation in my appeal *KHERA v SAMEER (2012* and ELLIS was paid almost the same amount. At the time they made such representations to the Appellate Court, all these defendants were aware that they were making false representations of facts, and law but the defendants knowingly agreed between themselves to make the false representations and secure a favourable outcome for defendant KHERA, at the same time charging me over $20,000 for the process.

339. The Appellate Court affirmed the decision of the lower Court. The Opinion was published and showed me in bad light. This further affected my ability to secure clients in my private practice, as all clients generally google the potential psychotherapists before they book an appointment.

340. As a consequence, despite having been married for 18 years, with family incomes of more than $500,000 in 10 years prior to separation, t**his** 56-year-old single disadvantaged emigrant mother, a woman of color, was forced to abandon her education, and as a consequence suffered crushing setbacks in her career, and personal, health and financial life, and has been made homeless due to the fraud, fraudulent representations and fraud upon the Court by defendants.

341. Together, T&T Defendants, ELLIS, B&B Defendants and MORENO defendants have received over $800,000 in attorney fee to perpetuate this fraud to my detriment.

**FRAUD RELATED TO PROPERTY**

342. Between 2000 and 2003, in anticipation of the separation, defendant KHERA sold 2 properties in Australia. These properties were at *6 Chuvel Close, Wahroonga, Sydney, Australia* (buying price 360,000, deposit 25%; selling price 550,000) and at *Kings Street, Paramatta, Sydney, Australia* (Buying price 149,000, initial deposit 40%; selling price $220,000). During dissolution proceedings, Defendant claimed that the parties had no property in Sydney. These properties, or the funds derived from the sale of these properties, was omitted from the property division.  They were omitted from computation of spousal support or child support calculations. Defendant mailed documents to Sydney to effect these sales. He engaged in communication over internet thru emails, and also engaged in telephone conversations with the brokers to complete the sale of these properties. The proceeds from the sale were transmitted to his bank accounts in Sydney, Australia. Defendant even

travelled to Australia in 2006 to transact in these accounts, used these community funds to pay for his honeymoon after his marriage to DEVANI, and transmitted rest of these funds to US using banks and wire transfers.  Defendant KHERA did not declare this income either in Australia or in US for tax purposes and paid no tax on these proceeds either in Australia, or in US. When asked for tax returns of 1998 – 2003, he has refused to provide the tax returns. Defendant is guilty of tax fraud, (26 USC 7201), mail fraud (18 USC 1341) and wire fraud (18 USC 1343), bank fraud (18 USC 1344) and money laundering (18 USC 1956, 1957). As a consequence of such tax fraud and money laundering activities, I have been unable to trace where how much and where the money is invested, and concealed and was injured in my property and finances.

343.  Our property at Kensington Property in Sunnyvale sold for $1.28million, and there was $550,000 in down payment on the property.  Defendant gave me only $100,000 from the sale proceeds, but filed his taxes showing that he had divided the funds equally. Thus he evaded payment of tax on the gains of $450,000. However, because he falsified his tax returns, I was unable to convince ZAYNER that I had not been paid the amount that defendant claimed to have paid me. Defendant is guilty of tax fraud, (26 USC 7201), mail fraud (18 USC 1341) and wire fraud (18 USC 1343), bank fraud (18 USC 1344) and money laundering (18 USC 1956, 1957).

344.  On May 3, 2006 defendant issued a check for $61037.92. By mislabelling the check,  the check for $61037.92 was used by defendant KHERA as a means of securing an offset of over $183,000 in payments – of which payments over $122,000 had never been made (26 USC 7201), mail fraud (18 USC 1341) and wire fraud (18 USC 1343), bank fraud (18 USC 1344).

345.  In 2000, there were two parcels of land held in joint names in Delhi – being parcel 4109, and 4110 in DLF Enclave, Phase IV. In the Judgment of 2008, defendant claimed to have given me a "corner" lot of land. However, neither parcels of land are in the "corner". Thus, defendant took control over both parcels of land, and had attempted to defraud me of this property. Defendant engaged in mail, and wire fraud (18 USC 1341, 1343) travelling interstate to affect this crime (18 USC 1952).

346.  Upon information and belief, between 2006-2008, defendants KHERA and DEVANI have travelled to India between 2006 - 2018 with the explicit intention of promoting, managing and facilitating Defendants' SCHEMES & ARTIFICES to defraud me by impersonating me (18 USC 1028(a)(7)) before a Bank where my Safe Deposit Box holds my jewellery in India. Defendant DEVANI also impersonated me before the Magistrate for Land Transfer (18 USC 1028(a)(7)). Defendant DEVANI then  forged my signatures at the bank, and on the community property characterised as DLF property #4109 and had it illegally transferred, registered the property in defendant KHERA's

name.

Alternately, defendant KHERA bribed the Magistrate to perform such transfer in my absence (18 USC 201). Alternately, defendants KHERA and DEVANI have forged the land transfer document and had the parcel of land fraudulently transferred in his name without my physical involvement (18 USC ).

347. Between 2003 – 2006, defendant KHERA sold securities from community brokerage accounts, and transferred from community banks and brokerage accounts, significant amount of securities, or proceeds from the sale of these securities (stock options, ESPPs, shares) in violation of ATRO. He did so without my knowledge or consent. Defendant is guilty of securities bank fraud as under 18 USC 1344.

348. Between 2003 – 2006, defendant DEVANI received in her bank account, over $600,000 in proceeds from sale of community assets. At the time defendant DEVANI received these assets she was aware that defendant KHERA was attempting to fraudulently transfer these monies. She agreed to help him conceal these financial assets from the divorce process. Defendant DEVANI's acts represent criminal acts under (receiving stolen property)

349. Defendant DEVANI culpably  used these community funds to purchase of her property at *4293 Verdigris Cir, San Jose, CA 95134*, bought in her name, using illegally acquired funds from security fraud. Defendant DEVANI's acts criminal under (18 USC 1956, 1957)

350. Defendants rented this property out as an investment property, the money was deposited into defendant KHERA's bank, or was concealed as defendant DEVANI's income, on which income defendant KHERA did not pay tax, and failed to disclose to me, to the Court, and also failed to pay child support and spousal support on this income (18 USC 228).

351. Between 2004 – 2006, defendant KHERA sold some more of the community property and his personal property worth $1million, and purchased the Cupertino residence with the down payment of $1.8million.

352. Defendant DEVANI sold her house in Cupertino, and returned $600,000 that had gone into purchase of her property at  *4293 Verdigris Circle San Jose Ca 95134* in 2004.

353. Using these monies, Defendant KHERA purchased the *21947 Oakleaf Ct, Cupertino* residence in 2006, all paid for by community and his personal monies.

354. Between 2009 – 2013, when the matter of Set Aside was before the Court, defendant KHERA made false representations to the Court that the Cupertino residence had been funded by his wife's income.

355. Defendants WHITE, and B&B Defendants were aware of such fraud. However defendants aided and abetted defendant KHERA in commission of this crime.

356. Defendants PARDUE and MORENO Defendants were also aware of this crime, but colluded with each other, and with opposing counsel, and with defendant KHERA in suppressing this information from me, and from the Trial Court and from the Appellate Court.

357. Defendants' actions represent securities fraud.

358. The property at _21947 Oakleaf Ct, Cupertino_, where defendants KHERA and DEVANI lived from 2006 – April 2018, was purchased in 2006, by using unlawful sale of community funds. Defendant claims that he co-owns this property with his wife. He purchased his half of the property from illegal sale of the community property proceeds. Defendants owned and operated the two companies HEALTHY MASALA, and DEVINE ARTS & ENTERTAINMENT, from these premises from 2006 till April 2018.

359. On Feb 20, 2009, MORENO Defendants filed a Motion to Set Aside Judgment of 2008.

360. As with their other motions, MORENO Defendants made false representations, refused to present pertinent documentation, evidence or please facts and law which would have ensured their success. Their aim was not to prosecute honestly, but to engage in dishonest delaying of the proceedings,, to bill attorney fee and then abandon me.

361.  To this end, Defendants failed to prosecute for 6 years until 2013, engaging in extensive discovery costing over $70,000.  For 6 years I was billed thousands of dollars, for the same tasks, performed over and over again. Meaningless letters exchanged, new discoveries initiated, without being pursued, regular meetings between the 3 attorneys, 8 or so paralegals.

362. During the 6 year period, MORENO defendants realised that prosecuting the claim would involve establishing that the Judgment of 2008 was acquired thru fraud, and would implicate other CFDE attorneys, Judicial Officers, and expert witnesses in fraud. The fraud was so blatant, that they would be compelled to seek sanctions.

363. They repeatedly informed me that their "lawfirm did not get other attorneys in trouble."

364. In mid 2012, Department of Social Security issued an order barring me from being employed as a Social Worker, provided sufficient grounds for voiding the Spousal Support part of the Judgment of 2008. I repeatedly requested MORENO defendants to amend the their Motion to Set Aside to include these orders of the DSS. Defendants pretended to agree to do so, but covertly resisted my request.

365. In Dec 2012, MORENO defendants, B&B Defendants, and ZAYNER conspired between themselves to have the motion dismissed.

366. Accordingly, defendant ZAYNER requested for a "brief".

367. MORENO defendants  submitted a brief to defendant ZAYNER, without filing any exhibits.

368. Defendant ZAYNER claimed that they had failed to file any evidentiary documents.

369. MORENO defendants claimed that briefs were simply arguments, and did not require any evidentiary documentation. Each party could have requested additional time due to this misunderstanding. Alternatively, MORENO defendants could have filed a Declaration of Attorney Mistake which would have ensured mandatory relief. In reality, these defendants had decided between themselves that the CFDE had made enough money from me, and the case was now ready to be dismissed.

370. In reality, having reached a covert agreement between themselves, each one of these defendants was play acting their part. None of the parties had any intention to schedule the matter for trial They were simply pretending.

371. I protested and on my own attempted to file the incriminating documents showing fraud.

372. Defendant ZAYNER did not bother to read the submissions and denied the motion with prejudice.

373. Defendants, each one of them, breached their ethical, fiduciary, and their professional duties towards me by conspiring to defraud me.

374. A motion to void the Judgment of 2008, and all related Judgments, was filed later by me, which was also denied by defendant ZAYNER without reading any of the evidence presented.

### FRAUD RELATED TO ENFORCEMENT OF SUPPORT ORDERS
Against PARDUE, MORENO Defendants, FC-DCSS Defendants

375. PARDUE represented me between 2006 – 2008 in Santa Clara County under 103FL116302.

376. During this period, defendant PARDUE intentionally, with the purpose of conspiring with B&B Defendants and defendant KHERA, concealed from me the fact that defendant's income was substantially more than he had disclosed, and that he owed child and support on this income.

377. Although he was required to represent my interests in the divorce proceedings, Defendant PARDUE colluded with B&B Defendants, and defendants WHITE, SCHUSTER, KHERA and DAVILA. He intentionally failed to provide a computation of arrearages to the Court.

378. Defendant PARDUE had a duty to seek arrears. He intentionally failed in performing this duty. Defendant falsely informed me that defendant KHERA was current on support payment, and that he had not sold any community assets. At the time defendant made these representations to me, he was aware that these were false. I relied on his false representations  and was damaged as a consequence.

379. MORENO Defendants represented me between 2008 - 2013 in Santa Clara County and in Fresno County under 103FL116302 and 05 CEFS 02946 respectively.

380. During this period, MORENO defendants intentionally, with the purpose of conspiring with B&B Defendants, defendants SCHREIBER, and KHERA, intentionally refused to seek Child or Spousal Support arrears from the defendants. They even failed to provide details of arrearages owed to the Court during the 3 year trial conducted at an expense of $220,000 to me. Defendants conspired with defendant SCHREIBER to waive arrearages in exchange of attorney fee.

381. Although these defendants were required to represent my interests in the divorce proceedings, MORENO Defendants, and defendant PARDUE colluded with B&B Defendants, and defendants WHITE, SCHUSTER, KHERA and DAVILA in helping defendant KHERA evade child and spousal support payment, and violate Court orders.

382. Between 2005 – 2018, FC-DCSS defendants have refused to enforce Court orders. FC-DCSS told me to "go get an attorney". Defendants had no authority to discriminate against this Title IVD client, nor did they have authority to provide only partial range of services, refusing to provide their full range of services.

383. In 2014, I filed a motion for enforcement of support on my own. FC-DCSS intentionally, with an intent to sabotage my efforts, made false representation that defendant KHERA was current on support.

384. Defendant GREEN culpably, with an intent to injure me, denied my request for enforcement of Child Support orders *with prejudice,* in violation of several federal and state laws related to child support. The matter was appealed as F070938. The Appellate Court released an Opinion in April 2018, implying that defendant GREEN's order does not state that the Motion was denied with prejudice. This is simply a mis-statement, as defendant GREEN had made a written declaration stating that he denied the motion *with prejudice.*

385. I engaged with communication with defendant GREEN's counsel, requesting her to have the error corrected on the appellate division. I did not receive a favourable response from her. Defendant GREEN is a Judge, and therefore he has an ethical obligation to not benefit from an error or mistake of the appellate court, especially since that error or mistake arises due to an offense that he has committed by unlawfully threatening to refuse certification of settled statement, with an intent to sabotage my appeal, and by his refusal to release the digital recordings of the proceedings. These culpable acts of defendant GREEN have prejudiced me, and forced Appellate Court to make a ruling against me. Defendant GREEN had culpably benefited from his crimes.

386. In early 2015, I filed a contempt motion to enforce support.. Matter was heard by COMISSIONER LE MON Defendant DYER, with an intention to sabotage my efforts, made false representations stating that defendant KHERA was current on support. As a consequence, my motion was again denied.

387. Defendant KHERA has engaged in violation of federal laws 42 USC 666 (a)(9)(c ), and 18 USC 228, which make non payment of child support a crime. Each of these defendants have culpably conspired to aid and abet him in the commission of this offense. Refusal of PARDUE, MORENO defendants, and FC-Defendants to enforce support orders represent failure of these agents to perform their professional duties.

FRAUD RELATED TO CHILD CUSTODY

388. In 2010, defendant KHERA voluntarily resigned from his job at CISCO SYSTEMS, where he was earning over $800,000 per annum and opened a string of cash based businesses.  Fearing that his resignation would have serious impact on my ability to support the children, I applied for permission to relocate to India, and secured a wonderful job to open a residential treatment facility in India. The matter of child custody and relocation was presented in Dept 81 before defendant ZAYNER.

389. Defendant ZAYNER appointed BJ Fadem as a Minor's Counsel. She, with permission of defendant ZAYNER, informed the children on the first day that they were not going anywhere. Thereafter the two – ZAYNER and FADEM – wilfully attempted to sabotage my relocation efforts by delaying the matters and generally harassing me and my children at each step.

390. Defendants ZAYNER and FADEM were repeatedly informed that defendant had previously molested the children, and a CPS report had been filed in 2007. Both defendants threatened, harassed, intimidated me into silence refusing to order an FC 3118 evaluation, with the specific intention of protecting defendant KHERA from being exposed.

391. At the end of a two year evaluation process, defendant KHERA attempted to coerce, intimidate our older son to conceal the facts of sexual abuse from the evaluators, and Minor's Counsel. The child reported this matter to his psychotherapist, who immediately reported the matter to CPS.

392. An emergency screening was held in Santa Clara County. Defendant KHERA admitted that he used to "rub a lotion" on the children's genitals due to the rashes they had in their genitals. It was a predictably false statement – the children had never reported a rash.

393. Defendants FADEM and ZAYNER intimidated, harassed, threatened, and vilified me with the specific intention of protecting defendant KHERA - a child molester dad, with ZAYNER engaging

in one of more SCHEMES to defraud me, and in order to protect and shield defendant KHERA, defendant ZAYNER attempted to unlawfully silence me by deprivation of my rights to substantive and procedural due process under color of law.

393.1   Between 2010 – December 2012, in an attempt to unlawfully protect defendant KHERA, defendant ZAYNER rubber stamped each proposed order that B&B Defendants put forth before him and denied each and every request I made to him.

393.2   Defendant ZAYNER threatened, harassed, intimidated me generally, and mocked, humiliated me for refusing to silence the children's allegations of sexual abuse.

393.3   He ignored my oral and written disclosures of sexual abuse of the children. He ordered FC 730 evaluation over my protests.

393.4   Subsequently after defendant KHERA attempted to threaten and intimidate my son to conceal the acts of sexual misconduct,  a new FC 3118 evaluation had to be conducted – which wasted another 2 years. Such actions were intentional, caused significant damage to my career, severe emotional distress, and severe physical and financial distress as I had to travel almost 2-3 times per week from Fresno to Santa Clara County, and lost my job in India.

393.5   Between 2010 – 2014, defendant ZAYNER culpably sabotaged my motions for relief by denying three successive and desperate requests for pendent lite awards filed under FC 2030 and three oral requests for the award under FC 2032. Attorneys ROBYN YEAMAN, and another attorney I hired to represent me on my Appeal, were forced to resign as I was unable to pay for their services. Having forced the attorneys to resign, defendant ZAYNER later denied each of my motions on technical grounds, for my alleged failure to adhere to local rules.

393.6   The matter was scheduled for trial on Sept 9, 2014 in Dept 6, with Judge ZEPEDA. Defendant ZAYNER engaged in exparte communication with Judge Zepeda ,the presiding Judge, and corruptly influenced her to refuse to take the matter to trial. On the morning of the trial, Judge Zepeda insisted on facilitating an agreement instead of conducting the trial. Defendant ZAYNER also falsely informed her that attorney fee issue was res judicata. Defendant ZAYNER had denied my *pendente lite* motions, not my attorney fee motions, but his false statements corruptly influenced Judge Zepeda to deny my request for attorney fee award (1503)

393.7   Defendant ZAYNER, and upon his advice, Judge ZEPEA, intentionally harm me in my Appeal, specifically ordered that Filing Clerks refuse to file the exhibits.

393.8  In 2013, 2014, defendant ZAYNER corruptly influenced the Court Reporters Yakushi and 2 others, to refuse to provide the incriminating transcripts on my appeal.

394.   To threated, intimidate, and harass me further, defendant ZAYNER arranged hearings at least 7 – 10 times in Santa Clara County. I had to travel from Fresno to Santa Clara County for the hearings.

394.1 On Sept 10, 2014, defendant ZAYNER, with an intention to unlawfully silence me, held an exparte communication with Judge ZEPEDA, presiding over the Custody Trial, and corruptly influenced her to unlawfully cancel the trial that had been scheduled. Defendant ZAYNER intentionally did this to prevent sexual abuse allegations against defendant KHERA from being taken to trial, and thereby exposed.

395.  As a consequence of defendant KHERA, ZAYNER, B&B Defendants' and Judge ZEPEDA's such actions,  the child custody matter took 4 years, by which time I lost the job I had secured in India, and also lost the ability to pursue in my career in US.

### FRAUD RELATED TO CIVIL SUITS

396.  In 2010, JUDITH SOLEY advised me to file a legal malpractice suit against defendant PARDUE.

397.  I sought a referral to a competent attorney from MORENO defendants. These defendants informed me that MILLEN had the skills, expertise and experience in legal malpractice. Later, I would come to know that MILLEN had absolutely zero experience on legal malpractice suits. He was simply a member of the CFDE cartel which routinely engages in kickback referrals, without any consideration to the quality of such representations.   Between 2007 – 2013, defendant MILLEN pretended to represent me on the legal malpractice case. However, he was essentially just billing me unnecessarily, and had no intention of representing me.

398.  When the decision of (KHERA v SAMEER, 2012) was released, it alluded to shortfalls in the filings of MORENO defendants. In order to honestly represent me, MILLEN would have had to address MORENO's shortfalls. Hence, to collude with, and to protect MORENO defendants, defendant MILLEN breached his professional duties towards me and began harassing me for money even though his retainer had not been exhausted yet. He eventually abandoned me, not because he was not paid, but because he wished to protect the corrupt practices of MORENO defendants.

399.  Because defendant MILLEN abandoned me just a few months before the statutory time limit of 5 year in which to commence a trial was running out, I was unable to secure appropriate counsel and was damaged as a consequence of his misconduct.

400.  MILLEN had falsely billed me approx. $15,000 - $20,000 – refusing to provide the services he had been recruited and paid to perform due to the alleged conspiracy to protect the CFDE members of his cartel.

401. In Feb 2015, I filed in Fresno Civil Court, a complaint against 13 parties, SCHREIBER, B&B Defendants, MORENO Defendants, ZAYNER, for actions related to child support. The matter was heard in Dept 403, with defendant KAPETAN as the presiding judge.

402.  In an attempt to conceal the wrongdoing of other judicial officers and attorney cabal, defendant KAPETAN made several illegal and unlawful orders against me, rubber stamping each and every proposed order made by the defendants without even bothering to read my submissions.

403. B&B Defendants filed a Special Motion to Strike on Aptil 13, 2015 or thereabouts. I filed an opposition on May 5, 2015. The matter was scheduled to be heard on May 21, 2015. However, defendant KAPETAN, with an intent to protect the corrupt cabal, and to silence me, excluded my opposition documents for late filing, and rubber stamped B&B Defendants motion even though I had filed 14 days before the hearing, and my complaint was not a SLAPP suit.

404. I filed a first amended complaint on April 14, 2015, Defendant KAPETAN rubber stamped defendant SCHREIBER's proposed order, and unlawfully excluded the first amended complaint.

405. Defendant SCHREIBER filed a Special Motion to Strike on April 27, 2015, almost 14 days after my first amended complaint was filed. The motion was filed without scheduling a hearing. Because these motions were filed so close to each other, I requested additional time respond. Defendant KAPTEN, with an intent to oppress and suppress me, rubber stamped defendant SCHREIBER's proposed order denying my request, and granted SCHREIBER motion that was based on the original complaint – not on the FAC.

406. I relocated to New Zealand in June 2015, requesting that no documents or motions be filed till September. I sought an continuation/stay. Defendant KAPETAN rubber stamped defendants' proposed order and denied my motion for stay, or continuation.

**EXTRINSIC FRAUD**

407. I retained DAVIDSON, who volunteered to represent me in my Civil Suits in and Fresno County, during my absence between June - September. In July 2015  DAVIDSON used wire services to transmit a signed copy of the Substitution of Attorney Form to me in New Zealand.

408. Between June 14, 2015 and Aug 10, 2015, defendant DAVIDSON used wire services to inform me that he was in conversation with each opposing counsel, and would secure a continuation for me on the cases in Santa Clara County.

409. Between June 2015 and July 2015, inclusive I communicated with DAVIDSON and came away with the knowledge that he continued to represent me in all these matters, and was in communication with opposing Counsels. Towards the end of July, 2015, my communications with him became less frequent, as I generally talked to his secretary who informed me he was busy, and would get back to me. At no time, did either DAVIDSON, or his secretary inform me that he was not representing me.

410. Opposing Counsels GARY HUNT, ARTHUR HARRIS, KRISTINE IVERSON, MARCHALL WHITNEY, JAMES MURPHY, JOHN BURTON, SHARON NAGLE conspired with DAVIDSON and corruptly influenced him to abandon me.

411. As a consequence of this conspiracy, DAVIDSON, having assured me of his representation, and having signed the substitution of attorney forms, failed to appear before the Court, failed to file the Substitution of attorney forms with the court, failed to represent me, and failed to inform me that he had no intention of representing me. In collusion with such abandonment, defendant KAPETAN, Judge ELFVIN, and Judge SIMPSON issued default judgments against me.  The matters had to be appealed. Because I was unaware until late August 2015, of the fact that he had abandoned me I was unable to appeal certain Judgments.

412. During my Noticed Unavailability, each defendant filed several motions. Defendant KAPETAN rubber stamped their proposed orders without bothering to see whether the documents had been served on me at all. This included an order for sanctions of over $60,000.

413. Defendant KAPETAN was engaged in a blatant act of protecting the CFDE members from being exposed and held accountable for their crimes. To this effect, even my request for declarative relief was deemed to be a SLAPP request and was denied with prejudice, with an imposition of sanctions.

414. Three complaints were filed against B&B Defendants, MOENO defendants and KHERA defendant in Santa Clara County. In each of these complaints, defendant engaged in extrinsic fraud, with the full participation of the Judicial Officers. Together, they unlawfully dismissed my complaint frivolously, without a reasonable basis, simply to silence me, oppress me and supporess me,denying substantive and procedural due process, and violating my civil rights to petition, justice and property.

415. Defendants such fraudulent actions have spawned at least 6 appeals in the Fifth and Sixth Appellate Court, and one request for Judicial Review.

416. Such actions of DAVIDSON are the foreseeable and proximate cause of my INJURIES & DAMAGES. But for his actions, I would not have bene damaged.

417. In 2014, I became aware that defendant had defrauded me of the DLF property, and that he had retained control of both pieces of land, while I was assigned a fictional piece of land.

418. I filed a motion on Superior Court to address this fraud. The matter was scheduled for trial in June 5, 2015. Defendant and his attorney SCHREIBER conspired to physically prevented me from attending the Mandatory Settlement Conference, and the Trial in Santa Clara by purposely scheduling a parallel proceeding in Fresno County.

419. Defendant falsely informed me that he would go to the Santa Clara Court and inform the Judge that there had been a scheduling conflict and secure another date. I had relied on his false representation.

420. Instead, defendant turned up at the Santa Clara Court, and informed the Judicial Officer that I had abandoned the trial. The case against KHERA was dismissed. Since I was scheduled to relocate to New Zealand on June 29, 2015, I was unable to refile the motion. Defendant continued to refuse me access to even one piece of land.

421. In June, 2015, and in September, defendant's Counsel JODY WINTERs filed an ANTI SLAPP motion during my Noticed Unavailability. In Sept 2015, WINTERS also filed a Motion for Attorney fee during my Noticed Unavailability. I was not served with moving papers on either of these motions and defendant KAPETAN allowed the matter to proceed, despite the fact that I had requested and she had previously denied an exparte request for continuation and/or stay, and she was aware that I was unavailable until end of Sept 2015 and had not been served.

422. Defendants SCHREIBER, and B&B Defendants also filed Attorney fee motions in my noticed unavailability and were granted these motions by defendant KAPETAN.

423. Each one of these defendants had engaged in extensive billing fraud. Judge KAPETAN was well aware of this, it was evidenced from their submissions that I saw later. But in order to protect the interests of the corrupt CFDE attorneys, and Judicial Officers, defendant KAPETAN – with an explicit intention of suppressing, oppressing nd silencing me, granted each of their motions, unopposed, by default, without bothering to check their claims for accuracy and veracity.

424. In or around Nov 2016, I filed a Motion to set aside as the underlying motion had been granted by default in my absence, and represented extrinsic fraud. Defendant KAPETAN, again in an attempt to oppress, suppress and silence me, rubber stamped the proposed orders prepared by the defendants, maliciously denying my motion.

425. In 2014, I also filed a complaint on legal malpractice against MORENO defendants. Exactly in the same manner, Judge ELFVIN, with an explicit intention of protecting corrupt MORENO defendants, dismissed my complaint and sanctioned me approx. $20,000.

426. Defendants then waited until I was relocating to NZ, and filed a cross complaint for $150,000 – which I did not owe them, and which was simply their attempt to defraud me. The cross complaint was filed during my noticed unavailability and scheduled for hearing in my absence. I was not served. Judge ELFVIN, without verifying the cross complaint unlawfully, maliciously, in order to suppress, oppress and silence me, and to aid and abet the CFDE corrupt attorneys, granted their cross complaint, maliciously ordering me to pay defendants $150,000 which was not owed to them, which was a consequence of defendant's fraudulent billing for work that was never performed.

427. In each of these cases, the CFDE Judicial officers helped the CFDE perpetrators cover up their fraud, and rubber stamped their proposed orders without any regard for justice, simply to protect the interests of the CFDE attorneys, and culpably harmed, and injured the victim.

428. Each of these incidents may appear as isolated cases, but they are all connected together by the functioning of the CFDE which operated across California, and exists to defraud innocent victims, disadvantaged, disfavoured single mothers. The similarity in the pattern of execution shows that the members are organized in horizontal and vertical hierarchies ,and perform similar racketeering acts to promote the interests of the CFDE, regardless of where they are within California.

429. The incidents above provide examples of heinous conduct of the CFDE operatives as a whole, but especially the CFDE Judicial Officers who, quite simply, act as the mafia dons.

### TAX FRAUD & MONEY LAUNDERING

430. Between 2000 and 2003, in anticipation of the separation, defendant KHERA sold 2 properties in Australia, at _6 Chuvel Close, Wahroonga, Sydney, Australia_ (buying price 360,000, deposit 25%; selling price 550,000) and at _Kings Street, Paramatta, Sydney, Australia_ (Buying price 149,000, initial deposit 40%; selling price $220,000). During dissolution proceedings, Defendant claimed that the parties had no property in Sydney.

431. These amounts were not reflected on his tax statements in Australia, or in US. These properties, or the funds derived from the sale of these properties, was omitted from the property division.  They were omitted from computation of spousal support or child support calculations. Defendant mailed documents to Sydney to effect these sales. He engaged in communication over internet thru emails, and also engaged in telephone conversations with the brokers to complete the sale of these properties.

432. The proceeds from the sale were transmitted to his bank accounts in Sydney, Australia. Defendant even travelled to Australia in 2006 to transact in these accounts, used these community funds to pay for his honeymoon after his marriage to DEVANI, and transmitted rest of these funds to US using banks and wire transfers.  Defendant KHERA did not declare this income either in Australia or in US for tax purposes and paid no tax on these proceeds either in Australia, or in US. When asked for tax returns of 1998 – 2003, he has refused to provide the tax returns.

433. Defendant KHERA was also fraudulently awarded by defendant DAVILA $450,000 out of the total $550,000 proceeds from sale of family residence. However, defendant claimed that the amounts were equally divided, and refused to pay taxes on the $450,000.

434. As a consequence of his failure to report accurately on tax statements, defendant was able to defraud IRS and evade tax payment.

435. These issues were brought to the notice of defendant DAVILA. Defendant held a close conference with the attorneys, after which my attorney CAMILLA COCHRAN informed me that defendant DAVILA has informed her that the capital gains would be split between parties whereas the funds would be released to defendant KHERA. Defendant DAVILA held that as a consequence, no party would have to pay capital tax. Thus, even though defendant was required to pay capital gain tax on $450,000 that he has earned, defendant DAVILA helped defendant KHERA evade his taxes.

436. As a consequence of such unwritten code of conduct, there was no document that showed defendant had been fraudulent awarded $450,000. The tax return showed the property had been equally divided.

**ABUSE OF PROCESS**

437. For 15 years, defendant KHERA and his attorneys, Defendant SCHREIBER and B&B Defendants, and PARDUE and MORENO defendants concealed defendant KHERA's actual additional income, made false representations on how much defendant had paid, engaged in speech and acts to mislead four courts (Santa Clara, Fresno, Fifth and Sixth Appellate District), regarding the facts of this case, and the applicable laws. Defendants SCHREIBER & B&B Defendants repeatedly advised defendant KHERA NOT to pay court ordered child and spousal support, childcare, medical and tutoring expenses.

438. Defendant KHERA, on the advice of his attorneys has engaged in 15 years of meritless litigation, frivolously making one excuse or the other for non payment of child support.

439. Hundreds of thousands of dollars in child and spousal support, medical expenses, childcare and tutoring expenses remains outstanding and have been funnelled into investments which defendant

KHERA enjoys, while I was forced to take loans and credits to support the children and abandon my education.

440. Defendant KHERA was aware of these orders, his Attorneys were aware of these orders, he understands that he was required to pay these amounts, and has wilfully refused to pay these amounts.

441. Additionally, defendant has engaged in forgery, alteration os documents, and bank fraud by misassigning checks, writing wrong memos on the checks, engaging in fraudulent accounting, and misreprenting the amounts that he has paid, and refusing to pay all of the child and spousal support that he was ordered to pay.

### IMMIGRATION FRAUD

442. In 2010, defendant KHERA applied for naturalization. The Naturalisation application N400 specifically asks at 30H "Have you ever failed to pay Child Support and Alimony". Defendant KHERA made false representations that he was current on both. Q31 asks "Have you ever Given any US govt official any information or documentation that was false, fraudulent, or misleading." Defendant answered no to this question.

443. At the time defendant made these representations, he was aware that he was delinquent on hundreds of thousands in child support, and he had made fraudulent representation in Santa Clara County about his income, his assets and related matters, that he had committed tax fraud over the years 1998 and since, he made fraudulent representations before Judge Cox of Santa Clara County, to defendant DAVILA, ZAYNER, and to fifth and sixth appellate districts. He was in contempt of court for failure to comply with support orders.

### OBSTRUCTION OF JUSTICE

444. Beginning in or about 2014 as I began to represent myself and continuing through the present, as the matter moved from Superior Courts to the Court of Appeals, and beyond, many conspirators engaged in additional conduct designed to prevent detection of their own illegal activities and to provide one another with mutual aid and protection. At times, such conduct constituted obstruction of justice.

445. The following are five *examples* of acts of obstruction engaged in by the conspirators. These are just provided here as examples. There are several dozen instances where each defendant had attempted to obstruct justice.

445.1 First, each and every defendant herein, for the past 15 years, has directly or indirectly conspired to aid and abet defendant KHERA in violating Court Orders regarding ChildSupport, Spousal

Support, and/or Property Division. As a consequence, my children and I have suffered significant material and non material damages.

445.2   Second, upon learning that I had filed to overturn defendant DAVILA's orders, and filed a suit against defendant ZAYNER, another co-conspirator, defendant KAPETAN came to the rescue of ZAYNER and with an intent to oppress, suppress and silence me, unlawfully dismissed my complaint during my Noticed Unavailability, imposed sanctions of approx. $50,000 on me, and then refused to set aside the Judgment. Defendant KAPETAN and the cartel of CFDE attorneys have done this to oppress and suppress me during my noticed unavailability, refused to set aside the orders.

445.3   Third, upon learning that I had filed for sanctions against defendant SCHREIBER, another co-conspirator defendant GREEN dismissed my motion for enforcement of child support orders *with* prejudice so as to purportedly destroy all possibility of sanctions against defendant SCHREIBER and DAVILA. Defendant GREEN did this to oppress and suppress me.

445.4   Fourth, upon learning that defendant GREEN had denied my Motion for enforcement of child support court orders *with prejudice*[2], another co-conspirator Judge KALEMKARIAN, not a party to this suit, but a co-conspirator nevertheless, denied my motion to compel discovery so as to prevent me from collecting arrears that had accumulated from 2003 till date. My requests to force discovery has been denied at least SIX (6) times in the past 10 years, as CFDE defendants band together to help defendant KHERA evade child and spousal support payments and retain control over all the property, even that which had been awarded to me in 2008.

445.5 Fifth, upon learning that MORENO defendants, and B&B Defendants from Santa Clara could be possibly threatened with exposure of their misdeeds and their crimes, another co-conspirator Judge ELFVIN dismissed my complaint of legal malpractice and with an intent to oppress and suppress me, sanctioned me to the amount of over $175,000 frivolously, by making orders during my notice of unavailability,  and then refusing to set them aside. To sabotage the appeal, defendant then denied my motion for fee waiver on appeal.

## PART III:  CLAIMS

## FIRST CAUSE OF ACTION: ATTEMPTS (Model Penal Code 5.01)

---

[2] Requests for Enforcement of child support orders can never be denied *with prejudice.*

Against All Defendants

446.  I incorporate all the preceding and successive paragraphs of this Complaint, and by reference, as if fully set forth herein.

447. This cause of action against all defendants is based on Model Penal Code 5.1.

448. Between 2003 till date, Defendants, each one of them, have conspired to commission of one or more criminal and civil acts punishable under federal and state laws. Defendants have been successful in conspiring to the commission of certain crimes, whereas they have attempted and failed in the commission of other crimes as outlined in preceding sections. The defendants were guilty of an attempt to commit a crime because they were acting with the kind of culpability otherwise required for commission of the crime.

449. In each case, Defendants exhibited an intent to commit the underlying substantive offense and then took one or more substantial steps towards that end. This cause of action deals with specific crimes that defendants have attempted, or are in the process of attempting, and those which have resulted in injuries and damages to me. (5.01).

450.  Between Sept 2003, till date, defendant KHERA, in conspiracy with other defendants, solicited the services of agents B&B Defendants, SCHREIBER, SCHUSTER, WHITE, ELLIS to engage in corrupt activities that were camaflauged as genuine legal proceedings, but were actually meant to defraud me of property, spousal and child support.  Defendants pretended to be involved in litigation, whereas the actual aim of the defendants was to abuse the process and help defendant KHERA evade payment of his child, spousal support, and defraud me of property.

451. Between 2007 - 2010 defendant DAVILA, with a culpable intent of usurp jurisdiction of FC-DCSS, made an order in clear absence of jurisdiction on child support. He also made several orders that were based on fraud, fraudulent representation, and fraud upon the Court. Defendant made these orders to deny me my rights to child support, spousal support, and property. Some of these orders were later over-ruled by COMMISSIONER GREEN, Judge ALLEN HILL, and Fifth Appellate District. At the time defendant DAVILA made these orders, he was aware that he was engaged in a series of acts that represented state and federal offenses

452. Between 2010 - 2014, defendant ZAYNER, with a culpable intent of usurp jurisdiction of FC-DCSS, attempted deny my requests to void unlawful orders. At the time defendant ZAYNER made these orders, he was aware that he was engaged in a series of activities that violated federal and state laws, and were contrary to his duties under Judicial Canons.

453.In Feb 2014, defendant GREEN, with a culpable intent of denying me my rights to child support, attempted to deny my motion for enforcement of child support orders, and then attempted to coerce me into accepting a settled statement that was based on false statements.

454.In 2008, defendants KHERA & SCHREIBER attempted to, but were unsuccessful in inciting COMMISSIONER DUNCAN to violate federal law, and conceal the acts of Judge DAVILA who had rebelled against the Constitution of United States by making orders in clear absence of jurisdiction, and in violation of state laws. (18 USC 2383). However, even though COMMISIONER DUNCAN made an order overruling the Judgment of 2008, defendant SCHEIBER, KHERA and MORENO defendants proceeded to litigate for 8 more years, arguing that the Judgment was enforceable, and meritlessly litigating for 8 years.

455.Between 2003 – 2015, defendants threatened me that if I testified in the Santa Clara Trial Court about KHERA's sexual abuse of the children, I would never see a penny in child support arrears.

456.Between 2010 - 2014, defendant KAPETAN, with a culpable intent, attempted to unlawfully dismiss my complaints against certain defendants. At the time defendant KAPTEN dismissed my complaints, she was aware that she was engaged in a series of activities that violated federal and state laws, and were contrary to her duties under Judicial Canons.

457.Between 2008 – 2014, defendants SCHREIBER and KHERA *attempted* to, but were unsuccessful in inciting Judge ALLEN HILL in violating federal law and conceal the acts of Judge DAVILA who had rebelled against the constitution by making orders in clear absence of jurisdiction, and in violation of state laws.   (18 USC 2383). However, even though in Feb 2014, Judge ALLEN HILL made an order overruling the Judgment of 2008, defendant SCHEIBER, KHERA and FC-DCSS defendants proceeded to claim the legitimacy of the Judgment of 2008 before defendant GREEN, leading to appellate Court involvement thru F 070938. See UNFAIR BUSINESS PRACTICES, para (557-559 inclusive)

In 2011, defendants KHERA and SCHREIBER attempted to threaten, harass, intimidate, blackmail me into waiving child support arrears in conjunction with defendant KHERA, our daughter, and defendant KHERA's friends. See *FRAUD IN CHILD SUPPORT* (para 247-306, inclusive). Also see *FRAUD RELATED TO ENFORCEMENT OF SUPPORT*, para 379-391, *TAX FRAUD & MONEY LAUNDERING* 434-440, *IMMIGRATION FRAUD* 446,447, *OBSTRUCTION OF JUSTICE* (para 455-456)

*458.*There were two parcels of land held in joint names in Delhi – being parcel 4109, and 4110 in DLF Enclave, Phase IV. In the Judgment of 2008, defendant claimed to have given me a "corner" lot of

land. However, neither parcels of land are in the "corner". Defendants KHERA & DEVANI then took control of both parcels of land, and have attempted to defraud me of my share of the property. However, because of timely discovery of the corrupt acts, I filed a motion with the Superior Court. Defendants' attempts were successfully thwarted. Although defendants DEVANI and KHERA continue to retain control over my property, they were unable to unlawfully have it registered in defendant KHERA's sole name, as they had done with other property. See *PROPERTY FRAUD (para 353 – 385), TAX FRAUD & MONEY LAUNDERING (para 434-440), IMMIGRATION FRAUD (para 446-447), OBSTRUCTION OF JUSTICE (para 455-456), EXTRINSIC FRAUD (411-433).*

459. Between 2003 till date, defendant SCHREIBER has repeatedly attempted to have my motions dismissed by claiming that she or her client were not served. In each case, the defendants had been appropriately served, and defendant SCHREIBER, KHERA were found to be making false representations of facts. Defendants attempted EXTRINSIC FRAUD (para 411-433), by attempting to prevent me from filing documents and participating in the proceedings.

460. There are several attempts that these defendants conspired to commit against me, with the explicit intent of defrauding me, taking substantive steps to establish their goals in the furtherance of their scheme to defraud me. Each of these attempts is punishable under the statute that would lead to the crime, or under Model Penal Code 5.01.

461. It was foreseeable that defendants such activities would lead to my injuries. Defendants activities are the proximate cause of my INJURIES & DAMAGES. But for such activities, I would not have suffered these injuries.

## SECOND CAUSE OF ACTION : FRAUD

### AGAINST ALL DEFENDANTS

462. I incorporate all the preceding and successive paragraphs of this Complaint, and by reference, as if fully set forth herein.

463. This cause of action against all defendants alleges that the defendants have conspired with each other and engaged in intrinsic and EXTRINSIC FRAUD.

Between 2003 – 2014, Defendants conspired with each other to deprive me of Spousal Support, appropriate child support, and property division.  These fraudulent acts are specified in *FRAUD IN*

*CHILD SUPPORT* (para 247-306, inclusive), SPOUSAL *SUPPORT FRAUD, at para 303-341, FRAUD RELATED TO ENFORCEMENT OF SUPPORT, (para 379-391),* PROPERTY FRAUD *(para 342 – 374), TAX FRAUD & MONEY LAUNDERING (para* 434-440*), IMMIGRATION FRAUD 446-447, OBSTRUCTION OF JUSTICE* (para 444-445 inclusive).

464. Between 2014 till date, defendants have engaged in intrinsic and EXTRINSIC, to prevent me from securing a remedy by way of damages and declarative relief.

   464.1 Each of these Defendants filed their motions, and scheduled the hearings during my noticed unavailability in Dept 81, Dept 3, in Santa Clara County, and in Depts 403, and 503 in Fresno County. At the time they scheduled these hearings and obtained these orders they were aware, and had been informed that I would not be able to receive the documents, and would not be able to participate. Defendants scheduled hearings and filed documents during this period with an explicit intention of preventing my participation in the proceedings. As a consequence I had several default orders, including but not limited to orders for attorney fee of over $60,000 made against me which had to be appealed. See *EXTRINSIC FRAUD (para 411-433)*

   464.2 I believed I had retained DAVIDSON to represent me during my noticed unavailability from June – Sept 2015, inclusive. However, defendant DAVIDSON informed me that he was holding conversations with opposing counsels. He then conspired with other defendants to injure me by failing to file Substitution of attorney forms, and failing to otherwise represent me. I remained unaware of his misrepresentation until Aug 2015.

   464.3 In 2006 or 2007, defendant KHERA forged my signature on Parcel # 4109, and fraudulently had it transferred in his name without my permission or knowledge. In 2014, I filed a motion on Superior Court to address this fraud. The matter was scheduled for trial in June 5, 2015. Defendant and his attorney SCHREIBER conspired to physically prevent me from attending the Mandatory Settlement Conference, and the Trial. Defendant informed me that he would go to the Court and inform the Judge that theer had been a scheduling conflict. Instead, defendant turned up at the Santa Clara Court, and informed the Judicial Officer that I had abandoned the trial. Defendants actions constitute EXTRINSIC FRAUD.

465. Each defendant performed these acts knowingly, intentionally, culpably, their conduct being wilful, wanton, malicious, and oppressive.

466. Defendants' unlawful conduct has directly, legally, and proximately caused and continues to cause INJURIES & DAMAGES to me in my business and/or property. But for such actions of the defendants I would not have suffered these damages.

## THIRD CAUSE OF ACTION: NEGLIGENCE

### AGAINST ALL DEFENDANTS

467. I re-allege and incorporate by reference each and every allegation in the preceding and succeeding paragraphs as though fully set forth herein

468. Defendants are mandated to provide child support related services – including modification, and enforcement - services to Title IVD clients, without discriminating against these defendants.

469. Between 2005 and 2018, FC-DCSS defendants failed to provide appropriate and timely modification and enforcement services to me.

470. Between 2005 – 2014, I was represented by Defendants PARDUE and MORENO Defendants. Each of them failed to inform me that child support was outstanding, and failed to enforce these orders.

471. As a consequence of defendants failure to inform me, and to enforce support orders, hundreds of thousands of dollars remain uncollected till date.

472. Because I was not aware that KHERA had additional income, therefore I unknowingly waived child and spousal support arrears, and agreed to a step down arrangement.

473. FC-DCSS Defendants were aware that an unknown amount of arrearages had accrued. FC-In 2008, Defendants had calculated the amount of arrearages to be collected at the rate of $2047 per month, until fully exhausted.

474. Defendants have failed to collect these arrearages till date.

475. On Dec 15, 2014, defendant DYER, falsely claimed that defendant KHERA is current on support.

476. Based on such facts, my motion for arrears was denied by defendant GREEN, I had to file an appeal F070938, which – although it affirmed the Trial Court's decision – also implies that the Motion for Enforcement was not denied with prejudice.

477. If defendants claims their failure to enforce court orders were not malicious, then these defendants may have been negligent in their representation. However, having accepted me as their client, and having assured me that they would provide the required services, and having billed me for their services, defendants had a duty to honor their commitments.

478. The failure of these Defendants to enforce orders appropriately, or their failure to inform me that no enforcement services would be provided on Smith Ostlerised part of the child and spousal support payments may be because they may have believed the facts that they presented. However, they had no reasonable grounds to believe that their belief was true.

479. B&B Defendants and SCHREIBER may have been negligent to make the statements that they made about defendants income, spousal and child support obligations. However, defendants had no reasonable grounds to believe that their belief and their statements to the court were true.

480. I relied on their false and misleading statements and their misrepresentations, even if they happened thru their negligence. As a consequence have suffered significant INJURIES & DAMAGES.

481. My reliance on their negligent representations have caused forseeable direct and indirect losses, damages, pain and suffering. For 15 years, I was denied appropriate child and spousal support, and have had adverse Court orders made against me in Fresno & Santa Clara County. I have had legal and other expenses imposed on me leading to INJURIES & DAMAGES.

482. Defendants' negligence, and negligent misrepresentations are the proximate and ultimate cause of my alleged injuries, losses, and damages. But for Defendants' actions I would not have suffered these injuries, losses, and damages. Liability is both joint and several.

## FOURTH CAUSE OF ACTION: FRAUDULENT CONVEYANCING

### Against KHERA DEFENDANTS

483. I incorporate all the preceding and successive paragraphs of this Complaint, and by reference, as if fully set forth herein.

484. This cause of action against defendant arises from Defendant KHERA and DEVANI's wilful sale of *21947 Oakleaf Ct, Cupertino* Property in April 2018 for over $3.3 million. Defendants DEVANI and KHERA purchased this property in 2006 by stealing the community funds as alleged in *PROPERTY FRAUD (para 353 – 385), TAX FRAUD & MONEY LAUNDERING (para 434-440), IMMIGRATION FRAUD (para 446-447), OBSTRUCTION OF JUSTICE (para 455-456), EXTRINSIC FRAUD (411-433)*

485. On or around April 6, 2018, defendant KHERA conspired to sell the property located at 21947 Oakleaf Ct, while an appeal H040565, disputing his ownership, and a RICO complaint alleging fraud and conversion, are pending before the Sixth Appellate District, and this Federal Court.

486. Any efforts to transfer, dispose, or otherwise conceal the property, or funds, by KHERA represents an act of fraudulent conveyancing.

487. Defendant engaged in similar acts between 2000 – 2007, wherein he conspired to sell at least 2 million in community assets which by law, and by court order, he was prohibited from selling and/or transferring.

488. Obviously, the aim in both these instances is was to thwart the impact of any adverse decree which might ultimately be forthcoming on the complaint, the appeal, or from the Federal Suit.

489. In effect it was a resistance to the lawful writ, process, order, rule, decree, or command or two Courts. Defendants have been served the documents on appeal in 2013.

490. Defendants were aware that the appeal had been initiated. I have communicated with him repeatedly on this issue since then, including the fact that his ownership of the *21947 Oakleaf Ct, Cupertino* Residence was disputed.

491. Defendant was also mailed the documents of this lawsuit in Jan 2018. Summons and complaint was also sent to him thru email. He has refused to waive service and has been evading service by a process server, but he did receive the documents, and has since then resisted being personally served. His attorneys are defendants in this matter, and have been served and are aware of the pending litigation.

492. The origin of the funds used for purchase of this property is known to each and every defendant here. None of them have filed a cross complaint to prevent defendant KHERA from such fraudulent conveyance. Therefore, it must be surmised that the other defendants are conspiring once again to help defendant KHERA in his attempts to evade the debts that he owed me.

493. As a foreseeable consequence of this illegal sale, I have been injured. Defendants' such actions are the foreseeable and the proximate cause of my alleged INJURIES & DAMAGES. But for Defendants' actions I would not have suffered these losses.

## FIFTH CAUSE OF ACTION: UNJUST ENRICHMENT

Against KHERA defendants, PARDUE, B&B Defendants, MORENO Defendants, MILLEN, T&T Defendants

494. I incorporate all the preceding and successive paragraphs of this Complaint, and by reference, as if fully set forth herein.

495. This cause of action against defendant arises from unjust enrichment that these defendants have enjoyed for the last 15 years or so.

496. Between 2003 – 2015, over my protest, defendant forcibly sold off all my stock options held in his Smith Barney accounts. Defendants DEVANI have benefitted from investment activities of this fraudulently acquired funds.

497. Between 2003 – 2016, defendant KHERA deducted tax at source from the community property that he sold on my behalf at his tax rates. He used those unlawfully gained tax credits to his advantage, refusing to provide me a financial declaration and statement that would enable me to seek tax reimbursements. I was unable to claim tax refunds, whereas he claimed benefits of such extra taxation to my detriment.

498. Defendant KHERA benefited by withholding the outstanding child and spousal support payments of hundreds of thousands of dollars and has benefitted from not having to pay spousal support of over $10,000 per month for over 15 years, and continuing.

499. All these funds, stolen illegally from me, were invested. Defendant KHERA has recently sold the Cupertino property for $3.3 million, the ownership of which property was disputed, using funds stolen from community to generate an investment income of over $1.5 million. His San Jose house, purchased with stolen community funds, purchased atfor $600,000 in 2004, is worth over $1.5million, an increase of $700,000.

500. MORENO defendants received over $350,000 for services that they either did not perform, or performed in conspiracy with opposing defendants. They have been unjustly enriched by an amount in excess of $350,000 to my detriment.

501. MILLEN has been unjustly enriched by an amount in excess of $20,000 to my detriment as he conspired with others to defraud me, at the same time billing me for attorney fee. T&T Defendants have been unjustly enriched by an amount of over $20,000, to my detriment. They conspired against me and yet continued to bill me for attorney fee.  These defendants had an contract with me that they would provide ethical and honest services to me. Defendants failed to do that, and cannot, in good conscience and equity, retain the benefits from their actions of defrauding me, and engaging in kickbacks, bribes and other instruments of corruption

502. Defendants have been unjustly enriched at my expense, and maintenance of the enrichment would be contrary to the rules and principles of equity. Defendants have also been additionally enriched through the receipt of payments, or other kickbacks and referrals and instruments of corruption that benefited them due to the conspiratorial behaviour.

503. I therefore demand restitution from the Defendants in the form of actual damages, exemplary damages, and attorneys' fees.Defendants' unjust enrichment was a foreseeable and the proximate

cause of my  alleged INJURIES & DAMAGES.  But for Defendants' actions I would not have
suffered these losses.

## SIXTH CAUSE OF ACTION:  DEPRIVATION OF CIVIL RIGHTS (42 USC 1983, 18 USC 241, 242)

### Against ALL Defendants

504.  I incorporate all the preceding and successive paragraphs of this Complaint, and by reference, as if
fully set forth herein.

505. Between 2003 till date, defendants, each one of them, have conspired to deprive me of my
constitutional, and statutory rights.

506.  Defendants impaired my  right to voluntarily enter into a mutually beneficial marital settlement
agreement, thru their multiple unconscionable acts of coercion, threats and intimidation.  Their
actions violate freedom to contract by creating a completely "unconscionable marital agreement",
which no person in their right mind would enter, and which is totally void of "quid pro quo"
redemption.

507.  Since 2003 till date, Defendants' have deprived me of my right to my property guaranteed under
the fifth amendment, and my right to appropriate and timely child support and spousal support
guaranteed by California's statutory codes, and settled laws.

508.  Defendants have performed these acts, culpably intending to deprive me of my rights under Federal
Constitutional law, Article 1 Section 10; Bill of Rights – First, Fifth, and Fourteenth Amendment);
42 USC 666, 42 USC 1981; 42 USC 1982;  42 USC 1985 (3); 42 USC 1986; 42 USC 1988 (a)-(c )
and Title IVD laws.

509. Since 2005, I have been a Title IVD client of FC-DCSS. FC-DCSS was required to enforce the Child
Support, Spousal Support Orders, including the orders related to Medical, Childcare and
Transportation expenses. FC-DCSS was required to enforce arrearages as well. FC-DCSS was required
to perform these services without discrimination based on color, gender, sex or socio-economic
background.

510. FC-DCSS has been securing from me, an amount of $25 per annum as a valuable consideration for
providing these services to me.

511. FC-DCSS refused to enforce the complete support orders. Instead, it simply secured the base component of the orders. As a consequence of such partial fulfilment of the requested services, defendant was able to conceal and evade payments of hundreds of thousands of dollars in child and spousal support, medical expenses, childcare expenses.

512. FC-DCSS's refusal to provide its full range of services to me simply because I am not a Title IVA client, represents discrimination against me that is based some arbitrary class distinction, or a socio-economic class distinction, representing a violation of my fourteenth amendment rights to equality.

513. Whereas FC-DCSS had the authority to refuse providing services to me, once it undertook to provide enforcement services, it could not discriminate against me based on the *type* of order that the DCSS Court had made. If it disagreed with the *type* of the order, and did not wish to enforce Smith Oslterised payments, it was required to object to issuance of such orders, or seek an alternate order. By failing to represent me in the trial between 2008 – 2014, by failure to proceed with the Motion for Modification of child support order filed in 2005, and by failing to secure temporary support, it waived its ability to secure only sum certified orders. Therefore, having failed to seek appropriate orders from the Court, FC-DCSS is estopped from claiming that any of these orders are inappropriate and unenforceable.

514. Additionally, FC-Defendants' claim that it is required to enforce only sum-certified Court orders is not based on any statutory authority or legal provision, but is based on an arbitrary discrimination between Title IVD clients. Such discrimination lacks statutory support.

515. All the defendants needed to do was to make a wage assignment order. Defendant KHERA was a high income earner, and his company would have accepted the wage assignment. FC-DCSS Defendants intentionally, with malice, and with an intention of protecting wealthy CFDE payors, and their CFDE attorneys, wilfully chose not to do make a wage assignment order.

516. Their refusal to enforce orders only for the non Title IVD clients represents violation of my civil rights to equality under the 14th amendment.

517. KAPETAN, GREEN, DAVILA and ZAYNER conspired with other members of the cartel, and illegally, unlawfully deprived me of my civil rights to substantive and procedural justice, under color of law, by dismissing each of my motions, and my complaints culpably, arbitrarily, without due process.

518. For further details and specificity of deprivation of rights, see *FRAUD IN SANTA CLARA COUNTY, FRAUD IN CHILD SUPPORT, FRAUD RELATED TO SPOUSAL SUPPORT, FRAUD RELATED TO PROPERTY, FRAUD RELATED TO ENFORCEMENT OF SUPPORT ORDERS, FRAUD RELATED*

*TO CHILD CUSTODY, FRAUD RELATED TO CIVIL SUITS, EXTRINSIC FRAUD, ABUSE OF PROCESS, under the  ALLEGATIONS.*

519. At the time these defendants acted as alleged, and conspired against me, each of them was aware that their actions were unlawful. Each defendant engaged in acts that were meant to protect their own interests, and the interests of the defendant attorneys. In doing so, each of these defendants culpably, with an intent to injure me, and to protect the activities of the cartel, deprived me of my right to substantive, and procedural justice by refusing to allow to take the matter to trial.

520. It was reasonably foreseeable that defendants' actions would cause injuries to me. Defendants' such actions are the proximate cause of my  alleged INJURIES & DAMAGES.  But for Defendants' actions I would not have suffered these losses.

## SEVENTH CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY & COVENENT OF GOOD FAITH & FAIR DEALING

Against KHERA defendants, PARDUE, MORENO DEFENDANTS, MILLEN, T&T Defendants, DAVILA, GREEN, ZAYNER, KAPETAN, MILLEN, DAVIDSON, FC-DEFENDANTS, DAVIDSON

521.  I reaffirm and re-allege all the preceding and successive paragraphs as if set forth more fully herein below. I incorporate all the preceding paragraphs of this Complaint, and by reference, as if fully set forth herein.

522.  Between 2003 till date, the above mentioned Defendants have had absolute discretion or power delegated over the legal interests and assets that belonged to me.

523.  Defendants conspired to defraud me by breaching their fiduciary duty to me, by performing the fraudulent acts described in ALLEGATIONS (para 243 - 445 inclusive), which were contrary to my stated intentions; contrary to my interests; and contrary to my rights. Defendants committed one or more acts of fraud as averred in ALLEGATIONS, para 243 - 445 inclusive.

524.   I trusted defendant KHERA, and therefore his representatives, my attorneys, and the judicial officers to protect my assets and legal interests because these parties had control over my assets and legal interests. I was extremely vulnerable and dependent on these parties who had the power and discretion to make decisions about these assets and legal interests, and in which I reposed trust and confidence, especially given that I am not a lawyer, paralegal, or a Judge, and I had just arrived in

US, had never had a divorce in my family, and was totally unaware of laws, proceedings and legal actions.

525. These defendants, each one of them, accordingly owed a fiduciary responsibility to me, being a spouse, attorneys-in-fact, Judicial officers and licensed professionals. They have also breached the covenant of good faith and fair dealing that I was entitled to as per their contractual obligations to me.

526. The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to me in my person, and in my business. I seek an award of damages in compensation for, among other things, the millions of dollars Defendants stole from me in property, child support and spousal support and attorney fee.

527. It was reasonably foreseeable that I would be injured by defendants' actions. Defendants actions are the proximate cause of my INJURIES & DAMAGES. But for such actions, I would not have been injured.

## EIGHTH CAUSE OF ACTION: INTENTIONAL  INFLICTION OF EMOTIONAL DISTRESS

### Against All Defendants

528. All prior paragraphs are re-alleged and incorporated as if set forth in full. See ALLEGATIONS.

529. The actions of each of these defendants were CULPABLE, extreme, and outrageous, malicious, fraudulent, and oppressive, reasonably and foreseeably causing me severe emotional distress.

530. In committing the acts described above, defendant KHERA, and his group of co-conspirators foreseeably damaged, injured, and deprived me and caused me to be deprived of rights, privileges, and immunities relating to substantive, procedural due process, access to justice, rights to child support, spousal support, property, honest services, rich to peace and happiness as guaranteed by the constitution, federal and state laws, inflicting horrendous emotional injuries on me.

531. Defendants' conduct went beyond all reasonable bounds of decency, in breach of fiduciary duties, and the position of authority that gave them real power to affect my life and wellbeing.

532. Each of them was always aware of my fragile emotional state, the struggles that their fraud imposed upon me, and the requirements of child support, spousal support, and property division, and legislated under various code sections. Each defendants wilfully, culpably, with an intent to injure me, agreed to wilfully, maliciously, conspired to injure me.

533.  As a direct consequence of defendants' malicious actions, I faced economic depravity, was *forced* to relocate to another country with my children, in an effort to survive. Defendants' conduct was inhuman, cruel, beyond any and all societal norms. There have been occasions when there was no money to buy food, and groceries even though defendant owed millions in child support, spousal support and property. It has deeply injured me and has left me emotionally debilitated, for the past 15 years.

534.  I suffered acute and chronic/subchronic major depression, chronic/subchronic insomnia, chronic/subchronic mood swings, chronic social isolation, chronic/subchronic anhedonia, chronic/subchronic anxiety, worry, mortification, shock, chronic/ subchronic Post Traumatic Stress Disorder, chronic/subchronic Major Depressive Disorder, chronic/subchronic Adjustment Disorder, chronic/subchronic Generalized Anxiety Disorder, stomach upset, humiliation, embarrassment, indignity, ordeal, nightmares, ongoing reduced standard of living, ongoing poverty, ongoing litigation related stressors, ongoing financial stressors, loss of vocation and ongoing related loss of self-esteem, loss of self-confidence, stress-related heart problems, stress-related stroke, stress-related stomach problems, stress related to being forced into a role of a sole caregiver for the children, recurrent headaches, nervousness, fright, grief, loss of trust, loss of faith in men, in the justice system, in god, depersonalization, panic attacks, general neurosis, loss of family and friends, social and financial drift into poverty, experiences of shame, and loss of confidence, crying spells, fear for children, terror, fear of personal safety, fear of financial safety, distress, fear and anxiety related to being forced to drive the children.

535.  I suffered loss of enjoyment of life, lowered lifestyle and poverty, due to lack of finances, due to burdens imposed on me by litigation, loss of ability for a natural talent for psychotherapy career, loss of vocation leading to depression, anxiety, worry, as a consequence of her inability to complete her education due to defendants' misconduct, and related financial stressors, depression, anxiety, worry, insomnia, social isolation, due to impending relocation and loss of home, and friends.

536.  I suffered impairment of avocational activities like writing, gardening and photography. Worry, anxiety, humiliation, embarrassment, financial deprivation, medical problems as a consequence of reduced standard of living imposed on her due to defendants ' misconduct.

537.  I am 56 years old, has no assets except her home, has no IRA, or 401K, no pension plans, and is not entitled to social security in US. My career was intentionally sabotaged by defendants leading to

severe  emotional distress in the form of worry, anxiety, and concern for future, and future ordeals as a consequence of my inability to pursue a career, and gainful employment.

538.  I experience fright, terror, fear and other forms of emotional distress related to threats – including but not limited to murder threats - intimidation, blackmail, trespass, by KHERA and other members of his "cabal."

539.  I had a stroke, have been diagnosed with heart problems, have recurrent chest pains, and several medical conditions caused by excessive stress.

540.  I have experienced  severe emotional distress, shame, humiliation, embarrassment by the malicious, oppressive, and unlawful actions of the CFDE Judicial Officers.

541.  Defendants' acts were intentionally carried out in concert with other defendants in order to inflict severe emotional distress on me, and to silence, and disable me. Defendants conduct was wilfull and malicious, undertaken with the intent to inflict harm, and to blackmail and threaten me into complying with their unlawful demands. But for their such actions, I would not have suffered such emotional injuries.


## NINETH CAUSE OF ACTION: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### Against All Defendants

542. I re-allege and incorporate by reference each and every allegation in the preceding and succeeding paragraphs as though fully set forth herein

543. Each of the named, and factiously named defendants have committed acts with absolute and reckless disregard to law. The injuries inflicted by their acts are continuous and ongoing.

544. Defendants may have been negligent in their actions, but they had no reasonable grounds to perform the actions that they have performed. Their negligence has resulted in severe emotional injuries to me.

545. Their actions have inflicted severe emotional damage on me. As a consequence I and my entire family have had severe psychological, physical and emotional problems. Defendants actions have caused severe emotional distress, PTSD, and trauma. It was reasonably foreseeable that such acts of defendants would injure me emotionally.

546. Defendants actions are the proximate cause of my emotional, physical, injuries, losses, pain and suffering. These results were forseeable consequences of defendants' misconduct. Liability is both joint and several.

547. But for defendants' actions, I would not have suffered such emotional damage.

## TENTH CAUSE OF ACTION: FALSE POLICE REPORT AS OBSTRUCTION OF JUSTICE & DEFAMATION (18 USC 35, 18 USC 1500 et seq)

### Against KHERA

548. I reaffirm and re-allege all the preceding and successive paragraphs as if set forth more fully herein below.

549. Between June 2015 and Feb 2016, defendant KHERA maliciously, with the intention of threatening and harassing me, and in retaliation for being held accountable for molesting the children, filed a false police report with San Jose Police in violation of 18 USC 35, and to obstruct justice, claiming that I had abducted the two children. At the time defendant filed this report, he was aware that I had taken the children to NZ after seeking permission from the Santa Clara Court, pursuant to child custody order generated on Sept 11, 2014, by Judge ZEPEDA from Dept 6, Santa Clara County.

550. As a consequence of that false police report, my younger son, travelling alone to US in 2016, was taken into custody at the LAX. I incurred significant expenses, and emotional distress, in having him freed from police custody. I had to personally fly to US to ensure that he was safe, and to help him in his emotional trauma of being taken into custody.

551. Defendant *intended* to cause such damage to me, and the results were foreseeable. Defendants such actions are proximate cause of the alleged INJURIES & DAMAGES. But for such acts, I would not have suffered these damages.

## ELEVENTH CAUSE OF ACTION : THEFT/IDENTITY THEFT (Penal Code 529PC)

### Against SCHREIBER, B&B Defendants, DEVANI, KHERA

552. I re-allege and incorporate by reference each and every allegation in the preceding and succeeding paragraphs as though fully set forth herein. The alleged conspiracy is previously averred in FACTUAL ALLEGATIONS, and ALLEGATIONS.

553. The safe deposit that holds approx. $800,000 worth of my jewellery is held in New Delhi. It can be opened only with 2 keys, the keys have to be used simultaneously. One key cannot open the safe deposit box.

553.1 Since 2003, I have repeatedly requested that defendant KHERA give me one key, so neither of us can misappropriate the jewellery, that was worth approx. $200,000 in 2003 and would have been worth over $800,000 in 2018. Defendant has repeatedly refused to provide one key. The matter was also raised before Judge COX in 2005 and 2006. An order was made by Judge COX in 2006, and then by defendant ZAYNER in 2014. Defendant KHERA violated BOTH these orders.

553.2 Since 2006, till date, on various occasions I and the children have seen defendant DEVANI wearing several pieces of my jewellery. These pictures, showing my jewellery are available freely on the internet.

553.3 Between 2004 till date, defendant KHERA, and defendant DEVANI appeared before a bank employee in New Delhi. Defendant DEVANI was introduced as Madhu Sameer and acquired access to my Safe Deposit Box.  Defendants conspired to steal my jewellery, worth around 200,000 in 2003. I have been denied access to the jewellery by defendant.

553.4 In 2007, defendants KHERA and DEVANI travelled to India. Defendant DEVANI was presented as MADHU SAMEER before a Magistrate. Defendants forged my signature and corruptly influenced the Magistrate to transfer the community property, designated as DLF-4109, transferred to defendant KHERA's sole name. Defendants has intended to transfer DLF-4110 similarly to defendant KHERA's account, but were stopped by my attorney in India who advised me to file a motion alleging fraud. A trial was scheduled for Jun 2015 in Santa Clara County.

553.5 Defendants conspired with SCHREIBER to engage in extrinsic fraud to prevent me from appearing for the trial. See EXTRINSIC FRAUD (para 411-433).

554. The SCHWAB and E*Trade Accounts were awarded to me thru the Court order of 2008. I had provided the brokerages with the court order, changed username/password, and even had an oral password imposed, just so that defendant would not be able to access the accounts. Between 2006 till date, defendant has introduced himself as MADHU SAMEER, given the brokerage employees my social security number, and other identifying information that was in his possession and knowledge, and has had statements mailed to him at my expense. Defendant even had the address on the account changed to his own address, so as to exert control over the funds, and use that control to blackmail me into compliance with his demands.

554.1 As a consequence of such illegitimate control of my securities, I have suffered losses in the account, have been denied access to the account, have had opportunity losses.

555. At the time defendants engaged in this conspiracy, each of them was aware that their acts were illegal and criminal and that I would suffer foreseeable injuries as a consequence of their such acts. Defendant KHERA was a fiduciary, and therefore  I had justifiably relied on his misrepresentations, assuming that he would maintain status quo on the assets until a Court Order, and thereafter to honestly comply with the Court order. Defendant, with an intent to defraud me, violated the orders and engaged in theft/identity theft and stole/illegally transferred these assets to his name to my detriment.

556.  Defendants such illegal actions are foreseeable, proximate and ultimate cause of my injuries. But for such actions, I would not have had these injuries.

### TWELVTH CAUSE OF ACTION: UNFAIR BUSINESS PRACTICES

AGAINST B&B Defendants, SCHREIBER, PARDUE, MORENO Defendants, ELLIS, SCHUSTER, WHITE, MILLEN, T&T Defendants, ZAYNER, DAVILA, GREEN, KAPETAN, DAVIDSON

557. I re-allege and incorporate by reference each and every allegation in the preceding and succeeding paragraphs as though fully set forth herein

558.  This cause of actions is brought against Attorneys, Judicial Officers, and other licensed professionals for unfair practices that are contrary to the code of conduct of their profession. The alleged conspiracy is previously averred in FACTUAL ALLEGATIONS, and ALLEGATIONS.

559.  In the past 15 years, B&B defendants, SCHREIBER, PARDUE, MORENO Defendants, ELLIS, MILLEN, T&T Defendants have violated one or more CRPCS, Business and Professional Codes, and ABA Code s of Conduct. Their acts are sanctionable. The following include, but are not limited to the code violations for which the defendants must be reported to State Bar for further actions:

559.1 Between 2007 – 2014, Defendants PARDUE, MILLEN, T&T Defendants, MORENO Defendants, DAVIDSON, violated CRPC 1-400 (D) by making false representations about themselves, their lawfirms, their past experiences, their "specialisations" and affiliations, and their motives to me.

559.2 Between 2005 – 2017, B&B Defendants engaged in unauthorised practice of law when they used their license to present themselves as defendant KHERA's lawful attorneys (CRPC 1-300(A) and (B).

559.3 Between 2010 – 2012, inclusive, defendant SCHREIBER arrived at my house, and threatened, intimidated, harassed, stalked me, and attempted to abduct my son, in violation of CRPC 2-100. The matter was reported to state bar, and to Judge ALLEN HILL. No action was taken against the CFDE attorney.

559.4 Defendants SCHREIBER, B&B Defendants, and PARUDE, MORENO defendants, DAVIDSON, and likely MILLEN and T&T Defendants have engaged in collusion to share the attorney fee by delaying, have the fee awarded in exchange of waiver of child support arrears, misrepresentation and other illegal and unlawful acts of the defendants, a violation under CRPC 2-200 (A) and (B).

559.5 Between 2008 and 2014, PARDUE, MORENO DEFENDANTS, T&T Defendants, MILLEN DAVIDSON have recklessly, intentionally, repeatedly failed to perform legal services competently, in violation of 3-110 (A), (B) and (C).

559.6 Each defendant has violated CRPC 3-200 (A),(B) by bringing claims, or supporting claims, or failing to object against claims that are frivolous, meritless, and in violation of law. Each defendant has aided and abetted and advised defendants KHERA et al, to violate Court orders, or state and federal laws.

559.7 Defendants MILLEN, PARDUE, DAVIDSON maintained relationships with opposing counsels, that were adverse to their relationship with me – representing a violation of CRPC 3-310, 3-320.

559.8 In 2006, when I confronted defendant PARDUE and sought a declaration of Attorney Mistake, defendant PARDUE forged/fabricated a Substitution of Attorney form with my signature, filed it with the Court and vilified me for being"difficult" - in violation of CRPC 3-700 (A). Subsequently, PARDUE destroyed majority of the casefile and the evidence, and documents contained therein, in violation of 3-700 (C).

559.9 Between 2003 till date, defendants SCHREIBER, ELLIS, and B&B Defendants were aware that defendant KHERA was bringing and pursuing actions without probably cause, to commit fraud against me. Each of these defendants failed to withdraw from the case in violation of CRCP 3-700 (B) or (C).

559.10   Between 2006 till date, defendants PARDUE, MORENO DEFENDANTS, T&T DEFENDANTS, and MILLEN have extorted unreasonable and unconscionable  amount of fee in violation of 4-200. MORENO Defendants even took out a lien on my property, and

demanded $150,000 which fee, corruptly obtained an order from Santa Clara Court for $150,000, which amount was not even owed to the attorneys.

559.11   Defendants, each one of them, is guilty of suppressing pertinent evidence from Santa Clara, Fresno, and DCSS Courts, and from Fifth and Sixth Appellate Districts. Each defendant was obligated to disclose such evidence related to defendant KHERA's income, assets, fraud, my medical conditions, and bills, invoices, arrearages etc. Defendants conspired between themselves to suppress this evidence in violation of CRPC 5-220.

559.12   The aforementioned Attorney-Defendants have directly, or indirectly,  conspired with, aided, advised, conspired with or supported  defendant KHERA in violation of Court Orders of 2003, 2006, 2008, 2014, in violation of CRPC 3-210 of State Bar Rules of Professional Conduct. Defendants' such actions makes the liable for my damages.

559.13 Defendants have intentionally made, caused to be made, conspired to make, supported each other in making of false representations of facts, or law before defendant DAVILA, defendant ZAYNER, defendant GREEN, or defendant KAPETAN between 2003 till date, in violation of Rule 5.200A, B, E, State Bar Rules of Professional Conduct. Defendants are liable for these acts.

559.14    Between 2003 – 2018, B&B Defendants, and defendants SCHREIBER, ELLIS agreed to represent KHERA to engage in fraudulent activity in and seeking delays. Defendants were required to withdraw from their representations when defendant demanded them to commit fraud, make fraudulent representations on his behalf, when he requested them to violate their professional duties, and when he sought unnecessary delays in resolution of the underlying issues of child support, spousal support and property division, or when he requested them to seek orders that were not based on, or justified by statutory codes, settled law or any other justifiable means – eg when he asked them to seek waiver of child support arrears, or seek below guideline support etc. Defendants' failure to withdraw from the case under such conditions represents violation of CRPC 3-700(B)(1)-(3)(1),(b) and made them liable for my damages.

559.15   Defendants SCHREIBER, ELLIS, B&B Defendants violated **ABA Model Rule** 8-.(c ), (d), (e ), (f);  Rule 8.3; Rule 8.1 in their entirety. Defendants are liable for my damages because of these violations.

**559.16**   Each and every Attorney-defendant has  violated Section 19 of the **California Attorney Guidelines of Civility and Professionalism. Defendants are liable for my damages due to these violations.**

559.16.1   PARDUE, MILLEN, MORENO Defendants, DAVIDSON, and T&T Defendants have been engaged in false advertising and false statements to me about the nature of their business, their experience in matters related to complex family law matters. MORENO defendants also provided false and fraudulent referrals to their family and friends, knowing that these family and friends were not experienced in the manner that he claimed they were. Such fraudulent advertisement and referrals are prohibited under BPC 17500, punishable under the statute. As a consequence of their false representations to me about their past experience in family law,  or the experience of their family and friends, I was defrauded and suffered other injuries.

559.17   Each defendant attorney has engaged in abuse of process, which represents a violation under BPC 17200, for unlawful, unfair or fraudulent business activities, unfair, deceptive, untrue or misleading advertising. Defendants, each of them, are liable for my damages for such violations.

559.18    Each defendant attorney has engaged in violations which is classified as a misdemeanour, and for which they are culpable and liable under  BPC 6128 (a), and (b). Each attorney identified above is guilty of deceit, collusion, and has consented to deceit and collusion with the intent to deceive the superior courts in santa clara county, fresno, the fifth and sixth appellate district, each has wilfully delayed his or her client's suit with a view to defraud the parties of over $800,000 in attorney fee. T&T defendants, PARDUE, MILLEN, MORENO defendants have received funds and fee which they are not answerable to – as these terms are outlined in BPC 6128 (a) – (d). The violation of these provisions is punishable by incarceration, fine and disbarment.

559.19    Each defendant-attorney is guilty of violations under BPC 6068.

Each defendant conspired to rebel against the constitution of United States by inciting others, or seeking, supporting, and/or refusing to have voided orders that were made in clear absence of jurisdiction. Since the jurisdiction of a court is derived from the constitution, therefore, each of these defendants is guilty of rebellion against the constitution, in violation of BPC 6068(a)

Each defendant counselled their clients to frivolously continue litigating for 15 years, without justification, and in violation of state, and federal laws. Such action constitutes violation of BPC 6068(c).

Each defendant engaged in deceit, lies, false pretenses, and routinely mislead the judicial officers in matters related to facts, and law, including the seeking of, supporting, or refusing to object to court orders from Santa Clara County, Fresno County, Fifth and Sixth Appellate Districts, orders made fraudulently, using deceptive methods and extrinsic fraud, made in complete and clear absence of jurisdiction or those based on fraud, fraudulent representation, fraud upon the court – thus engaging in violation of BPC 6068(d).

Each defendant, in order to defraud me, and to conceal their own misconduct, engaged in making false representations about me, vilifying me, and falsely accusing me of crimes that I wa not guilty of, in violation of BPC 6068(f), encouraging and initiating and prosecuting meritless, frivolous actions and proceedings from corrupt motive of helping defendant KHERA seek revenge, and retaliation for my seeking divorce – defendants acts were in violation of BPC 6068 (g).

559.20   Each defendant-attorney is guilty of violations under BPC 6106.

560. The actions of the Judicial Defendants were not conducive to "establishing, maintaining, and enforcing high standards of conduct," to "personally observe those standards" and thus compromised the "the integrity* and independence* of the judiciary." (Canon 1). Their refusal to sanction defendant attorneys, or refer them to state bar violate their responsibility to "promote public confidence," to "respect and comply with the law," to "promotes public confidence in the integrity and impartiality of the judiciary".  Their orders and their conduct during proceedings, has been "inconsistent with the impartial performance of the adjudicative duties of judicial office." Judicial Officers have allowed their "social or other relationship to influence [her] judicial conduct or judgment." (Canon 2). They lent  "the prestige of judicial office" and used "the judicial title. . .to advance [their] personal interests". . .a social relationship with such attorneys in exchange for offering protection for their deceitful and corrupt practices in court. (Canon 2). Judicial Defendants have shown no inclination to be "faithful to the law", or to perform judicial duties without bias or prejudice, and have failed to "accord [her]. . .who has a legal interest in a proceeding. . .full right to be heard according to law." They, each of them, failed to comply with the Code of Conduct. (Canon 6).

561. Canon 3D of the Model Code of Judicial Conduct, 1990, specifically imposes disciplinary responsibilities on a judge. Each of the judicial defendants failed to comply with Canon 3D. As judge having knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, they were required to inform the appropriate authority."  This inherent authority encompasses power and a duty to discipline these "officers of the court."

562. Not a SINGLE decision, order or Judgment made by these Judicial Officers, in any way, promotes these stated objectives of the legislature and judiciary. Instead it rewards corrupt behavior.

563. The Judicial Code of Conduct is not optional or discretionary for any judicial officer. Failure to perform administrative and disciplinary duties represent failure to perform a mandatory duty. A judge is liable for acts that are performed in clear absence of his jurisdiction, or for failure to perform acts that are part of his judicial responsibility under 42 USC 1983 - represents civil rights violation under color of law.

564. As stated elsewhere, each of these Judicial Officers is also culpable of 18 USC 2383 violations, and violations of 18 USC 2, 3, 4.

565. SCHUSTER & WHITE are guilty of violating the terms and conditions of their professional licensure, which includes their duty to not engage in unethical behaviour, and fraud, and acts of moral turpitude.

566. Defendants such illegal actions are foreseeable, proximate and ultimate cause of my injuries. But for such actions, I would not have had these injuries. The injuries are ongoing. In addition to being liable to me for the damages inflicted by such conduct, the defendants continue with such acts with other people, and their professional licenses must either be revokes, or they must be referred to their respective licensing boards for disciplinary actions.

## THIRTEENTH CAUSE OF ACTION : PRINCIPAL & AIDING & ABETTING IN COMMISSION OF AN OFFENCE (18 USC. § 2).

### AGAINST ALL DEFENDANTS

567. I re-allege and incorporate by reference each and every allegation in the preceding and succeeding paragraphs as though fully set forth herein

568. Between 2003 – 2018, Defendant KHERA has committed the offenses detailed above and is guilty as a principle under (s2a).

569. Between 2003 – 2018, Defendant KHERA was aided and abetted by other defendants in commission of the alleged crimes. Specifically, the defendants engaged in a conspiracy to commit the crimes alleged in ALLEGATIONS.

570. The aforementioned defendants are punishable as principals.(s2a)

571. Defendants' such actions are foreseeable, and proximate cause of my alleged INJURIES & DAMAGES. But for such actions, I would not have had these injuries and damages.

## FOURTEENTH CAUSE OF ACTION: ACCESSORY AFTER THE FACT  (18 USC 3)

### AGAINST ALL DEFENDANTS

572. I re-allege and incorporate by reference each and every allegation in the preceding and succeeding paragraphs as though fully set forth herein. The alleged conspiracy is previously averred in FACTUAL ALLEGATIONS, and ALLEGATIONS.

573. Between 2003 – 2018, Defendants KHERA et al committed the offenses detailed above and are guilty as a principle under (s2a). Each defendant was aware that defendant KHERA, and the other defendants named in this complaint had been a party to commission of alleged crimes against me. Each defendant received, relieved, comforted and assisted these other offenders in order to hinder or prevent their apprehension, trial and punishment. Each defendant therefore is an accessory after the fact (18 USC 3).

574. Defendants' such actions are foreseeable, and proximate cause of my alleged INJURIES & DAMAGES. But for such actions, I would not have had these injuries and damages.

## FIFTEENTH CAUSE OF ACTION: MISPRISON OF FELONY (18 USC 4)

### AGAINST ALL DEFENDANTS

575. I re-allege and incorporate by reference each and every allegation in the preceding and succeeding paragraphs as though fully set forth herein.

576. The alleged conspiracy is previously averred in FACTUAL ALLEGATIONS, and ALLEGATIONS.

577. Between 2006 till date, each defendant was/is aware that the actions of other named, unnamed, and factiously named defendants in this complaint represented/represents a **felony** cognizable according to constitutional, federal or state laws, and was required to report such acts truthfully to the Court.

578. Each defendant concealed and did/does not make known the same to some judge or other person in civil authority. The failure of each defendant to do so is a punishable offense under 18 USC 4.

579. Defendants' such actions are foreseeable, and proximate cause of my alleged INJURIES & DAMAGES. But for such actions, I would not have had these injuries and damages.

580. I have been injured and continue to be injured in my business and property by Defendants' conspiracy. The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to me in my business and/or property. I seek an award of damages in compensation for, among other things, the millions of dollars that Defendants collectively stole from me collectively.

## SIXTEENTH  CAUSE OF ACTION: REBELLION OR INSURECTION – 18 USC 2383

### AGAINST ALL DEFENDANTS

581. I re-allege and incorporate by reference each and every allegation in the preceding and succeeding paragraphs as though fully set forth herein

582. The alleged conspiracy is previously averred in FACTUAL ALLEGATIONS, and ALLEGATIONS. Courts' jurisdiction is derived from the constitution, willful usurpation of jurisdiction constitutes rebellion against the constitution. Under Article III of the Constitution, the states do not have the power to nullify federal laws. The findings of various Superior Courts are in contravention of federal statutes. These willful acts, undertaken maliciously to harm me, and to willfully undermine the federal statutes,  are a crime under federal law 18 USC 2383. Judicial defendants, each one of them, was given ample opportunities between 2007 till date to rectify the fraud upon the court perpetuated by defendant DAVILA. Each CFDE Judicial Officer, wilfully, with a specific intent to cover up the crimes committed by the CFDE operatives, attempted to, and did in fact further inflict INJURIES & DAMAGES on me.

583. In 2007, defendant KHERA, BENNETT & BECKER bribed, corruptly influenced, incited and assisted Judge DAVILA of Santa Clara to make orders in clear absence of jurisdiction, and in violation of federal laws. Such incitation and assistance by defendants KHERA and B&B Defendants, and such willful usurpation of jurisdiction by Judge DAVILA represents

584. In 2007, Judge DAVILA of Santa Clara waived past due child support. Waiver of child support arrearages is prohibited by federal law 42 USC 666(a)(9)(c ). Defendant KHERA, BENNETT & BECKER bribed, corruptly influenced, incited and assisted DAVILA into making such orders that violate federal laws. Such incitation and assistance by defendants KHERA and B&B Defendants, and such wilful violation by Judge DAVILA represents rebellion against the Constitution of United States, as the terms are defined in 18 USC 2383.

585. In 2012, defendant KHERA, BENNETT & BECKER incited, assisted, bribed or corruptly influenced Judge ZAYNER to deny my motion to void Judgment of 2008 which had been made in clear absence of jurisdiction and in violation of federal laws by Judge DAVILA of Santa Clara in 2008. Defendants thus incited, assisted Judge ZAYNER in concealing the wrongful, and illegal acts of Judge DAVILA. Defendant KHERA, ZAYNER, and B&B Defendants are guilty of rebellion against the constitution as the term is defined in 18 USC 2383.

586. On Dec 15, 2014, Defendant SCHREIBER incited and assisting COMMISSIONER GREEN in rebelling against the supremacy clause, and violating federal law related to prohibition on waiver of child support arrearages. She also incited and assisted COMMISSIONER GREEN in concealing the acts of Judge DAVILA, who had rebelled against the constitution by making orders in clear absence of jurisdiction, and in violation of state laws.

587. FC-DCSS Defendants were required to, but failed to take appropriate actions and have breached the federal law.

588. Even if some of the Defendants did not agree to harm me, or claim that they did not agree to harm me, specifically, the purpose of the acts they engaged in was to advance the overall object of the conspiracy, and the harm to me was a reasonably foreseeable consequence of Defendants' actions. Such actions are the proximate cause of my INJURIES & DAMAGES. But for defendants actions, I would not have suffered these injuries.

## SEVENTEENTH CAUSE OF ACTION – CIVIL CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS  (42 USC 1983, 1985 (1),(2),(3))

AGAINST B&B Defendants, SCHREIBER, PARDUE, MORENO Defendants, ELLIS, SCHUSTER, WHITE, MILLEN, T&T Defendants, DAVIDSON, ZAYNER, DAVILA, GREEN, KAPETAN, KHERA Defendants

589. I incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

590. Defendants, and each of them, combined and agreed with each other and/or others to defraud me by failing to disclose that one or more parties had been corruptly influenced as alleged in paragraphs above.

591. The conspiracy commenced at least as early as 2003.

592. Pursuant to their agreement(s). Defendants, and each of them, acted in concert to support their common purpose of defrauding me in order to cause me to unlawfully relinquish, or to deprive me of my rights to property, child support and spousal support, ceding my rights to Defendant KHERA and paying exorbitant amount of attorney fee in the process to defendants who were pretending to represent me but were working for defendant KHERA.

593. Each Defendant committed at least one overt act in furtherance of such conspiracy including misleading me as to my rights to property and support and concealing and facilitating the bribes, referrals, kickbacks and other instruments of corruption to one or more professionals, Judicial Officers, and attorneys involved.

594. Each Defendant acted with the common intent to defraud me and understood that all other Defendants shared in that common purpose.

595. Defendants conduct was willful, wanton, malicious, and oppressive.

596. Defendants' unlawful conspiracy has directly, legally, and proximately caused and continues to cause injuries to me in my business and property.  This injury includes but is not limited to deprivation of property, spousal and child support, reduced lifestyle, homelessness, and inability to work as a mental health professional.

597. I seek an award of damages for, among other things, the millions of dollars that Defendants stole from me, as a result of Defendants' conduct. Further, I seek the imposition of punitive damages sufficient to deter  Defendants from committing such unlawful conduct in the future.

598. As a foreseeable, direct and proximate result of the conspiracy, the overt acts taken in furtherance of that conspiracy,  I have suffered INJURIES and DAMAGES in my career, and my property, in an amount that will be fully characterized, detailed, adduced with specificity at trial. But for such conspiracy, I would not have suffered these injuries and damages.

## EIGHTEENTH  CAUSE OF ACTION : CONSPIRACY TO OBSTRUCT; TO DEFRAUD (18 USC. 371, 18 USC 152 (b)).

AGAINST ALL DEFENDANTS

599. I re-allege and incorporate by reference each and every allegation in the preceding and succeeding paragraphs as though fully set forth herein

600. Section 371 contains both a general conspiracy prohibition and a specific obstruction conspiracy prohibition in the form of a conspiracy to defraud proscription. The elements of conspiracy to defraud are:

601. Between 2003 till date, defendants KHERA et al have conspired to defraud me by knowingly intimidating me, threatening or thru misleading or corrupt persuasions. Defendants did this with the intent to prevent me from testifying in one or more abovementioned matters, or to prevent me from offering physical evidence and co-operating with authorities in matters relating to federal offense related to orders made in complete and clear lack of jurisdiction, failure to pay child and spousal support, fraud related to child, spousal support and property, and/or obstruction of justice, or obstruction of court orders, tax fraud, immigration fraud, money laundering, Racketeering, Identity Theft, etc as alleged in FACTUAL ALLEGATIONS, and ALLEGATIONS.

**602.** As a foreseeable, direct and proximate result of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy,  I have suffered INJURIES & DAMAGES in my career, and my property, in an amount that will be fully characterized, detailed, adduced with specificity at trial. But for such actions, I would not have suffered these damages.

**NINETEENTH CAUSE OF ACTION : RACKETEERING UNDER FEDERAL CIVIL RICO (1962(c))**

AGAINST ALL DEFENDANTS

603. These claims only tangentially involve the divorce laws of California, and can be decided just as if the parties were of no relation to one another. Only one defendant, defendant KHERA, has ever been related to me.

**CFDE AS A RICO ENTERPRISES**

604. The following configurations constitute an enterprise engaged in racketeering activities affecting interstate commerce as these terms are defined in Title 18 United States Code §1961(4).

**The California Dispute Enterprise (CFDE)**

605. The family court divisions of California are controlled and operated by illegal parallel government and private structures made up of divorce lawyers, court employees and clerks, pro tem judges, judicial officers, supporting mental health industry professionals, CPA's Vocational Assessors and other professionals involved in the Family Dispute, Domestic Violence, Sex Abuse "Industry". This parallel government is referred hereafter as CFDE. CFDE is without the same transparency, accountability as required of legitimate Judicial Branch agencies, and meets the legal definition of a criminal racketeering enterprise as per 18 USC 1964(a) (c ) and (d).  The alleged criminal organization reportedly has operated for more than 10 years.

606. Many attorneys, and current and former judges have direct or indirect ties to the corruption. Some attorneys and judges are active participants or effectively facilitate the racketeering as accessories. The non affiliates are usually penalized for their refusal to co-operate with the cartel.  All professionals and officers of the Court know that systemic lawbreaking, institutionalized socioeconomic bias, and criminal activity are rampant, but they turn a blind eye and fail to report the misconduct to oversight authorities. None has attempted to help fight the corruption.  The alleged corruption is pervasive.

607. In this instance, each defendant is functionally separate and independent from the CFDE, and operates in a way distinct from the CFDE. The CFDE members work together, culpably, with malice, and engage in fraud as a matter of course, ignoring the established law. There is a threat of continuity by conduct of the members of the CFDE, and the defendants, to other victims also, not just to me. Recent scandals in Family Court of Sacramento County, and LA County are examples on how the CFDE operates across California.

608. These entities form an association-in-fact for the common and continuing purpose described herein and constitute an enterprise within the meaning of 18 USC 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity. The members of CFDE enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. There may also be other members of the enterprise who are unknown at this time.

608.1 Alternatively, Superior Courts of each County constitute a separate enterprise within the meaning of 18 USC. 1961(4).

608.2 Alternatively, the Superior Court of California across the state constitute a single, separate enterprise within the meaning of 18 USC 1961(4).

609. Current named, and fictiously named defendants are part of the CFDE, and have intentionally injured me in my property and my rights, participating in the business of the CFDE.

### MEMBERSHIP OF CFD ENTERPRISE

610. A large proportion of DFCE is comprised of licensed attorneys. All attorneys are not members of the DFCE cartel, but almost all Attorneys acknowledge existence of, and are at best deliberately indifferent to the SADs. Such indifference allows the CFDE to inflict this pernicious fraud on victims in violation of to CRPCs, and Business and Professional Codes, without any fear of reprisals, in defiance of the rule of law under 18 USC 2-4, and 18 USC 2383,

611. Certain DFCE Court Reporters are members of the CFDE. These Court Reporters edit, amend, and correct the Transcripts that would show the Judge or the attorney in bad light and even refuse to provide transcripts for Trial, or appeal, to the disadvantaged single women, pro per litigants, and women of color.  Between 2013 till date, Susan Yakushi has refused to provide me with Transcripts, has failed to provide *all transcripts* which I had paid for, and 2 others have failed to provide transcripts that I had already paid for.

612. DFCE Court clerks routinely refuse to file legally sufficient paperwork for pro per parties, while at the same time filing legally insufficient, and even counterfeit paperwork - which they are required by law to reject for filing - for attorneys, and/or wealthy, privileged male clients.

613. In some cases, judges and court clerks work in tandem to prevent pro per parties from filing documents at court hearings, deliberately creating an incomplete and inaccurate trial court record in the event the pro per files an appeal.

614. CFDEClerks deliberately refuse to, withhold and/or delay the filing of time sensitive pro per documents until after filing deadlines have expired.

615. CFDE Family Law Facilitator staff provide disadvantaged pro per litigants with false information designed to conceal state law violations by court clerks and supervisors. Judges regularly provide attorneys and wealthy pro per litigants with written legal advice and "bench tips."

616. When pro se litigants ask facilitator staff for similar information, they are told that facilitator employees are prohibited from giving legal advice.

617. Although Mental Health Professionals are mandated reporters, a significant number of them are affiliated with the CFDE, and collude with wealthy male perpetrators, and  refuse to perform their mandated duties of reporting sexual abuse and domestic violence to Child Protective Services, intending to protect the wealthy perpetrators.

618. Significant number of evaluators refuse to hear complaints about sex abuse. Others inform their child clients that "its ok"…:its in the past".

619. Although Police and CPS are required to take actions against sexual allegations made by a child (especially when there are two children involved who can be witnesses to each other), CPS and Police are affiliates of CFDE, and collude with wealthy male perpetrators,and other members of the CFDE, refusing to perform their mandated duties of taking appropriate actions against perpetrators.

620. Instead, these CFDE members humiliate, intimidate, oppress and suppress the women undergoing domestic violence, and the child victims of sexual abuse.

621. Violence and sexual assault on women is rarely punished, and when it is, the punishment is just a token. The recent Brock Turner case provide a glaring example in the Santa Clara County.

622. FC-DCSS and its employees are a part of the CFDE cartel. They collude with the wealthy payors and their CFDE attorneys, sabotaging Title IVD mothers' efforts to collect appropriate and timely support, encouraging them to forego support. FC-DCSS's shares with the CFDE a pervasive disregard for the rights and economic security of custodial mothers.

623. These Schemes & Artifices cannot go unnoticed by any competent Judicial Officer. And yet, these acts are prolific, and have never been reported by any ethical attorney or Judicial Officers.

624. The relationship between the association in fact enterprise members is continuous and hierarchical, in that the attorney members of the enterprise seek favors from Judges. As a consequence they win more cases, and later may themselves become Judges. As Judges, they then employ other attorneys as pro tem Judges to coerce victims, disadvantaged single mothers, pro per mothers, emigrant mothers, and women or color, to settle without any regard for their rights. Such settlement reduces the workload of judges, who reward the attorneys in quid pro quo arrangements by rubber stamping their Motions. Often the spouses and children of the Judges and attorneys are also attorneys and may be employed in conflict of interest relationships. These conflictual relationships are concealed from litigants. Attorneys also provide referrals to mental health professionals, CPAs and Vocational Assessors, under threats of favorable reports, however, fraudulent they may be. Thus the members of DFCE exert enormous illegal control over the outcome of the proceedings.

625. The lower rung participants in the enterprise  Court Clerks, Filing Clerks, Mental Health, Accounting, Vocational Assessors and other Professionals who act as expert witnesses,  are under the direction of "upper management" of the DFCE. DFCE is operated and managed by wealthy clients associated with the enterprise who exert control over it thru bribery and corrupt influences of these professionals. These wealthy clients use CFDE to carry out their nefarious schemes to defraud.

**COMMERCIAL PURPOSE**

626.The CFDE operates as a "cabal," a semi private, informal affiliation of entities with public presence and identity that is wholly or partially inaccurate and misleading as to the true goals, affiliations, and processes of the cabal. The named, unnamed and fictiously named defendants are members of this enterprise.

627.The CFDE is funded by exploitation of the litigants' community estates, bribery, exchange of value, emoluments, patronage, nepotism, and/or kickback schemes within their networks to assure system-wide "cash flow" and continued viability and vitality of the CFDE.

628.CFDE operatives refuses to cooperate with non-affiliates, thereby unlawfully extinguishing competition, and punishing others who do not participate in, or maintain an interest in the CFDE.

629.When necessary, illegal marketplace protections are perpetrated by justice system sanctions, or family law sanctions by judicial officer. This predatory competitive behavior targets any litigant  that appears as a potential or probable threat to CFDE purpose.

**MARKETPLACE**

630.Since litigants enlist the help in navigating the legal process of divorce proceedings, there exists a market for family law experts – officers of the Court including Attorneys, Counselors, Evaluators, FC-DCSSs and Court and Judicial Officers. (MARKET).

631.These family law experts see the litigants as a resource to be used to extract net profit from community estate, child support and spousal support "buckets" available to these litigants.

632.The putative goal of "Income and Expense Declarations" and "Asset & Liability Declarations"  is for the determination of support property division. CFDE operators illegally use these to plan how to maximize wealth transfer to themselves - following the business rule to "*bill until the client runs out of money or patience, then quit*." Litigants lack the sophistication, intelligence, market awareness, or general psychological stability in a time of crisis to recognize the Schemes and Artifices To Defraud , until it is too late—if then.

**INTERSTATE/INTERNATIONAL COMMERCE & LONGITIVITY**

633.The Family Disputes is a worldwide industry, in US alone, it generates $5billion or so in revenue for the operatives. The activities of the CFDE affect interstate and international commerce. The Domestic Violence Laws are enforceable under federal law and entitled to full faith and credit under the multiple state laws (18 USC. § 2261(a)(1), 2265); Child and Spousal Support awards are enforced interstate by Department of Child Support Services and under **Uniform Interstate Family Support Act, in** foreign

Countries through bilateral international treaties like Hague Convention. Title 18 Section 228 is applicable federally, and in all U.S. Military Courts.

634. In conducting the affairs of the CFDES, and in committing the acts, omissions, misrepresentations, and breaches referred to herein, RICO Defendants engaged in a pattern of racketeering activity in contravention of Title 18 United States Code § 1962(c) inasmuch as the defendants were employed by, engaged in, or associated with CFDE, and conducted multiple criminal CFDE affairs by and through a pattern of racketeering activity for over 10 years.

### SCHEMES & ARTIFICES TO DEFRAUD

635. CFDE operates California wide, and involves certain members corruptly organized into a virtual and parallel organization. The members of this organization/cartel discount federal and State laws, creating their own rules, and laws, committing mail, wire and honest services fraud to defraud non affiliates and the public. The primary cause of this action is this widespread criminal CFDE engaged in a *pattern of racketeering activity*, and a conspiracy to engage in *racketeering activity* involving numerous RICO predicate acts during at least the past ten (10) calendar years.

### *GOALS & OBJECTIVES OF THE SCHEMES & ARTIFICES*

#### *A.   CFDE's Schemes Enable Wealth Transfer From Client to CFDE Members*

636. The primary objective of the CFDE has been wealth transfer by using the Court services as a means to extract maximum amounts from the Community Estate, child support and spousal support, inflicting severe and sustained economic hardship upon marital dissolution clients, especially women with custody of children, women of color, immigrant women, and/or women disadvantaged and/or ignorant of law and legal processes – women like me.

637. In and thru such collusion, the CFDE routinely defrauds, extorts, and feeds off of disadvantaged, disfavoured, pro per litigants,  single mothers, emigrant women, women of color and their children.

#### *B.   CFDE Schemes Illegally Reduce the Caseload and Workload of FC-DCSS, Judges and Court Staff in Exchange for Kickbacks, Referrals, Bribes and Other Corrupts Instruments of Influence*

638.  One objective of the allegedly illegal public-private partnership between these defendants has been to significantly reduce the caseload, and workload of FC-DCSS, and the Judicial Officers by having the CFDE attorneys - instead of judges, court staff or FC-DCSS - operate the settlement program.

639. At the settlement conferences, four CFDE operatives used threats, intimidation, and coercion to force me to settle cases. Such practices are routine.

640. Under the quid pro quo agreement, in exchange for reducing the workload of judges and court staff, as opportunities arise the temporary judges and attorneys were provided reciprocal kickbacks, gratuities, referrals, nepotism, or emoluments. The issuance and receipt of the reciprocal benefits violates several state and federal criminal, and civil laws. Reciprocal benefits include, but are not limited to, the issuance of demonstrably illegal court orders that have ignored, and even authorized criminal conduct by the CFDE attorneys and their clients.

641. Such coercive tactics and abuse of process is common between CFDE Judges, and CFDE attorneys. The consistent, statistically impossible *in-court* success rate of judge pro tem acting in concert with defendant DAVILA, provided defendant DAVILA prominence. In return defendant DAVILA provided CFDE defendants with rubber stamped orders, referrals, wealth, and a substantial monopoly on the divorce and family law business.

642. CFDE expert witnesses SCHUSTER and WHITE, were then recruited to provide false testimonies and reports. This benefit of the alleged criminal organization implicates consumer protection and antitrust laws, including the California Unfair Business Practices Act.

## C.    *CFDE Immunizes Members from Government Oversight and Accountability*

643. The quid pro quo arrangement also involved a reciprocal protection racket that concealed CFDE's illegal operations from discovery by law enforcement agencies and state oversight authorities, including the Commission on Judicial Performance, and the State Bar Association.

644. CFDE Attorneys routinely violated federal law, state law, court rules, and attorney ethics rules, but Judges never report these violations. When I sought sanctions against them, each CFDE Judge attempted to threaten, intimidate, harass, or sanction me with the explicit intent of silencing me.

645. In turn, CFDE Judges routinely violate federal law, state laws, rules of the court, and Judicial Canons, but are never reported to the Judicial Commission by attorneys or by other Judges. Under quid pro quo agreement, the CFDE Attorneys provided these CFDE Judges reciprocal protection by not reporting the judicial misconduct, Code of Judicial Ethics violations, and criminal conduct committed by full-time CFDE Judicial Officers.

646. These CFDE Judges have rubber stamped at least fifteen illegal orders against me, also sanctioning me simply to discourage and deter me from seeking justice, and also to prevent me from exposing the corrupt actions of these CFDE members.

**D.   *CFDE Members Engage in Mutually Beneficial Corrupt Practices***

647. District Attorney failed to investigate allegations of sexual abuse made my two of my children against defendant KHERA. The police detective gave no particular reason for failure to investigate the sexual abuse allegations. Such actions are common in the CFDE cartel.

648. Judicial Officers refuse to provide restraining orders against wealthy defendants. In 2010, after a violent, criminal incident, I sought a restraining order against defendant KHERA. The Judicial Officer denied my motion. A few months later, defendant KHERA recruited a friend who threatened to kill me. This time I was coerced by the cartel of judicial officers and attorneys into withdrawing my request for restraining orders. Defendant continued threatening, stalking, harassing me for upto 9 hours per day but Judges refused to provide protective orders. In 2015, I was forced to leave US, in order to protect myself and my children from routine emotional, physical abuse and financial abuse.

649. Between 2010-2013, defendant ZAYNER and the Minor's Counsel refused to accept children's allegations of sexual abuse against their father.  On March 18, 2013, even after the emergency screening identified that defendant KHERA had touched both the children inappropriately during 2003-2007, ZAYNER berated me, harassed me, threatened me, humiliated me, and attempted to silence me[3].

650. CFDE Judges routinely refuse to state conflict of interests.

651. Between 2003 till date, defendants ZAYNER, GREEN, KAPETAN failed to comply with Judicial Canons 1, 2, 3, 6, specifically Canon 3D(1) of the Code of Judicial Ethics. Each failed to report or take actions against the cognizable felonies of defendants, each made illegal orders against me, in an effort to protect the other members of the CFDE cartel.

652. In 2012, I filed a complaint with Sate Bar alleging SCHREIBER, BENETT, BECKERS's misconduct. No action was reportedly taken. Subsequent requests to have these attorneys referred, have resulted in Judges retaliating against me by imposing more sanctions against me, and denying my requests. The goal of such CFDE judicial misconduct was cover up the misconduct of the attorneys and Judges.

---

[3] In one of the CMC's, where defendant ZAYNER attempted to coerce me into giving KHERA sole custody and go to India alone. Defendant ZAYNER went on to say "So what [if KHERA molested the children] ?"

653. Family court reform advocates assert that judge pro tem attorneys obtain favorable court rulings on disputed issues at a statistically improbable rate. The collusion between full-time judges and judge pro tem attorneys constitutes unfair, fraudulent, and unlawful business practices, all of which are prohibited under California unfair competition laws, including Business and Professions Code § 17200.

654. Criminal files in Santa Clara County show Sexual Assault Legal Expert Robert Allard not only had a close relationship with DA Jeff Rosen that landed Allard some of the county's most high profile cases,, Allard may have worked with Rosen in a manner to silence victims  in order to promote political campaigns, including those of Supervisor Mike Wasserman and Jeffery Rosen.

655. Defendant Hector Moreno is an ex-District Attorney a few years ago, and uses his contacts to quash any investigation into his corrupt practices. Defendant MORENO's son MICHAEL MORENO works in District Attorney's Office. Michael Moreno is currently under investigation by FBI, for witness tampering on a case against 49ers, where his father, defendant Hector Moreno was representing a victim of 49ers.

656. Michael Lazarin, the biological father of Audrie Pott, claims the Santa Clara County DA and Sheriffs hid domestic violence Audrie allegedly suffered at the hands of her mother and step father. Sheriff Laurie Smith gave no particular reason for failure to investigate the domestic violence allegations.

657. Olga C's daughter was removed from her home because Olga C, a disadvantaged first generation Russian mom, was not well conversant with English and could not read the documents CPS provided to her . The daughter was placed in a foster home where she was repeatedly abused for several years before the hospital confirmed abuse. In 2018, Judge DAVILA, with an intention to unlawfully silence the victim, denied Olga G's complaint for damages for County's wrongdoing.

658. In 2016, Brock Turner, a white, Stanford athlete from privileged class, was sentenced to just 6 months in jail for sexually assaulting a woman. Turner ended up serving only 3 months in jail because he was paying a CFDE attorney.

659. In 2015, Ikaika Gunderson, 21, beat and choked his ex-girlfriend, confessed to police, and "three months later pleaded no contest to a felony count of domestic violence," according to Baker. Persky allowed him to leave the mainland for Hawaii, violating federal laws. He was arrested for another domestic violence charge in Washington state.

660. Persky's Judgment include letting off a man accused of child pornography and another involving a football player and domestic violence. District Attorney Jeff Rosen actually states  "other judges in our county and other judges in our state would have made the same decision." Perkey own supporters point out that the whole Judicial system is as corrupt and biased against women.

661. Contrary to the above, I – a disadvantaged woman of color – was convicted with felony, and given 4 months of home arrest and 5 years of probation, for a simple auto accident, by a Santa Clara Judge.

662. Cindy Raygoza, a disadvantaged Mexican woman, was a victims of abuse in 2015 and was stabbed and killed by an ex-boyfriend in Fresno. Her family and friends state that the police didn't do anything to help the victim even though they were aware that she was clearly in dangerous situations.

663.  Pam Motley was shot by an estranged husband and wound up almost fully paralyzed. A federal judge dismissed the lawsuit in January, saying the police were not liable for the attacks on the women. The dismissal was appealed. Pam Motley was financially disadvantaged.

664. OJ Simpson was acquitted for the murder of his wife, Nicole Simpson. A few years later, the same system incarcerated him for a simple theft and robbery.

665. Between 2008 - 2013, Olga Chervyokova, a woman of Russian origin, repeatedly informed Judge DAVILA and Judge ZAYNER that her son Misha was being abused by the father. Judge DAVILA maliciously  and culpably granted custody to the father and ZAYNER refused to change the order despite repeated requests.  Just 2 months later, the child died in father's custody due to medical negligence.

666. Between 2008 -2010, a woman identifying herself as Jolly, a East-Indian woman, had her young daughter unlawfully taken away and given to the father.  In 2018, she is still fighting to have more time with her daughter.

667. Between 2011-2013, another foreigner, struggling with language and US justice system in ZAYNER's Court, was left destitute, and had her children taken away from her. I was a witness to Judge ZAYNER's conduct in that case as well. I helped her file a motion for Attorney Fee by sharing my pleadings with her and helping her prepare the documentation. When she filed the motion, Judge ZAYNER denied her repeated attorney fee requests just as he had illegally denied six of my requests.

668. In 2014, a Jewish women, almost left destitute by defendant DAVILA's wilful coercion to settle, and illegal denial of appropriate child, spousal support, and property division was similarly abused by ZAYNER, who refused to set aside the order to protect the interests of the CFDE, and to protect an exposure of the tales of horror and devastation that defendant DAVILA had left behind during his tenure in Family Courts.

669.  Between 2013 – 2015, Judge Zayner took away the children of a Chinese woman for 3 years and disallowed her to meet with her daughter. He humiliated, abused, ridiculed, and harassed her, he repeatedly rescheduled her hearings and denied her access to her daughter. Judge ZAYNER also

appointed BJ Fadem, as a Minor's Counsel for her child[4]..  I was a frequent witness to Judge ZAYNER's behaviour at Courtroom towards this mother. I was also a witness to the behaviour of BJ Fadem who continued with the same pattern of lies, and misrepresentation to deny the mother access to the children, as she had done in my case.

670. Between 2013 – 2015, in my presence at the Courthouse, Judge Zayner continued to abuse another Chinese mother to the extent that she was often reduced to tears, and unable to continue in the Courtroom, and had to leave the Courtroom almost every time she attended his Court. I was a witness to several of these offenses of Judge ZAYNER while I waited for my turn in the Courtroom.

**671.** Another child – belonging to a Russian woman - suffered significant child abuse when CPS placed a child in the home of a relative in Santa Clara County because the Russian mother could not speak proficient English. When the mother filed a case against the County under 18 USC 1983, Judge Davila, dismissed the suit (*Olga C. v County of Santa Clara County*).

672. Divorce Corp, a documentary film that "exposes the corrupt and collusive industry of family law in the United States" was released in major U.S. cities on January 10, 2014. After a nationwide search for the most egregious examples of family court corruption, the movie's production team ultimately included several cases from Californian Courts, more than any other jurisdiction.

673. The CFDE conspiracy between judges and judge pro tem attorneys ultimately results in unnecessary appeals burdening the appellate court system, and other, related litigation that wastes public funds, exposes taxpayers to civil liability, and squanders scarce court resources. **The** court operates prejudicially when an offender is paying the CFDE members, despite the fact that socio-economic prejudice is prohibited by the Code of Judicial Ethics, according to the Commission on Judicial Performance and the California Judicial Conduct Handbook.

### E.   CFDE has Illegally Morphed DCSS Into A Corrupt Welfare Agency

674. In Fresno DCSS, two-thirds of the department's administrative funding comes from the federal government and the rest from the state General Fund. Almost 84% of its money is distributed to the counties for administering the program, while the State pays the rest.

---

[4] BJ Fadem is the attorney who was forced to resign from my case due to false statements in court and for refusing to take action when allegations of sexual abuse were made by the children

675. FCFC-DCSS uses a major chunk of this funding for employee benefits plans, including but not service[5]. As the FC-DCSS population ages and retires, the employees compensation portion of FC-DCSS expense increases logarithmically. The Retirement Plan acts like a leaky faucet making enforcement services almost a secondary and incidental service. Hence the disinclination of DCSS to expend its resources and energies on enforcement related activities. The Benefit Plan is now the central purpose of existence of the FCFC-DCSS, with diversion of federal and state funding into the pockets of the employees as the central goal, leaving the intended beneficiaries – Title IV-D needy families, single mothers with children – with little and no enforcement services.  FC-DCSS has morphed into a local welfare agency that exists only to provide for its past and current employees.

676. Smug in the belief that there is effective way to curtail its excesses, Fresno FC-DCSS classifies the Title IV-D single mothers into suspect, arbitrary classes, creates special procedures to discriminate against them, using these procedures and policies to willfully, and maliciously injure them, simply to reduce its own workload, colluding with the CFDE attorneys to injure Title IVD defendants as and when it can, with the sole purpose so it can illegally and culpably avoid/evade its mandated duties, instead focussing on its Retirement Benefit Plan.

## F.   *CFDE's Schemes Are Used to Target Disadvantaged Women & Children*

### CFDE Aims to Suppress, Oppress and further victimises disadvantaged Pro Se Victims

677. Though child support law is facially neutral, in practice CFDE conspires to make disadvantaged Single Mothers, pay the bulk of the costs that result when one household becomes two since women almost always have custody of the children.

678. Most of the demonstrably unlawful orders are issued against indigent, or financially disadvantaged "pro per" parties without an attorney. Many pro per litigants - who make up over 70 percent of court users - have little or no experience, or knowledge with courts, or with local laws and are unaware that the orders issued against them are illegal. Court clerks and employees are trained or encouraged to intentionally, and illegally mislead unrepresented parties about their appeal rights.

679. Pro pers who do attempt to file an appeal are forced to navigate a gauntlet on obstructions erected by court employees and trial court judges, and most eventually give up.

---

[5] City Of Fresno, Employee Retirement System, Summary Plan Description (2006){ TA \l "City Of Fresno, Employee Retirement System, Summary Plan Description (2006)" \s "City Of Fresno, Employee Retirement System, Summary Plan Description (2006)" \c 3 }

**680.** In exchange for acting as sworn temporary judges, operating the settlement program and reducing the caseload and workload of judges and court employees, the attorneys receive preferential trial scheduling, an unlawful "emolument, gratuity or reward" prohibited by Penal Code  94.

**681.** The ultimate consequences of the systemic divorce court corruption include one-sided divisions of community property, illegal child custody arrangements, and unlawful child and spousal support terms, and waiver of accrued arrearages.

**682.** The racketeering enterprise enables rampant fee churning and unjust enrichment by judge pro tem divorce lawyers, results in pro per financial devastation, homelessness, and imprisonment, and has caused, or contributed to several child deaths in California, at least one of which was in Santa Clara county, where this complaint stems from.

*683.* Non Title IV-A Single Mothers are routinely refused services by FC-DCSS, or are provided only partial services. They are routinely advised to "get an attorney" to represent them.

684. CFDE coerces, intimidates, threatens, and oppresses Title IVD women to forego child and spousal support.

*685.* If the Mother sues for arrears, judges will unconstitutionally waive arrearage retroactively, regardless of federal prohibitions just because they can.  CFDE supports and helps wealthy fathers evade child support because the wealthy father pays the CFDE members, encourages FC-DCSS to breach their duties towards Title IVD clients.

686. If they appeal, the FC-DCSS and Trial Court conspire to put them at a disadvantage by refusing to provide transcripts of the proceedings (even when such records exist), which diminishes the chances of success.

687. Because the Title IV-D mothers are often not capable of challenging the FC-DCSS decisions and Trial Court decisions, the only appeals that are filed in case of Title IV-D clients are those that are filed by Attorney General's office on behalf of the FC-DCSS. The body of caselaw that emerges from these is *absolutely skewed* in the favor of FC-DCSSs and against non Title IV-A single mothers.

**CFDE Conspires To Violate State and Federal Criminal and Civil Laws, and Deprives Victims of Their Civil Rights**

688. The alleged criminal conduct of CFDE operatives deprives victims of their state and federal constitutional rights, including due process, equal protection of law, access to the courts, and the fundamental liberty interest in the care, management and companionship of their own children, rights to their property, child support and spousal support.

689. The settlement conference kickback arrangement between the public court and private sector attorneys is a part of the racketeering enterprise and also deprives the public of the federally protected right to honest government services.

690. CFDE culpably conspires to deprive the disadvantaged, disfavoured Single Women and Children their Rights to Substantive and Procedural Justice and due process guaranteed under Fourteenth Amendment. It culpably deprives these women their Rights To Tangible and Intangible Property, rights to appropriate and timely child support, spousal support, pendent lite attorney fee, and post judgment attorney fee awards. Above all, the CFDE deprives these women and their children their right to a safe environment free from threats, intimidation, domestic violence, extortion, blackmail, conspiracy, and deceitful behavior during the proceedings.

691. The alleged federal crimes also include the theft, misuse, or conversion of federal funds received by the court, predicate acts of mail or wire fraud, and predicate state law crimes, including obstruction of justice, child abduction, and receipt of an illegal emolument, gratuity, or reward by a judicial officer (Penal Code § 94).

The framework of the alleged criminal enterprise, in scale and scope, rivals the Kids for Cash court scandal in Luzerne County, Pennsylvania, and the Orange County Superior Court case-fixing corruption scheme recently exposed by the FBI.

### Types of Schemes And Artifices

The following are a few SCHEMES & ARTIFICES employed by the CFDE defendants. Individual defendants may employ one or more Schemes and Artifices at their level of operation.

### *1. CFDE Collusion*

692. Between 2003 – 2018, defendant KHERA and his affiliates have conspired with each other, and with each and every named CFDE attorney, with an explicit intent to harm, and injure me. The CFDE attorneys had conspired with each other to harm me.

693. Between 2003 – 2018, each and every CFDE Judicial Officer named in my complaint, colluded with each other, and with the CFDE attorneys, and other CFDE members as alleged, with an explicit intent to harm, and to injure me.

694. Defendant ZAYNER colluded with defendant Zepeda, and defendant DAVILA, to culpably, unlawfully deny my motions and my requests.

695. Although these CFDE attorneys were seemingly in adversarial position, in reality, they were colluding between themselves, and had reached secret agreements on the nature of dispute, filings, and

settlements. These agreements were not shared with me. Despite an obligation to zealously represent their clients, defendants a) threatened, harassed, intimidated or corruptly influenced me to continue litigating  b) they planned and strategized the delays to maximize their attorney fee  c) when that fee amount had been reached, a covert agreement to not file sanctions against each other in return for kickbacks  was made between these CFDE attorneys c) they then covertly reached an agreement that an award of attorney fee would not be objected to, provided the arrearages were waived. Thus, defendants illegitimately directed the arrears – that should have been payable to the children and myself – to themselves in the form of attorney fee.

696. Thus the CFDE attorneys MORENO Defendants, and their affiliates T&T Defendants, MILLEN, were fraudulently *pretending* to represent me, but essentially they were only delaying resolution with the intention to extort attorney fee which they secured by diverting child support payments to themselves.

### 2.   *CFDE Members Conspire to Engage in Corrupt Practices*

697. Each and every one of the CFDE Attorney cited as a defendant is a member of the CFDE, and has intentionally engaged in the racketeering activities with the intention of defrauding me of my property, child and spousal support. Each of them has in fact defrauded me. On the other hand, each of them has received preferential treatment, "kickbacks," and other forms of compensation from judges, court employees and clerks as an illegal compensation for their corrupt actions.

698. CFDE attorneys receive significant amount of funds in the form of attorney fee from defendant KHERA. They also volunteer to work as part-time judges, contributed to the campaign funds, or otherwise provide favourable reviews feedback about the Judge in a "you scratch my back, and I will scratch your back" arrangement.

699. The kickbacks with Judges usually consist of "rubber-stamped" court orders issued by the CFDE Judicial Officers while representing clients like defendant KHERA and others in court. A reciprocal quid pro quo agreement also includes the rubber-stamped denial, and even summary denial of motions filed by opposing parties, and especially unrepresented opposing parties like me who are indigent, pro per, disabled, immigrants, women of color, or otherwise disadvantaged or disfavoured. These orders consistently are contrary to established law, and the rulings go far beyond the boundaries of, and cannot be attributed to the exercise of judicial discretion. They in fact *reward* the perpetrators and *promote* domestic violence, sexual abuse of minors, evasion of child and spousal support, and fraud.

700. Between Feb 25 and Feb 27, 2008, defendant DAVILA rubber stamped three illegal orders in Santa Clara County. Between June 2012 and Nov 2014, defendant ZAYNER rubber stamped ten illegal

orders in Santa Clara County. On Dec 15, 2014, defendant GREEN rubber stamped two illegal orders in Fresno County. Between May 21, 2015 – Dec 2016, defendant KAPETAN rubber stamped five illegal orders in Fresno County. Between May 10 – Dec 2016, Judge SIMPSON rubber stamped three illegal orders in Fresno County. Between Dec 2014 – Dec 2016, Judge ELFVIN rubber stamped four illegal orders in Santa Clara County. Each and every order was made to oppress, suppress and silence me, with a culpable intent to injure me in my person, my career, and my finances. Defendant GREEN went to the extent of providing false statements on the settled statement on appeal, and when I protested against the falsification of facts, he threatened me, sanctioned me, and *refused* to certify settled statements with an intention to intentionally obstruct and prejudice me in my appeal.

701. The orders of the court are deliberately structured without facts, law, or findings, effectively making any potential appeal futile under two legal principles called the "doctrine of implied findings," and the "presumption of correctness." The orders clearly are illegal as a matter of law.

702. Judges routinely simply ignore the requests in motions filed by pro se victims, delay the proceedings, or even collude with attorneys to block the motions from ever being heard, ruled upon, or taken to trial. Defendant DAVILA, and Judge ZAYNER refused to hold any hearings for several of the motions filed by me. Defendant ZAYNER simply delayed ruling for upto 5 months, and/or ignored federal, state and settled law on rulings that were undoubtedly adverse to defendant KHERA's interests. These motions were never ruled on. On others that were not favourable to defendant KHERA.

703. CFDE Attorneys corruptly influence the CFDE expert witnesses, mental health professionals to provide false, fraudulent testimonies by bribing or otherwise corruptly influencing them with series of kickbacks, referrals. SCHUSTER and WHITE were cumulatively paid over $35,000 to lie during their testimonies, and to make fraudulent reports. They were assured of referrals in exchange for their false testimonies and reports.  Between 2007 – 2015, CFDE attorneys corruptly influenced SCHUSTER, WHITE to provide false testimony, and reports.

704. CFDE Court Reporters falsify the Court Proceedings, and/or refuse to provide transcripts on Appeal. CFDE members – Attorneys and judges - corruptly influences Court Reporters to alter their transcripts, and/or refuse to provide transcripts on appeal. Between 2010 till date, Court Reporters have refused to provide transcripts on appeal in Santa Clara County to me for my appeal H 040565.

705. Appellate Division fails to provide appropriate designated records in a timely manner. Appeal H040565 was filed with Sixth Appellate District in Jan 2013, against defendant DAVILA's and ZAYNER's order. However, till date – for over 5 and a ½  years -  the records have not been designated.

*706.* FC-DCSS records each and every hearings that is held in its Courts. Disfavored or disadvantaged Title IVD clients are denied access to transcripts, or digital recordings on appeal. Each and every Title IVD mother is denied the appellate process by the CFDE operatives in FC-DCSS.  Between 2015 – 2018, FC-DCSS defendants, refused to provide digital recordings of the hearing in lieu of reporter's transcripts on appeal.

### *3.   CFDE Members Breach their Professional Duties*

707. CFDE Attorneys regularly abuse professional duties to induce, deprive, or deceive their disadvantaged, disfavoured clients. Attorneys appeal to their client's emotions, greed, or other untoward ends to generate fees with no beneficial legal work performed. Attorneys pretend to write angry letters , exchange extensive and worthless discoveries, repeatedly file baseless motions with no hope of success to generate what looks like legitimate legal work to an unsophisticated victims. CFDE attorneys will conduct frivolous discoveries, subpoenas, depositions to generate more income for themselves, and their affiliates, without any intention of using the documents produced by such actions. Because it is highly profitable, even if illegal, it is therefore quietly encouraged by the CFDE Judicial Officers.

708. CFDE attorneys' collusion with each other is a violation of one or more professional duties of loyalty, zealous advocacy, fiduciary responsibility, honest services,  and to assert victim's rights adverse to other entities.

709. These CFDE attorneys intentionally and culpably refused to observe or assert my rights simply to protect other CFDE members. Such failures included, but were not limited to, refusal to object to impermissible procedure, inadmissible evidence, and move to strike scandalous or impertinent matter, refusal to insist on procedure consistent with the California Code of Civil Procedure for motions, refusal to seek sanctions against opposing counsels, refusal to object to unconstitutional laws, or processes harmful to me, permitting and cooperating with Family Court or opposing counsel to misrepresent my rights and duties, failure to zealously represent my interests.

710.     When there were not enough billable hours generated, the CFDE attorneys resorted to fraudulent billing, whether any work was actually performed or not. They conspired among themselves to delay the resolution for 13 years, continuing to aid and abet defendant in committing fraud, were aware that fraud was being committed. CFDE attorneys did this so they could keep extorting attorney fee from me (and from the other party). In doing so, CFDE attorneys knowingly, wilfully breached CRPCs, and federal and state laws related to attorneys duties and

711. CFDE attorneys conspired between themselves to ignore their oaths to protect, uphold and defend the U.S. Constitution and laws of the United States, and zealously represent their clients' interests. They engaged in a series of  kickback, referrals, bribes, and witness tampering and corruptly influenced expert witnesses and mental health and other professionals to provide false, fraudulent, reports, declarations, and testimony on behalf of defendant KHERA.

712. FC-DCSS defendants discriminated against me by refusing to enforce support orders, *knowing* that the wealthy defendant was delinquent on his payment obligations.

713. Despite collecting federal and state funding for mandatory enforcement of child support, FC-DCSS routinely conspires to refuse enforcement activities for certain clients, telling Title IVD clients that child support is to be enforced only thru CFDE attorneys,  thus promoting the power and authority of the racketeering CFDE. FC-DCSS defendants misuse the federal and state funding to promote its Employee retirement and benefit scheme instead using the funds to support and better its services.

714. Each CFDE operative culpably, falsely advises the victim that the U.S. Constitution supports their actions, and that there is "nothing you can do.

715. Each of the CFDE member instead demeaned, harassed, oppressed, humiliated, rebuked, admonished me, the pro se Single Mother seeking enforcement, labelling me as "greedy," "wanting more money" "difficult,"  thus justifying the unfair impositions of sanctions against me and attempting to silence me.

716. Between 2007 – 2014, MORENO defendants, T&T Defendants, MILLEN, wilfully colluded with B&B Defendants, SCHREIBER, ELLIS, to delay resolution of the Fresno, and Santa Clara litigation and engaged in blatant abuse of process to generate over $800,000 in attorney fee for themselves, diverting all the money that should have been used to support the children and myself,  to themselves in the form of attorney fee.

717. In 2013, after billing extensively, and fraudulently, MORENO Defendants reached a secret agreement with SCHREIBER, and B&B Defendants to drop the case, and waive hundreds of thousands of unpaid child and spousal support, in return for agreement for an attorney fee of $102,000. MORENO defendants reached a similar unlawful agreement with T&T Defendants and MILLEN and these attorney in turn reached similar agreements with opposing counsels.

718. CFDE FC-DCSS defendants maliciously, with an intent to injure me, and in dereliction of their duties, refused to provide the full range of their mandated duties to this Title IVD client, telling me to "go get an attorney".

719. Between Sept 2003 till date, each defendant has attempted to berate, humiliate, vilify me, and has threatened, harassed, intimidated me, attempting to silence me and to coerce me to comply with their corrupt agenda.

720. Each of these offenses has been undertaken to injure me in my person, my carrier, and my property and finances.

### 4.   *CFDE Operatives Engage in Wealth Transfer*

721. CFDE Operatives delay resolution of the case for years, in order to extort as much as possible from the parties community estate and child and spousal support orders.

722. To achieve this, DFCE Attorneys scrutinize the Income and Expense Declarations and Asset & Liability Declarations to devise a scheme on how best to effect the wealth transfer.

723. When the father is a wealthy individual, with substantial assets and Community Estate, the members of the CFDE will appoint several attorneys to the case, and drag the case over several years to increase their billing. The Attorneys will first conspire to help the wealthy father unlawfully evade child support obligations.

724. The attorney representing the mother will inform the court that the father is evading payment, and schedule contested trials that are then continued for years, while an extensive discovery is attempted.

725. CFDE Attorneys file frivolous motions, engage in meritless conversations between themselves, and with the victims, scheduling meetings, hearings, depositions most of which are only used for the purpose of inflating their bills.

726. CFDE Attorneys may often bill for work that is redundant, or even never performed.  After they have billed so for several years, they may secretly reach a settlement between themselves, and with the CFDE Judicial Officers, and "give away" the case without taking it to trial, or they may coerce the client to reach an agreement without any regard for equity.

727.  If the matter does go to trial, the trial attains the characteristics of "good cop/bad cop" with one ATTORNEY ***pretending*** to reduce the support, and the other ***pretending*** to get maximum support for the custodial parent. Often the CFDE Judicial Officer is aware of the charade, but fails to object, or limit the play-acting of the CFDE attorneys. With the CFDE attorneys colluding with each other, the trial is like a well-rehearsed play where each attorney plays his part to delay resolution as long as possible, so as to increase their own fee, until a prohibitive unpaid balance, secured by a lien on property of the unsuspecting victims, is reached. These CFDE attorneys litigate without *any* regard for the magnitude of relief sought in the underlying trial. In the current instance, MORENO defendants

engaged with SCHREIBER at an expense of over $220,000 in attorney fee, held a trial for over 12 days, seeking $200 extra in child support, and waiving arrearages of hundreds of thousands of dollars in arrearages.

728. All thru the process, the attorneys bill fraudulently, excessively. They recommend services of other members of CFDE frivolously and meritlessly. They threaten clients with severe consequences, even taking out a lien on the house, belongings, income, child support, spousal support or investments and earnings. The collusion is supported and blessed by other CFDE members, Judicial Officers, CFDE FC-DCSS, CFDE attorneys.

729. Between 2007 – 2014, defendants B&B, SCHREIBER, and ELLIS have unlawfully pretended to be litigating the matter, when in fact they were engaged in good-cop/bad cop collusion, dragging the litigation by colluding with PARDUE, MORENO defendants, T&T Defendants, MILLEN, FC-DCSS Defendants, and has in the process collected over $650,000 in legal fee from defendant KHERA. This is far in excess of what defendant would have had to pay in additional child and spousal support.

### 5.   *CFDE Attempts To Unlawfully Silence Women & Children*

730. CFDE attorneys unlawfully threaten, harass, intimidate, bully, coerce disadvantaged pro se victims in an attempt to oppress, suppress and silence them.

731. In child molest, fraud, and domestic violence cases, CFDE Judicial Officer unlawfully and routinely deny pendente lite Fee awards and/or fee waivers with an explicit intention of forcing a non affiliate, honest, ethical attorney out of the case, with an explicit intention of protecting the privileged male perpetrators of crimes.

732. Women and children are routinely dissuaded, threatened, humiliated and harassed by the CFDE operatives, including the CFDE Judicial Officers and FC-DCSS. CFDE labels them "difficult," "vexatious," "greedy" and culpably sanctions them to further silence, suppress and oppress them. FC-DCSS procedurally discriminates against them and conspires to put them at a disadvantage in presenting their genuine requests, before the Court, or on appeal. Between Sept 2003 when the divorce proceedings were initiated, and June 2015, until I left United States, I was maliciously, wilfully, repeatedly threatened, bullied, harassed, intimidated, blackmailed by defendants KHERA, SCHREIBER, DAVILA, ZAYNER, GREEN, MORENO Defendants, MILLEN.

733. In 2010, Defendant DAVILA granted inadequate amounts in attorney fee motions. Between 2010 – 2014, Defendant ZAYNER denied at least 6 pendente lite attorney Motions on my property, spousal support as well as custody related matters , to specifically prevent me to secure appropriate relief in the

underlying case, and enabling defendant KHERA to protect defendant KHERA in his crimes of domestic violence, sex abuse of children, and fraud.   In 2014, Judge ZEPEDA engaged in illegal exparte discussions with defendant ZAYNER, and denied my Motion for attorney fee award even after I prevailed in matters related custody after 4 years of intense litigation. In 2015, Judge ELFVIN unlawfully sanctioned me to an amount of over $25,000, dismissed my complaint, and upon appeal, denied my request for fee waiver. In 2014, Judge ZAYNER corruptly conspired with B&B Defendants to have a non affiliate ROBIN YEAMAN removed from my child support case. Defendant GREEN discriminated against me procedurally and had my meritorious claim for child support arrears dismissed *with prejudice*. Each of these claims are in Fifth and Sixth Appellate District, and in the Supreme Court.

734. If the disadvantaged pro se single mother has a valid claim, the CFDE Judges will culpably, with an intent to injure her, exclude the pleadings, or opposition papers, and/or make default judgments against the victim of fraud, denying extension of time and other meritorious motions. Defendants ZAYNER, and KAPETAN conspired to _exclude_ all my exhibits and evidence, and summarily, without due process, issued default orders dismissing my claims. Under a guise of prejudice to the favoured party, Judges will schedule the hearing during Noticed Unavailability of the pro per disadvantaged victim, and dismiss the case in the absence of the victim, without any regard for the merits of the case. CFDE Judges do so to intentionally oppress and suppress disadvantaged victims and to promote the interests of the CFDE.  Defendants KAPETAN, and Judge SIMPSON allowed defendants to file motions during my noticed unavailability. Where it is beneficial to the favoured privileged party to continue trials indefinitely, the CFDE Judicial Officers will prevent and continue trials for several years to exhaust the pro per victim, and prevent her from relief.  In such cases, the CFDE do not believe it is prejudicial to the children and women to continue cases indefinitely. In this instance, defendants DAVILA, ZAYNER, KALEMKARIAN, GREEN have continued each and every child support, spousal support and property related trials for over 8 – 14 years – with the explicit intention of protecting defendant KHERA, B&B Defendants, SCHREIBER, and to intentionally provide defendant KHERA time for fraudulent conveyance, sale of property and assets, and transfer of these assets to accounts that would become untraceable for recovery.

735. CFDE Judicial Officers wilfully prevent discovery against the priviledged, favoured CFDE members, while sanctioning women indiscriminately for even seeking extension of time to file responses. Defendant DAVILA, ZAYNER, KALEMKARIAN, ELFVIN have repeatedly denied my requests to

compel discovery motions. Defendants DAVILA, ELFVIN have sanctioned me repeatedly for seeking extra time to serve responses to B&B's and MORENO's discovery requests.

736. Defendants DAVILA,  GREEN, KAPETAN, Judge ELFVIN, SIMPSON, KALEMKARIAN are a few judicial officers who intentionally, culpably, with a mens rea of protecting corrupt CFDE members from being exposed, and promoting the interests of the CFDE, performed such acts which harmed me in my person, career, finances, and/or property, and unlawfully extinguished my claims against defendants.

737. Despite state laws mandating a "level playing field" - meaning both sides have a lawyer - where the marital community income and assets make legal representation economically feasible, data reveals that Courts routinely deny pendente lite awards to pro per litigants.

738. An important component of the racketeering scheme is keeping pro per parties disadvantaged by preventing them from obtaining counsel. Oral and written requests for attorney fee funds are one of the most often denied, or ignored, motions made by pro pers.

739. CFDE members conspire to deny the statutory pendent lite award to the disadvantaged, and disfavoured pro per parties.

740. Family law allows attorney costs to be awarded to the party that is disadvantaged, especially if the party prevails. Similarly, sanctions under FC 271 and CCP 128.5 are recommended by Supreme Court. Even if the Single Mother prevails in her motion, CFDE Attorneys routinely conspire between themselves to place the burden of litigation on the woman, and CFDE Judges routinely deny such awards to these mothers in retaliation. Whatever the woman gains financially, in terms of property, or support becomes meaningless under the exorbitant costs of litigating. CFDE operatives do so to intentionally oppress and suppress women and children.

741. The CFDE Judges refuse to allow victims to file motions for sanctions against the wealthy perpetrator, or against the attorneys who aid and abet in the commission of the racketeering crimes. If such a motion for sanctions I filed, it is summarily dismissed, with prejudice, to protect the attorneys, and the wealthy perpetrator, or it is otherwise obstructed. Alternately, the trial is delayed to such an extent that it becomes impossible for the victim to hold a trial as memories fade and evidence disappears. Such actions represent violation of settled laws, statutory codes, and Judicial Canons 3.

## PATTERNS OF RACKETEERING ACTIVITY (18 USC 1961(5))

742. During the ten (10) calendar years preceding the filing of this suit, all RICO defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts drawn from a

list of 35 crimes defined at 18 USC. §§ <u>1961</u>, and did so in violation of the RICO law at <u>18 USC. 1962</u>(a), (c), and (d). I further allege that defendants calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at <u>18 USC. 1962</u>(a),(c),(d).

743. Pursuant to the original Statutes at Large, the RICO laws are to be *liberally* construed by this Court. *Respondeat superior, the* principal is liable for agents' misconduct: knowledge of, participation in, and benefit from a RICO Enterprise.

744. The pattern of activities exhibited by the defendants had the same or similar purpose, the same results, the participants are always the members of the CFDE cartel, and the victims are always the same or similar – the disadvantaged, pro se victims, usually single mothers, women of colors, participants of divorce litigation.

745. The result is always the deprivation of rights to substantive or procedural justice resulting in injustice and miscarriage of justice, and the end result is wealth transfer to CFDE operatives, by defrauding the victim. The methods of commission of these crimes are almost always the same, being thru the alleged SADs. The victims may differ with time, but the retaliatory acts and the underlying scheme are interrelated by distinguishing characteristics and are not isolated events.

746. The pattern of activity has continued across 15 years in this instance, across Santa Clara and Fresno Counties, across State Courts, and into Appellate Courts.

747. The same, or similar pattern of activity has been alleged in LA, Sacramento Counties as well, which lends credence to its pervasive, entrenched criminal nature. Such criminal conduct is specifically threatened to be repeated or to extend indefinitely into the future.

748. Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 USC 1961(1)(B), as more specifically alleged below. Defendants each committed at least two such acts or else aided and abetted such acts.

749. The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of commission. Further, the acts of racketeering by Defendants have been continuous. There was repeated conduct during a period of time beginning in approximately 2003 and continuing to the present, and there is a continued threat of repetition of such conduct not just to me but to all disfavoured, disadvantaged, immigrant or local, single mothers, especially Title IVD clients.

750. The association-in-fact enterprise and the alternative enterprises, as alleged herein, were not limited to the predicate acts and extended beyond the racketeering activity. Rather, they existed separate and apart from the pattern of racketeering activity for the legitimate business purpose of divorce dissolution, but also for defrauding me and possibly others disadvantaged, disfavoured women like me. Defendants have had and do have, upon information and belief, legitimate business plans outside of the pattern of racketeering activity.

751. Defendants, each of whom are persons associated with, or employed by, the enterprise, did knowingly, willfully and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 USC 1961 (1 ), 1961 (5) and l962(c). The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise. Defendants had the specific intent to engage in the substantive RICO violation alleged herein.

## GENERAL RICO ALLEGATIONS

752. Each named, unnamed, fictitiously named defendant in this complaint is a member of the CFDE, and has used U.S banks, mails and/or wires to perpetuate frauds and enrich themselves in the underlying divorce related litigation. The CFDE members have committed more than 2 racketeering offenses in the past 10 years, using one or more SAD's to defraud me and my children.

753. . Defendant KHERA retained CFDE members B&B Defendants and SCHREIBER in 2003 and 2008 respectively. These members in turn retained other members of the cartel SCHUSTER, WHITE, ELLIS, between 2007 and 2010 and ARTHUS HARRIS, JOHN BURTON, GARY HUNT, JODY WINTERS, and SHARON NAGLE between 2014 till date.

754. I retained PARDUE, MORENO Defendants. At the time I retained these CFDE members, I was not aware of their affiliations with the corrupt enterprise. MORENO Defendants in turn retained other members of the cartel - MILLEN, T&T Defendants.

**755.** These DFCE members organized themselves corruptly, colluded and conspired with one another, and aided and abetted each other in defrauding me, to promote the interests, and the commerce of the

## RICO ALLEGATIONS - 18 USC. § 1961(5)

756. Defendants engage in the following "racketeering activities," as that term is defined pursuant to 18 USC. § 1961(5) ("RACKETEERING ACTIVITY") engaging in commission of Racketeering Acts as defined in 18 USC 1961(1)(B).

757.   The predicate acts alleged here cluster around criminal collusion between CFDE operatives, and their wealthy offenders and clients. The scope of this litigation is limited to CFDE operatives in context of the dispute between myself and defendant KHERA. Other RICO predicate acts – in Fresno, Santa Clara and even in LA and Sacramento Counties - are referred herein to present to the Court the characteristics, and perversity of the CFDE across the state. Although they appear to be isolated events, each event is actually a part of the overall conspiracy and *pattern of racketeering activity* (para 707-716) alleged herein.

### FIRST RICO CLAIM – FRAUD (18 USC 1962(c ))
### Against ALL Defendants

758.   I incorporate all the preceding paragraphs of this Complaint, and by reference, as if fully set forth herein.

759.   Defendants violated RICO and I was injured as a result.

760.   Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 USC. § 1961 (3).

761.   Each Defendant violated 18 USC. 1962(c) by the acts described in the prior paragraphs, and as further described below.

762.   The Enterprise. Incorporated by reference *CFDE AS A RICO ENTERPRISE* (para 605 - 632)

763.   Each enterprise routinely engage in, has engaged in, and their activities routinely affect, and have affected, INTERSTATE AND INTERNATIONAL COMMERCE (para 633 - 634).

764.   Defendants have engaged in a PATTERN OF RACKETEERING ACTIVITIES (para 742 - 751).

765.   I specifically allege that Defendants participated in the operation and management of the association-in-fact enterprise and the alternative enterprises by overseeing and coordinating the commission of multiple acts of racketeering as described below:

*Predicate Act: Use of Mails and Wires to Defraud Me In Violation of 18 USC. 1341 and 1343*

766.   Defendants generally engaged in Mail & Wire Fraud.

767.   Defendants committed acts constituting indictable offenses under 18 USC. $$ 1341 and 1343 in that they devised or intended to devise one or more SCHEMES & ARTIFICES (para 601 - 740) to defraud me  by means of false or fraudulent pretenses, representations or promises.

768.   For the purpose of executing their SCHEMES & ARTIFICES (para 601 - 740) Defendants caused delivery of various documents and things by the US. mails or by private or commercial interstate

carriers, or received therefrom. Defendants also transmitted or caused to be transmitted by means of wire communications in interstate /foreign commerce various writings, signs and signals. The acts of Defendants set forth above were done with knowledge that the use of the mails or wires would follow in the ordinary course of business. or that such use could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' SCHEMES & ARTIFICES (para 601 - 740).

769. From 2003, I was in Fresno, and in 2014, I relocated to NZ. Therefore defendants could not have communicated with me without the use of wire or US Mail.

770. During the hearings, and trials, myself, all defendants, their attorneys, and Judicial Officers had to speak into a microphone, and all the hearings/trials were recorded digitally as per the procedures of FC-DCSS.

771. In furtherance of their SCHEMES & ARTIFICES alleged herein, Defendants communicated among themselves and with me in furtherance of the scheme to defraud me.

772. These communications were typically transmitted by wire (i.e., electronically) and/or through the United States mails or private or commercial carriers.

773. For the purpose of executing their SCHEMES & ARTIFICES, Defendants transmitted, or failed to transmit funds corruptly into or from the bank and brokerage accounts. The acts of Defendants set forth above were done with knowledge that the use of banks to commit such fraud could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' SCHEMES & ARTIFICES.

774. Defendants BENETT & BECKER have fraudulently had me sanctioned for $17,000 for refusing to stipulate to an unlawful child support in 2008. Defendants used wire and mail to obtain these orders, and this amount was deposited in their bank.

775. Defendant SCHREIBER conspired with HECTOR MORENO to defraud me of $92,000 ordered by Judge ALLEN HILL in attorney fee, Defendant SCHREIBER filed, or electronically caused to be filed motions, pleadings, demanding that the amount be transferred into her trust account. It was held there till Dec 2016, at which time defendant MORENO agreed to release $30,000 to me and had the rest transferred to his bank account.

776. In 2007, defendant transferred to SCHUSTER, WHITE's bank accounts, thru wire transfer, or as a check thru mail, funds that were paid as bribes, or to corruptly influence them, to secure false testimony and fraudulent reports from these professionals.

777. Between 2003 – 2018, defendant regularly transmitted directly, or by check posted thru US Mail,  into the accounts of B&B DEFENDANTS, SCHREIBER, funds that were to pay for their illegal representation of defendant KHERA.

778. Between 2008 – Dec 2016, every month, defendants PARDUE, MORENO Defendants, MILLEN, T&T Defendants, MILLEN fraudulently invoiced me thru email, and I made a payment to them thru billpay, or bank transfers, or thru credit cards or by mailing checks using US mail.

779. As a foreseeable and proximate cause of their acts, I suffered INJURIES & DAMAGES. But for their actions I would not have had these INJURIES & DAMAGES.

780. Defendants DAVILA, GREEN, KAPETAN, and ZAYNER used wires to communicate with me and with others thru Courtcall, phone, and thru the use of speakerphones in the Courtroom. Their corrupt and fraudulent Judgments were mailed to me or to my representatives.  Courtcalls, and efiling systems and Truefilings were further used to communicate and transmit documents containing false information and fraudulent representations and orders.

781. B&B Defendants, SCHREIBER, ELLIS, SCHUSTER, WHITE, PARDUE, MILLEN, T&T Defendants and MORENO Defendants entered into an implicit or explicit illegal contract with defendants and with me for the purpose of continuing their fraudulent scheme and communicated between themselves using mail or wires.

782. Upon information and belief, Defendants also communicated by wire and/or U.S. mail or private or commercial carriers to facilitate the payment of bribes to one or more defendants.

783. In addition, in furtherance of their scheme, Defendants used wire and/or U.S. mail or private or commercial carriers to coerce, threaten and intimidate me, or my representatives, and to induce me to agree to the fraudulent Judgment of 2008.

784. Defendants PARDUE, T&T Defendants, MILLEN, and MORENO defendants invoiced me thru internet, email and also caused me to transmit hundreds of thousands of dollars in funds thru mailed checks, that were later deposited in their accounts. Defendants transmitted one or more pleading, briefs, and/or exhibits, related to the case to a process server thru email who filed it with the Court.

785. Defendants' shared objective was and is to divert funds that were awarded to me in property, child support, and spousal support, to their own benefit.

786. I reasonably and justifiably relied upon Defendants' false representations, false pretenses and deceptive communications, and I have been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein.

787. Each defendant is functionally separate and independent from the CFDE, and operates in a way distinct from the CFDE. The CFDE members work independently, but often agree to come together, culpably, with malice, and engage in fraud as a matter of course, ignoring the established law. There is a threat of continuity by conduct of the members of the CFDE, and the defendants, to other victims also, not just to me.

788. Current named, unnamed, and factiously named defendants are part of the CFDE, and have intentionally injured me in my property and my rights, participating in the business of the CFDE.

### *Predicate Act: Bank Fraud (18 USC 1344)*

789. Defendants committed acts constituting indictable offenses under 18 USC 1344, 18 USC 20, in that they devised or intended to devise one or more SCHEMES & ARTIFICES (para 601 - 740) to deprive a bank of money my deposit account by means of false or fraudulent pretenses, representations or promises in relation to child support, spousal support and property related litigation in santa-clara and fresno counties.

790. For the purpose of executing their SCHEMES & ARTIFICES, Defendants engaged in various banks and brokerage transactions with the intent of defrauding me. These acts were done intentionally and knowingly with the specific intent to advance Defendants' SCHEMES & ARTIFICES.

791. Defendant KHERA was required to pay me Court ordered child and spousal support on all the income he received on a monthly basis. This was to be deposited into my account, or transferred to FC-DCSS disbursement account, or to be provided to me thru a check, which could be deposited in my bank account. Between 2003 till date, defendant has received substantial income into his bank accounts, and the bank accounts of his shell companies, but has failed to transfer such child and spousal spousal support into my account as ordered by the Court.

792. Defendant has also received thru email, bills and invoices for payment of medical, childcare and transportation costs related to children. Defendants has retained these amounts in his banks, failing to pay his share of the bills, with an explicit intention of defrauding me.

793. The acts of Defendants set forth above were done with knowledge that the amounts were Court Ordered and had to be paid. Defendants could foresee the effects of non payments would cause injury to me. These acts were done intentionally and knowingly with the specific intent to advance Defendants' SCHEMES & ARTIFICES.

794. Whereas there are multitude of fraudulent acts by defendants that affect the interstate banking and commerce, the following provides only a few examples:

794.1 On May 3, 2006, defendant issued a Bank Of America check # 8041, for $61,037.92 which I deposited in my bank. Defendant KHERA wrote Child Care Support on the check. At the time he conspired with other defendants to report that the title/Memo had been a mistake, and that it was actually  a payment he had made towards my spousal support arrearages. Later, he conspired to show that this was a payment he had made towards sale of community assets. Still later, during child support trial in Fresno, defendant KHERA, SCHREIBER, MORENO defendants conspired to account this check as a payment towards child care, and child support payments.  Effectively, a check for $61,037 was used to credit towards a $183,111 payment - $122,074 of which had never been made. Defendants actions represented fraud in the strictest sense.

794.2 In Sept 2003, Santa Clara Court issued an ATRO order prohibiting defendant KHERA from transferring, selling or acquiring any community property or assets. Between 2003 – 2008, Defendants KHERA, DEVANI, WHITE, DAVILA and B&B Defendants conspired to sell, conceal, and/or otherwise misreport community property consisting of Stocks, Options, ESPP contained in the community Brokerage Accounts in Smith Barney and took out, as cash transactions, hundreds of thousands of dollars in multiple transactions, from these community accounts. This cash was transferred his personal accounts, and the accounts of his girlfriend DEVANI.

794.2.1 In 2004, and in 2006, Defendant DEVANI received this stolen property, and used some of these proceeds to purchase investment property in  _4293 Verdigris Circle San Jose Ca 95134_ for $600,000. The returns on investment in the form of rentals from then on - were deposited in the defendant KHERA"s or defendant DEVANI's bank accounts and reinvested interstate, and overseas.

794.2.2 In 2006, defendant transferred additional funds from sale of community property to his personal account and purchased a property at _21947 Oakleaf Ct, Cupertino_, for $1.8m which was recently, in April 2018, sold for over $3.3m, after this suit was filed.

794.2.3 Some of this amount was transferred to defendants' overseas accounts and were used for vacation travel and overseas investments.

794.3 Between Jun 2000 – June 2003, in anticipation of the separation, defendant KHERA sold 2 properties in Australia. These properties were at _6 Chuvel Close, Wahroonga, Sydney, Australia_ (buying price 360,000, deposit 25%; selling price 550,000) and at _Kings Street, Paramatta, Sydney, Australia_ (Buying price 149,000, initial deposit 40%; selling price $220,000). Defendants held the funds in Australian Banks, but paid no tax in either US, or in Australia on the income derived from the sale of these properties. This money constituted community property, but was not accounted for, because

defendant had failed to pay capital gains tax, and claimed that the parties had never owned anything in Australia. Defendants transmitted this money into cash economy, and even travelled to Sydney Australia in 2006 in connection with the funds held in these accounts, using some of these funds as his expenses.

794.4 Between 2006 – 2007, defendant KHERA and DEVANI conspired to have a property held by the parties illegally transferred to defendant KHERA's name. Defendant DEVANI and KHERA travelled to India, where defendant DEVANI impersonated me before the Magistrate of Land Transfer, in violation of 18 USC 1028(a)(7),  forged my signature (10 USC 923) and was successful in having property jointly held by me and defendant KHERA, identified as DLF parcel number 4109, illegally registered in defendant KHERA's sole name.

794.5 On or around April 6, 2018, defendants KHERA et al sold the property located at 21947 Oakleaf Ct, before the Sixth Appellate District and while a RICO complaint alleging fraud in obtaining the property in his name, was pending. The ownership of that property is disputed. Obviously, the aim was to thwart the impact of any adverse decree which might ultimately be forthcoming on the appeal, or from the Federal Suit. In effect it was a resistance to the lawful writ, process, order, rule, decree, or command or two Courts. Defendant was served the documents on appeal in 2013. He was aware that the appeal had been initiated. I have communicated with him repeatedly on this issue since then, including the fact that his ownership of the *21947 Oakleaf Court, Cupertino* Residence was disputed. Defendant was also mailed the documents of this lawsuit in Jan 2018. Summons and complaint was also sent to him thru email. He refused to waive service, but he did receive the documents, and has since then resisted being personally served. His attorneys are defendants in this matter, and have been served and are aware of the pending litigation.

794.6 Defendants KHERA et al have converted my jewelry worth over $200,000 in 2003, which was held in a safe deposit box in a bank from 1986 - 2003. Defendant was in possession of the receipts for purchase of each piece of jewellery. The closing gold prices in 2003 were 329.45 per oz. Gold price as of May 25, 2018 was 1303.30 per oz.  This difference indicates that the gold that was worth $200,000 in 2003, would be worth $790,921 in todays value.  For 10 years, defendant has refused to give me the jewelry, has  removed substantial portion of my jewelry from the safe deposit box, and has gifted the same to his current wife DEVANI.

794.7 In or around 2005, defendant KHERA illegally transferred from my account held at Brown & Co Trading Account (later E*Trade), an amount of $50,000 by calling the bank staff, giving them my

social security number, gaining access to my account, and having them issue a check in his name, to his address.

794.8 Between 2003 till date, defendant has impersonated as me, provided SCHWAB and E*Trade employees my personal details, and thus secured access to my accounts. He then asked mailed a check for $50,000 from E*Trade to himself. On one occasion he ordered statements for the bank accounts to be mailed to him at my expense. More recently, he had the address on the account changed to his address so he would continue controlling these accounts, thus denying me access to the account statements. The offence is a punishable identity theft. As a consequence of his fraud, there is a loan amount of $168,000 outstanding in the account, and I have had an additional loss of over 170,000 from being unable to remove the hedge to my securities.

794.9 The community property in 2003 included substantial amount of money in Superannuation accounts, 401K accounts, Provident Fund and Voluntary provident fund accounts, IRA Accounts in India, Australia and US. Defendants have conspired to defraud me of my share of this money held in these accounts. During the last few years of our marriage, defendant fraudulently influenced me to remove all money from my such accounts for family expenses. However, defendant WHITE's report conceals these moneys with the intention of defrauding me.

794.10   Defendant and I had Life Insurance Coverage from India which would have matured around 2003 or thereabouts. Defendants have conspired to forge my signatures and convert this money.

795.  Between 2008 – Dec 2016, cumulative payments of over $050,000 were made to PARDUE, MORENO Defendants, T&T Defendants, MILLEN and their affiliates and associates using checks, credit cards and bank transfers. Defendants defrauded me of these monies by pretending to represent me where in fact they were employed by the CFDE and worked against me.

796.  In 2007, defendants conspired to bribe or corruptly influence SCHUSTER, and WHITE to made false reports, and provide false testimony to the Court. Defendants used a check from his bank, to make these payments into their bank. An amount equal or near to $30,000 was paid to them.

797.  Since he was a fiduciary, holding my property, I reasonably and justifiably relied upon Defendants' false representations, false pretences and deceptive communications, and I have been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein. It was foreseeable that the acts of the defendants would cause the foreseeable injury to me.

798.  Defendants such actions are the proximate cause of my INJURIES & DAMAGES. But for these acts, I would not have been injured.

***Predicate Act : Property Fraud Using Mail, Bank and Wire Fraud, and Bribery***

799. Defendants generally engaged in mail and wire fraud in the commission of FRAUD RELATED TO PROPERTY (para 346-378) culpably with an intent to wilfully defraud me of my property, devising one or more SCHEMES & ARTIFICES (para 601 - 740). Defendants culpable act constituting indictable offenses under 18 USC 1341, 1343, 1344, and 1346, 1349, 201

800. Defendants KHERA and DEVANI conspired to have the property in India - designated as DLF 4109 - illegally transferred to defendant KHERA"s name by impersonating me before a Magistrate and forging my signatures.

801. Between 2004 till date, Defendants KHERA and DEVANI conspired to have my jewellery released to defendant DEVANI by impersonating me before the bank employees where my safe deposit was held.

802. Between 2004 – 2006, defendants KHERA and DEVANI have  unlawfutransferred the proceeds of In or around Dec 2005, defendant DEVANI received into her bank accounts, amounts that defendant KHERA had fraudulently acquired by sale of community property in violation of ATRO order. Defendant DEVANI used these fraudulently conveyed funds to purchase a property in *4293 Verdigris Circle San Jose Ca 95134,*  in her name.

803. In return, defendant DEVANI gave defendant SAMEER KHERA a check, that was used to transfer funds into defendant KHERA's mortgage account, to pay against the $1.8 million *21947 Oakleaf Ct, Cupertino* property.

804. The sale of these assets, and the transfer of funds generated thru sale of these assets was a fraudulent conveyance. Defendant KHERA was technically a debtor and I a creditor.  Defendant DEVANI helped KHERA unlawfully evade his debts.

805. In 2018, Snehal Devani – the co-owner of the *21947 Oakleaf Ct, Cupertino* residence, helped defendant KHERA fraudulently evade his debts by selling the Cupertino residence.

806. In 2005, and since, Defendant DEVANI has illegally received my jewellry, knowing such jewelry to be stolen by KHERA. Defendant DEVANI was made aware that she was wearing stolen jewelry, but did not take any action to return my jewelry.

807. Since he was a fiduciary, holding my property, I reasonably and justifiably relied upon Defendants' false representations, false pretenses and deceptive communications, and I have been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein. It was foreseeable that the acts of the defendants would cause the foreseeable injury to me.

808. These acts constitute a pattern of racketeering activity pursuant to 18 USC 1961(5) and other common law. The Count I Defendants have directly and indirectly conducted and participated in the conduct of the CFDE's affairs through the pattern of racketeering and activity described above, in violation of 18 USC 1962 (c ).

809. These acts constitute a pattern of racketeering activity pursuant to 18 USC § 1961(5) and other common law. The Count I Defendants have directly and indirectly conducted and participated in the conduct of the CFDE's affairs through the pattern of racketeering and activity described above, in violation of 18 USC § 1962 (c ).

### *Predicate Act:  Bribery or Corruptly Influencing (18 USC 201)*

810. Defendants committed acts constituting indictable offenses under 18 USC 201 in that, having devised or intended to devise one or more SCHEMES & ARTIFICES to defraud me, defendants then used mail, wire and banks in commission of these crimes. Upon information and belief, each defendant corruptly influence or caused to be corruptly influenced by use of bribes, kickbacks, referrals, and other instruments of corruption  in furtherance of one or more SCHEMES & ARTIFICES (para 601 - 740).   to defraud me within the meaning of 18 USC 201. Defendants also used banks to transfer the bribes, or other financial emoluments, considerations, where these were paid, into the bank accounts of the alleged defendants.

811. In 2007, Defendant KHERA bribed and/or corruptly influenced B&B Defendants to pretend before the Santa Clara Court that they represented him in matters related to child support and that Santa Clara County had jurisdiction on child support. B&B Defendants in turn bribed or corruptly influenced defendant DAVILA to make orders in clear absence of jurisdiction on Feb 25-27, 2008(s201).

812. In 2007, leading up to the above mentioned hearing, BENETT, BECKER, bribed or otherwise corruptly influenced defendants WHITE & SCHUSTER to make false reports, and provide false testimonies (s201). Specifically, defendant SCHUSTER was corruptly influenced to report my

earning capacity was $90,000 as a Social Worker, when in fact I was prohibited from working as a Social Worker due to a prior felony conviction from 2003 arising of an auto accident.

813. Defendant WHITE was corruptly influenced to testify and report that our standard of living was $3,680 per month where in fact defendant and I had had been earning an average of $500,000 per annum, or equivalent to thereof,  for at least 10 years prior to 2003.

814. SCHUSTER and WHITE were, upon information and belief, paid over $30,000 to make these *and other* false representations.

815. In Feb 2007, KHERA, B&B Defendants, PARDUE, SCHUSTER, WHITE bribed or corruptly influenced Judge DAVILA to make orders based on fraud, fraudulent representation, and fraud upon the Court (s201)

816. Between 2008 – 2013, Defendants KHERA, B&B Defendants bribed or corruptly influenced PARDUE, MORENO Defendants, to defraud me in matters related to property, child support and spousal support.  Defendants agreed between themselves to delay resolution, billing indiscriminately for their meritless services, and at the end of 8 years, after both sides had billed over $700,000 in total fee, the CFDE attorneys "gave away" the case without taking it to trial.

817. Defendants KHERA, PARDUE, B&B Defendants corruptly influenced defendant DAVILA to make a step down spousal support order against me, and then terminate my spousal support in 2009. Defendant DAVILA consented to this corrupt arrangement in return for kickbacks and support, and make other orders in complete absence of jurisdiction and then thru such a corrupt Judgment, in turn corruptly influence the Sixth Appellate District to make a ruling against me. (s201)

818. On Dec 15, 2014, SCHREIBER corruptly influenced COMMISSIONER GREEN to support orders made by defendant DAVILA in clear absence of jurisdiction (s201).

819. Between 2008 – 2013, Defendants KHERA, and SCHREIBER bribed or corruptly influenced my attorneys HECTOR MORENO, ANDREW WESTOVER, RAECHELLE VELLARDE with the explicit intention of helping Mr MORENO defraud me of $92,000 in attorney fee. Specifically, MORENO and his cohort of attorneys reached a clandestine, covert agreement with SCHREIBER to delay resolution of the case by 3+ years, bill indiscriminately, and after 3 years, MORENO agreed to waive child support arrearages of hundreds and thousands of dollars in exchange for an attorney fee of $102,000. Together, the two filed motions that would prevent me from receiving the Court Ordered $92,000 in attorney fee.

820. Between 2005-2018, defendant KHERA and DEVANI corruptly influenced a bank employee by impersonating me, forging my signatures and receiving permission to remove from the safe deposit box, my jewellery that was then given to DEVANI.

821. Between 2005-2007, defendant KHERA and DEVANI corruptly influenced Magistrate of Land Transfer in New Delhi. Defendant DEVANI impersonated me, forged my signatures, and had the community property, DLF # 4109, held in joint names, fraudulently transferred to defendant KHERA's sole name.

822. When defendant DEVANI impersonated me before these officers, and/or forged documents, she committed identity theft as the term is defined in 18 USC 1028(a)(7)  in that she knowingly transferred, possessed, and used, without lawful authority, a means of identification of Madhu Sameer , with the intent to commit, or to aid or abet, defendant KHERA in defrauding me of my lawful property in DLF, New Delhi.

823. Upon information and belief, each defendant made use of the mails, wires and other means of interstate commerce corruptly influenced by use of bribes, kickbacks, referrals, and other payments one or more of my representatives, in furtherance of their scheme to defraud me within the meaning of 18 USC 201.

824. In 2015, the Opposing Counsels JOHN BURTON, GARY HUNT, JODY WINTERS, and SUSAN NAGLE, ARTHUR HARRIS conspired with and corruptly influenced my attorney THORNTON DAVIDSON, which caused DAVIDSON to abandon me without informing me.

825. Defendants' failure to disclose the instruments of corruption and bribery to me. Such disclosure was material because I relied upon the honest services of these professionals, including my own attorneys, the Judicial Officers, licensed professionals, in the conduct of my divorce proceedings.

826. These defendants who received bribes, kickbacks, referrals and other inducements to engage in fraudulent acts, were in a position to injure me and to influence negotiations and outcome of the settlement.

827. I justifiably relied upon Defendants' intentional concealment of the bribes, referrals, kickbacks, in that I continued to use the services of these defendants, including one or more such individuals who had received bribes, referrals, kickbacks, and other benefits. I did so in the justifiable belief that I receiving honest services from licensed professionals, and Judicial Officers.

828. Defendants conduct was wilful, wanton, malicious, and oppressive and reasonably foreseeable.

829. Defendants' unlawful conduct has directly, legally, and proximately caused and continues to cause INJURIES & DAMAGES to me in my business and/or property. But for such conduct I would not have suffered the injuries and damages alleged.

### *Predicate Act: Alteration, Falsification of Records – 18 USC 1519*

830. Defendants committed acts constituting indictable offenses under 18 USC 1519 in that, having devised or intended to devise one or more SCHEMES & ARTIFICES to defraud me, defendants conspired to alter or falsify records in commission of these crimes in furtherance of one or more SCHEMES & ARTIFICES (para 601 - 740) to defraud me within the meaning of 18 USC 1519.

831. Defendants have conspired to conceal, cover up and falsify records related to defendant KHERA's income and assets. A few examples include but are not limited to:

831.1   In 2003, Defendant KHERA failed to pay over $30,000 in child and spousal support arrearages for 2003, falsifying his income documents, and claiming no arrears were owed, even though he received a bonus of over $90,000 in November 2003.

831.2   In 2008, defendant sent me a check for $61,037.92, being proceeds from sale of my property that he had sold over my protests. Defendant wrote "child care support" in the memo, and claimed that the check was for child support. In Santa Clara County he produced the same check and informed the Court that it was for payment of spousal support arrearages. When discussing property related issues, he informed the court that the amount had been paid towards property settlement. The amount of $61,037.92 was used to write off his debts of over $183,000.

831.3   Defendant falsified his tax returns in 2003, showing less income that he had actually earned, with the intention of evading child support payments. Although he stated on the tax report that he would file an amended tax return, he failed to file an amended tax return.

831.4   His tax evasion scheme helped him destroy evidence of income and assets, and hence defendant unlawfully evaded payment of child and spousal support, and defrauded me of property(s1519).

832. Since he was a fiduciary, holding my property, I reasonably and justifiably relied upon Defendants' false representations, false pretenses and deceptive communications, in that I believed that he would be honest and ethical. I have been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein. It was foreseeable that the acts of the defendants would cause the foreseeable injury to me.

833. Such actions of defendants are foreseeably a proximate cause of my INJURIES & DAMAGES. But for such acts I would not have suffered these injuries and damages.

### *Predicate Act: Obstruction of Justice  (18 USC 1500 et seq)*

834. Over the past 15 years, defendants have engaged in obstruction of Justice by way of perjury, violation of court orders, forgery, and threatening, blackmail, domestic violence etc.

835. Since he was a fiduciary, holding my property, I reasonably and justifiably relied upon Defendants' false representations, false pretences and deceptive communications, believing that each of them would engage in ethical and legal compliance with the Court orders, and generally follow the conduct that is becoming to an officer of the court. I have been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein. It was foreseeable that the acts of the defendants would cause INJURIES & DAMAGES to me.

836. Only a few predicate acts falling under the Obstruction of Justice statutory code are discussed here as an example:

### **Predicate Act: Influencing officer generally: 18 USC. § 1503, 1505**

837. Defendants committed acts constituting indictable offenses under 18 USC 1503, 1505 in that, having devised or intended to devise a scheme or artifice to defraud me or to obtain money from me by means of false or fraudulent pretenses, representations or promises, Defendants in turn corruptly influenced defendants DAVILA, ZAYNER, GREEN, and KAPETAN and refused to comply with orders that had been made by various courts in Santa Clara and Fresno County.

838. Upon information and belief, each defendant made use of the mails, wires and other means of interstate commerce corruptly influenced by use of bribes, kickbacks, referrals, and other payments one or more of my representatives, and one or more of Judicial Officers in furtherance of their scheme to defraud me within the meaning of 18 USC 1503 and 1505.

839. Defendants KHERA et al conspired and communicated between themselves, enabling defendant KHERA to violate at least 4 orders of the Court viz Orders of Dec 31, Sept 2003, Dec 31, 2003, Jan 31, 2006, Feb 25, 2008, Feb 3, 2014 from Santa Clara and Fresno County.

840. Judicial Defendants corruptly influenced the other Judges, like Judge ZEPEDA, ELFVIN, and Appellate Judges, by phone, by mail, and by often preventing me from securing transcripts for appeal, and/or by directing filing staff not to file my exhibits, thereby wilfully sabotaging my appeal with a corrupt intent to intentionally harm me. See *ALLEGATIONS* for specificity on fraudulent acts.

841. Defendants used phone, email and mail services, conspiring to engage in bribery, kickbacks, referrals, and other illegal arrangements in order to

(1) influence these and other Judicial Officers to rubber stamp their proposed orders favourable to defendant KHERA, or unfavourable to myself, in matters related to child support,  in violation of their duties as United States Judges.

(2) induce Judicial officers to use their influence with other Judicial Officers dealing with cases in Santa Clara County, Fresno County, Fifth and Sixth Appellate District with regard to my activities, including the complaints filed against the defendants

(3) secure an improper advantage for Defendants themselves, and their clients and/or the CFDE members, in matters related to child support.

(4) Defraud me as a consequence thereof.

842.   I have been damaged as a foreseeable, direct and proximate result of Defendants' illegal referrals, kickback and bribery schemes. But for defendants' actions, I would not have had these INJURIES & DAMAGES.

**Predicate Act: Obstruction of Court Orders (18 USC 1509, 18 USC 228, CCP 1209: CCP 1209 (a) (4))**

843. Defendants committed acts constituting indictable offenses under 18 USC 1509, 18 USC 228, and CCP 1209 in that, having devised or intended to devise one or more SCHEMES & ARTIFICES SCHEMES & ARTIFICES (para 601 - 740)  to defraud me, defendants conspired to engage in obstruction of Justice in commission of these crimes in furtherance of one or more SCHEMES & ARTIFICES (para 601 - 740)  to defraud me.

844. Between all times relevant herein, defendants PARDUE, SCHREIBER, B&B Defendants, MORENO Defendants, KHERA, DAVILA, GREEN, KAPETAN, have conspired between themselves and have advised, or facilitated KHERA in obstruction of justice by way of violating Court orders. Below are a few examples of defendant KHERA's failure to follow Court orders, based on the advice from other defendants:

845.  In Sept 2003, Santa Clara Court issued an ATRO order prohibiting defendant KHERA from transferring, selling or acquiring any community property or assets. Between 2003 – 2008, Defendants KHERA, aided and abetted by defendants DEVANI, BENNET & BECKER violated this order and _sold_ community property consisting of Stocks, Options, and cash, contained in Brokerage Accounts in Smith Barney (CCP 1209). Defendant KHERA, aided and abetted by defendants DEVANI, BENETT & BECKER, illegally _transferred_, with the intention of concealing these assets, all funds from Australian Bank Accounts to his personal account (CCP 1209). Defendant illegally _transferred_ over $1m dollars from community accounts to DEVANI's bank account and into other bank accounts (CCP 1209), which

funds were used to illegally purchase two properties  - at  *4293 Verdigris Circle San Jose Ca 95134*, and *21947 Oakleaf Ct, Cupertino*. (CCP1209).

846.  On Dec 31, Santa Clara County made an order on child and spousal support.

847.  On Jan 30, 2006, Judge JAMES COX, made an Additional Order, which included, orders related to child, spousal support and property.

848.  In 2008, COMMISSIONER DUNCAN made an order on child support. On Feb 3, 2014, Judge ALLEN HILL made an order on child support.

849.   B&B Defendants, SCHREIBER, KHERA, PARDUE, MORENO DEFENDANTS have pretended to agree with each and every order, but have wilfully, with the intention to defraud me, conspired with defendant KHERA, advising him to violate these orders, helping him conceal assets, and evade hundreds of thousands of dollars in child and spousal support. (CCP1209).

850.  Defendants such actions are the direct, foreseeable, and proximate cause of my INJURIES & DAMAGES. But for their such actions I would not have suffered such injuries and damages.

**Predicate Act: Tampering with a witnesses, victims, and informants: 18 USC. § 1512**

851.  Defendants generally engaged in Witness Tampering. Defendants committed acts constituting indictable offenses under 18 USC 1512(b)(2) in that they devised or intended to devise one or more SCHEMES & ARTIFICES (para 601 - 740) to defraud me  by means of tampering with the witness testimony in matters related to child support.

852.  For the purpose of executing their SCHEMES & ARTIFICES, defendants the acts of Defendants set forth were done with knowledge that the witness tampering was unlawful, and would affect the my rights to child support, spousal support, property and as such the damage could have been foreseen. These acts were done intentionally and knowingly with the specific intent to advance Defendants' SCHEMES & ARTIFICES.

853.  Following are a few, not all, examples by which the defendants conspired to defraud me by way of witness tampering by threats, bribery etc:

  853.1      In 2007, influenced defendants WHITE and SCHUSTER's to provide false testimonies and reports to myself, my representatives and the Court (s1512).

  853.2      In 2007, Defendants PARDUE and DAVILA coerced me into accepting a settlement based on fraud, by threatening that if I persisted in proceeding to trial, I would be sanctioned to the amount of $180,000 or so.

853.3    In Dec 15, 2014, defendant GREEN threatened me that he would not certify the settled statement if I refused to agree to his (falsified) version of the settled statement.

853.4    In 2013, defendant KHERA and DEVANI locked our son KABIR KHERA, and spent 45 hours attempting to influence him conceal from evaluators Dr Jeffrey Kline, Lori Penn, and from Minor's Counsel B J Fadem, acts of sexual abuse that defendant had engaged in between 2003 – 2006 towards them.

854.    Each of these actions was meant to foreseeably, unlawfully silence the victims, and the witnesses.

855.    Defendants such actions are the direct, foreseeable, and proximate cause of my INJURIES & DAMAGES. But for their such actions I would not have suffered such injuries and damages.

## Forgery & Identity Theft (10 USC 923)

856. Defendants generally engaged in acts related to obstruction and justice by way of forgery under 10 USC 923 in that they devised or intended to devise one or more SCHEMES & ARTIFICES (para 601 - 740) to defraud me by means of forgery, and forged documents, that were distributed and delivered by the US. mails or by private or commercial interstate carriers. Defendants KHERA and PARDUE conspired with other defendants to defraud me by forging documents to promote, manage and facilitate the continuation of their scheme.

857. In 2007, I requested defendant PARDUE present the evidence of fraud before defendant DAVILA. Defendant PARDUE repeatedly informed me that such an action would enrage defendant DAVILA. He refused to file these documents.

857.1    I then attempted to engage DELOITTES to audit the records, so as to create a credible expert witness. Defendant PARDUE bad mouthed me until DELOITES informed me that he was unable to represent me after what PARDUE had told him about me.

857.2    I then sought from PARDUE a declaration of mistake, as a Set Aside is mandated when an attorney files a declaration with the Court.

857.3    In retaliation, defendant forged/altered a Substitution of Attorney Document, and filed it with the Court without my knowledge and permission, stating he was resigning because I was being "difficult".

857.4    As a consequence of defendant PARDUE's such actions, I was unable to get relief by way of Attorneys Statement of Mistake. I have been denied relief, and have had to engage in over 10 years of litigation, at an expense of over $400,000 in legal fee in Fresno and Santa Clara County.

858. In or around 2007, Defendant KHERA purposefully, maliciously conspired to have my signatures forged on documents related to community ownership of DLF Parcel # 4109, and fraudulently registered the property in his name.

859. Between 2005-2007, defendant KHERA and DEVANI appeared before the Magistrate  in New Delhi, and corruptly influenced Magistrate.

859.1      Before the Magistrate, Defendant DEVANI stole my identity, impersonated me, forged my signatures, and had the community property, DLF # 4109, held in joint names, fraudulently transferred to defendant KHERA's sole name.

859.2    When defendant DEVANI impersonated me before these officers, and/or forged documents, she committed identity theft as the term is defined in 18 USC 1028(a)(7)  in that she knowingly transferred, possessed, and used, without lawful authority, a means of identification of Madhu Sameer , with the intent to commit, or to aid or abet, defendant KHERA in defrauding me of my lawful property in DLF, New Delhi.

859.3      Defendants KHERA and DEVANI engaged in this act wilfully, with an intention of defrauding me of my property. At the time defendant forged the above mentioned document, he was aware that he was engaging in a criminal act. Defendant intended to register the second property in his name as well, but was stopped due to legal actions on my part.

859.4      In 2014, I filed a motion in the Superiot Court alleging fraud, a trial was scheduled in Dept 81. Defendant engaged in acts of EXTRINSIC FRAUD, and hence I was unable to appear at the trial. (See 417)

859.5      Defendant KHERA's such actions deprived me of my right to property, which includes my right to sell my property. In the year 2012, the property price was approx. $1million. Subsequently due to major slump in the property market, the price has significantly dropped, being cut by almost 75% since

860. Defendants foreseeable actions are proximate cause of my INJURIES & DAMAGES. But for defendants such actions, I would not have suffered these damages.

### Predicate Act: Abuse of Process as a Mail, Wire Fraud (18 USC 1341, 1343)

861. All communication between Defendants, took place thru emails, phone, fax messages, and mail, utilizing the US Mail and wire services. Defendants used phone, fax, email and mail to communicate with each other and other defendants. I used phone to communicate with filing clerks, court clerks,

and used Courtcalls to attend hearings, and the Court used US Mail to deliver its orders, and other documents to me, or to my representatives.

862. Between 2006 – 2014, PARDUE, MORENO defendants, MILLEN, and T&T Defendants intentionally chose not to zealously represent me.

    862.1    In accordance with the Business and Professional Code 6068(o)(7), a Reversal of judgment in a proceeding based in whole or in part upon misconduct, grossly incompetent representation, or willful misrepresentation by an attorney has to be reported to the State Bar which takes further actions.

    862.2    In context of the BPC 6068, to protect these corrupt attorneys from being referred to the State Bar, each of these abovementioned attorneys concealed pertinent evidence and law from me, and misrepresented facts and law to me, and to the Courts thus intentionally sabotaging my chances of prevailing. I was repeatedly told by one or more of these defendants that the other defendants were their "friends" or "close friends" or referral sources, and/or that their lawfirm did not get other attorneys in trouble. The prosecution of my case against defendant KHERA was severely curtailed by these relationships that fulfil the criteria of a racket where illegal relationships, and not the CRPCs and Business and Professional Codes govern the prosecution of a claim.

    862.3    MILLEN and T&T Defendants were close friends and secured their referrals from MORENO defendants. To protect MORENO Defendants, these two sabotaged the Legal Malpractice suits and the Appeal respectively. Each member of the CFDE cartel has wilfully sabotaged the very motions they have filed, the very proceedings and trials they have represented me in, or the appeals that they have represented me in, or the legal malpractice suits they have represented me in.

    862.4    CFDE Judicial Defendants refused to grant my meritorious motions to Set Aside, or Void Judgments of 2008, or to hold these defendants liable for their actions -  because each one of them illegally wished to protect defendant DAVILA. But also, a reversal in Judgment would have highlighted the each of these CFDE Attorneys' misconduct, and mandated a referral to State Bar.

    862.5    The intention and motivation behind denying each and every one of my meritorious claims was not the insufficiency of the claim itself, but the desire to protect these culpable, corrupt attorneys, and the line of judicial officers who had offered illegal protection to them.

862.6     The denial of my motions in family court, and the dismissal of my complaints in civil courts, and the denial of my attorney fee motions to prevent me from pursuing an appeal against such dismissals represents an abuse of process.

863. Defendants have meritlessly, frivolously litigated for the past 15 years, in the Santa Clara Family and Civil Courts, Fresno Family and Civil Courts, DCSS Courts, Fifth and Sixth Appellate District. At each Court, these defendants have presented false statements, perjury, and generally engaged in other acts that constitute fraud, obstruction of justice, bribery, and/or unlawfully influencing an officer. The Courts that are populated by ethical honest Judicial Officers have overruled the Judgment of 2008. The Courts that are populated by CFDE Judicial Officers have unlawfully dismissed my complaint to protect the CFDE operatives.

864. Such actions represent fraud upon the court, and related criminal acts under 18 USC 2, 3, 4, and 2383. The stated intent has been to present a valid defence for defendant KHERA's, but the real intent has been to protect the CFDE cartel from being exposed. In each successive lawsuit, the conspiracy has gotten deeper and deeper. Such unlawful motives behind these decisions and Judgments represent abuse of process.

865. Overall, defendants engaged in 15 years of litigation, during which they themselves sought several Court Orders that they conspired to violate. Any reasonably person would find the basis for litigation to be frivolous, and meritless.

866. Defendants actually have no real reason or basis to litigate on any of these issues that they are litigating on. The real issues behind these litigations that have spawned 15 years are the following:

a) Generation of attorney fee, and wealth transfer, as alleged in the RICO claim. The attorneys intentionally engage in fraudulent conduct, and advise defendant to violate court orders, or engage in ethical violations, so they can continue generating more attorney fee for themselves. This is not only true for the attorneys involved in the family law, but also is true for the attorneys involved in the civil litigation. In Civil cases, each of these CFDE attorneys filed a frivolous Special Motion to Strike. Each of the Judicial Officers involved was aware of the underlying allegations of fraud and criminal acts in family courts, including filing false police reports, domestic violence, forgery, blackmail, violation of court orders, failure to pay hundreds of thousands of dollars in child support. There is a sufficient body of caselaw that establishes the legitimacy of divorce related RICO, and that RICO lawsuits are not subject to ANTI SLAPP statutes. The Judicial Officers like KAPETAN, and Judge SIMPSON, meritlessly granted the Special Motions to Strike, knowing full well that these would be appealed. In a similar manner, Judicial Officers ELFVIN, KAPETAN,

SIMPSON allowed defendants to file Motions, and hold CMC's during my Notice Unavailability, then refusing to set them aside. At the time they made these orders, they knew they were acting contrary to the tenets of justice, and were aware that these orders would be appealed, and would result in unnecessary appellate expenses, but also an guaranteed income for opposing counsels. Therefore their actions were geared towards funding the enterprise attorneys to generate additional income. In return for such income, the enterprise attorneys provide support, funding, and other quid pro quo benefits as are needed by the judicial officer. For example, any reasonably honest and ethical judicial officer would have sanctioned DAVIDSON, for abandoning me without informing me, and would have set aside the Judgment on that basis alone. Not these CFDE Judicial officers. They protected an unethical CFDE attorney who had unlawfully, in breach of CRPCs, conspired to abandoned me without informing me, to my detriment. It is not unreasonable to assume that the CFDE attorney DAVIDSON would respond in a quid pro quo arrangement to any illegal activity that KAPETAN may request of him.

b) Retaliation : I chose to leave my marriage with defendant KHERA. Hell hath no fury as a wealthy privileged man scorned. Subsequent refusal to comply with Court orders has less to do with payments and property division, more to ensure my failure in every sphere. Defendant has volunteered to blindly pay any and all CFDE member that can secure revenge for him. Each CFDE operative has exploited this feeling of revenge to his or her advantage. B&B Defendants have secured over $400,000 from the defendant KHERA. Defendant SCHREIBER has secured over $120,000 from him. SCHUSTER, WHITE, ELLIS and others have exploited defendant KHERA and together they have diverted the child support, property, and spousal support towards themselves.

**Predicate Act: Blackmail & Extortion (18 USC 873, 875(d))**

867. In 2014, Defendant SCHRIEBER et al attempted to blackmail me to accept lower child support and arrears then what defendant ALLEN HILL had awarded to me. I was told if I did not comply with her demands, she would make sure that I never received anything that Judge HILL had awarded me. Such threats were made to my attorney KIM AGUIRRE on phone.

868. Upon my refusal, defendant SCHREIBER colluded with MORENO Defendants to file a motion in dept 92, arguing that the attorney fee award of $92,000 should be granted to defendant MORENO, not to me.

869. At the time these defendants filed this motion, each of them was aware that I had already paid $40,000 of this amount, and defendant MORENO was owed only $67,000, not $92,000.  Defendant MORENO himself had filed billing statements showing that only $67,000 was owed. The cartel thus attempted to defraud me in lieu of the covert arrangements that defendant SCHREIBER and MORENO defendants had made – to waive child support arrears of hundreds of thousands of dollars in exchange of $92,000 in attorney fee.

870. As a consequence of her actions, the $92000 was deposited in defendant SCHREIBER''s account, I was denied access to money that was rightfully mine. In collusion, and with an explicit intention to defraud me by blackmailing me, MORENO defendants began imposing $1000 or so per month, in interest and filed a complaint in Santa Clara County fraudulently seeking $150,000 from me.

871. Because I needed the money for paying for my children's living expenses, in Dec 2016, while I was in NZ, and appeared at the Court hearing in Dept 301 thru Courtcall, I agreed to release the funds if $30,000 was given to me. MORENO Defendants, using interstate communication, still managed to blackmail me and extorted and received an extra $7000 from me and are now demanding an extra $150,000 thru the litigation in Santa Clara County. Defendants' received $7000 as a consequence of such extortion and blackmail, such crimes being punishable under 18 USC 880.

872. In 2008, defendants DAVILA at al threatened, intimidated, and blackmailed me into submitting to defendant KHERA's illegal demands. On May 2007, defendants extorted from me an oral recitation for an agreement. I was informed falsely informed that this was a valid and equitable agreement, and that if I did not agree, Judge DAVILA would sanction me to over $180,000. The threats were meant to defraud me of my rights to property, spousal and child support, and attorney fee. At the time defendants engaged in these acts or coercion, blackmail and extortion, defendants were aware of the illegality of their crime. Since then, thru other court orders, and proceedings that are currently pending, it has been sufficiently established that defendants had engaged in criminal conduct.

873. I had justifiably relied on the defendants' integrity under their professional licenses and judicial canons. As a consequence of such blackmail and extortion, I have suffered significant material and non material damages. But for their actions, I would not have had such damages.

### Predicate Act: False Statements & Declarations (18 USC 1623)

874. In 2008, FC-DCSS assessed defendant KHERA's child support obligation to be $8,180 per month. Arrears of unknown amount were assessed, payable at $2047 per month until exhausted. At the time, defendant KHERA was self represented.

875. Soon after a CFDE attorney was recruited, FC-DCSS refused to secure these arrears, and by 2014, the arrears had miraculously disappeared from their books, in violation of federal and state laws.

876. In October 2014, I filed a Motion for enforcement, and soon after, a Motion for Contempt for non payment of arrears. These were heard in Dept 301 and 302 respectively.

877. FC-DCSS operatives, in conjunction with CFDE attorney SCHREIBER, in a quid pro quo arrangement that reduced their own workload in exchange for CFDE involvement, made false statements to both the courts that there were no arrears outstanding, that defendant KHERA was current on support.

877.1 During appeal, when evidence of non payment of arrears was presented to them, defendant DYER falsely claimed that he had made a statement that defendant KHERA was current *as billed.* This was entirely untrue. Had defendants made such statements, my motion would not have been denied by both Courts *with prejudice.*

877.2 Defendant DYER is thus guilty of lying to the FC-DCSS Court, as well as to the Appellate Court. At the time defendant DYER made these false statements, he was aware that arrearages had been assessed, and were owed. Defendant made these false statements knowingly, in order to assist CFDE attorney SCHREIBER in defrauding me.

877.3 The conspiracy and collusion between CFDE operatives, of which defendant DYER is a member, needs no better evidence except that which is recorded on the Register of Actions maintained by the Family Court Services.

877.4 I had relied on the FC-DCSS to collect the support for me, or at least present the facts honesty. I was injured as a consequence of defendant DYERs false representations to Dept 301 and 302.

878. Defendants SCHREIBER et al made several false statements to Judge ALLEN HILL, during the trial that lasted from 2010 – 2013. The false statements dragged the trial over 4 years and injured me because I could not receive appropriate support during this period, and had to incur attorney fee during this period. Following are only a handful of examples.

878.1 Between Feb 2014, and Dec 2015, in hearings before Dept 301, 302, 203, on 4 different occasions, defendant SCHREIBER made false statements that she and her client had not been served. At the time defendant SCHREIBER made these false statements, she was aware that both she and her client had been served. In fact one of these services had been performed using a process server. Defendant made these statements to intentionally and corruptly mislead the Court. I reasonably and justifiably relied upon Defendants' false representations, false pretences

and deceptive communications,. These false statements have been noted on the appellate opinion and have a potential of negatively affecting my appeals and Judicial Reviews. I justifiably relied on defendants' statements before the Court, and was injured as a result of such false statements.

878.2     In 2013, defendant SCHREIBER stated that defendant KHERA's total income for 2011 should be reduced by $100,000 as the $100,000 was an amount that his wife had earned. Judge ALLEN HILL relied on her oral statements, and reduced the total available for childsupport, by $100,000. At the time defendant SCHREIBER made these statements, defendant SCHREIBER was aware that defendant's wife had not been awarded $100,000. Defendant KHERA had himself testified in the trial to the contrary. Defendant SCHREIBER et als conspiracy led to a reduction of over $11,000 in child support for that financial year. As a consequence of such fraud, I was deprived of my rights to appropriate child support. I had justifiably relied on his testimony under oath, and was injured as a consequence of her false statements.

878.3 Between 2010 and 2014, defendant SCHREIBER et al, made repeated false statements to Judge ALLEN HILL, that I had reneged on a previous settlement that she had made with JUDITH SOLEY. Just a week before JUDITH SOLEY passed away, in an email to me JUDITH SOLEY clearly stated that no settlement had been agreed to. Defendant SCHREIBER spent over a year during the trial (at least 3 trial days) arguing that I should be held accountable to that non existent agreement. Her actions delayed resolution of the case, and forced me to incur excessive attorney fee. I had justifiably relied on an honest process, and was injured by her false statements because of the attorney fee I had to pay for those 3 days while she attempted to examine, cross examine on and on about her purported agreement with JUDITH SOLEY.

878.4 Between 2014 till date, defendants KHERA et all have made false statements to my attorney, and to judicial officers GREEN, LE MON, KALEMKARIAN, that they have made certain payments in child support. Prominent amount them are the payments of $600+ defendant claims to have made between 2010 and 2014. Although defendant did send me the checks, these checks were not encashed and were returned to defendant SCHREIBER thru mail. The matter is recorded in the trial transcripts. However, defendant has made false statements that these payments have been made.

878.5 Defendants have also made false statements that defendant KHERA has made payments of over $186,000 in child, spousal and property related matters. However, by mislabelling a check for $61,037, defendant has used that check fraudulently to account for $187,000+ outstanding amount, writing off credits of $61,037 in each of child, spousal, and property related matters.  Defendants' false statements have prevented me from getting appropriate child, spousal support and property  division, delaying resolution of case, and incurring the expense of continued litigation. I justifiably relied on defendant KHERA's testimony under oath, and the professional integrity of other members of the cartel. I was injured by the false statements.

878.6 Defendant SCHREIBER et al, made repeated false statements to Judge ALLEN HILL, that I had reneged on a previous settlement that she had made with JUDITH SOLEY. Just a week before JUDITH SOLEY passed away, in an email to me JUDITH SOLEY clearly stated that no settlement had been agreed to. Defendant SCHREIBER spent over a year during the trial (at least 3 trial days) arguing that I should be held accountable to that non existent agreement. These false statements unnecessarily delayed resolution of the case, and forced me to incur exorbitant attorney fee. I justifiably relied on defendant KHERA's testimony under oath, and the defendants' professionalism and requirement of honest representations under CRPCS, and Judicial Ethics, and was injured by the actions of the cartel in violation of these.

879. During the Appeal, and in their respondent's Brief, Attorney General's Office made a false statement on behalf of defendant GREEN and FC-DCSS. Attorney Deguzman stated that defendant GREEN had not denied my motion for enforcement of Court orders, with prejudice. This was a false statement, intentionally made to mislead the Appellate Court, and Attorney DeGuzman succeeded in misleading the Appellate Court. As a consequence of such false statement, Appellate Court has affirmed the Trial Court's decision. At the time Attorney DeGuzman, she was aware that defendant GREEN had intentionally denied my motion with prejudice. In fact, defendant GREEN had categorically stated this in his status report, that he had denied my motion with prejudice. DeGuzman intended to conspire with other defendants and to help them in defrauding me. As a consequence of DeGuzman's false declaration to the Appellate Court, the issue is now pending Judicial Review. Meanwhile, I have been denied access to hundreds of thousands of dollars that defendant owes me in child and spousal support payments. I had justifiably relied on the Attorney General's office to provide honest representation, and was injured as a consequence of their fraud and false statements.

880.  Between 2014 – 2016, Defendants KHERA et al, have claimed that defendant KHERA has made 11 payments totalling $6000+ to me in child support. Defendants falsely claimed to have made these payments using 11 checks of over $600 each. At the time defendants made these claims to me and my attorneys, and to defendant GREEN, each of the defendant was aware that these checks had been returned, and were never cashed. Defendants statements under these circumstances represented false statements, made before an officer, with an intent to mislead and with an intent to defraud me.

881.  Such actions of these defendants are the proximate cause of my INJURIES & DAMAGES. But for such actions, I would not have suffered these injuries.

### Predicate Acts: Perjury (18 USC 1621)

882.  Defendants committed acts constituting indictable offenses under 18 USC 1621 in that, having devised or intended to devise a scheme or artifice to defraud me or to obtain money from me by means of false or fraudulent pretenses, representations or promises, Defendants then made false representations to various Courts under oath to promote, manage and facilitate the continuation of their scheme. A child support payee is prohibited from resigning from his job to seek a lower paying job. In 2010, defendant KHERA resigned from his job at CISCO SYSTEM, where he was getting over $800,000 in income. He stayed at home for 8 months, opening a string of cash based businesses that he failed to report his income from.

883.  During the trial on child support, between 2010 – 2013, Defendants KHERA et al made false representations to the Court that defendant KHERA had resigned from his job because he was afraid of being made redundant.

884.  At the time defendants made these false representations to the Court, each defendant was aware that defendant KHERA job was not threatened, that he had resigned voluntarily, to open a string of private businesses intending to evade child support payments.

885.  Defendant KHERA had previously _testified_ that he had resigned because he was bored at CSCO.

886.  Later deposition of an HR employee from CSCO revealed that defendant had been getting promotions at CISCO SYSTEMS and that he had been well aware that his job was not threatened.

887.  Defendants conspired to present such false testimony before the Court, thus preventing the Court to impute an income of $800,000 or so.

888.  By resigning from his well paying job, and by making false statements, defendant culpably was successful in evading his child support obligations. Had the defendants not conspired to coach him into making such false statements, JUDGE ALLEN would have been compelled to impute an

income of $800,000 as per state and federal laws. Defendant thus benefitted from such perjury. I justifiably relied on his testimony under oath, and was injured by his false statements.

889. MORENO defendants made false declarations under oath that I had fired them so I could "steal" their attorney fee award. At the time defendants made these false statements, they were aware that I had offered them to keep $67,000 that I owed them, and to give me what I had already paid them.

890. Such perjury, by these and other defendants, for the past 15 years, before one or more Courts, represents obstruction of justice, and has been the proximate cause of my INJURIES and DAMAGES. But for such actions, I would not have suffered these injuries.

*Predicate Act: Interstate and foreign travel or transportation in aid of racketeering : (18 USC. § 1952)*

891. Defendants committed acts constituting indictable offenses under 18 USC 1952 in that, having devised or intended to devise a scheme or artifice to defraud me or to obtain money from me by means of false or fraudulent pretenses, representations or promises, Defendants then traveled in foreign commerce and used facilities of foreign commerce in order to promote, manage and facilitate the continuation of their scheme.

892. Among other things, upon information and belief, between 2006-2008, defendants KHERA and DEVANI travelled to India with the explicit intention of promoting, manage and facilitate Defendants' SCHEMES & ARTIFICES to defraud me by impersonating me before the Bank in India, and presenting defendant DEVANI as MADHU SAMEER. Defendant DEVANI then forged my signatures on the community property characterised as DLF property, and had it illegally transferred, registered the property in defendant KHERA's name.

893. While in India, defendant KHERA and DEVANI on behalf of himself and the other Defendants, did in fact promote, manage and facilitate the continuation of Defendants' scheme to defraud me presenting DEVANI as MADHU SAMEER, and/or by corrupting officials of DLF estate, to facilitate registration of a community property held in joint names, to his sole name thru bribery and improper influence of one or more senior officials of the DLF Builders.

894. Between 2005-2018, defendant KHERA and DEVANI have travelled to India with the explicit intention to promote, manage and facilitate the Defendants' scheme to defraud me by impersonating me, and thereby removing from the safe deposit box, my jewellery that was then given to DEVANI. While in India, defendant KHERA and DEVANI on behalf of themselves and the other Defendants, did in fact promote, manage and facilitate the removal from safe deposit box my jewellery, by

impersonating me to get access to the safe deposit box, and/or bribing and corruptly influencing the bank employee so as to gain access to the safe deposit box for removal of my jewellery.

895. In 2006, defendant travelled to Sydney Australia in connection of the funds held in Australian banks. While in India, defendant KHERA and DEVANI on behalf of himself and the other Defendants, did in fact promote, manage and facilitate the remove some of the funds from community accounts funds that were community property. Defendants DEVANI and KHERA spent these months on their honeymoon, at my expense, and transmitted the remaining funds back into their accounts in US.

896. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice. Defendants' shared objective was and is to divert funds to their own benefit and to facilitate the payment of bribes, kickbacks, referrals in an effort to defraud me.

897. Since he was a fiduciary, holding my property, I reasonably and justifiably relied upon Defendants' false representations, false pretences and deceptive communications, and I have been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein. It was foreseeable that the acts of the defendants would cause the foreseeable injury to me. Defendants actions will wilful, culpable, and despicable.

898. I have been damaged as a direct and proximate result of Defendants' travel in foreign commerce for purposes of promoting, managing and facilitating the continuation of their scheme.

***Predicate Act: Sale or receipt of Stolen Goods, Securities, Money (18 USC 2315)***

899. Between 2003 till date defendant KHERA sold stocks, ESPP, and Options held in community accounts, without my permission or knowledge, wilfully, in violation of the ATRO order. At the time defendant KHERA committed these acts, he was aware that the ATRO order prohibited him from sale of transfer of goods.

900. Between 2003 till date, defendant KHERA has transferred and therefore received into his own accounts, money stolen from community accounts of Smith Barney, after sale of community's securities. At the time defendant KHERA committed these acts, he was aware that the money belonged to the community, and he made these transfers with the intention of stealing this money from the community. At the time defendants KHERA and DEVANI committed these acts, they were aware that the money belonged to the community, and that they were engaged in an unlawful act.

901. In addition to the above, Defendant DEVANI received money stolen from community accounts held with Smith Barney, Bank of America, and Westpack/Commonwealth Banks of Australia, either in

the form of cash, or in the form of wire transfer, or in the form of checks that were deposited into her bank account, or reinvested, or spent by her.

902. Defendant DEVANI has received jewellery stolen from community safe deposit box. At the time defendants KHERA and DEVANI committed these acts, they were aware that the jewellery belonged to me, and they were engaged in an unlawful act.

903. Since defendant KHERA was a fiduciary, holding my property, and other defendants were licensed professionals and judicial officers, I reasonably and justifiably relied upon Defendants' false representations, false pretences and deceptive communications, and I have been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein. It was foreseeable that the acts of the defendants would cause the foreseeable injury to me.

904. Defendants' activities are the proximate cause of my INJURIES & DAMAGES. But for such injuries and damages, I would not have suffered these injuries.

**Predicate Act: Transport and Receipt of Stolen Money in Violation of 18 USC 2314 and 2315.**

905. Defendants committed acts constituting indictable offenses under 18 USC 2314 in that having devised or intended to devise a scheme or artifice to defraud me or to obtain money from me by means of false or fraudulent pretenses, representations or promises, Defendants transported or caused to be transported in interstate or foreign commerce money having a value of $5000 or more, which was stolen, converted or taken by fraud. Defendants also committed acts constituting indictable offenses under 18 USC 2315 in that they received money in excess of $5000, which crossed a State or United States boundary after being stolen, unlawfully converted or taken. The acts of Defendants set forth above were done willfully and with knowledge that the money was stolen, converted or taken by fraud. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

906. As part of their scheme as alleged herein, Defendants also facilitated the payment of bribes to one or more witnesses in order to secure their services to effect this fraud, for the benefit of Defendants and at my expense.

907. Between 2003 till date defendant KHERA sold stocks, ESPP, and Options held in community accounts, without my permission or knowledge, wilfully, in violation of the ATRO order. At the time defendant KHERA committed these acts, he was aware that the ATRO order prohibited him from sale of transfer of goods.

908. Between 2003 till date, defendant KHERA has transferred and therefore received into his own accounts, money stolen from community accounts of Smith Barney, after sale of community's securities. At the time defendant KHERA and DEVANI committed these acts, they were aware that the money belonged to the community, and they made these transfers with the intention of stealing this money from the community, knowing that they were engaged in an unlawful act.

909. In addition to the above, Defendant DEVANI received money stolen from community accounts held with Smith Barney, Bank of America, and Westpack/Commonwealth Banks of Australia, either in the form of cash, or in the form of wire transfer, or in the form of checks that were deposited into her bank account, or reinvested, or spent by her.

910. Defendant DEVANI has received jewellery stolen from community safe deposit box in India. At the time defendants KHERA and DEVANI committed these acts, they were aware that the jewellery belonged to me, and they were engaged in an unlawful act.

911. Since defendant KHERA was a fiduciary, holding my property, and other defendants were licensed professionals and judicial officers, I reasonably and justifiably relied upon Defendants' false representations, false pretenses and deceptive communications, and I have been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein. It was foreseeable that the acts of the defendants would cause the foreseeable injury to me.

912. Defendants' activities are the proximate cause of my INJURIES & DAMAGES. But for such injuries and damages, I would not have suffered these injuries.

913. Continuity of Conduct: Defendants' violations of state and federal law as set forth herein, each of which directly and proximately injured me and other participants, constituted a continuous course of conduct spanning a period from approximately 2003 to present, which was intended to obtain money, property through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of a pattern of racketeering activity under 18 USC. $5 1961(l) and (5). Defendants activities were the foreseeable, proximate cause of my INJURIES & DAMAGES.  But for these activities, I would not have suffered these damages.

914. Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined herein in violation of 18 USC 1962(c).

915. The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to me in my person, and in my business. I seek an award of damages in compensation for, among other things, the millions of dollars Defendants stole from me

in property, child support and spousal support. I accordingly seek an award of three times the damages I sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

**SECOND RICO CLAIM : TAX FRAUD BY MAIL, WIRE, BANK FRAUD (26 USC 7201, 7202, 18 USC 1341, 1343, FC 1344)**

Against KHERA defendants, B&B Defendants, MORENO Defendants, PARDUE, WHITE

916. I incorporate all the preceding paragraphs of this Complaint, and by reference, as if fully set forth herein.

917. Defendants violated RICO and I was injured as a result.

918. Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 USC 1961 (3).

919. Each Defendant violated 18 USC 1962(c) by the acts described in the prior paragraphs, and as further described below.

920. The Enterprise. Incorporated by reference *CFDE AS A RICO ENTERPRISE* (para 605 - 632)

921. Each enterprise routinely engage in, has engaged in, and their activities routinely affect, and have affected, INTERSTATE AND INTERNATIONAL COMMERCE (para 633 - 634).

922. Defendants have engaged in a PATTERN OF RACKETEERING ACTIVITIES (para 742 - 751).

923. I specifically allege that Defendants participated in the operation and management of the association-in-fact enterprise and the alternative enterprises by overseeing and coordinating the commission of multiple acts of racketeering as described below:

924. Defendants generally engaged in aiding and abetting defendant KHERA in commission of Tax Fraud under 26 USC 7201, 7202 by attempt to evade tax, and wilful failure to pay income tax, using Mail, Wire and Bank Fraud.

925. Defendants committed acts constituting indictable offenses under 18 USC 1341, 1343, 1344, 1509 in that they devised or intended to devise one or more SCHEMES & ARTIFICES (para 601 - 740) to defraud me by obstruction of justice and by means of false or fraudulent pretenses, representations or promises, and failure to provide accurate and dependable tax returns on which accurate child and spousal support calculations and property division could be based. The acts of Defendants were done with knowledge that the fraudulent tax returns would cause injury to me, and that such could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' SCHEMES & ARTIFICES. The funds I was defrauded of,

were/are held in defendants bank, and brokerage accounts, and the communication related to these funds is thru US Mail and Wire. Defendant used wire services to log into his bank accounts, and either uses the bank's wire, transfer services to move these funds, or uses US Mail to post the checks that are issued by the banks in regard to his bank accounts.

926.   Santa Clara Court's Support Order of 2003 ordered defendant KHERA to pay retrospective support effective the date of filing the motion for temporary support. The retrospective date was Sept 1, 2003, the order on child and spousal support was made on Dec 31, 2003. Defendant received a bonus of over $90,000 in November 2003, but failed to pay over 11.25% of that amount in child support, and 22.5% in spousal support payments for 2003, falsifying his income documents, tax documents, failing to show that he had received this income, and claiming no arrears were owed. See *TAX FRAUD & MONEY LAUNDERING*, (para 434-440)

927.   Between 2003 till date, Defendants have concealed, covered up and falsified records related to their income as it related to property division. Such fraud constitutes property fraud under RICO. See *Property Fraud Using Bank, Mail and Wires, and Bribery*, beginning at para 799-809, and *FRAUD RELATED TO PROPERTY* (para 346-378)

928.   Between 2000 and 2003, in anticipation of the separation, defendant KHERA sold 2 properties in Australia. These properties were at *6 Chuvel Close, Wahroonga, Sydney, Australia* (buying price 360,000, deposit 25%; selling price 550,000) and at *Kings Street, Paramatta, Sydney, Australia* (Buying price 149,000, initial deposit 40%; selling price $220,000).

929.   During dissolution proceedings, Defendant claimed that the parties had no property in Sydney. These properties, or the funds derived from the sale of these properties, was omitted from the property division.  They were omitted from computation of spousal support or child support calculations. Defendant mailed documents to Sydney to effect these sales.

930.   Defendant engaged in communication over internet thru emails, and also engaged in telephone conversations with the brokers to complete the sale of these properties. The proceeds from the sale were transmitted to his bank accounts in Sydney, Australia. Defendant even travelled to Australia in 2006 to transact in these accounts, used these community funds to pay for his honeymoon after his marriage to DEVANI, and transmitted rest of these funds to US using banks and wire transfers. Defendant KHERA did not declare this income either in Australia or in US for tax purposes and paid no tax on these proceeds either in Australia, or in US. When asked for tax returns of 1998 – 2003, he has refused to provide the tax returns. Defendant is guilty of tax fraud, (26 USC 7201), mail fraud (18

USC 1341) and wire fraud (18 USC 1343), bank fraud (18 USC 1344) and money laundering (18 USC 1956).

931.   Between 2003 – 2006, defendant DEVANI culpably  used $600,000 of community funds stolen from the community, for purchase of her property at _4293 Verdigris Cir, San Jose, CA 95134_. Defendants rented this property out as an investment property, the money was deposited into defendant KHERA's bank, or was concealed as defendant DEVANI's income, on which income defendant KHERA did not pay tax (26 USC 7201, 7202), and failed to disclose to me, to the Court, and also failed to pay child and spousal support on this income (18 USC 228).

932.   As a consequence of such tax fraud and money laundering activities, I was at the time unable to ascertain where the proceeds from the sale of the properties was being held, and I had no evidence that the properties actually had been bought, and sold, and was unable to rebut WHITE's claim that our standard of living was $3,680 per month. Defendants were able to defraud me of these properties.

933.   Defendants, each one of them, were aware that defendant KHERA owned these properties and the bank accounts where the proceeds from sale of these properties were held. Defendants conspired between themselves to commit such acts with the intention to defraud me in relations to property, child support and spousal support.

934.   HEALTHY MASALA, DIVINE ARTS & ENTERTAINMENT are income producing companies that have failed to report their income appropriately to IRS. As a consequence, FC-DCSS has been unable to intercept the income to assess child and spousal support.  I have been injured by defendants' actions as the tax evasion and money laundering deprived the children and myself of our legitimate share of child and spousal support. I justifiably relied on defendant's false disclosures about his income, and was injured as a consequence.

935.   Defendants such actions are the direct and proximate cause of my INJURIES & DAMAGES. But for their acts I would not be injured so.

936.   Continuity of Conduct: Defendants' violations of state and federal law as set forth herein. each of which directly and proximately injured me and other market participants, constituted a continuous course of conduct spanning a period from approximately 2003 to present, which was intended to obtain money, property through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of a pattern of racketeering activity under 18 USC. $5 1961(l) and (5).

937.   Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering

activity as defined herein in violation of 18 USC 1962(c). Defendants activities were the foreseeable, proximate cause of my INJURIES & DAMAGES.  But for these activities, I would not have suffered these damages.The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to me in my person, and in my business. I seek an award of damages in compensation for, among other things, the millions of dollars Defendants stole from me in property, child support and spousal support.

938.   I accordingly seek an award of three times the damages I sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

### THIRD RICO CLAIM : IMMIGRATION FRAUD (18 USC 1451)
Against DAVILA, MORENO Defendants, and KHERA defendants

939.   I incorporate all the preceding paragraphs of this Complaint, and by reference, as if fully set forth herein.

940.   Defendants violated RICO and I was injured as a result.

941.   Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 USC 1961 (3).

942.   Each Defendant violated 18 USC 1962(c) by the acts described in the prior paragraphs, and as further described below.

943.   The Enterprise. Incorporated by reference *CFDE AS A RICO ENTERPRISE* (beginning at para 605 - 632).  Each enterprise routinely engage in, has engaged in, and their activities routinely affect, and have affected, INTERSTATE AND INTERNATIONAL COMMERCE (para 633 - 634).

944.   Defendants have engaged in a PATTERN OF RACKETEERING ACTIVITIES (para 742 - 751).

945.   I specifically allege that Defendants participated in the operation and management of the association-in-fact enterprise and the alternative enterprises by overseeing and coordinating the commission of multiple acts of racketeering as described below:

946.   In 2010, defendant KHERA applied for naturalization. Defendant used US mail to submit his application.

947.   The Naturalisation application N400 specifically asks at 30H "Have you ever failed to pay Child Support and Alimony".

948.   Defendant KHERA made false representations that he was current on both.

949.   Q31 asks "Have you ever given any US govt official any information or documentation that was false, fraudulent, or misleading."

950.    Defendant answered no to this question.

951.   At the time defendant made these representations, he was aware that he was delinquent on hundreds of thousands in child and spousal support, and he had made fraudulent representation in Santa Clara County about his income, his assets and related matters, that he was engaged in tax fraud and money laundering over the years 1998 and since, he made fraudulent representations before Judge Cox of Santa Clara County, to defendant DAVILA, to Judge ALLEN HILL, had forged several documents, and was in contempt of court for failure to comply with support orders.

952.   This false declaration constitutes immigration fraud under 18 USC 1425, 18 USC 1015, subject to revocation under 18 USC 1451 and constitutes a racketeering act as defined under 18 USC 1961(1).

953.   I had informed defendant DAVILA, and MORENO defendants about the alleged immigration fraud. Both failed to take actions, and by their abstinence, in fact aided and abetted defendant KHERA in fraudulently acquiring his US citizenship fraudulently.

954.   Had defendant been truthful, he would have been forced to pay past due child support,simply in an effort to reap the benefits of the US immigration.  His dishonesty in immigration application represents a crime against United States, which crime actually has injured me as it has prevented me from collecting appropriate support and property division. Had defendant honestly answered these questions, he would not have secured citizenship. If he wanted to secure citizenship thru honest means, he would have been forced to pay appropriate support, and divide the property equitably.

955.   Defendants corrupt actions as outlined above, have deprived me of appropriate support and property division. They are the proximate cause of my foreseeable INJURIES & DAMAGES. But for these acts, I would not have continued to suffer these injuries.

956.   I reasonably and justifiably relied upon Defendants' false representations, false pretenses and deceptive communications and was damaged as a consequence of such reliance. But for his false representations, I would not have had these damages. Defendants such actions are foreseeable and proximate cause of my INJURIES & DAMAGES. But for defendants such actions, I would not have had these damages.

957.   Continuity of Conduct: Defendants' violations of state and federal law as set forth herein. each of which directly and proximately injured me and other market participants, constituted a continuous course of conduct spanning a period from approximately 2003 to present, which was intended to obtain money, property through false representations, fraud, deceit, and other improper and unlawful

means. Therefore, said violations were a part of a pattern of racketeering activity under 18 USC. $5 1961(l) and (5).

958.    Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined herein in violation of 18 USC 1962(c). Defendants activities were the foreseeable, proximate cause of my INJURIES & DAMAGES.  But for these activities, I would not have suffered these damages.

959.    The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to me in my person, and in my business. I seek an award of damages in compensation for, among other things, the millions of dollars Defendants stole from me in property, child support and spousal support and attorney fee.

960.    I accordingly seek an award of three times the damages I sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

**FOURTH RICO CLAIM: BREACH OF FIDUCIARY DUTY (Carpenter v United Stated (1987), 484, US 19)**
Against KHERA, PARDUE, MORENO DEFENDANTS, MILLEN, T&T Defendants, DAVILA, GREEN,

ZAYNER, KAPETAN, MILLEN, DAVIDSON, FC-DCSS defendants

961.    I reaffirm and re-allege all the preceding and successive paragraphs as if set forth more fully herein below.

962.    I incorporate all the preceding paragraphs of this Complaint, and by reference, as if fully set forth herein.

963.    Defendants violated RICO and I was injured as a result.

964.    Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 USC. § 1961 (3).

965.    Each Defendant violated 18 USC. 1962(c) by the acts described in the prior paragraphs, and as further described below.

966.    The Enterprise. Incorporated by reference *CFDE AS A RICO ENTERPRISE* (para 605 - 632)

967.    Each enterprise routinely engage in, has engaged in, and their activities routinely affect, and have affected, INTERSTATE AND INTERNATIONAL COMMERCE (para 633 - 634).

968.    Defendants have engaged in a PATTERN OF RACKETEERING ACTIVITIES (para 742 - 751).

969. I specifically allege that Defendants participated in the operation and management of the association-in-fact enterprise and the alternative enterprises by overseeing and coordinating the commission of multiple acts of racketeering as described below:

970. Between 2003 till date, the above mentioned Defendants have had absolute discretion or power delegated over the legal interests and assets that belonged to me.

971. Defendants devised one or more SCHEMES & ARTIFICES (para 601 - 740) and conspired to defraud me by means of false or fraudulent pretences, representations or promises, utilising mail, bank and wire, conspiring to breach their fiduciary duty to me, and thus committing fraud as per the definition established by [Carpenter v US (1987), 484, US 19), by violating their fiduciary duty to me by performing the fraudulent acts described in ALLEGATIONS (para 243 - 445 inclusive), which were contrary to my stated intentions; contrary to my interests; and contrary to my rights.

972. Defendants committed one or more acts of fraud as averred in ALLEGATIONS, para 243 - 445 inclusive.

973. I trusted defendant KHERA, and therefore his representatives, my attorneys, and the judicial officers to protect my assets and legal interests because these parties had control over my assets and legal interests. I was extremely vulnerable and dependent on these parties who had the power and discretion to make decisions about these assets and legal interests, and in which I reposed trust and confidence, especially given that I am not a lawyer, paralegal, or a Judge, and I had just arrived in US, had never had a divorce in my family, and was totally unaware of laws, proceedings and legal actions.

974. These defendants, each one of them owed a fiduciary responsibility to me, and to others like me, being a spouse, LCSA, attorneys-in-fact, Judicial officers and licensed professionals. Each one of them breached their fiduciary duty to me by engaging in conduct that was prohibited under federal and state laws, by entering in a series of conflicting relationships, and by intentionally causing INJURIES & DAMAGES to me.

975. Defendants conspired to defraud me by breaching their fiduciary duty to me, by performing the fraudulent acts described in ALLEGATIONS (para 243 - 445 inclusive), which were contrary to my stated intentions; contrary to my interests; and contrary to my rights. Defendants committed one or more acts of fraud as averred in ALLEGATIONS, para 243 - 445 inclusive.

976. I trusted defendants KHERA et al, his representatives, my attorneys, and the judicial officers and licensed professional to be honest, and have integrity, and to follow the law, to protect my assets and legal interests because these parties had control over my assets and legal interests. I was

extremely vulnerable and dependent on these parties who had the power and discretion to make decisions about these assets and legal interests, and in which I reposed trust and confidence, especially given that I am not a lawyer, paralegal, or a Judge, and I had just arrived in US, had never had a divorce in my family, and was totally unaware of laws, proceedings and legal actions.

977. These defendants, each one of them, accordingly owed a fiduciary responsibility to me, being a spouse, attorneys-in-fact, Judicial officers and licensed professionals.

978. <u>Continuity of Conduct</u>: Defendants' violations of state and federal law as set forth herein. each of which directly and proximately injured me and other participants, constituted a continuous course of conduct spanning a period from approximately 2003 to present, which was intended to obtain money, property through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of a pattern of racketeering activity under 18 USC. $5 1961(l) and (5).

979. Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined herein in violation of 18 USC 1962(c). Defendants activities were the foreseeable, proximate cause of my INJURIES & DAMAGES.  But for these activities, I would not have suffered these damages.

980. The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to me in my person, and in my business. I seek an award of damages in compensation for, among other things, the millions of dollars Defendants stole from me in property, child support, spousal support and attorney fee.

981. I accordingly seek an award of three times the damages I sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

## FIFTH RICO CLAIM :  MONEY LAUNDERING (18 USC 1956, 1957)
Against DAVILA, WHITE, PARDUE, B&B DEFENDANTS, SCHREIBER, T&T Defendants, ZAYNER,

GREEN, KAPETAN

982. The allegations contained in paragraphs 1 through are realleged and incorporated as if fully set forth in this paragraph.

983.  I incorporate all the preceding paragraphs of this Complaint, and by reference, as if fully set forth herein.

984.  Defendants violated RICO and I was injured as a result.

985.  Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 USC 1961 (3).

986.  Each Defendant violated 18 USC 1962(c) by the acts described in the prior paragraphs, and as further described below.

987.  The Enterprise. Incorporated by reference *CFDE AS A RICO ENTERPRISE* (para 605 - 632)

988.  Each enterprise routinely engage in, has engaged in, and their activities routinely affect, and have affected, INTERSTATE AND INTERNATIONAL COMMERCE (para 633 - 634).

989.  Defendants have engaged in a PATTERN OF RACKETEERING ACTIVITIES (para 742 - 751).

990.  I specifically allege that Defendants participated in the operation and management of the association-in-fact enterprise and the alternative enterprises by overseeing and coordinating the commission of multiple acts of racketeering as described below:

991.  In or about and between July 2000 – 2006, and the present, both dates being approximate and inclusive, within California, the defendants KHERA and DEVANI, knowingly and intentionally conspired to transport, transmit, and transfer monetary instruments and funds, to wit: wire transfers, from places in the United States to and through places outside the United States and to places in the United States from and through places outside the United States, (a) with the intent to promote the carrying on of specified unlawful activity, to wit: wire fraud, contrary to Title 18, United States Code, Section 1343, all contrary to Title 18, United States Code, Section 1956(a) (2) (A), and (b) knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of said specified unlawful activity, all contrary to Title 18, United States Code, Section 1956(a) (2) (B) (i).

992.  Between 2000 and 2003, in anticipation of the separation, defendant KHERA sold 2 properties in Australia. These properties were at *6 Chuvel Close, Wahroonga, Sydney, Australia* (buying price 360,000, deposit 25%; selling price 550,000) and at *Kings Street, Paramatta, Sydney, Australia* (Buying price 149,000, initial deposit 40%; selling price $220,000).

993.    During dissolution proceedings, Defendants KHERA, B&B Defendants, WHITE, and PARDUE claimed that the parties had no property in Sydney.

994.    Defendant KHERA did not declare this income either in Australia or in US for tax purposes and paid no tax on these proceeds either in Australia, or in US.

995.    Defendant has significant investments in India, which investments are never reported on his tax returns in US. Defendant has continued investing overseas, which moneys were never reported in US for tax purposes, or for child and spousal support purposes.

996.    As a consequence of such money laundering activities, I was unable to establish that there were properties in Sydney, and that defendant had defrauded me of the proceeds from the same of these properties.

997.    Our family house on Kensington Property in Sunnyvale sold for $1.28million. It had $550,000 or so in down payment.  Defendant gave me only $100,000 from the sale proceeds, but filed his taxes showing that he had divided the funds equally, evading payment of tax on the gains of $450,000. Because he had falsified his tax returns, I was unable to convince defendant ZAYNER that I had not been paid the amount that defendant claimed to have paid me.

998.    Between 2010 – 2015, defendant worked at an investment house, and invested his funds in overseas accounts. Defendant's investments, and returns were not reflected on his tax returns. Such money laundering was injurious as it prevented me from seeking appropriate additional support.

999.    Between 2003 till date, defendant has earned substantial amounts of money from his entertainment business. This money is paid overseas, his services are offered overseas and he is compensated overseas. Defendant intentionally does not declare this income in his tax returns.

1000.   In 2010, Defendants KHERA and DEVANI opened two shell companies that looks legitimate and engage in legitimate business activities. The shell company merely serve as a front for their illegal activities. The company deposits the tainted money in its bank account and generates fake invoices or receipts to make it look like legitimate business revenue. Defendants use these companies to pay for all their personal expenses, including but not limited to food, clothing, entertainment, housing, transportation and vacations. They then show losses in these companies, to offset their legitimate earnings not only made thru the company, but other earnings whether thru legal or illegal channels. Having multiple companies makes it easier for them to commit these crimes as the laundering activities can be split over two different entities, thus can be concealed much more easily.

1001.   Defendants transfer funds to different accounts in the U.S. and offshore. From those accounts, the funds are invested in brokerage accounts, and large assets overseas. Defendants undertake travels and

vacations using these funds, and they can never be traced back to US. The funds make their way back to the cash economy. Defendants engage in illegal transfers of money, by agreeing to pay other people in India, for cash payments in US$ here, or vice versa. The original sum is split into multiple separate accounts and investments are impossible to trace back to the source.

1002. Defendants know that the property involved was the proceeds of any felony under State, Federal or foreign law. Defendants intended to promote the carrying on of specified unlawful activity, and to commit tax fraud, tax evasion, child and spousal support fraud. They wished to conceal the criminal nature of the money's source, and to avoid transaction reporting requirements under federal and state law.

1003. These financial transactions, affected interstate and/or foreign commerce and: (1) involved the movement of funds by wire or by other means; (2) involved the use of a monetary instrument; or (3) involved the transfer of title to real property, and (4) involved the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce as these are defined in 1956(c)(4).

1004. Because this cash based income that represents money laundering activities, and does not show up on his tax returns, or is fraudulently accounted for,  I have been deprived of child and spousal support on such income.

1005. I reasonably and justifiably relied upon Defendants' false representations, false pretenses and deceptive communications and was suffered foreseeable injuries. Defendants' such actions are the proximate cause of my INJURIES and DAMAGES in matters related to child support and spousal support.  But for these actions, I would not have suffered these damages.

1006. Continuity of Conduct: Defendants' violations of state and federal law as set forth herein each of which directly and proximately injured me and other market participants, constituted a continuous course of conduct spanning a period from approximately 2003 to present, which was intended to obtain money, property through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of a pattern of racketeering activity under 18 USC. $5 1961(l) and (5).

1007. Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined herein in violation of 18 USC 1962(c) and 18 USC 1956, 1957

1008. The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to me in my person, and in my business. I seek an award of damages in

compensation for, among other things, the millions of dollars Defendants stole from me in property, child support and spousal support.

1009. I accordingly seek an award of three times the damages I sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

**SIXTH RICO CLAIM – DEPRIVATION OF CIVIL RIGHTS (42 USC 1983, 1985)**
AGAINST ALL DEFENDANTS

1010. I incorporate all the preceding paragraphs of this Complaint, and by reference, as if fully set forth herein.

1011. Defendants violated RICO and I was injured as a result.

1012. Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 USC 1961 (3).

1013. Each Defendant violated 18 USC 1962(c) by the acts described in the prior paragraphs, and as further described below.

1014. The Enterprise. Incorporated by reference *CFDE AS A RICO ENTERPRISE* (para 605 - 632)

1015. Each enterprise routinely engage in, has engaged in, and their activities routinely affect, and have affected, INTERSTATE AND INTERNATIONAL COMMERCE (para 633 - 634).

1016. Defendants have engaged in a PATTERN OF RACKETEERING ACTIVITIES (para 742 - 751).

1017. I specifically allege that Defendants participated in the operation and management of the association-in-fact enterprise and the alternative enterprises by overseeing and coordinating the commission of multiple acts of racketeering as described below:

1018. Defendants impaired my right to contract by threatening, intimidating, and coercing me into the marital settlement agreement. Their actions violate freedom to contract by creating a completely "unconscionable marital settlement agreement", which no person in their right mind would enter, and which is totally void of "quid pro quo" redemption.

1019. Defendants' deprived me of my right to my property guaranteed under the fifth amendment.

1020. Defendants members of the ENTERPRISE, performed these acts, employing various Schemes and Artifices, mails and/or interstate wires, and engaged in racketeering activity culpably intending to deprive me of my rights 18 USC 1962 (d); 18 USC 1341; 18 USC 1343; 18 USC 1346; 18 USC 1349; Federal Constitutional law, Article 1 Section 10; Bill of Rights – First, Fifth, and Fourteenth Amendment); 42 USC 1981; 42 USC 1982; 42 USC 1985 (3); 42 USC 1986; 42 USC 1988 (a)-(c )

1021. Defendants, each one of them, conspired to deter me, by threat of sanctions,  for the purpose of impeding, hindering, obstructing, or defeating, in some manner, the due course of justice, with intent to deny me the equal protection of the laws guaranteed under fourteenth amendment, and to injure me in my property, and prevent me from lawfully enforcing, or attempting to enforce, my rights, as a pro per litigant, single mother, to the equal protection of the laws related to child support, spousal support, property and custody of children.

1022. Since 2003, till this date, defendants continue to conspire to deprive me of my rights to my property, spousal support, and child support. See FACTUAL ALLEGATIONS, and ALLEGATIONS.

1023. I reasonably and justifiably relied upon Defendants' false representations, false pretences and deceptive communications, and their threats and intimidation, that have caused foreseeable damage to me. Defendants' such actions are the proximate cause of my INJURIES and DAMAGES in matters related to child support and spousal support.  But for these actions, I would not have suffered these damages.

1024. Continuity of Conduct: Defendants' violations of state and federal law as set forth herein each of which directly and proximately injured me and other market participants, constituted a continuous course of conduct spanning a period from approximately 2003 to present, which was intended to obtain money, property through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of a pattern of racketeering activity under 18 USC. $5 1961(l) and (5).

1025. Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined herein in violation of 18 USC 1962(c). Defendants activities were the foreseeable, proximate cause of my INJURIES & DAMAGES.  But for these activities, I would not have suffered these damages.

1026. The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to me in my person, and in my business. I seek an award of damages in compensation for, among other things, the millions of dollars Defendants stole from me in property, child support and spousal support and attorney fee.

1027. I accordingly seek an award of three times the damages I sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

**SEVENTH RICO CLAIM – FRAUD - INVESTING THE PROCEEDS OF RACKETEERING ACTIVITIES (1962(a))**

Against all Defendants

1028.   I incorporate all the preceding paragraphs of this Complaint, and by reference, as if fully set forth herein.

1029.   Defendants violated RICO and I was injured as a result.

1030.   Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 USC 1961 (3).

1031.   Each Defendant violated 18 USC 1962(c) by the acts described in the prior paragraphs, and as further described below.

1032.   The Enterprise. Incorporated by reference *CFDE AS A RICO ENTERPRISE* (para 605 - 632)

1033.   Each enterprise routinely engage in, has engaged in, and their activities routinely affect, and have affected, INTERSTATE AND INTERNATIONAL COMMERCE (para 633 - 634).

1034.   Defendants have engaged in a PATTERN OF RACKETEERING ACTIVITIES (para 742 - 751).and have used and invested income that was derived from a pattern of racketeering activities in an interstate enterprise. Specifically:

1035. Between 2003 – 2008, Defendants conspired with DEVANI and KHERA to illegally sell community stocks and share held in Smith Barney Accounts. These funds were transferred from Smith Barney to defendant DEVANI's account. Between 2003 – 2018, defendants also conspired to evade payment of hundreds of thousands of dollars in support payments, averred at *FRAUD IN CHILD SUPPORT* (para 247-306, inclusive),  FRAUD RELATED TO SPOUSAL SUPPORT (para 307-331) Also see  *FRAUD RELATED TO ENFORCEMENT OF SUPPORT ORDERS (* para 379-391), *TAX FRAUD & MONEY LAUNDERING* 434-440, *IMMIGRATION FRAUD* 453-454, *OBSTRUCTION OF JUSTICE* (para 455-456).

1036. These proceeds from racketeering activities, were invested by the Defendants in purchase of a property in San Jose in 2004, for $600,000. The property was rented out and generated an investment income for the defendants. Defendants then conspired to omit these returns on investments from Child and Spousal Support payments.

1037. Defendants also conspired to omit the proceeds from the sale of two properties in Sydney Australia, and one property in India. This racketeering act was previously averred at para 353.

1038. Defendants conspired to help defendant KHERA violate child support orders. By 2010, defendant KHERA was delinquent hundreds of thousands of dollars in child support and spousal support as a

consequence of these racketeering activities. This racketeering act was previously averred in (para 254 - 302, 386-398, 441-447, 453-454, 455-456)

1039. The combined proceeds from such racketeering activities were diverted into businesses operated by defendant DEVANI and KHERA. Defendants opened shell companies called HEALTHY MASALA, and DIVINE ARTS & ENTERTAINMENT to divert these funds. These companies were used as a front to generate cash based businesses, on which cash based businesses defendant KHERA neither paid appropriate taxes, nor paid any child and spousal support. Defendant also used these companies for his money laundering activities. This is previously averred in *MONEY LAUNDERING (18 USC 1957)*, beginning at para 934-961.

1040. In 2006, Defendants invested $1.8m from their racketeering activities, to purchase of another property in Cupertino. Defendants DEVANI and KHERA used the property to house their companies. The defendants conspired to help defendant KHERA evade payment of child support or spousal support from the rent collected from these companies. This racketeering act was previously averred in (para 368-362).

1041. This property was sold recently, after this case was filed, for over $3.3million at a profit of over 1.8m. This act of FRAUDULENT CONVEYANCING was also averred at (para 498-508) .

1042. The income derived from these investments has been used to promote defendant KHERA's companies, to fund his other private, which form the part of racketeering activities, his self employment businesses. On each of these investments, defendants have helped him evade child and spousal support in violation of federal and state laws. He uses income from these investments to pay CFDE attorneys to assist him in continued commission of such fraud.

1043. These activities involved bank, wire and Mail fraud (18 USC 1341, 1343, 1344) in that they devised or intended to devise one or more SCHEMES & ARTIFICES (para 601 - 740) to defraud me  by means of false or fraudulent pretenses, representations or promises, and caused delivery of various documents and things by the US mails or by private or commercial interstate carriers, or received therefrom. Defendants advertised their companies on the internet, and the sale of the properties was thru internet advertising in Australia, and in US, on portals that are controlled by interstate entities. Defendants also transmitted or caused to be transmitted by means of wire communications in interstate /foreign commerce various other writings, signs and signals, agreements, and engaged in phone/fax/email communication related to these racketeering activities. The acts of Defendants set forth above were

done with knowledge that the use of the mails or wires would follow in the ordinary course of business or that such use could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' SCHEMES & ARTIFICES (para 601 - 740) As a consequence of the above acts, defendants received in the accounts held by them, or their companies, the racketeering proceeds, and the proceeds from the investment of the racketeering funds.

1044. As a direct and proximate result of the Defendants' racketeering activities and violations of 18 USC 1962(a), I have been injured in my business and property in that:

1045. I was denied access to community funds that had to be equally divided. I lost the investment opportunity. For example, defendant used the funds to purchase the two properties and sold them for a profit of over $2m cumulative. These were my funds, and I should have been profited from these investments.

1046. In addition, I was denied access to these funds and hence could not retain counsel to represent me, and was injured in the process. Additionally, defendant used these funds to pay for FIVE attorneys who made it even more difficult for me to genuinely litigate my claims.

1047. Continuity of Conduct: Defendants' violations of state and federal law as set forth herein, each of which directly and proximately injured me and other market participants, constituted a continuous course of conduct spanning a period from approximately 2003 to present, which was intended to obtain money, property through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of a pattern of racketeering activity under 18 USC 1961(l) and (5).

1048. Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined herein in violation of 18 USC 1962(c). Defendants activities were the foreseeable, proximate cause of my INJURIES & DAMAGES. But for these activities, I would not have suffered these damages.

1049. The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to me in my person, and in my business. I seek an award of damages in compensation for, among other things, the millions of dollars Defendants stole from me in property, child support and spousal support and attorney fee.

1050. I accordingly seek an award of three times the damages I sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

1051. Continuity of Conduct: Defendants' violations of state and federal law as set forth herein each of which directly and proximately injured me and other market participants, constituted a continuous course of conduct spanning a period from approximately 2003 to present, which was intended to obtain money, property through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of a pattern of racketeering activity under 18 USC 1961(l) and (5).

1052. Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined herein in violation of 18 USC 1962(c) and 18 USC 1956, 1957

1053. The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to me in my person, and in my business. I seek an award of damages in compensation for, among other things, the millions of dollars Defendants stole from me in property, child support and spousal support. I accordingly seek an award of three times the damages I sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

1054. These injuries are separate from the conduct of the racketeering enterprise. It was reasonably foreseeable that defendants' acts would injure me. Defendants such actions are the proximate cause of my alleged INJURIES and DAMAGES. But for such acts, I would not have suffered these injuries.

### EIGHTH RICO CLAIM : HONEST SERVICES FRAUD (18 USC 1346)
### Against All RICO Defendants

1055. I incorporate all the preceding paragraphs of this Complaint, and by reference, as if fully set forth herein.

1056. Defendants violated RICO and I was injured as a result.

1057. Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 USC 1961 (3).

1058. Each Defendant violated 18 USC 1962(c) by the acts described in the prior paragraphs, and as further described below.

1059.    The Enterprise. Incorporated by reference *CFDE AS A RICO ENTERPRISE* (para 605 - 632)

1060.    Each enterprise routinely engage in, has engaged in, and their activities routinely affect, and have affected, INTERSTATE AND INTERNATIONAL COMMERCE (para 633 - 634).

1061.   Defendants have engaged in a PATTERN OF RACKETEERING ACTIVITIES (para 742 - 751).and have used and invested income that was derived from a pattern of racketeering activities in an interstate enterprise. Specifically:

**1062.**   Defendants engaged in one or more SAD by and in conjunction with the CFDE to deprive me the intangible right of their honest services.

**1063.**   On information and belief, Defendants, and each of them, support and promote one another in perpetrating one or more SCHEMES & ARTIFICES actionable, including but not limited to fraud, bribery and/or kickbacks, wherein a quid pro quo is provided by the RICO defendants to persons unknown to me to assure that I would be effectively punished, silenced, discredited, and rendered ineffective in seeking appropriate child support, spousal support and property.

**1064.**   Specifically, these allegations have been averred in *FACTUAL ALLEGATIONS*, *ALLEGATIONS*, *FIRST – NINETEENTH CAUSES OF ACTIONS*.

**1065.**   The fraudulent quid-pro-quo ignores ethical duties of loyalty and zealous advocacy among *ALLEGATIONS, and CLAIMS (1- 18) and FIRST RICO CLAIM to SEVENTH RICO CLAIM.*

**1066.**   The conduct of each of these defendants constitutes the deprivation of the intangible personal property right to receive 'honest-services' for purposes of 18 USC 1346.

**1067.**   As an actual and foreseeable result, and direct and proximate cause of defendants' aforementioned conduct, I have suffered INJURIES & DAMAGES, to be further augmented, and proven at trial. But for these defendants and their alleged activities, I would not have suffered such damages.

**NINETH RICO CLAIM – CONSPIRACY TO VIOLATE FEDERAL CIVIL RICO (18 USC 1962(d), 1349)**
Against all defendants

1068.I incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

1069.As set forth above, the defendants agreed and conspired to violate 18 U.S.C. 1962(a) and (c), In violation of 18 USC. § 1962(d), the defendants, each of them, knowingly, willfully, and unlawfully conspired to facilitate one or more schemes which included the operation or management of a RICO enterprise through a pattern of racketeering activity as alleged in (para 742 - 751) above. Specifically:

1070. The conspiracy commenced at least as early as 2000 and is ongoing.

1071. The conspiracy's purpose was to divert money from community estate held jointly by defendant KHERA and myself, to the benefit of CFDE operatives and to facilitate the payment of bribes, referrals, kickbacks and other emoluments, considerations and benefits, in an effort to defraud me.

1072. Each Defendant committed at least one overt act in furtherance of such conspiracy. These acts in furtherance of the conspiracy included, misleading me as to the true value of community assets, true value of child and spousal support, participating in illegal communications, negotiations and litigation for such litigation, traveling in foreign commerce to facilitate and manage these schemes to defraud me, and facilitating the payment of one or more instruments of corruption, including bribery, kickbacks, referrals etc, bank, mail and wire fraud, identity theft, obstruction of justice, tax fraud, money laundering, immigration fraud, breach of fiduciary duty, deprivation of my civil rights, and all others as alleged under Fourteenth Cause of Action.

1073. Defendants reached an agreement between themselves to obstruct the lawful functioning of the Santa Clara and Fresno Courts, and the Fifth and Sixth Appellate Districts, to commit overt acts as described, in furtherance of one or more SCHEMES & ATRIFICES.

1074. The acts of each of these defendants impaired, obstructed, or defeated the lawful functions of Superior Courts by deceit, craft and trickery and means that were dishonest. The SCHEMES & ARTIFICES were designed to frustrate the legitimate functioning of the Superior Courts. Such actions are criminal under 18 USC 371.

1075. Predicate Act: Mail, Wire and Bank Frauds, as averred in *Use of Mails and Wires to Defraud me in Violation of 18 USC 1341 and 1343*, beginning at paragraph 766, incorporated herein as if fully set forth herein.

1076. Predicate Act: Bank Fraud, as averred in *Bank Fraud (18 USC 1344),* beginning at paragraphs 792, incorporated herein as if fully set forth herein.

1077. Predicate Act: Property Fraud, as averred in *Property Fraud Using Bank, Mail and Wires, and Bribery*, beginning at para 802, incorporated herein as if fully set forth herein,

1078. Predicate Act: Bribery, as previously averred in *Bribery or Corruptly Influencing (18 USC 201),* beginning at para 813, incorporated herein as if fully set forth herein,

1079. Predicate Act: Alteration and Falsification of Documents, as previously averred in *Alteration and Falsification of Documents (18 USC 1519),* beginning para 833  incorporated herein as if fully set forth herein,

1080. Predicate Act: Obstruction of Justice, as previously averred in *Obstruction of Justice (18 USC 1500 et seq)*, beginning at para 837 – 893, incorporated herein as if fully set forth herein,

1081. Predicate Act: Interstate and foreign travel in aid of racketeering activities, as previously averred *Interstate and Foreign Travel in aid of Racketeering (18 USC 1952)* in 894 – 901, incorporated herein as if fully set forth herein,

1082. Predicate Act: Sale of Receipt of Stolen Securities, Money, as previously averred in *Sale of Receipt of Stolen Securities, Money  (18 USC 1952)*, beginning at para 902-907, incorporated herein as if fully set forth herein,

1083. Predicate Act: Transport and Receipt of Stolen Money, as previously averred in *Transport and Receipt of Stolen Money* (18 USC 2314 and 2315), beginning at para 905 -918 , incorporated herein as if fully set forth herein,

1084. Predicate Act: Tax Fraud, as previously averred in *TAX FRAUD BY MAIL, WIRE FRAUD ( 26 USC 7201, 7202, 18 USC 1341, 1343)*, beginning at para 919 - 941, incorporated herein as if fully set forth herein,

1085. Predicate Act: Immigration Fraud, as previously averred in *IMMIGRATION FRAUD (18 USC 1451),* beginning at para 942 - 963, incorporated herein as if fully set forth herein,

1086. Predicate Act: Breach of Fiduciary Duty, as previously averred in *BREACH OF FIDUCIARY DUTY (Carpenter v United States (1987), 484, US 19)*, beginning at 964, incorporated herein as if fully set forth herein,

1087. Predicate Act: Money Laundering, as previously averred in *MONEY LAUNDERING (18 USC 1957),* beginning at  985-1012, incorporated herein as if fully set forth herein,

1088. Predicate Act: Deprivation of Civil Rights, as previously averred in *DEPRIVATION OF CIVIL RIGHTS*, beginning at  para 1013-1030, incorporated herein as if fully set forth herein,

1089. Predicate Act: Deprivation of Civil Rights, as previously averred in *HONEST SERVICES FRAUD*, beginning at  para 1031-1057, incorporated herein as if fully set forth herein,

1090. Predicate Act: Fraud, as previously averred *in FRAUD - INVESTING THE PROCEEDS OF RACKETEERING ACTIVITIES (1962(a))*, beginning at para  1058, incorporated herein as if fully set forth herein,

1091. Defendants, each one of them, conspired to aid and abet every defendant who owed a fiduciary duty to me, to breach/violate their fiduciary duties to me, and my children, or cause such breach.

1092. The Defendants have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

1093. The Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 USC 1962(a) and (c), in violation of 18 USC 1962(d). Defendants have attempted to, and have in fact been successful in defrauding me of appropriate child support, spousal support, property, and must be subjected to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy (18 USC 1349)

1094. As a direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 USC 1962(d), I have been injured due to their non predicate acts committed in support of the conspiracy include as defined under FIRST to EIGHTEENTH Cause of Action. The forseeable INJURIES AND DAMAGES were caused by the above predicate acts of the defendants. But for defendants' conspiracy, I would not have suffered these injuries and damages.

## PART IV - LIABILITY

1095. I allege liability under 18 USC 1964 (c), respondeat superior liability, and vicarious liability, accomplice liability, conspiratorial liability against all defendants. Judicial defendants are liable for their acts performed in clear absence of jurisdiction, and for their acts performed in promoting illegal activities, for their acts that are disallowed by Judicial Canons and under Judicial Ethics, and/or for their failure to perform acts that are mandated under Judicial Canons and by settled law, and for their malicious administrative and other non judicial acts as alleged, and for their acts performed in rebelling against the constitution. Liability is joint and several.

## PART V – INJURIES AND DAMAGES

### INJURIES

1096. Due to defendant's refusal to pay any childcare, I was unable to pursue my education and my career. I took 3 years to graduate from MSW program instead of the normal 2 years it would have taken. I

paid at least $10,000 extra in fee, and could not earn anything during this period. I was also unable to complete my PhD and had to drop out of the program after completing 1 ½ years, because I could not afford childcare. I had paid approx. $80,000 in fee for the PhD program which was lost. I was unable to work full time, causing work related problems. Few employers wanted to hire me, and those who hired me, had to face losses due to my inability to work full time, and appropriately. As a consequence I lost several jobs, and referrals due to my inability to afford appropriate childcare.

1097. Due to defendants refusal to adhere to the Court ordered Custody Schedule, I was often forced to either take time off from work, or was forced to take the children to work. I lost at least three jobs due to the fact that I cancelled appointments because  I could not find a babysitter at the last minute. At National University, I was forced to resign because the University does not allow children on its premises. Defendant KHERA's refusal to honor the custody arrangements affected my ability to work, and increased my expenses as I had to pay for babysitters even when he was required to have kids for those weekends.

1098. Due to defendant KHERA''s refusal to pay appropriate and timely child support, I was forced to spend all my savings on the children's education, lifestyle, medical, tutoring and childcare costs. I had to single handedly share all the burdens of providing them with a reasonable lifestyle, including a suitable home, paying for extra curricular activities, tutoring, travels, vacations. Our lifestyle was much lower than children would have enjoyed, had defendant paid appropriate support. As a consequence, my own lifestyle was affected, because I now had to take care of the children thru my own money. I was also forced to pay over $350,000 in child support related litigation in Santa Clara and Fresno. The conflict also affected my education and career as a lot of my time was spent in these activities. My credit history is been tarnished, and I owe debts of more than $300,000 at this time.

1099. Due to defendant KHERA's refusal to pay children's medical expenses, the children were denied required and appropriate medical treatments. I had to spend substantial amount of my savings on children, I had to spend substantial amount of time attempting to heal the children from sexual abuse trauma that he had inflicted on them. This affected my ability to pay for my education, and work continuously.

1100. Due to defendant KHERA's refusal to pay for tutoring costs, my son had to repeat 2nd grade, and emancipated a year later than he would other wise have. I was forced to financially take care of the children for an additional year.

1101. Due to spousal support related fraud, I have had a crushing lifestyle, and have been unable to have a decent lifestyle to which I was entitled to, by law. It has affected my ability to complete my

education, and my ability to pursue my career as I spent all of my savings in taking care of the children, and paying for day to day living. Currently, I am unable to afford a rental place, and as of June 1, 2018, am moving into a shelter.  My credit history is been tarnished, and I owe debts of more than $300,000 at this time.

1102. Due to property related fraud, I was denied access to my all of own property – my jewelry, my bank and brokerage accounts, the real estate properties that had been awarded to me, or had been ordered to be sold, while defendant KHERA retained control over ALL financial and real estate assets for the past 15 years. I was unable to sell them, nor was I able to use the funds to support myself. Some of these properties have fines and penalties owing at the time of separation. Defendant had transferred all the fines and penalties to me, and unless I pay these, the property will not be transferred to me.

1103. I have been subjected to blackmail,violence, threats. Defendants immigration and tax fraud have resulted in these losses. Had defendant not engaged in tax or immigration fraud, I would have been able to establish my claims against him earlier, and would have suffered these injuries.

1104. Since some of the property involved stocks and stock options, and since defendants misconduct denied my access to those accounts, these have suffered significant losses. KHERA and his attorneys concealed from the fact that some of the accounts that had been awarded to me had margin debt of over $90,000 at the time. This debt was unlawfully transferred to me at 20% per annum and had ballooned. The brokerage refuses to provide me access to the account.  In 2010, I was told $90,000 were outstanding. Defendants actions have forced this debt on me. My credit history has been tarnished, and I owe debts of more than $300,000 at this time.

1105. Defendant KHERA forcefully sold some of my stocks and options that were in his possession. Although he gave me some of the proceeds from these sales (not all),  he deducted tax at source according to his tax rate. This represented a significant loss, amounting to significantly over at least a hundred thousand  dollars, to me.

1106. Defendant KHERA's domestic violence and sexual abuse of children affected my finances, and my ability to work in my profession as I had to spend more time, effort and finances to ensure their safety, and healing. I was forced to relocate to New Zealand

1107. Due to Defendant KHERA's false representation about my earning capacity, I was forced to drop out of the PhD program that I was pursuing in Santa Barbara. As a consequence my career was completely destroyed.

1108. Due to defendant KHERA's abuse of process and intentional delays in resolving the issue of child support arrearages, and custody issues I not only lost access of the funds that would have been

available to the children and myself, I was forced to leave US and relocate to New Zealand. I also lost longings worth $350,000 when I could not pay the freight. This included all our household goods – including photographs, and goods of emotional attachment.

1109. Defendants' misconduct in matters related to custody robbed me of a wonderful career opportunity in India. I was subjected me to continuous abuse, violence, harassment, blackmail threats by the defendants. I also incurred an expense of over $45,000.

1110. Due to constant litigation for 15 years, in Santa Clara County and Fresno County, and false allegations made by KHERA and the CFDE members against me, and by fraudulently seeking/making unjust and unfair orders against me, I have suffered public loss of reputation, pain and suffering, and severe mental health issues, and emotional distress.  This further prevented me from pursuing my career, affecting my ability to work, or to find appropriate employment.

1111. I have been forced to constantly travel from Fresno to Santa Clara County, sometimes as often as 8 – 10 times a month, for 13 years. This was hugely expensive, and very stressful, and a leading cause of several accidents due to driving fatigue and stress..

1112. Due to defendants culpable, malicious, malicious control over my ETrade and Schwab Brokerage Accounts (that had been allocated to me in 2008), my securities have become inaccessible. As a consequence I had suffered a loss of over $451,000 in the ETrade Brokerage Account that was allocated to me. My losses in Schwab Brokerage Account are similar or more. There is currently a debt of over $170,000 in the ETrade account, the Schwab funds were liquidated, and I have been denied access to the account, or the funds allocated to me, since 2007.

1113. I have spent over $500,000 in legal expenses, and over $40,000 in mental health treatments in attempting to secure appropriate child support, spousal support, and property, in Santa Clara and Fresno County.

1114. I had to incur substantial expenses in having my younger son freed from police custody in 2016.

1115. There are other injuries, and the injuries are ongoing as defendant continues with his misconduct. The complete details, evidence, and actual amounts will be provided at the time of the trial.

**DAMAGES**

1116. The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to me in my person, and in my business. But for such actions, I would not have had these injuries and damages. I seek an award of damages in compensation for,

among other things, the millions of dollars Defendants stole from me in property, child support and spousal support.

1117. Specifically, the suit seeks declarative and injunctive relief, actual, consequential, special and punitive damaged. I seek enforcement of Court orders of 2003, 2006, 2014. I request that Judgment of 2008, and related, associated, and affiliated judgments dependant on Judgment of 2008 be also voided. I seek damages for pain and suffering, punitive damages attorney fee, expert fee, and costs, and other damages that the Court may deem property and appropriate.

1118.    I also seek an award of three times the damages I sustained for RICO offenses.

1119.    I also seek recovery of reasonable attorneys' fees, expert witness fee and costs of investigation and litigation, as well as any other relief as authorized by statute.

1120. The injuries are ongoing. An exact monetary amount sought in damages, and the proof for the same, will be provided at/before the trial.

## PART VI - PRAYER FOR RELIEF

**DECLATORY & INJUNCTIVE RELIEF**

Given the above allegations:

1121. I request that the Court declare the CFDE as a racketeering enterprise and order immediate dissolution of the same under 18 USC 1964(a).

1122. I further request that the Court exercise its equitable powers pursuant to the Civil Rights Criminal and Civil Statutes and FRCP Rules 57 and 65 to enjoin defendants from a further deprivation of my aforementioned rights;

1123. I request that this Court declare the Judgment of 2008 and any and all orders derived from, or based on Judgment of 2008, void based on based on 18 USC 666(a)(9)(c ), and based on the claims of fraud, fraudulent representation, and fraud upon the court, conspiracy, and racketeering acts that resulted in issuance of the Judgement of 2008. Such relief is necessary before the RICO damages can be assessed under 18 USC 1964(c).

1124. I request that the Court refer CFDE attorneys to State Bar for disciplinary actions pursuant to BPC 6086.7(c ) for breach of CRPSs and Business and Professional Codes.

1125. I further request that the Court refer DAVILA, ZAYNER, GREEN, KAPETAN to judicial Commission of California for wilful and intentional violations of federal, state and constitutional law, under 18 USC 2, 3, 4, 2383.

1126. I request that SCHUSTER and WHITE be referred to their respective licensing board for investigation and discipline.

## MATERIAL RELIEF

1127. For each cause of action, other than RICO, I request that the Court award damages in the amount to be determined by offer of proof at the time of trial.

1128. I also request a punitive award as a deterrant.

1129. An order immediately dissolving each identified RICO §1961(4) CFDE

1130. For each RICO act alleged herein, I pray, pursuant to Title 18 United States Code §1964(c)), treble damages for RICO injuries, in the amount to be determined by offer of proof at time of trial. I am also entitled to recover attorneys' fees and costs of this litigation under Title 18, 28, and 42, as well as damages arising from lost profits and/or lost work/business opportunities attributable to the activities engaged in by defendants committed in furtherance of each Racketeering act

1131. I request any other relief as deemed appropriate by the Court.

## ATTORNEY FEE & COSTS

1132. An award of reasonable costs and expenses incurred in this action, including counsel fees and expert fees as allowable under the Title 18, 28, and 42 sections asserted;

## OTHER RELIEF

1133. If the Court chooses not to refer the attorneys to State bar, I request Court sanction the attorneys pursuant to CCP 128.5.

1134. If the Court chooses not to refer the Judicial Officers to Judicial Commission, I request Court admonish the Judicial Officers for violating their duties and responsibilities under Judicial Canons.

1135. Other Declaratory, Injunctive, and Prospective Relief or other remedies that Court may consider appropriate, including but not limited to injunctive remedies provided under 42 USC 1983, 1985, 1986, 1988; and 18 USC 1964 (a), (c), and (d); 28 USC 2201-2202; 15 USC 1125, and related federal statutes;

1136. Also request punitive damages as a deterrent, and appropriate criminal penalties for under[Sections-1962(a), 1962(c), 1962 (d)]

1137. I request equitable remedy of disgorgement/forfeiture  allowing the courts to take away the profit earned by the defendants through their wrongful behaviors, to prevent future corrupt actions.

1138. Any other awards or sanctions, or other relief that the Court deems appropriate.

1139. Alternately, in the event that Federal Court refuses to assert jurisdiction, I request that the case be transferred to State Courts.

## CERTIFICATION & CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date: 6/15/2018                                      MADHU SAMEER,  Plaintiff, Self Represented