Madhu Sameer
37 Rarere Terrace,
Kerikeri 0231
New Zealand

Plaintiff, Pro Per

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

MADHU SAMEER,

      Plaintiff

        v.

SAMEER KHERA et al

      Defendants

PLAINTIFF'S OPPOSITION TO
PARDUE's MOTION TO DISMISS

1:17-CV-01748-DAD-EPG

Hearing Date: 10/2/2018

## CONTENTS

CONTENTS                                                                    0

INTRODUCTION                                                                1

FACTUAL BACKGROUND                                                          1

LEGAL ARGUMENTS                                                             2

    ROOKER FELDMAN DOCTRINE                                                 2

    TIMELINESS, RELEASE & WAIVER                                            4

    STATUTE OF LIMITATIONS                                                  5

    CONTINUING OFFENSE DOCTRINE                                             8

    CRIMINAL OFFENSE/CIVIL LIABILITY                                        8

    ISSUES ARE NOT RES JUDICATA                                            8

        A. Identity of Claims                                              9

        B. 2014  Release/Waiver For Legal Malpractice                      9

        C. Fraud At Inducement                                            11

        D. Waivers Against the Policy of Law Are Unenforceable            11

        E. Claim for Criminal Offenses v Claim For Malpractice            13

        F. Fraudulent Concealment of Conspiracy                           14

        G. Federal Court Has the Discretion to Refuse Enforcement o       16

        H. Conspiracy & Criminal Offenses                                 17

        I. Triable Facts                                                  18

        J. Declarative & Injunctive Relief                                19

    TIMELINESS, AND INDIVIDUAL CAUSES OF ACTIONS                          19

        Gross Negligence                                                  19

    ATTORNEY FEE                                                          21

    VOID JUDGEMENTS                                                       22

    PRO SE STATUS OF THE PLAINTIFF                                        24

    CONCLUSION                                                            24

## Cases

Agency Holding Corp. v. Malley-Duff & Associates, Inc                5

Backus v. Sessions,                                                13

Benedek v. PLC Santa Monica, LLC                                   18

Bennett v. United States Cycling Federation                        18

Bonin                                                               6

Bowen v. Westerhaus                                                15

Bulloch v. United States

Burford v. Sun Oil Co

C. J. S., Limitations of Actions                                   16

Chavez v. 24 Hour Fitness USA, Inc                                 18

City of Santa Barbara                                              19,19

City of Santa Barbara v Superior Court of Santa Barbara            19

City of Santa Barbara v. Superior Court                            20

Clancy v. Pacenti                                                  11,11

Coffey v. Stephens                                                 15

Conley v. Gibson

Corbert v. Waitt, Ind. App                                        14

County of Ventura v. Tillett                                       24

Crane Co. v. Newman                                                11

Dalton                                                              7

Darensbourg v. Columbia Casualty Co                                18

Deanna Robinson v Nasreen B Shah                                   14

Decker                                                             21,21

Denton v. Utley                                                    11, 17,18,18

Doud v. Minneapolis Street Ry. Co                                  11,11

Doyle v. Teasdale                                                  11,18

Edwards v. Arthur Anderson                                         13

Eriksson v. Nunnink                                                19

| | |
|---|---|
| Exxon Mobil v Saudi Basic Industries Corp | 2 |
| Fiswick v. United States | 7 |
| Fleischmann, at 718 [Fleischmann Distilling Corp. v. Maier Bro | 22 |
| Goodman v. Missouri Pacific R.R. Co | 18 |
| Grebing v. 24 Hour Fitness USA | 19 |
| Hoffman v. Lloyd | 12 |
| Hogoboom & King, Cal. Practice Guide: Family Law | 22 |
| Hohe v. San Diego Unified Sch. Dist | 18 |
| In re Eugene Lee Armentrout et al | 24 |
| In re Morgan | 16 |
| Jimenez v. 24 Hour Fitness USA | 19 |
| Junge v. Smyrna Rental & Repair, Inc | 16 |
| Kern v. St. Joseph's Hospital | 14 |
| Khera v Sameer (2012) | 6 |
| Khera v Sameer (2018) | 9 |
| Klepper v. Stover | 16 |
| Koppes v. Pearson | 14 |
| Lakeman v. LaFrance | 14 |
| Leon v Family Fitness Center | 13 |
| Maurer v. J.C. Nichols Co., 207 Kan | 15 |
| Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co | 16 |
| McCoy v. Wesley Hospital & Nurse Training School | 6, 15 |
| McGuirk v. Ross | 18 |
| Montgomery Ward & Co. v. Callahan | 18 |
| O'Meara v. Haiden | 13 |
| Ormsby v. Ginolfi | 18 |
| Page v. Means | 18 |
| People v. One 1941 Chrysler Sedan | 24 |
| Proctor v. Schomberg | 5,6 |

| | |
|---|---|
| Reed v. Harvey | 18 |
| Regenold v. Baby Fold, Inc | 24 |
| Rovert v Robert | 24 |
| Root Refining Co. v. Universal Oil | 24 |
| Rosencrans v. Dover Images, Ltd | 20 |
| Ruggles v. Selby | 18,18 |
| Schmidtke v. Great Atlantic & Pacific Tea Co | 18 |
| Schoenfeld v. Buker | 18,18 |
| Seaboard Ice Co. v. Lee | 18 |
| Semtek Int'l Inc. v. Lockheed Martin Corp | 2 |
| Slavin v. Curry | 6,17 |
| Summer v Superior Court | 24 |
| Tuggle v. Maddox | 5,6 |
| Tunkl v. Regents of the University of California | 12 |
| Tunkl v. Regents of University of California | 18 |
| U-Haul International, Inc. v. Waldrip | 22 |
| United American State Bank & Trust Co. v. Wild West Chrysle | 15 |
| United States v Butler | 7 |
| United States v. Coia | 7 |
| United States v. Gonzalez | 7 |
| United States v. Northern Imp. Co | 7 |
| Wheeler v. White Rock Bottling Co. of Oregon | 11 |
| Wigmore, Evidence | 11 |
| Williston, Contracts | 11 |
| Wright v. City of L.A | 21 |
| YMCA of Metropolitan Los Angeles v. Superior Court | 18 |

## Statutes

| | |
|---|---|
| 18 USC 1961 | 6,7 |
| 21 USC.846 | 7 |

| | |
|---|---|
| 42 USC 1983 | 15 |
| 42 USC 1986 | 15 |
| 42 USC 666 | 3,22 |
| Bus. & Prof. Code, § 2395 | 21 |
| Bus. & Prof. Code, § 2398 | 21 |
| Bus. & Prof. Code, § 2727.5 | 21 |
| Bus. & Prof. Code, § 3706 | 21 |
| Bus. & Prof. Code, § 4840.6 | 21 |
| CCP 340.6 | 5,6 |
| Civ. Code, § 1714.2 | 20 |
| Civil Code Section 1542 | 12 |
| Family Code 271 | 22 |
| Family Code Section 271 | 22 |
| Family Code Section 4065 | 22 |
| Family Code Section 5601(a), (e) | 22 |
| FC 4065 | 22 |
| Health & Saf. Code, § 1799 | 22 |
| Health & Saf. Code, § 1799.105 | 22 |
| Health & Saf. Code, § 1799.107 | 22 |
| Section 1668 | 12 |

## Other Authorities

| | |
|---|---|
| 5 Witkin, Summary of California Law | 21 |
| Article III | 22 |
| California Torts, Ch. 1, General Principles of Liability, § 1.01 | 21 |
| Continuing Offence Doctrine | 8 |
| Hogoboom & King, Cal. Practice Guide: Family Law | 22 |
| Negligence, §§ 380.10, 380.171 | 21 |

## Rules

| | |
|---|---|
| Rule 15 | 25 |

Rule 60                                                                          23,24

**INTRODUCTION**: PARDUE seeks dismissal of the complaint. **Defendant did not meet and confer with me**. I oppose on the grounds for failure to meet and confer, and that the motion is frivolous and meritless. The complaint is fairly specific as to PARDUE's role.

**FACTUAL BACKGROUND:** KHERA and I separated in 2003. Thereafter he engaged in fraudulently conveyancing, violation of court orders, and concealment and illegal transfer of community assets. In 2005, DCSS acquired jurisdiction on child support. Defendant PARDUE represented me during 2006/2007, in Santa Clara County and engaged in a conspiracy and corrupt practices, **some** of which are summarised as below:

1. Upon initiating a contract with me, he made me sign two Substitution of Attorneys – in and out[1].

2. In early 2007 defendant failed to subpoena records[2] but through depositions he acquired records of defendant KHERA's assets and liabilities. He fraudulently concealed this information from me, and conspired with BENETT, BECKER, KHERA, SCHUSTER, WHITE, and DAVILA to defraud me and deprive me of my rights.

3. He informed me that he needed attorney fee advance for the trial for property and support matters, which advance I paid him. He never intended to go to trial, *intentionally* frittered away the funds, and never refunded the unused portions. He made false representations of law, and facts to the Court, to me, claiming Santa Clara County had jurisdiction on child support, telling me that no arrearages were owed, and thus misguiding me into waiving acreages I knew nothing of.

4. At the Mandatory Settlement Conference in May 2007, he conspired with others, to threaten, intimidate, coerce me to accept an unfair and unjust settlement a) By threatening me with sanctions of $180,000 b) By threatening to resign c) By making me sign a new Substitution of Attorney because I was refused to accept the settlement offer he had covertly negotiated with defendants d) informing me that Judge DAVILA had told him that if I refused to accept the offer, I would be sanctioned $180,000. I was terrified and agreed to accept the offer. E) By fraudulently concealing

---

[1] He made me sign yet another one on or around May 2007, to intimidate and coerce me into accepting the settlement offer made by other members of the cartel. One of the two Sub-Out forms was then filed illegally with the court without my approval.

[2] Which was the basis for legal malpractice suit.

from me the facts of the case – income,  assets  - and the law – my eligibility to support, property, and attorney fee - from me. F) By agreeing to be bribed and corrupted by the defendants g) by pretending to represent me in the settlement hearings when he had already made me sign the substitution of attorney form on or around May 18, 2008 and had substituted out *before* the hearing.

Later, when I attempted to have the purported "error" rectified, he refused to provide a Statement of Attorney Mistake, and conspired to sabotage my efforts by disclosing private emails sent to him to opposing counsel and the judge and falsely accusing me of being *difficult* when I was simply seeking enforcement of my rights, forged one of the two substitution of attorney forms that I had previously signed (in 2006, and on May 18, 2007) and filed it in court, asserting that I had freshly signed them. His actions were conspiratorial, premeditated, and criminal, *intending* to deprive me of property, support, attorney fee, and my constitutional and civil rights. He was successful in his attempts.

In 2008, Judith Soley, my child support attorney advised me to file a legal malpractice suit and drafted the first legal malpractice complaint, filed in 2008. Defendant MILLEN  corruptly conspired to sabotage my efforts to take the matter to trial, forcing me to settle for $60,000 in 2014. I became aware of the RICO injuries in 2015. The conspiracy is ongoing.

## LEGAL ARGUMENTS

**ROOKER FELDMAN DOCTRINE:** The 2AC alleges RICO, federal question jurisdiction, diversity jurisdiction and supplemental jurisdiction.  *See* 28 USC 1331, 28 USC 1332, 28 USC 1367. The context and applicability of d efendant PARDUE's *Exxon Mobil v Saudi Basic Industries Corp, 544 US 280, 284 (2011)* citation is unclear.

I settled the malpractice suit against PARDUE under duress due to MILLEN's conspiracy and alleged misconduct. I was not a "loser," This distinction is important. Doctrine of claim preclusion does not apply as I have not asked this Court to "set aside" the agreement against PARDUE. Defendant's argument that the dismissal "operates as an adjudication on the merits," means that a subsequent claim is precluded, is negated by *Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497*

*(2001)*. The, the phrase was held to mean that dismissal only precluded the relitigation *in the same federal district court*. The phrase does not preclude recommencement of the same action in other federal district courts, other state courts, or even all courts. And even if it did, this action is not grounded in legal malpractice, but in conspiracy theory, and RICO and no one doubts the ability and authority of federal courts, as appropriate, to impose penalties for improper, fraudulent, deceitful conduct.

To the extent that he raises the Rooker Feldman Doctrine to assert the validity of the Judgments of 2008, see *VOID JUDGMENTS OF 2008* in this pleading, as well as *VOID JUDGMENTS OF 2008 & FRAUD UPON THE COURT* and *ROOKER FELDMAN DOCTRINE* in *Plaintiff's Opposition to ELLIS' Motion to Dismiss* (Doc 148) . Again, I did not *lose* the underlying family law case, that I was a victim of fraud, fraudulent representation, fraud upon the court, deprivation of rights, obstruction of justice, civil and RICO conspiracy. Therefore, Rooker Feldman does not apply.

The Rooker-Feldman doctrine is also inapplicable when the alleged injury is distinct from the judgment. In this instance, the graveman of the complaint is the criminal acts of the defendants, the RICO claim. Prayer for relief[3] seeks damages against Gross Negligence, Conspiracy, and RICO, disgorgement of profits, and declarative and injunctive relief based on federal laws - issues are distinct. The apportioning of relief is a triable issue at the very least.

The federal Court does not *interfere* with the State decisions on matters related to law – simply to avoid conflict between state and federal law on policy matters. The "abstention" doctrine is generally recognized: (1) to avoid decision of a federal constitutional question where the case may be disposed of on questions of state law; (2) to avoid needless conflict with a state's administration of its own affairs [*Burford v. Sun Oil Co., 319 U.S. 315 (1943)*] (3) to leave to the states the resolution of unsettled questions of state law; and (4) to ease the congestion of the federal court docket. Where

---

[3] On matter related to void Judgments of 2008, the complaint only seeks declarative/injunctive relief that this Court declare them void. Federal Court has jurisdiction over this matter because the Judgments were based on violation of constitutional and federal law – defendant DAVILA made orders in clear absence of jurisdiction, in violation of 18 USC 666 (a) (9)(c). This Court has subject matter jurisdiction due to alleged constitutional and federal law violations. And as stated, the Judgments have already been overturned by various state courts.

**timely and adequate** state-court review is available, a federal court sitting in equity may decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "**difficult questions of state law bearing on policy problems** of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in the case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

Defendant has failed to establish that these my complaint meets the criteria - how my complaint raises difficult questions of state law bearing on public policy, how relief sought from federal court conflicts with state laws, or even how a delay of 15 years at the Trial Court level and 5 years at the Appellate Court level qualifies as timely and adequate.

Although states have concurrent jurisdiction on RICO claims, Federal Government has overarching, inherent, constitutional responsibility  to prevent organized crime and racketeering, and to maintain the integrity of the state judiciary. Hence, the Supreme Court has ruled that prosecutions can be brought by "dual sovereigns" - that is, the federal government, and a State government. Under the Private Attorney General Doctrine, I can prosecute defendant twice "for the same offence." He may, in addition to the civil suits, face criminal suits.

Supreme Court actually frowns on absentism. The in-state conduct in this case also involves a genuine federal interest. Mail, Wire, Bank fraud, judicial corruption, violation of federal laws, child support fraud, RICO, conspiracy, obstruction of justice, deprivation of civil rights etc are matters of federal.  See arguments against absentism raised in *Plaintiff's Opposition to ELLIS's Motion to Dismiss*[4] (doc 144). Rooker Feldman is inapplicable. Defendant's argument fails.

**TIMELINESS, RELEASE & WAIVER** : Defendant alleges that claim is time barred because the events took place between 2006 – 2008, and a release against PARDUE was signed in 2014. The complaint alleges Civil conspiracy (para 161-166) and RICO conspiracy (general RICO para 167 –

---

[4] Similar arguments, with minor differences, are provided in several other Opposition documents I have filed against other defendants. All of these arguments about Rooker Feldman Doctrine are incorporated herewith as if fully set forth herein.

348; 300 – 348).  RICO has a four-year statute of limitations. [*Agency Holding Corp. v. Malley-Duff & Associates, Inc*, 483 U.S. 143, (U.S. 1987)]. The RICO injuries were discovered in 2015, and RICO complaint is therefore timely, being subject to 4 year "injury discovery accrual rule."  [See *Slavin v. Curry, 575 F.2d 1256, 1265 (5th Cir. 1978)* states

> *When the complaint is read with the required liberality, however, it asserts a single, continuing conspiracy. That is, it reveals a conspiracy that began with the intention of denying Slavin the equal protection of the laws and continued by obstructing justice and denying due process in an attempt to conceal the complicity in the first action. The complaint recounts a number of incidents. <u>While they state separate causes of action against individual defendants, they also charge participation in a single conspiracy.</u> The district court erred in treating the incidents as alleging only separate causes of action.*

The 2AC alleges the following (para 24):

> *Action is timely as I became aware of the conspiracy in early 2015 or thereabouts. The conspiracy, racketeering acts and fraud is ongoing. <u>Any previous actions are tolled due to false invoicing, lying, and misrepresentation of the defendants</u>*[5].

There are other reasons due to which the statute of limitation has tolled, but these cannot be addressed in the 25 pages allowed by the Court. The statute of limitations is an affirmative defence and must be pleaded. It cannot be taken advantage of by a motion to dismiss. In <u>*Tuggle v. Maddox, Fla.,* 60 So. 2d 158, 159</u>], . .. then the plaintiff can show that the statute has been tolled or that there were facts which would constitute an exception to the statute, like fraudulent concealment etc which contribute to tolling or that the case presented is an exception to the statute of limitations. The sufficiency of such pleading may be tested in and determined by the trial Court. [<u>*Proctor v. Schomberg, 63 So. 2d 68 (1953)].*</u>

**STATUTE OF LIMITATION:** Opposing Counsel cites CCP 340.6 as bar for further prosecution. CCP340.6 does not apply for fraud in the performance of professional services [360(a)], and the period is tolled when the plaintiff has not sustained actual injury [360(a)(1)] and  in an action based upon the an instrument in writing, the effective date of which depends upon some act or event of the future, the period of limitations provided for by this section shall commence to run upon the occurrence of that

---

[5] All tolling doctrines are based upon whether it is fair, under the circumstances, to bar the victim's claims on the basis of the running of the statute of limitations.  In this instance, it would be unfair to bar my claims against ELLIS, on the basis of the statute of limitations.

act or event [360(a)(1)(b)][6].The 2AC alleges: *Action is timely as I became aware of the conspiracy in early 2015 or thereabouts. The conspiracy, racketeering acts and fraud is ongoing. <u>Any previous actions are tolled due to false invoicing, lying, and misrepresentation of the defendants</u>*[7].

The statute of limitations is an affirmative defense and must be pleaded. It cannot be taken advantage of by a motion to dismiss. In <u>*Tuggle v. Maddox, Fla.,* 60 So. 2d 158, 159</u>], . .. then the plaintiff can show that the statute has been tolled or that there were facts which would constitute an exception to the statute, like fraudulent concealment etc which contribute to tolling or that the case presented is an exception to the statute of limitations. The sufficiency of such pleading may be tested in and determined by the trial Court. [<u>*Proctor v. Schomberg, 63 So. 2d 68 (1953)].*</u> Even though separate causes of actions have been plead, the complaint alleges defendants' participation one conspiracy to defraud [paras 161-166] and RICO  [para 167-324].  which statute is tolled due to fraud, lying, misrepresentations. See *Slavin v. Curry, 575 F.2d 1256, 1265 (5th Cir. 1978)* states

> *When the complaint is read with the required liberality, however, it asserts a single, continuing conspiracy. That is, it reveals a conspiracy that began with the intention of denying Slavin the equal protection of the laws and continued by obstructing justice and denying due process in an attempt to conceal the complicity in the first action. The complaint recounts a number of incidents. <u>While they state separate causes of action against individual defendants, they also charge participation in a single conspiracy.</u> The district court erred in treating the incidents as alleging only separate causes of action.*

Without waiving my right to have this issue addressed *only* at the trial, the following argumets hold in this matter.

**The statute of repose (10 years) and not the statute of limitation governs such cases**[ In *McCoy v. Wesley Hospital & Nurse Training School*, 188 Kan. 325, 331-32, 362 P.2d 841 (1961); B*onin*, 261 Kan. 199, Syl. ¶ 2]].

CCP 340.6 does not apply for fraud in the performance of professional services [360(a)][8],

---

[6] The Spousal Support agreement held that I could have it extended by filing by a Motion for Continuation of Spousal Support. The Appellate decision on this was made in <u>*Khera v Sameer (2012),*</u> after which a motion was filed in 2013 before ZAYNER dismissed it. It is currently being appealed in 6DCA. So statute has tolled.

[7] All tolling doctrines are based upon whether it is fair, under the circumstances, to bar the victim's claims on the basis of the running of the statute of limitations.  In this instance, it would be unfair to bar my claims against ELLIS, on the basis of the statute of limitations.

and the period is tolled when the plaintiff has not sustained actual injury [360(a)(1)]. The

conspiratorial and RICO injuries were discovered in 2015, and the conspiracy is ongoing.

The statute of limitations begins to run on the date of the last overt act. *See Fiswick v.*

*United States*, 329 U.S. 211 (1946); *United States v. Butler*, 792 F.2d 1528 (11th Cir. 1986).

For RICO (18 U.S.C. § 1961) or 21 U.S.C. § 846, it is enough to prove that the conspiracy

continues into the limitations period. Because of the ongoing litigation, and various *interim*

orders that have overturned portions of the Judgments of 2008, the purpose of the

conspiracy has not been achieved yet, but the efforts of the defendants are

ongoing.  *See United States v. Northern Imp. Co.*, 814 F.2d 540 (8th Cir. 1987); *United*

*States v. Coia*, 719 F.2d 1120 (11th Cir. 1983), *cert. denied*, 466 U.S. 973 (1984).

Defendant has not withdrawn from the conspiracy.  "Withdrawal" from a conspiracy for this

purpose means that the conspirator must take affirmative action by making a clean breast to

the authorities or communicating his or her disassociation to the other

conspirators. [*See United States v. Gonzalez*, 797 F.2d 915 (10th Cir. 1986)]. The last three

overt acts were uncovered only a few weeks ago.[9] I have been diligently attempting to seek

---

[8] "The statute of limitations is tolled when it can be shown that fraud has been perpetrated upon an injured party sufficient to place him in ignorance of his right to a cause of action or to prevent him from discovering the injury. . . The fraudulent concealment of facts showing negligence will toll the statute of limitations until the fraudulent concealment can be discovered through the exercise of reasonable diligence. . . To hold otherwise would be a harsh rule and prevent relief to an injured party who was without notice during the statutory period of any negligent acts that might have caused injury. . .a more focused rule should be employed in this case to prevent the law from being successfully used as a vehicle for fraud. We refer to the doctrine of equitable estoppel.

It is a relatively simple manner to conclude that the running of the statute of limitations is tolled by concealment of the fraud. The statute says that it is and so do the cases [In *Kern, by and through Kern v. St. Joseph Hosp.*, 102 N.M. 452, 455, 697 P.2d 135 (1985)]  [*Dalton v. Lawrence National Bank*, 169 Kan. 401, Syl. ¶ 6, 219 P.2d 719 (1950)]

[9] (A) **TWO  days ago I discovered additional documentary evidence which establishes that in 2007,2008, defendants had attempted, and even now continue with their conspiracy, to rob me (*not just control the account as I have previously alleged in my 2AC*) of an additional $1 million of my post separation earnings.** Defendant KHERA has distinctly **refused** to release these funds to me even though in his emails to me, sent in July/Aug 2018, he admits that these are my post separation earnings. A motion has been filed in Santa Clara County, and is scheduled for hearing in October 2018.

(B) A few weeks ago, I attempted to have defendant KHERA served in this case. Pursuant to the skip trace I discovered that in addition to a $1.8m house in Cupertino, he had acquired financial interests and had purchased, two more properties between 2004 – 2006 in Santa Clara County, presumably using the community funds. Even if these were purchased from his post dissolution income, he had failed to pay child and spousal support on the rental income he  had received from these. Defendant PARDUE was aware that KHERA had misappropriated over $1m of community funds. He intentionally concealed these facts from me, and coerced me into waiving claims on properties purchased by KHERA after dissolution. Without any discovery, defendant insisted that the properties purchased by KHERA were his separate properties, knowing

relief for tthe past 15 years, the circle of conspiracy keeps widening. No claim is time

barred.

**CONTINUING OFFENCE DOCTRINE :** The continuous offense doctrine is outlined in *Continuing*

*Offence Doctrine,* in *Plaintiff's Opposition to ELLIS' Motion to Dismiss,* (page 17-18).

**CRIMINAL OFFENSE/CIVIL LIABILITY :** Defendant's argument that criminal offenses do not

create a private cause of action, or do not give rise to civil liability are addressed in *Criminal*

*Offense/Civil Liability* in *Plaintiff's Opposition to ELLIS' Motion to Dismiss,* (page 19-20).

**ISSUES ARE NOT RES JUDICATA :** The case filed against PARDUE was of general legal

malpractice based on knowledge of his role at the time. The current case alleges a) Attempts (to

Defraud) (para 120-122, pg 18-19) b) Fraud (para 123-128, pg 19-20) c) Gross Negligence d) Unjust

Enrichment e) Deprivation of Civil Rights (para 140-145; pg 21) f) Fraudulent Conveyancing g)

Breach of Fiduciary Duty and Covenant of Good Faith & Fair Dealing (para 140-145, pg 21), h)

Intentional Infliction of Emotional Distress (para 134-142,  pg: 23-24) i) Negligent Infliction of

Emotional Distress (para 134-142,  pg: 23-24) j) Obstruction of Justice & Defamation (para:  143-147,

pg: 24), k) Unfair Business Practices  l)Principal Aiding & Abetting In Commission of An Offense;

Accessory After The Fact; Misprison of Felony; Insurrection  (paras 156-160, pg 27-28) m) Civil

Conspiracy n) RICO conspiracy for Mail, Wire, Bank Fraud, Bribery And/Or Corruptly influence

officers, Money Laundering, Travelling In Support Of Racketeering Activities, Obstruction of Justice,

Criminal Deprivation of Civil Rights, Forgery, Investing the Proceeds of Racketeering Activity,

Conspiracy to Violate Federal Civil RICO, Conspiracy to violate Federal Criminal RICO, The

complaint alleges that Defendants is a member of a criminal enterprise (para 167- 176, pg 29-30),

---

that KHERA's income during this period was not enough to enable his purchase of three properties in Santa Clara County. Since he concealed and withheld documentation from me, I could not have known about purchases. But defendant PARDUE had deposed defendant WHITE in my absence, and had such information about fraudulent conveyancing, and purchase of properties, but failed to inform me. PARDUE misrepresented the facts, and well as the law to me.  Over the years, one by one, information concealed by defendant PARDUE in 2007 from me, has been exposed.

(C)      On August 22, 2018, Judge KALEMKARIAN of Fresno family Court arbitrarily dismissed my motion for sanctions , and motion for add ons which had been filed in 2014, against defendant SCHREIBER/KHERA. The dismissal was during a Trial Setting Conference where I was represented by my attorney KIM AGUIRRE, who had previously represented me for the past 3 years as the trial date was routinely commuted. This time, because of this federal case had been filed, KALEMKARIAN dismissed the motion presumably with an intent to prevent me from establishing the evidence of SCHREIBER's crimes thru the Motion for Sanctions.

involved in *Schemes and Artifices To Defraud* (paras 177 – 213, pgs 30-35) and has been engaged in a Pattern of Racketeering Activities (para 214, pg 35-36) for the past >10 years and has benefitted personally from the racketeering activities in conjunction with other defendants. It also alleges that I am not the only victim of the defendant, my children were victimised as a consequence, and there are several other victims and children whose lives have been similarly destroyed by the defendant and the CFDE cartel. The facts of his involvement in the alleged CFDE, and his involvement in conspiracy were concealed from me, and could not have been alleged. It was assumed that he had been *negligent, and even the extent of his negligence was not known at the time.* In 2018, with Appellate Court decision on Khera v Sameer (2018) it is established that his negligence was actually gross negligence.

A. **Identity Of Claims:** The excerpt presented by defendant pertains to legal malpractice claim of negligence.  Of the 14 civil claims and RICO asserted in the 2AC, none is same as the legal malpractice claim. Although negligence is asserted against defendant in both lawsuits, the negligence asserted in this 2AC is Gross Negligence which is vastly different. At the time the settlement was negotiated, I had just begun representing myself. There were various appeals, motions and lawsuits filed against the defendants, or I was in the process of filing them. I had felt the losses could be recuperated. But it has proved almost impossible, as the malicious CFDE and Judicial Offices therein have conspired at every step to sabotage my efforts, and to oppress, suppress and silence me. Defendants, each one of them, knew how difficult it is to reverse any Judgment, and how that Judgment would affect me. I did not. Therefore, on this basis alone, the ordinary negligence v gross negligence in each lawsuit are different in nature. Further, the claims could not have been brought earlier because the injuries were discovered later. Defendant's argument fails.

B.  **2014  Release/Waiver For Legal Malpractice:** The release states:

> *Sameer on one hand, and Pardue on the other hand, mutually agree to forever release, qcquit and discharge each other, and each of their partners, associates and officers, directors, employees and agents, representatives, insurers, attorneys, and any other person or entity in any way associated and related to each party, for any and all **claims, liabilities or damages**, of any nature or kind, known or unknown, (Claims) existing as of the effective date of this agreement, and **that relate to, or arise out of Pardue's representation of Sameer in the Underlying Action**. This release exists to any claims or facts existing as of effective date of this*

*agreement and arising out of the <u>work performed by Pardue</u>, and/or matters arising from or* **<u>connected to the lawsuit or the filing of the lawsuit which have existed in the past, which presently exist, which may exist in the future, based on facts existing as of the effective date, or which could have been alleged in the lawsuit</u>**. *The effective date is the date on which this agreement is fully executed by all parties.*

The release was for  a) financial claims,  liabilities or damages,  as they pertained to a) <u>*legal*</u> malpractice,  c) for work performed <u>*as a legal representative*</u> of Madhu Sameer  d) which were connected to the <u>*lawsuit against defendant PARDUE*</u> or d) <u>*could have been alleged in the lawsuit*</u>. The executed waiver expressly states this presumption, being for release of – claims, liabilities, damages (Defendant PARDUE's RJN, EX 1). In the sentence ". . .*that relate to, or arise out of Pardue's representation of Sameer in the Underlying Action*"  The waiver of liabilities applied to the work he performed <u>*as my attorney*</u> . The inclusion of the word "attorney"  in the waiver emphasises the fact that the waiver was issues against his role as an attorney licensed under the State Bar of California.

Firstly, even though I retained him to be my attorneys, right at the beginning, he made me sign two Substitution of Attorney forms – in and out. Effectively, he substituted in, and then substituted out immediately. He then substituted out again on May 18, 2007 during the Settlement Conference[10]. Such unscrupulous acts to unlawfully limit liability, are in violation of CRPCs. Therefore, he was never really my attorney in the legal sense, and court had no jurisdiction over him.

Even if all this court be ignored, when any attorney violates the CRPCs, he is going *beyond* his role as a legal representative, ceasing to be my legal representative. When PARDUE engaged in the alleged conspiracy, he was no longer acting as my attorney – he was an accomplice to the crime.

At the time the release was executed, I was unaware of the RICO injury, and the existence and the reach of the CFDE enterprise. *"... a release cannot apply, or be intended to apply to circumstances of which a party had no knowledge at the time he executed it, and ... if it is so general in its terms as to include matters never contemplated, the party will be entitled to relief."* (158 Eng.Rep. at p. 143.)

---

[10] The date on the sub-out form was later forged by defendant PARDUE just before he filed it with the court. I lived in Fresno, and did not meet him alone anytime after May 18, 2007.  I could not have physically signed the waiver between May 18, 2007 and the date that he filed he waiver.

Enforcing the release would leave me with uncompensated personal injuries, while the culprit responsible for these injuries receives a windfall and in unjustly enriches at the victim's expense. (See Denton v. Utley, 350 Mich. 332 [86 N.W.2d 537]; Wheeler v. White Rock Bottling Co. of Oregon, supra, at p. 530; Clancy v. Pacenti, 15 Ill.App.2d 171 [145 N.E.2d 802, 805, 71 A.L.R.2d 77].)

Finally, stress has been laid upon the fact that as between the releaser and the releasee, a large disparity of bargaining power is present; usually the release is a prepared form drafted by experts and presented in a take it or leave it manner, These considerations warrant special treatment of releases (See 9 Wigmore, Evidence (3d ed. 1940) § 2416, p. 55; 5 Williston, Contracts (rev.ed. 1937) § 1551, pp. 4347- 4349.)[11]

**C.     Fraud At Inducement:** PARDUE was not attorney at the time the agreement was entered into – in order to coerce threaten and intimidate me, he had made me first sign a waiver of liabilities, and then sign the Susbtitution of Attorney Forms. Once he signed the substitution of attorney form, he ceased to be my attorney. Therefore the Marital Settlement Agreement was not properly before the court, and is void for fraud on inducement. Further, PARDUE was required to disclose the facts related to his criminal association and conspiracy. I relied on his fraudulent non disclosure, and entered into an agreement.  The *concealment* of these facts by the defendant nullifies the waiver because it represents fraud at inducement.

**D.     Waivers Against the Policy of Law Are Unenforceable :** In performance of any of the alleged *criminal* acts, false advertising, deceptive communication, engaging in a conspiracy to defraud, engaging in a conspiracy of deprivation of civil, constitutional, and statutorily protected rights, fraudulent billing practices, racketeering activities, threats, intimidation, coercion, forgery, fraud, fraud

---

[11] The Court states in *Denton v. Utley, supra, (Mich.) 86 N.W.2d at pages 542-543*,"We would not be understood as holding ... that it is not within one's competence to say 'I may have serious injuries I know nothing about. As to them I will take my chances." This, one may do. He may, if he wishes, release his rights and assume the risk of future disablement for $1 'and other good and valuable consideration,' or $50, or, indeed, an old beaver hat. In other words, it is possible that a reasonable, intelligent person, in full possession of all his faculties, and with knowledge that he may have serious injuries, will release a tortfeasor from all liability in return for a trifling sum of money. If such has in truth been the intention and the agreement we will not disturb the parties." (See also Doud v. Minneapolis Street Ry. Co., **[59 Cal. 2d 113]** supra, (Minn.) 107 N.W.2d 521, 524; Doyle v. Teasdale, supra, (Wis.) 57 N.W.2d 381, 390; Clancy v. Pacenti, supra, (Ill.App.) 145 N.E.2d 802, 805; Crane Co. v. Newman, supra, (Ind.App.) 37 N.E.2d 732, 739.) [9]

upon the court, breach of fiduciary duty, abuse of process, obstruction of justice, violation of court

orders, aiding and abetting violation of court orders, breach of fiduciary duty, aiding and abetting

beach of fiduciary duty,  obstruction of justice etc etc etc –he can not claim protection under the term

"*legal representative*" qualifying for this waiver. His acts represented fraud against me, fraud upon the

court, and fraud against the United states. Granting him any concession in performance of such acts, or

a release for performance of these acts – discovered later – would be against public policy.

Section 1668 strikes down contractual commitments that the courts believe to be "*against the*

*policy of the law*[12]. Although specific waivers of all claims known and unknown and detailed waivers

of Civil Code Section 1542 are universal, the courts will not enforce such waivers where the claimed

right is one strongly protected by public policy. Conspiracy to engage in racketeering act, with the

intention of committing child Support fraud, property fraud, spousal support fraud cannot be allowed

to be "*exempt. . .from responsibility for his own fraud, or wilful injury to the person or property of*

*another, or violation of law*" [*Tunkl v. Regents of the University of California, 60 Cal.2d 92 (1963)*] I

was unsophisticated in a non-contractual setting,  defendant exploited my vulnerability – the settlement

contract for 60,000 for malpractice, when defendant was engaged in racketeering activities, is contrary

to public policy [*Hoffman v. Lloyd, 2009 DJDAR 10727 -  the 9th Circuit faced a well-drawn,*

*unambiguous release of unknown claims signed by the defendant with advice of counsel, but ruled that*

*for public policy reasons, it did not cover a certain specified claim. District Judge Marilyn Hall Patel*

*stated that "[t]his kind of backdoor loophole is inequitable and frustrates the purposes" of the state*

*law."]*. This Court has the discretion to refuse enforcement of generic and specified waivers of

---

[12] Defendant PARDUE secured from me an advance for taking me to trial, and then wilfully conspired with other
defendants to conceal defendant KHERA's income and assets from me, threatened, intimidated, harassed, blackmailed me,
coercing me into a waiving hundreds of thousands of dollars in child support, more than a million in spousal support, and a
few millions in property. He aided and abetted other defendants in usurping jurisdiction, and  leaving me bereft and
destitute. Despite refusing to take me for trial as agreed, he did not refund any amount of attorney fee advance he had taken
from me, instead dragged the settlement conference for 3 days – charging the same amount that could have been spent
more fruitfully on securing appropriate results in a trial. He then held a one day trial frivolously on matter related to
transportation costs. In all, he charged me as much as he would charge for a trial, but by refusing to take me to trial,
reduced his workload to zero. It is presumed the opposing counsel charged the same amount of money from defendant
KHERA. Thus all defendants – B&B Defendants, PARDUE, DAVILA, reduced their workload, at the same time earning
the same amount of money as they would have earned if they would have taken the matter to trial and secured an order on
merits of the case. When I sought a Statement of Attorney Mistake from him, he fabricated a Substitution of Attorney Form
and filed the form with the Court.

unknown claims, even by parties represented by counsel. Defendant PARDUE did not seek waivers for damages due to criminal conduct, such waivers would be against public policy. Rights to seek compensation and justice against criminal conduct cannot be terminated by a broad and general waiver under Hoffman, no matter how comprehensive its language. Additionally, defendant PARDUE cannot be exempt for damages by reasons of his racketeering, conspiracy, forgery and gross negligence. Therefore, it was not necessary for me to rescind said release and restore the consideration received before the institution of this action." (Backus v. Sessions, supra, 17 Cal. 2d 380, 391-392. Cf. Sime v. Malouf, 95 Cal. App. 2d 82, 111 [212 P.2d 946, 213 P.2d 788]; O'Meara v. Haiden, 204 Cal. 354 [268 P. 334, 60 A.L.R. 1381]. The release did not, as a matter of law, bar the instant action, and the timeliness of the notice of rescission and offer of restoration is immaterial.

Where a statute confers rights that by their terms are non-waivable, even a specific, identified waiver of such rights will not be enforced.  In Edwards v. Arthur Anderson LLP, 44 Cal.4th 937 (2008)] Supreme Court there ruled that the "Waiver could not be enforced because it would violate Civil Code Section 1668 PARDUE's contract with me was based on an illegal motive and is against the policy of law. Any waiver for his liability is against the law.

**E.     Claim for Criminal Offenses v Claim for Malpractice :** However, if the Court were to ignore this argument, the Court must still deny defendant's motion to dismiss because  "*It is only necessary that the act of negligence, which results in injury to the releaser, be reasonably related to the object or purpose for which the release is given. . . The objective purpose of the release. Leon signed was to allow him to engage in fitness activities within the Family Fitness facilities. However, it was not this type of activity which led to his injury.*"[ *Leon v Family Fitness Center*]  The release was given for negligence under legal malpractice. This is evidenced by the fact that it was paid for by the insurance company. The release was not for criminal conduct, fraud, etc as the insurance generally is not responsible for fraud and related criminal liabilities, as such liability was caused by defendant's own failure to adhere to the rules and regulations of his professional as an attorney. Had the release been based on criminal allegations, the insurance would have not paid out the claim. But they did.

Therefore, defendants' argument about the applicability of claim to this suit, to allegations of criminal conduct, is meritless.

**F.      Fraudulent Concealment of Conspiracy :** Unknown claims can only be released, **so long as the waiver is conscious**. I discovered the RICO injury in late 2014, early 2015. However, as far back as 2006 defendant knew, and was engaged in the alleged criminal activity. Therefore, when he entered into the alleged contract for waiver of liability in 2014, and demanded a waiver in exchange for *his negligence*, he was aware of the criminal activity. I was not. Therefore, the concealment or falsification of true facts of the case and of his behaviour, by him, and his attorneys, during the legal malpractice case represents fraud at inducement. The product – the settlement - was marketed to me using fraudulent claims and intentionally false statements[13].

The document of fraudulent concealment is based upon principle of equitable estopped [*Corbert v. Waitt, Ind. App. 445 N.E. 2d 100 (1982). The theory is premised on the notion that the one who has prevented the plaintiff from bringing suit within the statutory period should be estopped from asserting the statute of limitations as a defense*." (Emphasis added.) [*Deanna Robinson v Nasreen B Shah(1997) 23 Kan. App. 2d 812].* I did not, and could not consent to release of liability from intentional torts or his reckless conduct[14] and must not be allowed to benefit from such fraud, misrepresentation, deceit and concealment. Such conduct tolls the statute of limitations and also nullifies the contract that has been presented. Any other decision by this Court, would be antithetic to public policy, as it would reward defendant not only for the crimes alleged, but also for fraud at inducing me to sign the purported contract.

> *Fraudulent concealment of a cause of action tolls its statute of limitations and its statute of repose [Koppes v. Pearson, 384 N.W.2d 381 (Iowa 1986)] Equitable estoppel does not depend upon legislative authority; it is an inherent power of the courts used to punish unconscionable conduct and estop a guilty party from taking advantage of his or her fraudulent conduct.*

---

[13] "*It is well established that our courts will not countenance fraudulent conduct.  We refuse to presume that the Legislature intended to give a wrongdoer the advantage and benefit of his fraudulent concealment of a cause of action until the statute of limitations has run." Lakeman v. LaFrance*, 102 N.H. 300, 303, 156 A.2d 123 (1959).

[14] "To allow a physician to escape all liability for actual and provable malpractice by stating he had no more contact with a patient after a certain period, although the malpractice was not detectable at that time and was fraudulently concealed from the patient by the physician, would defeat the purpose of the equitable estoppel doctrine of fraudulent concealment." **[Kern v. St. Joseph's Hospital** case **summary** 697 P.2d 135 (N.M. 1985)]

*Equitable estoppel is a way of saying that the statute of limitations and the statute of repose are valid and would be absolute defenses to this action but because of your conduct as a litigant, you, and only you, will not be permitted to raise those defenses. Our Supreme Court has indicated that the use of estoppel in cases of concealment of a cause of action is permissible. In McCoy v. Wesley Hospital & Nurse Training School, 188 Kan. at 331]. The court implies that in a proper case, where the wrong was not discovered within the running of the statute of limitations, equitable estoppel would be an appropriate doctrine to be invoked on the part of the defrauded plaintiff.*

*"The doctrine of equitable estoppel is based upon the principle that a person is held to a representation made or a position assumed when otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances, has in good faith relied thereon. (Maurer v. J.C. Nichols Co., 207 Kan. 315, 485 P.2d 174 [1971], cited in Bowen v. Westerhaus, 224 Kan. 42, 45-46, 578 P.2d 1102 (1978),.)*

Defendant – hired to represent me as an attorney, was also an officer of the court and had a duty to speak, to prevent the crimes against me. He repeatedly assured me – verbally, and in writing - that this was the best agreement I could get. When I continued refusing, he emphasised the "fair" nature of the settlement offer by threatened to resign if I continued seeking "unfair" settlement, lulling me to believe that he was acting in my best interest, that I was delusional about defendant's income and assets. If he had made a mistake, and he was really my attorney, he was required to provide a Statement of Attorney Mistake, was required to exit the conspiracy (42 USC 1983 - 42 USC 1986). He failed to do any of these, instead wilfully obstructed my attempts to seek justice. He wilfully concealed facts, and law from me. I justified relied on his fraudulent representation. If he now claims negligence, he is to be held guilty of gross negligence *and* fraud. The court has further said*:*

*'. . . Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. . . .' (United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc., 221 Kan. 523, 527, 561 P.2d 792 [1977].)"*

*"One general statement of the doctrine which runs throughout the cases in which it is asserted is that a defendant, who has acted in such a fashion that his conduct is sufficient to lull his adversary into a false sense of security forestalling the filing of suit until after the statute has run, will be precluded from relying on the bar of the statute. [Coffey v. Stephens, 3 Kan. App. 2d 596, 598, 599 P.2d 310 (1979.]*

> *""If a defendant, electing to rely on the statute of limitations, has previously by deception or in violation of his duty toward plaintiff, caused him to subject his claim to the statutory bar, defendant must be charged with having wrongfully obtained an advantage which the court will not allow him to hold, and this can be done by his silence when under an affirmative duty to speak. (53 C. J. S., Limitations of Actions, § 25, Estoppel, pp. 963, 964. Cited in* Klepper v. Stover, 193 Kan. 219, 221-22, 392 P.2d 957 (1964)*)"*

At the time I entered this agreement, I only considered him as my attorney, I did not know ad defendant did nto disclose that he had been engaged in a conspiracy with others (*In re Morgan*, 219 Kan. 136, 137, 546 P.2d 1394 [1976].) I could not even *imagine* at the time that I was in a grip of such corruption. RICO claims could not be envisioned, conspiracy between defendants was unknown, and as I was just beginning to represent myself in 2014[15] I never intended to release  the defendant from RICO claims. *Junge v. Smyrna Rental & Repair, Inc.*, No. 95C-02-018, 1998 WL 960716 (Del. Super. June 2, 1998) (denying motion for summary judgment brought to extinguish strict products liability claim, after looking solely to the language of the release to infer intent). "'. . .

**G.      Federal Court Has the Discretion to Refuse Enforcement of Contract:** Additionally, the claims were waived within the jurisdiction of State Courts. The Supreme Court's 5th Amendment interpretation allows successive state/federal prosecutions. Federal Court jurisdiction infers discretion to ignore agreements made under State Law, especially when these agreements are made under duress. The duress arose from defendants MILLEN's actions, causing the right to trial to be time barred.

The Federal Court has the discretion to refuse enforcement of terms and conditions in contracts governed by state laws, especially where offenses a) involving crime, criminal conduct, in matters related to b) wilful violations  c) of constitutional and d) federal law, and e) where the contracts violate public policy [*Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co., 761 So. 2d 306 (Fla. 2000)[16]*].

---

[15] Defendant MORENO resigned in Nov 2013, and I retained KIM AGUIRRE in Jan 2014 or thereabouts, on limited representation, to represent me in Child Support matters because I was not a legal expert, nor did I understand family law at all at the time.

[16] Commercial nurseries in Florida brought a products liability action against a manufacturer of a fungicide. After a settlement agreement was entered, the nurseries brought suit against the manufacturer in state court, alleging they had been fraudulently induced to settle claims. The Florida Supreme Court enforced a choice-of-law provision within the settlement agreement. The Court found that unless the law of the chosen forum contravenes strong public policy, a choice-of-law provision in a settlement agreement governs the dispute. For the choice-of-law provision to be found invalid on public policy grounds, the countervailing public policy must be sufficiently important that it outweighs the policy protecting freedom of contract.

All conditions a) – e)  are satisfied in this instance. Therefore, the Federal Court has the discretion

to refuse enforcement of contract with Pardue, for the purported waiver.

**H.      Conspiracy & Criminal Offenses :** Defendant treats his actions as being isolated offenses,

whereas the offenses plead herein relate to conspiracy to defraud. The two are not the same. The

conspiracy related and RICO related injuries were not triggered in 2008 as he claims, but in 2015, as

alleged in my complaint. Therefore his arguments regarding the statute of limitation are all meritless,

as is his implied claim hat he was acting solo, and that the conspiracy claim also triggers in 2008. The

conspiracy triggers when the last over act in support of conspiracy is committed, or when the

defendant exists the conspiracy. Since he continues to support the validity of a void, fraudulent order,

there is no indication that the defendant has triggered the conspiracy yet. The complaint alleges

widespread practices in the Family and Civil Courts, to promote interests of CFDE, to oppress,

suppress, and silence pro per litigants, single women, disadvantaged, disfavoured women. See

SCHEMES & ARTIFICES TO DEFRAUD. The conspiracy is ongoing. See  *Slavin v. Curry, 575 F.2d*

*1256, 1265 (5th Cir. 1978)* states

> *When the complaint is read with the required liberality, however, it asserts a single,*
> *continuing conspiracy. That is, it reveals a conspiracy that began with the intention of*
> *denying Slavin the equal protection of the laws and continued by obstructing justice and*
> *denying due process in an attempt to conceal the complicity in the first action. The*
> *complaint recounts a number of incidents. While they state separate causes of action against*
> *individual defendants, they also charge participation in a single conspiracy. The district*
> *court erred in treating the incidents as alleging only separate causes of action.*

The current allegations involve a single conspiracy, although separate causes of actions are alleged

against individual defendants. And since the conspiracy is an ongoing, continuous offense, and

defendant has not exited the conspiracy, the statute of limitation has tolled to the last offense

committed by Judge KALEMKARIAN on Aug 22, 2018.  The RICO injury was discovered in 2015,

therefore the statute of limitation has not tolled yet.

**I.      Triable Facts:** Whether a release bars an action for later discovered personal injuries is a

question of fact and depends upon whether it was "knowingly" made. (Denton v. Utley, supra, at p.

541. [86 N.W.2d].) Whether there is substantial evidence that it was not will depend upon the amount

of consideration received compared with the risk of the existence of unknown injuries (Denton v.

Utley, supra, at p. 543 [86 N.W.2d]; Goodman v. Missouri Pacific R.R. Co. (Mo.) 312 S.W.2d 42, 48;

Ruggles v. Selby, supra, (Ill.App.) 165 N.E.2d 733, 743; Crane Co. v. Newman, supra, at p. 739;

Montgomery Ward & Co. v. Callahan (10th Cir. 1942) 127 F.2d 32, 35. See Note 71 A.L.R.2d 82,

165. But see Darensbourg v. Columbia Casualty Co. (La.App.) 140 So.2d 241) the presence of

bargaining and negotiation leading to the settlement (e.g., Denton v. Utley, supra, at p. 543 [86

N.W.2d]) the closeness of the issue of liability (Reed v. Harvey, supra, (Iowa) 110 N.W.2d 442, 447;

Schoenfeld v. Buker, 262 Minn. 122 [114 N.W.2d 560]; Ruggles v. Selby, supra, at p. 743; Note 71

A.L.R.2d 82, 167) whether the subject of personal injuries was discussed (see Seaboard Ice Co. v. Lee,

199 Va. 243 [99 S.E.2d 721]; McGuirk v. Ross, supra, (Del.) 166 A. 429; but cf., Page v. Means,

supra, (N.D.W.Va. 1961) 192 F.Supp. 475) and the reasonableness of the contention that the injuries

were in fact unknown at the time the release was executed (Doyle v. Teasdale, supra, (Wis.) 57

N.W.2d 381, 388; Schmidtke v. Great Atlantic & Pacific Tea Co., 236 Wis. 283 [294 N.W. 828, 832];

Ormsby v. Ginolfi (Fla.App.) 107 So. 2d 272, 274; Note 71 A.L.R.2d 82, 148).

At the very least, the issue whether the release covers the actions alleged against the defendant

represents a triable fact. Releases is generally unenforceable if it is contrary to public policy, because

of fraud in the inducement, and/or if there is a triable  a triable issue of material fact as to whether the

release covers plaintiff's claims, [Tunkl v. Regents of University of California (1963) 60 Cal. 2d 92,

32 Cal. Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693, cited in YMCA of Metropolitan Los Angeles v.

Superior Court (1997) 55 Cal.App.4th 22  "release she signed is invalid because it is against the

public interest; Benedek v. PLC Santa Monica, LLC (2002) 104 Cal. App. 4th 1351; Hohe v. San

Diego Unified Sch. Dist. (1990) 224 Cal.App.3d 1559; Bennett v. United States Cycling Federation

(1987) 193 Cal.App.3d 1485]. Additionally, whether there has been such a lack of care as to

constitute gross negligence is also considered a triable fact, (Chavez v. 24 Hour Fitness USA, Inc.

(2015) 238 Cal.App.4th 632, 640 [189 Cal.Rptr.3d 449]. The trial court may not make findings as to

the existence of facts based on a weighing of competing declarations.  Whether or not the evidence is

in conflict, if the petitioner has presented a sufficient pleading and has presented evidence showing

that a prima facie case will be established at trial, the trial court ***must*** grant the petition.  Supra at

933-934. Subjecting the allegations to a fact adjudication screen would violate the right to a jury trial.

Supra at 931, Cal. Const., art. I.§16.

**J.**        **Declarative & Injunctive Relief:** Even if above arguments are not convincing, the Court *still*̦

cannot dismiss the complaint because I seek injunctive and declarative relief thru my complaint. At the

very least, the Court is required to try the case on this basis alone. Therefore, defendant's argument

that the complaint be dismissed, eventually fails on this ground.

**TIMELINESS & INDIVIDUAL CAUSES OF ACTIONS:**  For details of the applicability of all

causes of actions except Negligence, please see *Plaintiff's Opposition to ELLIS' Motion to Dismiss* ,

pages 24-33, most arguments made against ELLIS also apply to defendant PARDUE, except that in

addition to everything else, PARDUE was also a fiduciary and owed a duty of care, which ELLIS did

not. Therefore his crimes must be construed to be more more heinous, and his punishment more

severe.

**Gross Negligence :**  Any signed waiver of liability represents a releases liability for ordinary negligence

only, not for gross negligence. (See *City of Santa Barbara v. Superior Court (2007) 41 Cal.4th 747, 777*

*[62 Cal.Rptr.3d 527, 161 P.3d 1095]*[17]; Gross negligence may be proven by a ***preponderance of the***

***evidence***. (Eriksson v. Nunnink (2015) 233 Cal.App.4th 708, 732, 734 [183 Cal.Rptr.3d 234].) A lack of

gross negligence can be found as a matter of law if the plaintiff's showing is insufficient to suggest a triable

issue of fact. (See Grebing v. 24 Hour Fitness USA, Inc. (2015) 234 Cal.App.4th 631, 638−639 [184

Cal.Rptr.3d 155]; cf. Jimenez v. 24 Hour Fitness USA, Inc. (2015) 237 Cal.App.4th 546, 555 [188

Cal.Rptr.3d 228] [whether conduct constitutes gross negligence is generally a question of fact, depending

on the nature of the act and the surrounding circumstances shown by the evidence].)

---

[17] "the absence of a duty to protect against ordinary negligence does not absolve a defendant from liability based upon reckless conduct [**City of Santa Barbara v Superior Court of Santa Barbara (2007),** No.  S141643.

"Gross negligence is pleaded by alleging the traditional elements of negligence: duty, breach, causation, and damages. However, to set forth a claim for 'gross negligence' the plaintiff must allege extreme conduct on the part of the defendant." (Rosencrans v. Dover Images, Ltd. (2011) 192 Cal.App.4th 1072, 1082 [122 Cal.Rptr.3d 22], internal citation omitted.)

*"[P]ublic policy generally precludes enforcement of an agreement that would remove an obligation to adhere to even a minimal standard of care.* (City of Santa Barbara, supra, 41 Cal.4th at p. 777, original italics.). Defendant PARDUE's action did not conform to even the basic and minimal standard of care[18].

Gross negligence' long has been defined in California and other jurisdictions as either a "want of even scant care' or 'an extreme departure from the ordinary standard of conduct. [City of Santa Barbara, supra, 41 Cal.4th at p. 754, internal citations omitted.)  Defendant's behaviour and my Marital Settlement Agreement was an extreme departure from the ordinary standard conduct. Prior to the MSA, at least I controlled my own bank and brokerage accounts and defendant paid at least *some* Smith Ostlerised payments on Child and Spousal Support. After the MSA, ALL my bank and brokerage accounts  were under defendant KHERA's control, and defendant refused to pay ANY Smith Ostlerised payments on child and spousal support until 2012.

Gross negligence imputes liability even the professionals who normally re immune against civil liabilities. [See Bus. & Prof. Code, § 2727.5; Bus. & Prof. Code, § 2395. Bus. & Prof. Code, § 2398; Bus. & Prof. Code, § 3706;  Bus. & Prof. Code, § 4840.6; Civ. Code, § 1714.2; Health & Saf. Code, § 1799.105; Health & Saf. Code, § 1799.; Health & Saf. Code, § 1799.107 [(Decker, supra, 209 Cal.App.3d at pp. 356–357). The standard to be applied in this case is gross negligence. The term gross negligence means the failure to provide even scant care or an extreme departure from the ordinary standard of conduct.' "
(Wright v. City of L.A. (1990) 219 Cal.App.3d 318, 343 [268 Cal.Rptr. 309]

---

[18] "Gross Negligence. . . is very great negligence, or the want of even scant care. It has been described as a failure to exercise even that care which a careless person would use. Many courts, dissatisfied with a term so devoid of all real content, have interpreted it as requiring wilful misconduct, or recklessness, or such utter lack of all care as will be evidence of either—sometimes on the ground that this must have been the purpose of the legislature. But most courts have considered that 'gross negligence' falls short of a reckless disregard of consequences, and differs from ordinary negligence only in degree, and not in kind. So far as it has any accepted meaning, it is merely an extreme departure from the ordinary standard of care." (Decker v. City of Imperial Beach (1989) 209 Cal.App.3d 349, 358 [257 Cal.Rptr. 356], original italics, internal citations omitted

Also See: 5 Witkin, Summary of California Law (10th ed. 2005) Torts, § 278; California Torts, Ch. 1, General Principles of Liability, § 1.01 (Matthew Bender); California Forms of Pleading and Practice, Ch. 380, Negligence, §§ 380.10, 380.171 (Matthew Bender)

Defendant knew it was violating the family code sections, constitutional law  state laws, when he intentionally, deliberately coerced me into the alleged Marital Settlement Agreement.  Defendant had not even bothered to block out the trial dates on his calender, showing that he had pre-planned that there was going to be no trial, and he was going to be successful in convincing me into the purported settlement.

Defendant PARDUE repeatedly assured me that I could get the spousal support updated after 3 years on a Motion to Continue Support. He insisted that I could go to DCSS, and file a motion for child support, and DCSS would get everything for me. He did not disclose that this was only probable, he just stated that this is what would happen. He insisted that if I was unable to support myself, Court would continue spousal support. He said if any assets had remained undivided, they could be divided later. He engaged in one or more alleged SCHEMES & ARTFICES to defraud. In performing these actions, he imposed an extreme magnitude of the potential harm. I was naïve and gullible, but defendant was aware that the Motion for Continuation of Spousal Support may not succeed, that DCSS may not get appropriate support, if at all. He had actual, subjective awareness of the risk involved, did not share those risks with me, and decided to proceed with conscious indifference to my rights, safety, or welfare of me and my children, knowing the risk involved. The quality and quantity of the bribe and/or corrupt influence under which this covert agreement was reached, remains a matter for discovery and trial, but if he denied conspiracy, the objective and subjective acts qualify as acts of gross negligence. *U-Haul International, Inc. v. Waldrip*, 380 S.W.3d 118 (Tex., 2012).

**ATTORNEY FEE  :** The complaint against PARDUE is not meritless. His alleged corrupt and criminal acts are responsible for severe, horrible emotional and financial injuries not just to me, but to my children as well. But even if they were not, litigation is inherently a risky proposition, and a party should not be penalized for merely participating in a lawsuit. Also, the poor would be unduly discouraged from pursuing their legal rights if they feared that losing the case would also cost them

their opponents' legal fees. Finally, the cost of proving the amount of legal fees would pose an undue

burden on judicial administration. Fleischmann, at 718 [Fleischmann Distilling Corp. v. Maier

Brewing Co., 386 U.S. 714, 18 L. Ed. 2d 475, 87 S. Ct. 1404 (1967)]. Hence, defendant's request for

sanctions and attorney cost must be denied.

**VOID JUDGMENTS OF 2008 & FRAUD UPON THE COURT** : See *Void Judgments of 2008 &*

*Fraud Upon the Court* (page 21- 24) in *Plaintiff's Opposition to ELLIS's Motion to Dismiss* (doc 144)

incorporated herein, as if fully set forth herein. In addition to arguments made about why the

Judgments of 2008 are void, the Judgments are also void because the substitution of attorney form was

signed by PARDUE and myself *before* the  marital agreement was recited on the record. Therefore,

during the hearing and recital of the agreement, defendant PARDUE was not my attorney as a matter

of law, and the agreement that formed the basis of the Judgments of 2008, is unenforceable as a matter

of law – because the matter was not properly before the Court. In addition to Judgments being void for

clear absence of jurisdiction under FC 5601(a) (c) and Family Code Section 4065 (c)[19]  and Family

Code Section 271 – DCSS had absolute jurisdiction, not DAVILA's Court, the DCSS was not present

on May 17, 2007 in Santa Clara County, I had not stipulated to a child support of $2,800 per month,

and I hd not been noticed as per section 271. Article III of constitution states that Jurisdiction cannot

be conferred by mutual consent, and an order made in excess of jurisdiction is a "trespass" and

therefore void.

The Judgments waived child support arrears, prohibited by 42 USC 666 (a)(9)(c)[20]. The

Judgments have already been overturned by A) By COMMISSIONER DUNCAN in 2008,  for Child

Support B) By Judge ALLEN HILL on Feb 3, 2014 for child support C) By 5CDA in Khera v Sameer

---

[19] FC 4065 (c)  A stipulated agreement of child support is **not valid** unless the local child support agency has joined in the stipulation by signing it in any case in which the local child support agency is providing services pursuant to Section 17400.   The local child support agency shall not stipulate to a child support order below the guideline amount if the children are receiving assistance under the CalWORKs program, if an application for public assistance is pending, or **if the parent receiving support has not consented to the order**.

[20] "Parents do not have the power to agree between themselves to abridge their child's right to support. (Hogoboom & King, Cal. Practice Guide: Family Law 1, supra, 6:23, p. 6-11.); In re Marriage of Ayo (1987) 190 Cal. App. 3d 442, 445-449 [235 Cal. Rptr. 458].) "Agreements and stipulations compromising the parents' statutory child support obligation . . .are void as against public policy. [Citations.]" (Hogoboom & King, Cal. Practice Guide: Family Law 1, supra, 6:23, pp. 6-11 to 6-12, original italics.).

(2018) for Child Support and D) By Judge ZEPEDA in and thru her order of Sept 9, 2014 related to custody. It is also void for fraud, because the Judgments of 2008 did not correlate with the oral agreement that had been recited. For example (this is just *one* example), the orally recited agreement stated that the Brown Accounts (which later was acquired by E*Trade) was Respondent's Property – it contained my post separation earnings, among other things. In the defendant Settlement, this brokerage out was omitted and since 2008, defendants (KHERA, BENETT, BECKER, DAVILA, ZAYNER, MORENO Defendants, KAPETAN) have conspired and have refused release. The account contains equities worth over $1m. Defendants are aware that I am currently practically destitute and homeless, but continue in furtherance of the conspircy. Because the discrepancy was intentionally forced upon me over my protests, it represents fraud upon the Court, and the Court has an obligation to declare it void [Rule 60(d)(3)]. This is only *ONE* of the discrepancies in service of the alleges fraud. Many contradictions exist between the Judgments of 2008, and other Judgments since (see 2 of them outlined below).

a.  Judgment of 2008 is effective Feb 25, 2008. Order of Judge ALLEN Hill is effective between Jan 3, 2008 – Dec 2013, and continues indefinitely thereafter.

b.  Judgments of 2008, made on Feb 25, states that defendant KHERA will pay $2800 in child support. Judge ALLEN HILL has made an order in 2014, which is effective Jan 3, 2008 (ie predates the Judgments of 2008) and states that defendant KHERA will pay 3400 in base support, and smith oslterised payments.

c.  Judgments of 2008, based on bribery, and fraud, imputes an income of $37,000 per annum.  Judge ALLEN HILL's order – after a lengthy trial, imputes an income of $2000 per month. If my salary is established at $2,000, there is no basis for denial of spousal support, which was premised on my earning capacity of $37,000 per annum.

Judge ALLEN HILL's order was made after a detailed trial over 11 trial days, whereas defendant DAVILA's order was arbitrary, without due process. The conflict between the two must be resolved in favour of Judge ALLEN HILL's Judgment overturning Judgments of 2008. The premise

behind termination of support in 2008 was that I would be self sufficient. This intention could not be achieved because of defendants' own malicious, deceitful, corrupt actions. They should not be allowed to benefit from such acts of moral turpitude[21]. Motions to vacate void judgments may be made at any time after judgment. (County of Ventura v. Tillett, supra, 133 Cal. App. 3d 105, 110.). A judgment is void on its face if the trial court exceeded its jurisdiction by granting relief that it had no power to grant. Jurisdiction cannot be conferred on a trial court by the consent of the parties. (Summers v. Superior Court (1959) 53 Cal. 2d 295, 298 [1 Cal. Rptr. 324, 347 P.2d 668]; Roberts v. Roberts (1966) 241 Cal. App. 2d 93, 101 [50 Cal. Rptr. 408].) Thus, the fact that a judgment is entered pursuant to stipulation does not insulate the judgment from attack on the ground that it is void. [In People v. One 1941 Chrysler Sedan (1947) 81 Cal. App. 2d 18, 21-22 [183 P.2d 368]

The Judgment of 2008 actually represents fraud upon the court[22] which vitiates the entire case, and all related Judgments associated, must be stricken. The court has the jurisdiction and is ***mandated*** to void Judgments of 2008 under Rule 60(d)(3). But should the Court not to do so, allegations against PARDUE are not dependant on this action - the injuries are distinct. 2AC requests damages, declarative and injunctive relief, not equitable relief against PARDUE (including but not limited to disgorgement of income earned thru the crime alleged, and disbarment).

**PRO SE STATUS OF THE PLAINTIFF:** Court is required to give special consideration to my pro per status. These arguments are made in *Pro Per Status of the Plaintiff*, in *Plaintiff's Opposition to ELLIS' Motion to Dismiss,* (page 33-34).

**CONCLUSION:** I request Court deny defendant's Motion to Dismiss, and grant permission to amend the complaint against PARDUE. The allegations, fraud, and Negligence claims could do with more

---

[21] Since 2/3 of the judgment has been overturned by other courts, it would be unfair, and prejudicial to enforce only the part that was detrimental to me. When one consideration of a contract is breached, the entire contract is void. Therefore the entire Judgment must be considered unenforceable, void, voidable and rescinded.

[22] Fraud Upon the Court is defined as that fraud committed by an officer of the court in any attempt to deceive, either by commission, by omission, by speech, by silence, by gesture, by innuendo, by look, etc. Defendants BENETT, BECKER, DAVILA, ZAYNER,  In re Eugene Lee Armentrout et al., 99 Ill.2d 242, 75 Ill.Dec. 703, 457 N.E.2d 1262 (1983); Regenold v. Baby Fold, Inc., 68 Ill.2d 419, 435, 12 Ill.Dec. 151, 369 N.E.2d 858 (1977); In re Lamberis, 93 Ill.2d 222, 229, 66 Ill.Dec. 623, 443 N.E.2d 549 (1982); Bulloch v. United States, 763 F.2d 1115, 1121 (1985); Root Refining Co. v. Universal Oil Products Co., 169 F.2d 514 (1948).

specificity, especially given the recent activities in the underlying case. The remaining claims seem sufficient[23]. I also request permission to exceed 50 page limit.

The Judgments of 2008 are essentially void for lack of jurisdiction, and have already been overturned. The Court cannot declare them valid, or refuse to adjudicate on the matter that is brought before it with such clarity. Alternately, the Court may allow an evidentiary hearing on the subject. Alternately, the Court may choose to do nothing on this matter, in which case the judgments may be collaterally attacked. But relief pertaining to Judgments of 2008 is a non issue as to claims against PARDUE. I released PARDUE for legal malpractice claims, not for gross negligence, nor for the alleged criminal conduct and RICO conspiracy, which injuries were discovered in 2015. Alternately, and the least preferred is a stay until the matter of the underlying Judgments of 2008, is resolved in the State Appellate Court[24].

The Court has the discretion to remand the case to State Court, as requested in 2AC. However, given the history of dismissals and refusal to allow *any* matter to proceed to trial till date, I fear I would be severely prejudiced by such transfer. Hence I request that the case be allowed to proceed in the Federal Court.                                                   Respectfully Submitted

09/18/2018                                                                  Madhu Sameer, Plaintiff, Pro Se

---

[23] Rule 15's mandate that district courts liberally grant leave for amended, curative pleadings ("The court should freely give leave when justice so requires.")[23].  [*Conley v. Gibson :: 355 U.S. 41 (1957)]*.
[24] No Appeal to void the Judgments of 2008 is pending with 6DCA per se, but various appeals – on property etc -  are pending, and a void Judgment can be attacked at any time, even in the Appellate jurisdiction.